## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    BKY No. 09-50779

Dennis E. Hecker,                                                    Chapter 7

        Debtor.

---

### NOTICE OF MOTION AND MOTION FOR CHANGE OF VENUE

---

TO:      ENTITIES SPECIFIED IN LOCAL RULE 9013-3

    1.      Randall L. Seaver, the Chapter 7 Trustee herein, moves the Court for the relief request below and gives Notice of hearing herewith.

    2.      The Court will hold a hearing on this motion at 9:30 a.m. on July 27, 2009, before the Honorable Robert J. Kressel, Federal Building, 515 West First Street, Courtroom 2, Duluth, MN 55802 or as soon thereafter as counsel can be heard.

    3.      Any response to this Motion must be filed and served by delivery no later than July 22, 2009, which is three (3) days before the above date (excluding Saturdays, Sundays and holidays), or be filed and served by mail not later than July 16, 2009, which is seven (7) days before the date set for the hearing (excluding Saturdays, Sundays and holidays) in accordance with Local Rules.  UNLESS A RESPONSE IS TIMELY SERVED AND FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

    4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, Fed.R.Bankr.P. 5005, and Local Rule 1070-1.  The petition commencing this chapter 7 case was filed on June 4, 2009.  The case is now pending in this court.

5.      This Motion arises under 28 U.S.C. §1404 and Local Rule 1002-1(a) and is filed under Local Rules 9013-2 and 9013-5.  The Trustee requests relief with respect to changing the venue of this matter from Duluth, MN to Minneapolis, MN.  The Trustee does not anticipate any party will contest this Motion.

6.      The Debtor filed this case listing his homestead as being in Crosslake, MN and, therefore, the case was assigned to the Bankruptcy Court's Duluth Division Fifth Division.

7.      The Trustee was appointed to this case (although he is not on the panel for Duluth).  The Trustee offices are located in Burnsville, MN.  The Trustee's counsel offices in Minneapolis, MN.  Debtor's counsel offices in Minneapolis, MN.

8.      The Debtor continues to rent a home in Hennepin County (although it was a 90-day lease).  He continues to have offices in Hennepin County.

9.      In the short time that this case has been pending, most interested parties are either located in the Twin Cities metropolitan area or have retained counsel within the same.

10.      Venue of this case in Duluth, Minnesota is inconvenient to all interested parties and, perhaps, to the Court.  This is evidenced by the motion which proceeded on an expedited basis earlier in this case in Minneapolis, MN.

11.      The Debtor has assets within, or connections to, Florida, Colorado, Minnesota, Mexico, Iowa and other local locales.  It is reasonably anticipated that there will be many motions in this case with some being expedited.  The Trustee believes that it will be burdensome for all involved to continue to have the hearings in Duluth, MN.

12.      Many of Debtor's financial affairs are located in Hennepin County.  It appears that governmental authorities are investigating Debtor and his businesses which squarely puts the focus on Debtor's Twin Cities' activities.  A copy of a recent news story is attached hereto as Exhibit A.

13.    If required, the Trustee gives notice that he may call himself as a witness at the hearing of this matter together with a representative to any or all parties to the underlying transactions.

**WHEREFORE**, the Trustee requests an Order of the Court:

1.    Granting the Trustee's motion for change of venue to this Court's Minneapolis Division (4).

2.    Granting the Trustee such other relief as is just and equitable.

**LEONARD, O'BRIEN, SPENCER**
**GALE & SAYRE, LTD.**

/e/  Matthew R. Burton

Dated: June 16, 2009              By:_____

Matthew R. Burton
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

Attorneys for Randall L. Seaver, Trustee

3

## **VERIFICATION**

I, Randall L. Seaver, Trustee for the Bankruptcy Estate of Dennis E. Hecker named in the foregoing Notice of Hearing and Motion for Approval of Settlement Agreement and Expedited Hearing declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

/e/  Randall L. Seaver

Executed on June 16, 2009                        _____

Randall L. Seaver, Trustee

403282

4

State Patrol Launches Probe Into Hecker Auto - wcco.com    http://wcco.com/crime/denny.hecker.auto.2.1048076.html

Search wcco.com 

Ads by Adblade



**Artery Clearing Secret**
Hugh Downs reports on breakthrough from
Nobel Prize Winning Doctor. Drops high blood
pressure by as much as 60 points... **Learn
more**

**Cruise Prices Slashed!**
Cruise prices are so low right now. Up to 75%
off! **Learn more**

## Crime

Font Size

Mobile
Home
Local News
U.S. & World
Weather
Traffic
Sports
Business
Consumer
Politics
Health
Crime
Entertainment
Education
Pets
Water Cooler
Blogs

**RESOURCES**
Links & Numbers
School Closings
Traffic Cams
Slideshows
Videos
More+

**FEATURED**
Special Reports
New Economy
Good Question
Reality Check
Good To Know
More+

**COMMUNITY**
Inside The Box
Contests
Calendar

**LIFESTYLE**
Food
Travel
Horoscopes
Lottery
Family
More+

**MARKETPLACE**
MN Joblist
Real Estate

**WCCO BLOGS**
Weather Blog
Jason DeRusha
Caroline Lowe
Esme Murphy
Gordy's Garage
More+

**FUN**
Games
Quizzes
Watch CBS Shows

**ABOUT US**
Advertise With Us
Contact Us
Digital TV
News Team
Station Info
More+

**PARTNERS**
WCCO AM
CBS News
CBS Television
CBS Outdoor
Advertising

Today's Most Popular Video



Jeff Dubay Faces Jail Time
Today

- Baby White Tigers, So Cute ... So Loud!
- 1 Dead In Plane Crash At Crystal Airport
- Crying Over Spilled Beer ... 40,000 Lbs!
- Puppy Accidentally Flushed Down Toilet

E-mail     Print

Jun 17, 2009 1:36 pm US/Central

### State Patrol Launches Probe Into Hecker Auto

**Consumers With Complaints About Hecker Can Call State Patrol Hot
Line At 1-800-593-5000**

**Do You Have A Complaint Against The Hecker Group? Share It With Us**



Reporting
James Schugel

ST. LOUIS PARK, Minn. (WCCO) — Dozens of consumer complaints have prompted
the Minnesota State Patrol to launch a criminal
investigation into the bankrupt Denny Hecker
Automotive Group.

Agents are raiding several of Denny Hecker's properties,
searching for evidence the group committed felonies involving
taxes and fees on vehicle sales and liens on vehicles that had been
traded in over the past several months.

Agents from the Minnesota State Patrol, the Drug Enforcement
Agency, the Internal Revenue Service and several law enforcement
agencies are executing search warrants at Hecker's corporate
headquarters in St. Louis Park at Highway 169 and Interstate 394.
The entire building is taped off and agents are looking at financial
documents and are removing files and computers from the
building. Agents are also searching several cars in the parking lot.

The DEA and IRS were involved in the raids because the State
Patrol task force didn't have enough people to execute the
numerous search warrants. There is no actual drug investigation.

Five other locations are also being raided, the Patrol said. Two of
those are dealerships: the Southview Chevrolet in Inver Grove
Heights and the GMC Cadillac in Oak Park Heights. The GMC
dealership is not open. The three other locations are homes
Hecker owns: two in Medina and one in Cross Lake.

Hecker's attorney, Marsh Halberg, said the raids come as a
"complete surprise." Halberg said Hecker is inside the St. Louis
Park building and he and his employees are cooperating with law
enforcement and are providing them with necessary passwords
and other information.

Halberg said Hecker has not been arrested, but said he didn't know
if Hecker eventually would be arrested.

The raids stem from allegations that Hecker, 56, was not paying
the state of Minnesota the sales tax on license plates, titles,
registration and other fees the state charges. He's also accused of
not paying off old loans he acquired from customers when they
bought new cars.

The raids are the product of an investigation that has been ongoing
for several months.

State Patrol Col. Mark Dunaski said Wednesday that consumers
have two kinds of complaints against the Hecker group.



1 of 1          Click to enlarge

Denny Hecker filed for personal
bankruptcy protection June 4. (File)
David Sherman/NBAE/Getty Images



WCCO Video          Sponsor: **Find a Job**

Crime  [+]          Video Library

SHARE     POP-OUT

State Patrol Launches Probe Into Hecker Auto
1 hour 27 minutes ago

Related | Crime



Audi
Audi A4
$379/Lease Offer

Progress is Beautiful

and

Click here for
lease details

### Crime

- **REPORTED** State Patrol Launches Probe Into Hecker
  Auto 31 mins ago
- Welcome To The Crime Scene Corner
- Man Finds Stolen Trailer 3 Years Later



EXHIBIT

A

The first is that consumer would purchase a vehicle, pay to the Hecker group the 6.5 percent sales tax and the title and license registration fees, but never receive their title or license plates.

The second complaint is that people would trade in their old car and would later be informed by their lender that the lien on the vehicle has not been paid off.

Under Minnesota law, it is a felony for a dealership to not pay the state the sales tax it collects. Those found guilty could spend up to five years in prison and pay a $10,000 fine. It's also a felony for a dealership to not pay off a lien if a vehicle has been traded in. Those found guilty of that crime could spend up to three years in prison and pay a $6,000 fine.

Dunaski said some people have said they've been victims of both kinds of fraud. The Patrol has received complaints from people in 15 Minnesota counties.

"The number and severity of citizen complaints prompted us to take action with the goal of resolving the problems both for consumers and the state of Minnesota," Dunaski said.

The Patrol believes there are more victims out there. If you have questions, you can call a hot line set up by the Patrol at 1-800-593-5000.

Hecker filed for personal bankruptcy protection on June 4, saying he owes up to $1 billion to 1,000 creditors. So far, 95 of those creditors are listed in court documents, including the Bellagio and Mirage hotel-casinos in Las Vegas, the city of Aspen, Colo., Royal Jewelers and his business attorneys.

Hecker's largest creditors are expected to be auto finance companies. Hecker was one of Minnesota's largest car dealers, but with the economic downturn, he has shuttered or sold 25 of his 26 dealerships.



**know more?**
click to send wcco
more details • home video
other story ideas

(© MMIX, CBS Broadcasting Inc. All Rights Reserved.)

## Related Stories

- Hecker's Creditors Include Hotels, Banks, Lawyers (6/11/2009)
- Denny Hecker Files For Personal Bankruptcy (6/5/2009)
- Another Creditor Sues Auto Dealer Denny Hecker (5/14/2009)
- Minn. Auto Mogul Hecker Loses Case To Chrysler (4/28/2009)
- Denny Hecker Facing DWI, Careless Driving Charges (4/10/2009)
- Auto Lender Sues Denny Hecker (2/3/2009)
- Lino Lakes Bank Sues Hecker, Alleging Loan Default (12/12/2008)
- Car Dealer Denny Hecker Crashes Car Into Pole (12/5/2008)
- Hecker Employee Learned Of Layoff From Coworker (11/23/2008)
- Denny Hecker Announces Closure Of 6 Dealerships (11/22/2008)
- Car Dealer Denny Hecker Sues Chrysler Financial (11/14/2008)

## Related Links

- Read More Minnesota News
- Read The Latest Business News

- Looking At DWI Numbers After 2 Recent Crashes
- Cottonwood Woman Gets Over 3 Years In Fatal Crash

## Top News Stories

- Good Question: Why Do Calm People Get Road Rage?
- **UPDATED:** State Patrol Launches Probe Into Hecker Auto 31 mins ago
- Pilot In Crystal Airport Crash Identified 1 hr 46 mins ago
- Twin Cities Could See Severe Thunderstorms
- Man Finds Stolen Trailer 3 Years Later

**SPONSORED LINKS**                    Get listed here

**Online Bachelors' Degrees**
Earn Your Bachelor's Degree Online From Top-Ranked College. Learn How!
www.FloridaTechOnline.com

**Why Celebrities Love OOKISA for Hair**
Instantly thicken hair for glamorous volume, dimension, shine- Try now
www.ookisa.com

**magicJack Internet Phone**
Never Pay a Monthly Phone Bill Again with magicJack! Free Trial Offer.
magicJack.com

**Living With Bipolar?**
Find Helpful Tools and Resources. Sign Up for a Support Program Now.
BipolarTreatmentInfo.com

**Andover Mortgage Protection Insur.**
Pays off your mortgage in the event of your death. Get a free quote!
www.NAALife.com

Advertise | Terms of Service | Privacy Policy | EEO Report | Parent's Guide to TV Ratings | CBS Television Stations Digital Media | Site Map
© MMIX, CBS Broadcasting Inc. All Rights Reserved.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BKY No. 09-50779

Dennis E. Hecker,                                              Chapter 7

         Debtor.

## MEMORANDUM IN SUPPORT OF CHANGE OF VENUE

### INTRODUCTION

For the reasons stated in the verified Notice of Hearing and Motion, the Trustee, Randall L. Seaver ("**Trustee**"), seeks to have venue of this case changed from Duluth (Fifth Division) to Minneapolis (Fourth Division). In short, the request is made for the convenience of interested parties and the Court. This case's only connection to the Fifth Division appears to be that Debtor claimed his homestead to be located within that division.

### ARGUMENT

Venue should be transferred to Minneapolis. In the case of *Liberty Mutual Fire Insurance Company v. The Nordic Group of Companies, Ltd.,* 2001 W.L. 34382016 (W.D. Wis. 2001) (copy attached), the court noted that:

> 28 U.S.C. §1404(a) permits such transfers under certain circumstances: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of §1404(a) is to allow federal civil suits to be tried "at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The decision to transfer a case is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). However, before a court can transfer a case, it must conclude that (1) venue is proper in the transferor district and (2) the transferee district is one in which the action might have been brought. *Id.*, at 219 & n. 3. . . .

> In a motion to transfer brought pursuant to 28 U.S.C. §1404(a), the moving party bears the burden of establishing that the transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 219-20.  In weighing the motion, a court must decide whether the transfer serves the convenience of the parties and witnesses and will promote the interests of justice.  See 28 U.S.C. 1404(a); *Coffey*, 796 F.2d at 219-20; see also *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir.1996) (question is whether plaintiff's interest in choosing forum is outweighed by either convenience concerns of parties and witnesses or interests of justice). The court should view these factors as placeholders among a broader set of considerations and evaluate them in light of all the circumstances of the case. See *Coffey*, 796 F.2d at 219 n. 3. Such broader considerations include the situs of material events, ease of access to sources of proof and plaintiff's choice of forum. See *Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc*., 851 F.Supp. 1265, 1269 (E.D. Wis. 1994); *Kinney v. Anchorlock Corp*., 736 F.Supp. 818, 829 (N.D. Ill. 1990).

*Id.*, at *3-*4.

Venue is proper in Minneapolis, as well as Duluth, for this is one Court with separate divisions.  See, i.e., Local Rule 1002-1(a).  The relevant statutes provide include 28 U.S.C. §137, which provides:

> The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.

See, *In re Stolicker Dairy Farms,* 67 B.R. 459, 460 (Bankr. E. D. Mich. 1986).

Also relevant here is 28 U.S.C. §154(a), which provides:

> Each bankruptcy court for a district having more than one bankruptcy judge shall by majority vote promulgate rules for the division of business among the bankruptcy judges to the extent that the division of business is not otherwise provided for by the rules of the district court.

*Id.*

Based on the foregoing, the Trustee asserts that venue is appropriate within any division within the District of Minnesota.  That the case happened to be assigned to the Fifth Division was the result of the Court's self-governance, which is not venue-related.

Most importantly, however, is the issue of the convenience of the parties and the Court.  As noted in the verified Notice of Hearing and Motion, virtually all interested parties, including

the Debtor and his counsel, have connections to the Twin Cities metropolitan area.  The only

connection which the Trustee is aware of to the Fifth Division is that the Debtor claimed his

homestead to be located in Crosslake, MN.  However, even the Debtor and his counsel support a

change of venue to Minneapolis or the Fourth Division.  This would evidence that while Debtor

did choose Crosslake for his claimed homestead, the selection was not made in order to garner

venue of the case in Duluth.  Therefore, "choice of forum," is not a material factor to this motion.

## CONCLUSION

The Trustee believes that he has established cause for a change of venue to the Fourth

Division and requests that his motion be granted.

**LEONARD, O'BRIEN, SPENCER
GALE & SAYRE, LTD.**

/e/  Matthew R. Burton

Dated: June 16, 2009                    By:_____

Matthew R. Burton
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

Attorneys for Randall L. Seaver, Trustee

403287

3

**Westlaw Delivery Summary Report for BURTON,MATTHEW R**

Date/Time of Request:            Monday, June 22, 2009 14:07 Central
Client Identifier:               SEAVER/HECKE
Database:                        DCT
Citation Text:                   Not Reported in F.Supp.2d
Lines:                           485
Documents:                       1
Images:                          0


The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and
their affiliates.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34382016 (W.D.Wis.)

**(Cite as: 2001 WL 34382016 (W.D.Wis.))**

C

Only the Westlaw citation is currently available.


United States District Court,

W.D. Wisconsin.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Plaintiff,

v.

THE NORDIC GROUP OF COMPANIES, LTD. and Snow Valley, LLC, Defendants.

**No. 01-C-0207-C.**


Dec. 4, 2001.


Laurie J. McLeroy, for Plaintiff.


Gerard W. Cook, O'Halloran, Kosoff & Helander, Northbrook, IL, for Defendants.


OPINION AND ORDER


CRABB, J.


**\*1**

This is a civil action for declaratory relief in which plaintiff Liberty Mutual Fire Insurance Company contends that defendants
Nordic Group of Companies, Ltd. and Snow Valley, LLC, the named insureds on a workers' compensation policy issued by
plaintiff, are obligated to pay (1) a retrospective insurance premium of $153,705 calculated on the basis of a $750,000
compensation settlement made on behalf of defendant Snow Valley plus (2) a future retrospective premium to be calculated on

basis of that same settlement. (Although the bankruptcy court has imposed a stay of proceedings against defendant Snow Valley, will nevertheless refer to both Nordic Group and Snow Valley as defendants in this order.) Plaintiff seeks a declaratory judgment that it may legally draw against a standby, irrevocable letter of credit issued by Flambeau Corporation, another named insured on the same policy (and a subsidiary of defendant Nordic Group), because (1) plaintiff is uncertain whether the letter of credit applies to an "incurred basis" claim such as this and (2) defendants have alleged that plaintiff settled the workers' compensation claim in bad faith. Subject matter jurisdiction is present pursuant to 28 U.S.C. § 1332.

In August 2001, after this lawsuit had been filed, defendant Snow Valley filed a Chapter 11 petition for rehabilitation in the Bankruptcy Court for the Central District of California. The filing triggered an automatic stay of all proceedings against defendant Snow Valley, including this action. See 11 U.S.C. § 362. Because the insurance policy stipulates that all named insureds, including defendant Nordic Group, are jointly and severally liable for any premiums due under the policy, plaintiff is proceeding against Nordic Group for the retrospective premium and any financial obligations incurred allegedly by defendant Snow Valley.

Several motions are presently before this court. Defendants have filed motions to (1) transfer this case for convenience to the Central District of California; (2) stay the proceedings pending the bankruptcy court's approval of defendant Snow Valley's amended plan of rehabilitation and determination whether this lawsuit will violate the automatic bankruptcy stay; and (3) dismiss for failure to join indispensable parties or, in the alternative, join the parties.

Because I find that the convenience of the parties and witnesses and the interests of justice weigh in favor of transferring this cause of action to the Central District of California, I will grant defendants' motion to transfer under 28 U.S.C. 1404(a). Because I am transferring this case, I will not decide defendants' remaining motions to stay the proceedings and to dismiss for failure to indispensable parties or, in the alternative, join the parties.

In its complaint, plaintiff alleges the following facts.

ALLEGATIONS OF FACT

Plaintiff Liberty Mutual Fire Insurance Company has its principal place of business in Boston, Massachusetts. Defendants The Nordic Group of Companies, Ltd. and Snow Valley, LLC have their principal places of business in Baraboo, Wisconsin and Running Springs, California, respectively.

**\*2**
Plaintiff and defendant Nordic Group entered into a workers' compensation and employers liability insurance policy WC2-141-013875-185, for the period from June 30, 1995 to June 30, 1996. The policy identified numerous named insureds including defendant Nordic Group. Defendant Nordic Group has represented to plaintiff and has published material to the indicating that defendant Snow Valley is a subsidiary of Nordic Group. Employees of defendant Snow Valley were provided workers' compensation coverage under the policy.

The policy identified Flambeau Corporation as the "organization named in Item I of the Information Page [which] by acceptance of this policy is authorized to act and agress [sic] to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy, including the receiving of return premiums, if any, and of dividends as may be declared by the company."

The policy also provided that "[i]t is hereby agreed that the Insured and the Insurer have mutually agreed to a Large Risk Alternative Rating Option Retrospective Rating Plan."

On July 26, 1995, Flambeau Corporation accepted the Large Risk Alternative Rating Option. Under this option, the premium for all workers' compensation and employers' liability coverage provided for under the policy is to be calculated and paid in accordance with the Retrospective Rating Plan contained in the Large Risk Alternative Rating Option. (Although it is not alleged in the complaint, it appears that the policy required each named insured to reimburse plaintiff for losses incurred on its behal workers' compensation claims and that Flambeau Corporation posted an irrevocable letter of credit to insure the loss reimbursement obligations of each named insured.)

On January 11, 1996, an employee of defendant Snow Valley, Daniel Bunnell, sustained an injury while snowboarding on the Snow Valley premises that rendered him quadriplegic. Bunnell filed suit in California against defendant Snow Valley under th theory that he was working *outside* the scope of his employment when the accident occurred. Bunnell also filed a workers' compensation claim against defendant Snow Valley under the theory that he was working *within* the scope of his employment at the time of the accident. The workers' compensation claim was defended by plaintiff. Plaintiff wa not the liability insurance carrier for defendant Snow Valley.

In the spring of 2000, all parties reached a settlement of all of Bunnell's claims against defendant Snow Valley. Plaintiff pai $750,000 in settlement for Bunnell's workers' compensation claim and defendant Snow Valley's liability insurance carrier paid money in settlement of the liability claim.

Defendant Nordic Group is jointly and severally liable with defendant Snow Valley for all premiums because the policy provide that "each person or organization insured under this policy as provided by this endorsement is jointly and severally liable fo premiums due under this policy and for any other financial obligation of any insured to [plaintiff] arising out of any agreen contained in this policy."

**\*3**
On May 10, 2000, in accordance with the Retrospective Rating Plan, plaintiff calculated a retrospective premium adjustmen $153,705 for defendant Snow Valley. On May 19, 2000, the premium was delivered to defendant Nordic Group on behalf defendant Snow Valley. Defendants have refused to pay this premium.

At the next annual retrospective rating plan adjustment date, plaintiff will calculate an additional retrospective premium adjustment as it relates to plaintiff's payment of Bunnell's $750,000 settlement.

Defendants have indicated that they refuse to pay plaintiff money under the Retrospective Rating Plan as it relates to plainti payment of the Bunnell settlement.

As part of the policy, Flambeau Corporation issued a standby, irrevocable letter of credit naming plaintiff as beneficiary. Plaintiff is uncertain whether it can draw on this letter of credit because (1) it is unclear whether the letter of credit is applicable to a settlement such as this that has been converted to an "incurred basis" pursuant to the terms of the Large Risk Alternative Rating Option and (2) defendants have alleged that plaintiff settled the workers' compensation claim in bad faith.

OPINION

### A. *Overview of Dispute*

There are four contracts involved in this dispute: (1) the insurance policy, which was issued and delivered in Wisconsin; (2) settlement agreement, which was entered into in California and contains a California choice-of-law provision; (3) the so-called "claims management service agreement," which defendants allege required plaintiff to obtain defendants' consent prior to a settlement in excess of $10,000; and (4) the standby, irrevocable letter of credit issued by Flambeau Corporation.

Plaintiff argues that the only contract at issue is the insurance policy because plaintiff is seeking a declaratory judgment that hinges on whether defendants owe a retrospective premium under the terms of that policy. In contrast, defendants argue that the settlement agreement is the key contract at issue because they do not object to the insurance policy's retrospective premium, but rather the fact that the premium was calculated on the basis of a settlement that was entered into in bad faith and without their authorization required by the claims management service agreement. Specifically, defendants assert that no money should have been paid settlement of defendant Snow Valley's workers' compensation claim because it was clear that the snowboarding accident occurred while the claimant, Bunnell, was acting outside the scope of employment so that the claim did not fall within workers' compensation. Plaintiff contends that at the time of the settlement and on the basis of the facts involved, California law was unsettled whether Bunnell was working within or outside the scope of his employment at the time of the snowboarding accident.

### B. *Motion to Transfer*

Defendants have filed a motion to transfer this case to the District Court for the Central District of California. 28 U.S.C. § 1404(a) permits such transfers under certain circumstances: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to allow federal civil suits to be tried "at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The decision to transfer a case is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). However, before a court can transfer a case, it must conclude that (1) venue is proper in the transferor district and (2) the transferee district is one in which action might have been brought. *Id.* at 219 & n. 3. Venue in this court is proper because defendant Nordic Group is a citizen of the Western District of Wisconsin. *See* 28 U.S.C. § 1391(a)(3). Venue also would have been proper in the Central District of California because defendant Snow Valley is a citizen California, a substantial part of the events giving rise to the claim occurred in California and defendants represent that they would have been subject to personal jurisdiction in California. *See* 28 U.S.C. § 1391(a)(2), (3). Neither party argues that venue would have been improper in the Central District of California. Therefore, it is appropriate to consider whether to transfer the case.

**\*4** In a motion to transfer brought pursuant to 28 U.S.C. § 1404(a), the moving party bears the burden of establishing that the transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 219-20. In weighing the motion, a court must decide whether the transfer serves the convenience of the parties and witnesses and will promote the interests of justice. *See* 28 U.S.C. 1404(a); *Coffey*, 796 F.2d at 219-20; *see also Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir.1996) (question is whether plaintiff's interest in choosing forum is outweighed by either convenience concerns of parties and witnesses or interests of justice). The court should view these factors as placeholders among a broader set of considerations and evaluate them in light of all the circumstances of the case. *See Coffey*, 796 F.2d at 219 n. 3. Such broader considerations include the situs of material events, ease of access to sources of proof and plaintiff's choice of forum. *See Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc.*,

851 F.Supp. 1265, 1269 (E.D.Wis.1994); *Kinney v. Anchorlock Corp.*, 736 F.Supp. 818, 829 (N.D.Ill.1990)

1. *Convenience of the parties*

Defendants argue that it is inconvenient for them to litigate in Wisconsin because California is where (1) the accident occurred; (2) the witnesses to the accident are located; (3) the witnesses to the investigation of the accident are located; (4) the settlem negotiations took place; and (5) plaintiff's claims office and investigators are located. In other words, defendants argue that because everything pertaining to this lawsuit except defendant Nordic Group's principal place of business is located in California, it convenient to defend this lawsuit in California. (Because of the bankruptcy stay imposed against Snow Valley, I have considered the convenience of defendant Nordic Group and plaintiff only.)

Shifting the inconvenience from one party to the other does not justify a transfer. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989). However, plaintiff does not argue that it would be inconvenient for it to litigate California, but rather that this dispute centers on interpreting an insurance policy that was issued and delivered in Wiscons Moreover, because plaintiff's principal place of business is in Massachusetts, litigating in California appears to be no less convenient to plaintiff than litigating in Wisconsin. In fact, plaintiff's California office handled the investigation and w compensation claim that underlies this lawsuit. This factor favors transfer to California.

2. *Convenience of witnesses*

a. Whether witnesses are required

Defendants argue that in order to substantiate their defense that plaintiff is not entitled to any retrospective premium because it was calculated on a settlement made in bad faith, they will need to put on witnesses to the settlement negotiations and snowboar accident, both of which took place in California. Plaintiff argues that this dispute can be resolved solely by interpreting the insurance policy, which was issued and delivered in Wisconsin and, for that reason, defendants overstate the need for witnesses. This thrust and parry goes to the heart of the question whether witnesses will be required at all. If this case is solely abou interpreting the four corners of the insurance policy, then no witnesses are needed. On the other hand, if this case centers on whether the settlement agreement was entered into in bad faith, then witnesses will be required.

**\*5**
Defendants concede that they do not object to the retrospective premium itself, but rather the allegedly bad faith nature of settlement agreement, which had the direct effect of (1) raising the retrospective premium substantially and (2) causing defendants to be liable to plaintiff for the settlement itself ($750,000) because plaintiff had no duty to indemnify defendants for the settlem under the policy. In other words, defendants assert that plaintiff settled quickly and without any concern about the amount (hence, in bad faith) because litigating defendants' liability would have served only to increase plaintiff's legal expenses (under its du defend) and defendants have to reimburse plaintiff for the settlement itself regardless of the amount (no duty to indemnify). In fact, defendants argue, plaintiff stood to gain financially from a large settlement: the larger the settlement, the larger the retrospe premium. Plaintiff recognizes in its complaint that defendants are alleging that the settlement was made in bad faith. At this point in the litigation, I am not persuaded that this case will be determined solely on the basis of the insurance policy without consideration of defendants' bad faith defense.

In addition, plaintiff argues that although defendant Nordic Group is jointly and severally liable for the premiums, Nordic Gro

cannot assert the defense of a bad faith settlement because it was not a party to the litigation that gave rise to the settlement. According to plaintiff's reasoning, because this action has been stayed against defendant Snow Valley, defendant Nordic Group is left with no defense. First, plaintiff assumes erroneously that whatever amount it alleges that defendant Snow Valley owes is tantamount to a legal liability that can be passed on carte blanche to defendant Nordic Group through joint and several liability. On the contrary, in order to determine whether defendant Nordic Group is jointly and severally liable, a court must first decide whether defendant Snow Valley is liable (which it might not be if the settlement was the product of bad faith). If defendant Snow Valley is liable, then under the terms of the policy defendant Nordic Group must share in that liability, jointly and severally. If defendant Snow Valley is not liable in the first instance, then there is simply no liability for defendant Nordic Group to share jointly, severally or otherwise.

Second, defendant Snow Valley cannot litigate this issue itself because an automatic stay has been imposed by the bankruptcy court pursuant to federal law. (Ironically, plaintiff opposes defendants' pending motion to stay these proceedings, arguing that defendant Snow Valley is not a necessary party to this litigation.) Defendant Nordic Group may assert the rights of defendant Snow Valley if there is reason to believe that Nordic Group will represent the interests of Snow Valley effectively. *See Secretary of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("Where practical obstacles prevent a party from asserting rights on behalf of itself, for example, the Court has recognized the doctrine of *jus tertii* standing. In such a situation, the Court considers whether the third party has sufficient injury-in-fact ... and whether, as a prudential matter, the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal."); *see also* Jackson v. United States, 881 F.2d 707, 709 (9th Cir.1989) (federal government, the party obligated to pay the settlement, had ancillary standing to contest private fee agreement among plaintiffs and their attorney regarding claim brought under Federal Tort Claims Act because government was clearly involved in case or controversy and had right to contest amount of settlement).

**\*6**

In this case, the bankruptcy stay is an obstacle that prevents defendant Snow Valley from asserting rights on its own behalf. Moreover, because defendant Nordic Group is jointly and severally liable for any premiums or financial obligations defendant Snow Valley may owe plaintiff, Nordic Group would suffer a sufficient injury-in-fact if required to pay plaintiff for a settlement procured in bad faith. Finally, because defendant Snow Valley has filed for bankruptcy, it is quite likely that defendant Nordic Group may never collect any contribution from Snow Valley. In light of such a prospect, Nordic Group can reasonably be expected to present the issues with the necessary adversarial zeal. Therefore, defendant Nordic Group can assert as a defense to its liability the allegation that plaintiff settled defendant Snow Valley's workers' compensation claim in bad faith. As a result, at this point in the litigation, the convenience of witnesses relating to the defense of bad faith is a factor to be weighed in deciding whether to transfer this case.

b. Possible witnesses

Defendants assert that their witnesses either reside currently or were last known to reside in California, including (1) plaintiff's insurance adjusters who handled the claims; (2) defendant Snow Valley's employees with knowledge of the pertinent facts; witnesses with first-hand knowledge of the workers' compensation investigation and snowboarding accident. In response, plaintiff argues that because of the previous litigation, the testimony of these witnesses is preserved in an admissible form. Therefore, plaintiff argues, only documents and not people will be needed in Wisconsin. Plaintiff's argument is not persuasive because the original litigation did not involve the allegation of bad faith; it concerned Bunnell's workers' compensation and tort claims. Therefore, there is no reason to assume that the prior litigation would have explored the issue of a settlement allegedly made in bad faith. It is true that one aspect of defendants' bad faith defense is the allegation that at the time the accident occurred Bunnell was so clearly outside the scope of employment that plaintiff's settling for $750,000 was in and of itself in bad faith. Prior testimony will no doubt shed light on this allegation but not on the settlement negotiation itself. For example, defendants may want to

plaintiff's stance during the negotiations, why plaintiff originally denied the claim and then later accepted it, what factors influenced this change in position and how the figure of $750,000 was derived. Plaintiff alleges that under the terms of the policy, it was allowed to settle claims on behalf of defendants. Although this may be true, it does not mean that plaintiff can settle claims in bad faith. The duty of good faith and fair dealing is implied in every contract. See *Restatement (2d) Contracts* § 205 (1981). This is especially true in a case such as this because the amount of the settlement correlates directly to the amount of the retrospe premium (and future retrospective premiums) and plaintiff did not have a duty to indemnify defendants for the settlement itself. The convenience of witnesses favors a transfer to California.

### 3. *Situs of material events*

**\*7**

The accident that gave rise to the workers' compensation claim at issue in this case occurred in California. The investigat surrounding the accident also occurred in California. The disputed settlement, which ultimately gave rise to the retrospectiv premium, was entered into and negotiated in California. Moreover, the settlement itself contains a California choice-of-law provision. Other than the fact that original policy was issued and delivered in Wisconsin, no events, material or otherwise, took place in Wisconsin. This factor weights in favor of transferring venue to California.

### 4. *Ease of access to sources of proof*

Neither party argued this factor. Defendants have implied that their documentary evidence is located in California and it is clear that the court documents regarding the prior litigation are located in California. In any event, because transportation of documents is not difficult, this factor is in balance.

### 5. *Plaintiff's choice of forum*

Generally, the court should give deference to a plaintiff's choice of forum, especially when it is the district in which plaintiff resides. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, if plaintiff's chosen forum is not the situs of material events, courts have held that plaintiff's choice has weight equal to other factors and will not receive deference. *See Carillo v. Darden,* 992 F.Supp. 1024, 1026 (N.D.Ill.1998); *see also Sanders v. Franklin,* 25 F.Supp.2d 855, 858 (N.D.Ill.1998). Because California is the situs of all material events (settlement negotiations and underlying accident) other than the delivery of the policy and Wisconsin is not plaintiff's home forum, this factor is in balance.

### 6. *Interest of justice*

The final factor to be considered is whether the transfer will serve the interest of justice. The "interest of justice" includes su concerns as trying related litigation together, having a judge who is familiar with the applicable law try the case and ensuring speedy trials. *Coffey,* 796 F.2d at 221;*see also Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d                                                    22                                                    (1988) (interest of justice embraces public-interest factors of systemic integrity and fairness, rather than private interests of litigants and their witnesses).

a. Conflicts of law

In a federal lawsuit based upon diversity of citizenship, the court will apply the choice-of-law principles of the jurisdiction in which it sits to determine the substantive law that will apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). But after a diversity case has been transferred, "the law of the transferor district is applied as if there had been no more than 'a change of courtrooms.' " *Soo Line Railroad Co. v. Overton,* 992 F.2d 640, 643 (7th Cir.1993) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (defendants may not use § 1404(a) "to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue")). Therefore, the conflicts of law arguments made by plaintiff and defendants are of little merit because the transferee court will apply the same state law and choice-of-law rules that the transferor court would have applied. *See Ferens v. John Deere Co.,* 494 U.S. 516, 524-25, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen,* 376 U.S. at 633-37. In other words, if venue is transferred, the California court will apply Wisconsin's choice-of-law rules (taking into consideration the fact that the settlement agreement has a Califo choice-of-law provision), in determining whether California or Wisconsin substantive law will apply. Therefore, this factor i balance.

b. Receiving a speedy trial

**\*8**

Defendants have failed to suggest how the administration of justice would be improved if this case were transferred to Cal According to the latest Federal Court Management Statistics prepared by the Administrative Office of the U.S. Courts, the docket in the Western District of Wisconsin is less congested than the docket in the Central District of California. For the period September 30, 2000, civil litigants in the Western District of Wisconsin could expect to go to trial in nine months, whereas in Central District of California the median time from filing to trial was 18 months. This factor weighs against transferring the case.

c. Judicial familiarity with governing law

In a diversity action, it is advantageous to try a case with a federal judge who is familiar with the applicable state law. *See Coffey,* 796 F.2d at 221. Defendants argue that a California court is better equipped to decide California law. Without a meaningful analysis of the choice-of-law issue, it is impossible to determine which state's law would apply. However, I need not resolve th issue. Although it is highly likely that a federal court sitting in California is more familiar with California law and, in the sam respect, a federal court sitting in Wisconsin is more familiar with Wisconsin law, federal courts are often called upon to d substantive legal questions involving the laws of various states. *See Brandon Apparel Group, Inc. v. Quitman Manufacturing Co., Inc.,* 42 F.Supp.2d 821, 835 (N.D.Ill.1999). The issues in this case are not beyond the bounds of either court's ability. Accordingly, this factor is in balance.

In sum, defendants have met their burden of establishing that the transferee forum is clearly more convenient. A substantial number of relevant witnesses and documents are located in the Central District of California and the effect of a transfer on the convenience of plaintiff will be negligible. Additionally, the deference generally afforded a plaintiff in a motion to transfer is diminished because Wisconsin lacks any significant relationship to the underlying claims and is not plaintiff's home forum. The only fa weighing against transfer is the speed with which this case can expect to go to trial, but a nine-month difference does not outweig the factors in favor of transfer. Therefore, the convenience of the parties, witnesses and the interest of justice dictate transfer of this matter to the Central District of California.

Because this action will be transferred, I will not address defendants' remaining motions to stay the proceedings pending t

bankruptcy court's approval of defendant Snow Valley's amended plan of rehabilitation and to dismiss for failure to join indispensable parties or, in the alternative, join the parties.

ORDER

IT IS ORDERED that

1. Defendants The Nordic Group of Companies, Ltd. and Snow Valley, LLC's motion to transfer this case is GRANTED. This case is transferred to the United States District Court for the Central District of California.

**\*9** 2. The clerk of court is directed to transmit the file to the United States District Court for the Central District of California.

W.D.Wis.,2001.
Liberty Mut. Fire Ins. Co. v. Nordic Group of Companies, Ltd.
Not Reported in F.Supp.2d, 2001 WL 34382016 (W.D.Wis.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

------------------------------------------------

BKY No. 09-50779

In re:

Chapter 7

Dennis E. Hecker,

       Debtor.

------------------------------------------------

## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2009, I caused the following documents:

### *Notice of Motion and Motion for Change of Venue, Memorandum in Support of Motion for Change of Venue and Order (proposed)*

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | |
|---|---|
| Monica L. Clark | clark.monica@dorseylaw.com |
| Clinton E. Cutler | ccutler@fredlaw.com, mdavis@fredlaw.com |
| Stephen F Grinnell | stephen.grinnell@gpmlaw.com |
| Douglas W. Kassebaum | dkassebaum@fredlaw.com, scharter@fredlaw.com |
| Connie Lahn | connie.lahn@fmjlaw.com, Aong.Moua@fmjlaw.com |
| Thomas Lallier | tlallier@foleymansfield.com |
| Nauni J. Manty | ecf@mantylaw.com |
| Michael L Meyer | mlmeyer@ravichmeyer.com |
| Jamie R. Pierce | jpierce@hinshawlaw.com, |
| Craig E. Reimer | creimer@mayerbrown.com, samahdi@mayerbrown.com; srozen@mayerbrown.com;hroin@mayerbrown.com |
| David E. Runck | david.runck@fmjlaw.com, Aong.Moua@fmjlaw.com |
| Randall L. Seaver | rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com |
| Matthew A Swanson | matthew.swanson@leonard.com, callie.sanford@leonard.com |
| US Trustee | ustpregion12.mn.ecf@usdoj.gov |

I further certify that I caused a copy of the foregoing documents to be mailed by first class mail, postage paid, to the following:

DENNIS E. HECKER
PO BOX 1017
CROSSLAKE, MN  56442

/e/  Stephanie Wood

Dated:  June 22, 2009

_____
Stephanie Wood
100 South Fifth Street, Suite 2500
Minneapolis, MN  55402
(612) 332-1030

403311

2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                          BKY No. 09-50779

Dennis E. Hecker,                                                        Chapter 7

       Debtor.

## ORDER

      This matter is before the court on the Trustee's Motion for Change of Venue filed by Randall

L. Seaver, Trustee.

      Upon the Motion of the Trustee, and the documents of record herein, and the Court being

fully advised in the premises,

      IT IS ORDERED:

      1.     The Trustee's Motion for Change of Venue to this Court's Minneapolis (Fourth

Division) is herby granted.

          BY THE COURT:


Dated: _____        _____
                                Robert J. Kressel
                                U.S. Bankruptcy Judge

403309