UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker

BKY No. 09-50779 RJK

Debtor.

### AFFIDAVIT OF CHRISTI M. ROWAN

STATE OF MINNESOTA   )
                     ) ss.
COUNTY OF HENNEPIN   )

Christi M. Rowan, being duly sworn, hereby states as follows:

1. That I am providing this Affidavit in opposition to the Trustee's attempted motion to reject the outstanding Residential Lease I entered into with the Debtor, as Tenant or Lessee, predating the filing of the petition in bankruptcy. The facts contained herein are based on my personal knowledge.

2. That attached hereto and marked as Exhibit A is a true and accurate reproduction of the Residential Lease I signed dated May 1, 2009 between Dennis E. Hecker, as Landlord, and myself, as Tenant, for the property located at 1615 Northridge Drive, Medina, Minnesota 55391 ("Northridge"). I reside at Northridge with my two minor children pursuant to the Residential Lease and have done so since May 1, 2009.

3. That I have timely made payments in the amount of $5,000.00 as required by the Residential Lease beginning May 1, 2009. I forwarded the payment for August 1, 2009 to the Trustee; however, the Trustee returned the check. I am awaiting direction as to who I should forward the rent payment for September, and fully intend to continue to pay the rent pursuant to the lease.

4. At no time did the Trustee inform me that I was in breach of the Residential Lease.

5. I am not in breach of the Residential Lease and have not been told by anyone that I am in breach.

6. It was always my intention to continue to reside at Northridge through the remainder of the lease term. Therefore, I am not voluntarily relinquishing my right to use, possess, enjoy or otherwise utilize Northridge as the residence for myself and my young family.

7. In accordance with the directive of the Trustee's counsel, I made the Trustee fully aware of my above intentions.

8. It is important to me and my family that we are able to continue to reside at Northridge.

**FURTHER YOUR AFFIANT SAYETH NOT.**

_____
Christi M. Rowan

Subscribed and sworn to before me a
Notary Public this 4 day of September
2009.

_____
Notary Public

Jami Ann Miller
NOTARY PUBLIC
STATE OF MINNESOTA
My Commission Expires 1-31-2014

2

## RESIDENTIAL LEASE

**THIS LEASE AGREEMENT** is entered into effective as of May 1, 2009, by and between Dennis E. Hecker ("Landlord") and Christi M. Rowan ("Tenant").

**TO THE TENANT:** This Lease is a binding legal document. By signing it, you and the Landlord agree to be bound by everything it contains. Before signing this Lease, make sure that you understand what the Lease means. After you sign the Lease, ask for a and keep a copy.

1. **Definitions.** In the Lease, "Landlord" means the owner of the Premises and anyone authorized to act on the owner's behalf. "Tenant" means, collectively the persons who have signed this Lease and will be occupying the Premises as a result of agreeing to this Lease, each of whom agrees that the obligations of Tenant hereunder shall be considered the joint and several responsibility of each person signing this Lease and Tenant, meaning that if anyone of the persons who are defined hereunder as the Tenant fails to preform, Landlord may look to anyone or more of those persons for performance of all the obligations of Tenant under this Lease. The "Premises" means the residence located at 1615 North Ridge Drive, Medina, Minnesota 55391.

2. **Lease of the Premises.** Landlord agrees to lease the Premises to Tenant; and Tenant agrees to lease the Premises from Landlord, durning the Term (as defined below), subject to the provisions and conditions of this Lease.

3. **Term.** Tenant shall lease the Premises for the twenty four (24) month period beginning May 1, 2009, and ending on April 30, 2011 (the "Term"). Tenant acknowledges that Tenant must vacate the Premises at the end of the Term, but agrees to give Landlord written notice not later than sixty (60) days before the end of the Term if Tenant does not wish to remain in the Premises. If Tenant does not give this notice, Landlord may, but shall not be required, to consider this Term to be extended up to an additional sixty (60) days.

4. **Rent.** Rent will consist of the payment by Tenant of Five Thousand and 00/100 Dollars ($5,000.00) each month during the Term of the Lease. Rent credit for the two (2) months of the Term shall be paid by Tenant improvements after execution of this Lease, as described in paragraph 6, below. Rent for subsequent months shall be payable not later than the first day of each subsequent calendar month. Rent for partial months shall be pro-rated on a per diem basis. Tenant will pay a Twenty Five Dollar ($25.00) service charge if Tenant does not pay the full monthly rent by the first day of the month. Tenant also will be assessed a Twenty Five Dollar ($25.00) charge for any check not honored by Tenants bank.

1


EXHIBIT A

5. **Utilities.** Tenant shall pay as additional rent all utility payments incurred for the Premises during the periods that Tenant has the right to occupy the Premises durning the Term of this Lease. The amounts payable by Tenant for utilities shall be paid on or before the date those payments are due and shall be paid by Tenant directly to each utility company billing for particular utility. Water and City sewer charges for the Premises will, however, be paid directly by Landlord, and Tenant shall reimburse Landlord for such payments relating to time periods within the Term of this Lease within ten (10) days after receipt of a bill from Landlord. Tenant shall not waste any utilities.

6. **Rent and Security Deposit.** Tenant shall pay for approved Leasehold improvements up to an amount equal to but no more than the first (1st) and second (2nd) month's Rent payable by Tenant. Landlord shall give Tenant a written statement (a) for additional rent or other money owed to Landlord, (b) for damage to Premises beyond ordinary wear and tear, and/or for failure to return the premises to clean condition. Tenant shall not offset rent due under this Lease. Landlord grants Tenant first (1st) right of refusal of any offer Landlord receives and has fourteen (14) business days to exercise there first (1st) right of refusal offer.

7. **Use of the Premises.** The Premises may be used only for residential purposes, and only Christi M. Rowan and family may live in the Premises. Tenant will not use the Premises for any other purpose which might threaten the safety of the building or unreasonably disturb neighbors. Tenant shall not use the Premises for any unlawful activity. Tenant shall not use the Premises in any way that would cause a cancelation, restriction or increase in Landlord's insurance. Tenant shall not act in aloud, boisterous, unruly or thoughtless manner, or disturb the rights of those who live in neighboring properties to peace and quite if Landlord consents to the keeping of any pets, Landlord may require an additional security deposit. Tenant shall not keep a waterbed or water-filled furniture in the premises. Tenant shall not use or store on or near the premises any flammable or explosive substance. Tenant will keep the Premises clean and will not abuse any of the fixtures, furnishings or appliances in the premises. If Tenant causes damage in any part of the Premises, other than reasonable wear and tear Landlord will charge the Tenant for the damage. It will be Tenants duty to preform any day-to-day, maintenance and repair of the Premises, including cleaning and painting, at Tenants own expense. Landlord will have no duty to maintenance or repair the Premises.

2

8. **Landlord's Right to Enter the Premises.** Landlord may enter the Premises at reasonable times for purposes of inspecting the Premises, making necessary repairs to the Premises, or for showing the Premises to any prospective purchaser or tenant. Before entering the Premises, Landlord must make a reasonable effort to notify Tenant.

9. **Moving Out.** Even if Tenant moves out, Tenant will be responsible for paying the charges specified in paragraphs four and five of this Lease throughout the Term of this Lease. Landlord does not have any duty to renew this Lease.

10. **Alterations and Improvements.** Tenant may not alter the Premises or make any changes to the Premises without the prior written consent of Landlord. If Landlord consents to Tenant making any alterations or changes to the Premises, the alterations or changes will belong to Landlord at the end of the Term of this Lease and may not be removed by Tenant without the prior written consent of Landlord.

11. **Liens and Claims.** Tenant may not permit any liens or claims for which Tenant is responsible to become filed against the Premises. If Landlord suffers any loss because of the filing of any lien or demand on the Premises, Tenant shall pay Landlord the amount of the costs incurred by Landlord, including attorneys' fees attributable to the filing of the lien or demand.

12. **Assignment and Subletting.** This Lease is a personal agreement between Landlord and Tenant. Tenant may not sublet the Premises to others or assign to others any right or rights which Tenant may have under this Lease.

13. **Damage by Fire or Other Casualty.** If the Premises is damaged by fire or other casualty, Landlord may terminate this Lease by giving written notice to Tenant within thirty (30) days after the damage by fire or other casualty. Tenant shall immediately notify Landlord of any damage to the Premises. Tenant's obligation to pay Rent after the Premises are damaged to the extent the Premises become uninhabitable will be governed by applicable law. Landlord shall not be liable for damage to any of Tenant's personal property, even if Landlord is negligent. Tenant agrees to carry renter's insurance as provided in paragraph 17 of this Lease.

14. **Default/Eviction.** Tenant shall be in default if Tenant does not pay any amount payable by Tenant under this Lease by the date that payment is due. Tenant shall also be in default if Tenant violates any of the other provisions of this Lease. Tenant shall be considered in default if Landlord reasonably determines that Tenant is involved in any criminal activity (other than as a victim), regardless of whether Tenant has been arrested or convicted for such activity. Tenant shall also be considered in default if Tenant or Tenant's guests abuse alcohol, drugs or other controlled substances in the Premises, as reasonably determined by Landlord. If Tenant or Tenant's guests unreasonably disturb neighbors, damage the Premises or the property of neighbors, Tenant will be considered in default. If Tenant's living or housekeeping habits pose a risk to health or safety, or damage the Premises, Tenant will be considered to be in default. If Tenant defaults, Landlord may terminate this Lease, bring an eviction action or seek other legal or equitable remedies, including recovery of Landlord's reasonable attorneys' fees and court costs. If Tenant defaults and Landlord does not terminate this Lease or evict Tenant, Landlord

may still terminate this Lease, evict Tenant or pursue other available legal or equitable remedies for any other Tenant default. Tenant acknowledges that Landlord has a "ZERO TOLERANCE POLICY" for violence, drug use and other criminal activity.

15. **Notice.** Any notice which may be given or must be given under the terms of this Lease is to be given in the following manner: Tenant shall mail the notice by certified mail, return receipt requested, to Landlord at 500 Ford Road, Minneapolis, MN 55426. Notice to Tenant shall be sent by Landlord in the same manner addressed to Tenant at the Premises.

16. **Condition of the Premises.** Tenant has inspected the Premises and has found the Premises to be in a condition that is acceptable to Tenant, and therefore agrees to accept the Premises in "as-is" condition, and with all faults.

17. **Insurance and Liability.** Tenant shall maintain, at Tenant's expense, insurance covering Tenant's personal belongings and agrees that Tenant will look to its own insurance if Tenant's personal belongings or the belongings of others that are in the Premises from time to time during the Term of this Lease should be damaged, no matter how the damage occurs and whether or not the damage is caused by Landlord negligent acts or failures to act. Tenant shall also maintain appropriate liability insurance for Tenant. Tenant agrees to indemnify, hold harmless and defend Landlord against any claims, actions, and costs, including reasonable attorneys' fees, arising out of, or resulting from: (i) all negligent or wrongful acts by Tenant, Tenant's guests, invitees or contractors; (ii) the use of the Property by Tenant, or by Tenant's guests and invitees; and (iii) any breach of this Lease by Tenant. Landlord shall not be liable for, and Tenant waives, all claims for damage or injuries sustained by Tenant, its guests and invitees, or resulting from any act or occurrence in or about the Premises.

18. **Signatures.** Each person named as Tenant has read this Lease and all of us agree to abide by its Terms. We have received a copy of this Lease.

LANDLORD: 5/1/09 DATE

By: _____
Its: _____

TENANT: 5/1/09 DATE

By: _____
Its: _____