# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | BKY 09-50779 | Ch. 7 |
| Dennis E. Hecker, | NOTICE OF HEARING | |
| | AND MOTION FOR RELIEF | |
| Debtor. | FROM THE AUTOMATIC STAY | |

TO:   Parties in interest pursuant to LOCAL RULE 9013-3.

1. U.S. Bank National Association, by and through its undersigned counsel, moves the court for the relief requested below and gives notice of hearing.

2. A hearing on this motion will be held before the Honorable **Robert J. Kressel**, Courtroom 2, U.S. Courthouse, 515 West First Street, Duluth, Minnesota, at 9:30 a.m. on **September 28, 2009**, or as soon thereafter as counsel may be heard.

3. Any response to this motion must be filed and delivered not later than September 23, 2009, which is three days before the time set for hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail not later than September 17, 2009, which is seven days before the hearing date (excluding Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, FED. R. BANKR. P. 5005, and LOCAL RULE 1070-1. The proceeding is a core proceeding. The petition commencing this chapter 7 case was filed on June 4, 2009. The case is now pending in this court.

5. This motion arises under 11 U.S.C. § 362 and FED. R. BANKR. P. 4001. This motion is filed under FED. R. BANKR. P. 9014 and LOCAL RULES 9006-1 and 9013-1 to 9013-3. Movant requests relief from the automatic stay.

6. The Debtor executed and delivered to U.S. Bank National Association ND, successor by merger to Firstar Bank U.S.A., N.A.[1], a promissory note and mortgage, each dated August 5, 1999, true and correct copies of which are attached as Exhibits A & B, respectively[2]. Said mortgage was later assigned to U.S. Bank National Association (the "Bank") as evidenced by an Assignment of Mortgage dated November 19, 2004, recorded on September 14, 2005, a true and correct copy of which is attached hereto as Exhibit C. Under the loan documents, the Bank holds a mortgage lien on the Debtor's real property at 1615 Northridge Drive, Medina, Minnesota, 55391 which is legally described as follows:

> **Lot 15, Block 3, North Ridge Farm, according to the recorded plat thereof, Hennepin County, Minnesota**.

7. At all times material, the Debtor has been in default of the payments and performance obligation due to the Bank. As of the date of this motion, the Debtor is in default by failing to the loan upon it maturity date of August 5, 2009. The unpaid balance of the loan is approximately $205,915.00.

8. The 2009 tax-assessed value of the property is $1,891,000, but that figure does not accurately reflect the value of the property. According to the Debtor's schedules, the value of the property is $1,100,000, which is less than $800 more than the aggregate balance of the obligations liened against it, as disclosed in the schedules[3]. In fact, whereas the Bank's claim is at least $900 more than the amount disclosed in the schedules, there is no equity in the property. This being a liquidation case, no

---

[1] Firstar Bank U.S.A., N.A. (FDIC Cert. No. 34039) merged into U.S. Bank National Association ND (FDIC Cert. No. 34590) on October 1, 2001.

[2] Exhibit A includes duplicate images of the first page of the credit agreement because the image showing the Debtor's signature cuts off the top fraction of an inch of the page.

[3] Liens against the property include: US Bank (scheduled at $250,000), GMAC Mortgage (scheduled at $832,059), Condor Fireplace and Stone Co. (scheduled at $6,724), and the Hennepin County Treasurer (scheduled at $10,426).

reorganization is in prospect. Further, the Debtor's stated intent is to surrender the subject property to the Bank.

WHEREFORE, the Bank moves the Court for an order terminating the automatic stay with respect to the Bank's interest in the above-described real property, and for such other relief as may be just and equitable.

Dated: September 14, 2009                    STEIN & MOORE, P.A.

   /e/   Eric J. Sherburne
Eric J. Sherburne, #279389
Attorneys for Movant
332 Minnesota St., Ste. W-1650
St. Paul, MN 55101
651-224-9683
651-223-5212 fax

## VERIFICATION

I, Loren P. Madson, a Real Estate Officer with U.S. Bank National Association, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September _14_, 2009                    _____
                                                Loren P. Madson

1810-2482

# FIRSTAR
## Real Estate Credit Agreement and Disclosures

| MAXIMUM CREDIT | CURRENT INDEX RATE | $ LOAN BALANCE | MARGIN | CURRENT INTEREST RATE (INITIAL DAILY PERIODIC RATE) | CORRESPONDING ANNUAL PERCENTAGE RATE | MAXIMUM INTEREST RATE |
|---|---|---|---|---|---|---|
| $ 250,000.00 | 8.000% | n/a | 0.500 % | 0.0233 % | 8.500 % | 21.000 % |
| | | n/a | n/a % | n/a % | n/a % | |

| ANNUAL FEE | OVERLIMIT FEE | FLOOD REVIEW FEE | NSF FEE | FILING FEES & TAXES | TITLE SEARCH/EXAMINATION | APPRAISAL FEE |
|---|---|---|---|---|---|---|
| $ n/a | $ 20.00 | $ n/a | $ 22.00 | $ n/a | $ n/a | $ n/a |

| MORTGAGE BROKER FEE (FINANCE CHARGE) | CHECKING ACCOUNT NUMBER | COLLATERAL |
|---|---|---|
| $ n/a | [redacted] | 08/05/99. Mortgage on property at 1615 NORTHRIDGE DR, MEDINA, MN 55391 dated |

| FINAL TERMINATION DATE | ORIGINATION FEE (FINANCE CHARGE) | FLOOD SERVICE (FINANCE CHARGE) | ANNUAL FEE BILLING DATE | LOAN PROCESSING FEE (FINANCE CHARGE) |
|---|---|---|---|---|
| AUGUST 5, 2004 | $ n/a | $ n/a | n/a | $ n/a |

☐ If checked, this Agreement is a renewal, extension or modification of that Agreement dated _____

In this Agreement, the words you, your, and Borrower mean each person who signs this Agreement as Borrower. We, us, our, and Bank mean the bank named below. Account means your Home Equity Line of Credit Account with us. Checks means those checks which we have provided to you to draw upon the Account. Loan Balance means the outstanding balance of all loans that have been posted to the Account. Account Balance means the entire outstanding balance of the Account (Loan Balance plus billed but unpaid finance charges plus all other billed but unpaid charges).

**1. COMMITMENT.** We have established a credit line for you in the amount of the Maximum Credit disclosed above. We agree to make loans to you during the term of this Agreement so long as your Loan Balance, as increased by any loan, does not exceed the Maximum Credit. You agree not to write Checks or request loans in amounts which will cause your Loan Balance to exceed the Maximum Credit. If you make a loan request after this Agreement is terminated or which would exceed the Maximum Credit, we may refuse the request or make the loan and post it to the Account, at our option. This Agreement will be effective upon your payment of any fees (if due) disclosed above and upon the expiration of any rights you may have to rescind the security interest which you give us in the Collateral described above. This Agreement will terminate on the earlier of: the Final Termination Date disclosed above; when you direct us, in writing, to terminate the Account; or when we exercise our right to terminate the Account under Section 10 of this Agreement.

**2. LOANS.** We will make loans to you on the Account when the Checks are used to purchase goods or services and/or receive cash, or when you, by oral, written (which includes a request transmitted by facsimile machine or by personal computer), or telephone request (telephone request includes a request received and processed by our automated "voice response unit"), direct us to advance funds from the Account to your deposit account with any Firstar Bank. You agree that any party who is authorized to withdraw money, initiate transfers (including telephone transfers), or draw checks on your Firstar Bank deposit account has actual authority to direct us to advance funds from the Account to that deposit account.

**3. FINANCE CHARGES; INTEREST RATE.** The Account will be subject to interest (Finance Charges) during each billing cycle that the Account has an outstanding Loan Balance. We will compute the Finance Charges for each billing cycle by multiplying the applicable Daily Periodic Rate times the actual Daily Loan Balance for each day in the billing cycle. To get the Daily Loan Balance, we take the beginning Loan Balance of your Account each day and add any new loans and subtract any payments or credits posted to the Loan Balance that day. All loans are subject to interest from the date that they are posted to the Loan Balance until the date they are repaid; there is no "grace period". The applicable Daily Periodic Rate(s) (and corresponding Annual Percentage Rate(s)) as of the date of this Agreement are shown above. Each Daily Periodic Rate shown is equal to 1/365 of the corresponding Annual Percentage Rate. The corresponding Annual Percentage Rate does not include costs other than interest. Your Daily Periodic Rate(s) and corresponding Annual Percentage Rate(s) will be determined as follows (only those boxes that are checked will apply): ☐ Your fixed Daily Periodic Rate and corresponding Annual Percentage Rate will not change throughout the term of this Agreement. ☒ Your variable Daily Periodic Rate(s) and corresponding Annual Percentage Rate(s) will be adjusted (and may increase or decrease) each day based on the value of the index, which is the highest U.S. Prime Rate published in the Money Rates section of the Midwest Edition of The Wall Street Journal. We will add to the Index the Margin(s) shown above, or, if The Wall Street Journal is not published that day, in the most recent edition. To get the corresponding Annual Percentage Rate, the applicable Margin for the Account will depend upon the Loan Balance, as of the close of business each day, as shown above. Only one Margin and Daily Periodic Rate will be applied to the Loan Balance each day and will apply to the entire Loan Balance. The corresponding Annual Percentage Rate will not exceed the Maximum Interest Rate shown above or the applicable state usury ceiling (if any) whichever is less. An increase in the Daily Periodic Rate will result in an increase to the Finance Charge, the Account Balance, and your minimum periodic payments or final "balloon" payment.

**4. FEES.** In addition to finance charges, you agree to pay to us the following fees:
a. You agree to pay, in advance, the non-refundable Annual Fee disclosed above. The Annual Fee will be billed to the Account annually on or about the Annual Fee Billing Date disclosed above.
b. If you fail to pay any Minimum Payment in full on or before its due date, you agree to pay a Late Charge of $ 20.00 or 5.00 % of the unpaid Minimum Payment, whichever is greater.
c. You agree to pay the Overlimit Fee disclosed above each time you receive an advance on the Account that causes your Loan Balance to exceed your Credit Limit, and for each additional advance you receive while your Loan Balance exceeds your Credit Limit.
d. You agree to pay the NSF Fee shown above whenever you make a payment on the Account which is rejected or returned unpaid.
e. You agree to pay a Stop Payment Fee of $ 20.00 whenever you stop payment on a Check.
f. You agree to pay a Finance Charge of $ n/a for each package of Checks you request from us.
g. You agree to pay all other fees disclosed above. These one-time fees are assessed in connection with opening the Account. These fees ("Closing Costs") will be billed to the Account unless you have paid them separately in cash.

**5. PAYMENTS.** You promise to repay the entire Account Balance on or before the Final Termination Date disclosed above and to make periodic payments to us as described in this Section. Only those boxes that are checked will apply.
a. ☐ You will make monthly payments equal to _____ % of the Loan Balance, plus due and unpaid fees ☐ plus accrued interest.
b. ☐ You will make monthly payments equal to $_____, plus due and unpaid fees ☐ plus accrued interest.
c. ☒ You will make ☒ monthly ☐ quarterly payments of accrued interest, plus due and unpaid fees.

If the Minimum Payment indicated above for any payment period is less than $25.00, your Minimum Payment will be equal to $25.00 or the Account Balance, whichever is less.
If you choose to purchase credit life and credit life and disability insurance, your insurance premium will be added to the Minimum Payment due.
If box a. or b. is checked above you might not, and if box c. is checked you will not, fully repay the Account Balance by the Final Termination Date. You will then be required to repay the entire remaining Account Balance in a single "balloon" payment on the Final Termination Date.
You may prepay the entire Account Balance at any time without premium or penalty.
Payments will be posted to the Account on the date we receive them at the address shown on the billing statement, if received at that address by 2:00 pm any banking day. Other payments will be posted to the Account within 5 days of our receipt of the payment.

**6. INSURANCE DISCLOSURES.**

**Property Insurance.** You understand that you may purchase any required property insurance from any person or company you choose that is reasonably acceptable to us.

**Credit Insurance.** Credit Life or Credit Life and Disability Insurance is not required to obtain credit and will not be provided unless the person(s) desiring the insurance sign below. Single Credit Life Insurance is available for a monthly premium of $ .062 per $100 of insured debt. Joint Credit Life Insurance is available for a monthly premium of $ .103 per $100 of insured debt. Single Credit Life & Disability Insurance is available for a monthly premium of $.182 per $100 of insured debt. Joint Credit Life & Disability Insurance is available for a monthly premium of $ .223 per $100 of insured debt. Insurance premiums will be in addition to the Finance Charge imposed and will be added to the Minimum Payment due each statement period.

By checking the appropriate box and signing below, you request credit life or credit life and disability insurance. You understand that you may be required to complete and sign a separate application for this insurance, and that your application will be subject to your eligibility for the insurance. The terms and amount of your insurance coverage will be described in the Certificate of Insurance which will be provided to you if eligible.

DENNIS E HECKER
(Insured Borrower's Name)      X _____ (Insured Borrower's Signature)  Date _____   ☐ Life Only   ☐ Life & Disability

_____ (Insured Borrower's Name)      X _____ (Insured Borrower's Signature)  Date _____   ☐ Life Only

☐ By checking this box and signing below, I choose not to obtain credit life or credit life and disability insurance at this time.
X _____

**7. PERIODIC BILLING; APPLICATION OF PAYMENTS.** We will send you a Billing Statement for each payment period. The Billing Statement will show all loans and charges posted to the Account during the payment period, the Loan Balance as of the Statement Closing Date, the Minimum Payment, and the date the Minimum Payment is due. We will apply payments we receive from you in the manner we choose, subject to applicable law. Even though we have credited a payment to your Loan Balance, we may choose not to increase the credit available to you until five (5) business days after the date the payments were credited. Any partial payments you make will not prepay any future Minimum Payment.

SEE REVERSE FOR ADDITIONAL CREDIT PROVISIONS

Borrower(s) should consult a tax advisor regarding tax deductibility of interest and charges on home equity loans.
You acknowledge receipt of an exact and completed copy of this Agreement and of any separate documents referred to in this Agreement.

Firstar Bank U.S.A., N.A.
1529 White Oak Drive
Waukegan, IL  60085

Signature of Borrower _____   08/05/99   (SEAL)
                                    Effective Date

Type Name  DENNIS E HECKER
Address    1615 NORTHRIDGE DR
           MEDINA, MN  55391

Signature of Borrower _____   Effective Date _____   (SEAL)

Type Name _____
Address _____

Signature of Borrower _____   Effective Date _____   (SEAL)

Type Name _____
Address _____

UN5145A (UNIV) 6/98


EXHIBIT A

| MAXIMUM CREDIT | CURRENT INDEX RATE | | | | ANNUAL PERCENTAGE RATE | MAXIMUM INTEREST RATE |
|---|---|---|---|---|---|---|
| | | n/a | 0.500 % | 0.0233 % | 8.500 % | |
| $ 250,000.00 | 8.000% | n/a | n/a % | n/a % | n/a % | 21.000 % |
| ANNUAL FEE | OVERLIMIT FEE | FLOOD REVIEW FEE | NSF FEE | FILING FEES & TAXES | TITLE SEARCH/EXAMINATION | APPRAISAL FEE |
| $ n/a | $ 20.00 | $ n/a | $ 22.00 | $ n/a | $ n/a | $ n/a |
| MORTGAGE BROKER FEE (FINANCE CHARGE) | CHECKING ACCOUNT NUMBER | COLLATERAL |  | | | |
| $ n/a | 004802088 | 08/05/99. Mortgage on property at 1615 NORTHRIDGE DR, MEDINA, MN 55391 dated | | | | |
| FINAL TERMINATION DATE | ORIGINATION FEE (FINANCE CHARGE) | FLOOD SERVICE (FINANCE CHARGE) | | ANNUAL FEE BILLING DATE | LOAN PROCESSING FEE (FINANCE CHARGE) | |
| AUGUST 5, 2004 | $ n/a | $ n/a | | n/a | $ n/a | |

☐ If checked, this Agreement is a renewal, extension or modification of that Agreement dated _____

In this Agreement, the words you, your, and Borrower mean each person who signs this Agreement as Borrower. We, us, our, and Bank mean the bank named below. Account means your Home Equity Line of Credit Account with us. Checks means those checks which we have provided to you to draw upon the Account. Loan Balance means the outstanding balance of all loans that have been posted to the Account. Account Balance means the entire outstanding balance of the Account (Loan Balance plus billed but unpaid finance charges plus all other billed but unpaid charges).

1. **COMMITMENT.** We have established a credit line for you in the amount of the Maximum Credit disclosed above. We agree to make loans to you during the term of this Agreement so long as your Loan Balance, as increased by any loan, does not exceed the Maximum Credit. You agree not to write Checks or request loans in amounts which will cause your Loan Balance to exceed the Maximum Credit. If you make a loan request after this Agreement is terminated or which would exceed the Maximum Credit, we may refuse the request or make the loan and post it to the Account, at our option. This Agreement will be effective upon your payment of any fees (if due) disclosed above and upon the expiration of any rights you may have to rescind the security interest which you give us in the Collateral described above. This Agreement will terminate on the earlier of: the Final Termination Date disclosed above; when you direct us, in writing, to terminate the Account; or when we exercise our right to terminate the Account under Section 10 of this Agreement.

2. **LOANS.** We will make loans to you on the Account when the Checks are used to purchase goods or services and/or receive cash, or when you, by oral, written (which includes a request transmitted by facsimile machine or by personal computer), or telephone request (telephone request includes a request received and processed by our automated "voice response unit"), direct us to advance funds from the Account to your deposit account with any Firstar Bank. You agree that any party who is authorized to withdraw money, initiate transfers (including telephone transfers), or draw checks on your Firstar Bank deposit account has actual authority to direct us to advance funds from the Account to that deposit account.

3. **FINANCE CHARGES; INTEREST RATE.** The Account will be subject to interest (Finance Charges) during each billing cycle that the Account has an outstanding Loan Balance. We will compute the Finance Charges for each billing cycle by multiplying the applicable Daily Periodic Rate times the actual Daily Loan Balance for each day in the billing cycle. To get the Daily Loan Balance, we take the beginning Loan Balance of your Account each day and add any new loans and subtract any payments or credits posted to the Loan Balance that day. All loans are subject to interest from the date that they are posted to the Loan Balance until the date they are repaid; there is no "grace period". The applicable Daily Periodic Rate(s) (and corresponding Annual Percentage Rate(s)) as of the date of this Agreement are shown above. Each Daily Periodic Rate shown is equal to 1/365 of the corresponding Annual Percentage Rate. The corresponding Annual Percentage Rate does not include costs other than interest. Your Daily Periodic Rate(s) and corresponding Annual Percentage Rate(s) will be determined as follows (only those boxes that are checked will apply): ☐ Your fixed Daily Periodic Rate and corresponding Annual Percentage Rate will not change throughout the term of this Agreement. ☒ Your variable Daily Periodic Rate(s) and corresponding Annual Percentage Rate(s) will be adjusted (and may increase or decrease) each day based on the value of the Index, which is the highest U.S. Prime Rate published in the Money Rates section of the Midwest Edition of The Wall Street Journal that day, or, if The Wall Street Journal is not published that day, in the most recent edition. To get the corresponding Annual Percentage Rate, we will add to the Index the Margin(s) shown above. If more than one Margin is shown above, the applicable Margin for the Account will depend upon the Loan Balance as of the close of business each day, as shown above. Only one Margin and Daily Periodic Rate will be applied to the Loan Balance each day and will apply to the entire Loan Balance. The corresponding Annual Percentage Rate will not exceed the Maximum Interest Rate shown above or the applicable state usury ceiling (if any) whichever is less. An increase in the Daily Periodic Rate will result in an increase to the Finance Charge, the Account Balance, and your minimum periodic payments or final "balloon" payment.

4. **FEES.** In addition to finance charges, you agree to pay to us the following fees:
   a. You agree to pay, in advance, the non-refundable Annual Fee disclosed above. The Annual Fee will be billed to the Account annually on or about the Annual Fee Billing Date disclosed above.
   b. If you fail to pay any Minimum Payment in full on or before its due date, you agree to pay a Late Charge of $ 20.00 or 5.00 % of the unpaid Minimum Payment, whichever is greater.
   c. You agree to pay the Overlimit Fee disclosed above each time you receive an advance on the Account that causes your Loan Balance to exceed your Credit Limit, and for each additional advance you receive while your Loan Balance exceeds your Credit Limit.
   d. You agree to pay the NSF Fee shown above whenever you make a payment on the Account which is rejected or returned unpaid.
   e. You agree to pay a Stop Payment Fee of $ 20.00 whenever you stop payment on a Check.
   f. You agree to pay a Finance Charge of $ n/a for each package of Checks you request from us.
   g. You agree to pay all other fees disclosed above. These one-time fees are assessed in connection with opening the Account. These fees ("Closing Costs") will be billed to the Account unless you have paid them separately in cash.

5. **PAYMENTS.** You promise to repay the entire Account Balance on or before the Final Termination Date disclosed above and to make periodic payments to us as described in this Section. Only those boxes that are checked will apply:
   a. ☐ You will make monthly payments equal to _____ % of the Loan Balance, plus due and unpaid fees ☐ plus accrued interest.
   b. ☐ You will make monthly payments equal to $ _____, plus due and unpaid fees ☐ plus accrued interest.
   c. ☒ You will make ☒ monthly ☐ quarterly payments of accrued interest, plus due and unpaid fees.
If the Minimum Payment indicated above for any payment period is less than $25.00, your Minimum Payment will be equal to $25.00 or the Account Balance, whichever is less.
If you choose to purchase credit life or credit life and disability insurance, your insurance premium will be added to the Minimum Payment due.
If box a. or b. is checked above you might not, and if box c. is checked you will not, fully repay the Account Balance by the Final Termination Date. You will then be required to repay the entire remaining Account Balance in a single "balloon" payment on the Final Termination Date.
You may prepay the entire Account Balance at any time without premium or penalty.
Payments will be posted to the Account on the date we receive them at the address shown on the billing statement, if received at that address by 2:00 pm any banking day. Other payments will be posted to the Account within 5 days of our receipt of the payment.

6. **INSURANCE DISCLOSURES.**

Property Insurance. You understand that you may purchase any required property insurance from any person or company you choose that is reasonably acceptable to us.
Credit Insurance. Credit Life or Credit Life and Disability Insurance is not required to obtain credit and will not be provided unless the person(s) desiring the insurance sign below. Single Credit Life Insurance is available for a monthly premium of $ .062 per $100 of insured debt. Joint Credit Life Insurance is available for a monthly premium of $ .103 per $100 of insured debt. Single Credit Life & Disability Insurance is available for a monthly premium of $.182 per $100 of insured debt. Joint Credit Life & Disability Insurance is available for a monthly premium of $.223 per $100 of insured debt. Insurance premiums will be in addition to the Finance Charge imposed and will be added to the Minimum Payment due each statement period.
By checking the appropriate box and signing below, you request credit life or credit life and disability insurance. You understand that you may be required to complete and sign a separate application for this insurance, and that your application will be subject to your eligibility for the insurance. The terms and amount of your insurance coverage will be described in the Certificate of Insurance which will be provided to you if eligible.

DENNIS E HECKER
(Insured Borrower's Name)    X N/A (Insured Borrower's Signature)    Date    ☐ Life Only    ☐ Life & Disability

_____ (Insured Borrower's Name)    X _____ (Insured Borrower's Signature)    Date    ☐ Life Only

☐ By checking this box and signing below, I choose not to obtain credit life or credit life and disability insurance at this time.
X _____

7. **PERIODIC BILLING; APPLICATION OF PAYMENTS.** We will send you a Billing Statement for each payment period. The Billing Statement will show all loans and charges posted to the Account during the payment period, the Loan Balance as of the Statement Closing Date, the Minimum Payment, and the date the Minimum Payment is due. We will apply payments we receive from you in the manner we choose, subject to applicable law. Even though we have credited a payment to your Loan Balance, we may choose not to increase the credit available to you until five (5) business days after the date the payments were credited. Any partial payments you make will not prepay any future Minimum Payment.

SEE REVERSE FOR ADDITIONAL CREDIT PROVISIONS

Borrower(s) should consult a tax advisor regarding tax deductibility of interest and charges on home equity loans.
You acknowledge receipt of an exact and completed copy of this Agreement and of any separate documents referred to in this Agreement.

Firstar Bank U.S.A., N.A.
1529 White Oak Drive
Waukegan, IL 60085

Signature of Borrower _____    08/05/99 (SEAL)    Effective Date

Type Name   DENNIS E HECKER
Address   1615 NORTHRIDGE DR
   MEDINA, MN 55391

Signature of Borrower _____ Effective Date _____ (SEAL)
Type Name _____
Address _____

UN5145A (UNIV) 6/98

**8. CREDIT INFORMATION.** At our request, you agree to provide us with financial statements signed by you that accurately state your financial status. You agree that we may investigate your credit standing at any time during the term of this Agreement and disclose information concerning your credit standing with us to third parties.

**9. SECURITY INTEREST.** Your Account is secured by a lien on the property identified on the face of this Agreement as the Collateral, as evidenced by a mortgage, deed of trust, or other security agreements (the "Security Agreements"). You agree not to sell or otherwise dispose of the Collateral and to keep the Collateral free of liens other than those specifically permitted under the Security Agreements. You agree to perform all obligations imposed on you by the Security Agreements. You also grant us a security interest and lien in any deposit accounts you keep with us, except we disclaim any security interest or lien in IRA or Keogh accounts, or in other time deposits if prohibited by law. You further agree that any property you purchase with a loan on the Account and any and all present or future security interests, pledges, or liens which we hold against your property will be additional collateral for your obligations under this Agreement, provided that we specifically disclaim as additional collateral for this Agreement any of the following:

(a) Property that is "margin stock" as defined under Regulation U of the Federal Reserve Board;
(b) Property that is a "household good" as defined under Regulation AA of the Federal Reserve Board, unless you purchase the property with a loan drawn on the Account;
(c) Property that is "securities issued by an affiliate" of Bank within the meaning of Section 23A of the Federal Reserve Act or applicable state law.

If property insurance is required under the terms of any Security Agreements, you may obtain this insurance from anyone who is acceptable to us. If the Collateral becomes unavailable, in whole or in part, to secure this Agreement for any reason, you agree to provide us with substitute collateral of equal or greater value.

**10. DEFAULT, TERMINATION, AND ACCELERATION.** Unless defined otherwise under applicable state law, "default" with respect to this Agreement means, without justification under any applicable law:

(a) If there is fraud or material misrepresentation by you in connection with the Account;
(b) If you fail to pay, in full, any payment within ten (10) days following its scheduled or deferred due date; or
(c) If any action or inaction by you adversely affects the Collateral or any other security for this Agreement or our rights in the Collateral or other security.

Following your default and the expiration of the minimum applicable legal period to cure default, we may terminate this Agreement and demand that you immediately repay the entire Account Balance. We will also have all rights the law allows, including the right to obtain a judgment against you for the full amount you owe us; the right to exercise any and all rights and remedies under the Security Agreements, including foreclosure; TO THE EXTENT PERMITTED BY LAW, THE RIGHT TO SET-OFF AGAINST THE AMOUNT YOU OWE US ANY BANK ACCOUNT CREDIT BALANCE OR OTHER MONEY THAT WE MAY OWE YOU; and, to the extent permitted by law, the right to hold you liable for any deficiency remaining after we set-off or foreclose. You agree to pay the reasonable costs we incur to collect any amount you owe us, including reasonable attorneys' fees, unless we may not collect these costs from you under applicable law.

We may also terminate this Agreement and require that you immediately repay the Account Balance if you become one of our "executive officers" and federal law requires us to terminate your Account and accelerate the Account Balance.

**11. SUSPENSION/REDUCTION OF CREDIT AND OTHER CHANGES IN ACCOUNT TERMS.** During the term of this Agreement, we may refuse to make further loans on the Account, or may reduce the Maximum Credit available to you, only after providing notice to you as required by law, and only if:

(a) We receive an appraisal report that reflects the appraised value of the Collateral has declined below an amount equal to the Maximum Credit plus any liens outstanding on the Collateral that are senior to our security interest;
(b) We discover a material adverse change in your financial condition which causes us, through application of our normal credit underwriting standards, to believe that you will not be able to fulfill the payment obligations under this Agreement;
(c) You are in default of any "material obligations" under this Agreement ("material obligations" under this Agreement include, for example, those obligations listed in Sections 5, 7, 8, and 9 above, and in Sections 12 and 14 below);
(d) Any governmental body prevents us from charging interest at the rate provided under this Agreement;
(e) Any governmental body takes action that adversely affects the priority of our security interest in the Collateral to the extent that the value of our security interest is less than 120% of the Maximum Credit;
(f) A governmental body with regulatory authority over us notifies us that further loan extensions to you could constitute an unsafe and unsound banking practice.

In any case where we have changed your Account terms as provided above, we will be obligated to reinstate your Account upon cure of the condition that justified our action unless we determine that events have occurred which could cause our lien in the Collateral to be impaired if we reinstate the original terms of your Account.

We may change the Index and/or Margin for your Account if the original index becomes unavailable for any reason. Any new Index and Margin that we select will produce an interest rate for your Account that is substantially similar to the interest rate based on the original Index. We will send you written notice at least fifteen (15) days before we change the Index and/or Margin for your Account.

We may make "insignificant" changes to your Account or changes that "unequivocally benefit" you (as those terms are defined by the Federal Reserve Board) at any time without notice, unless required by law. No other changes to the terms of your Account will be effective unless you and we have agreed to the changes in writing.

**12. NOTICES.** All communications or notices required under this Agreement must be sent by First Class Mail. We will send all communications and notices to you, at your address as shown in our records. You will send all communications and notices to us at our main office. You agree to notify us in writing of any change to your address at least twenty (20) days before the change to your address becomes effective. If this Agreement is secured by a first lien on your principal residence in Wisconsin, we will send you notice of any increase to the interest rate.

**13. JOINT ACCOUNTS.** Regardless of any indication to the contrary on any Check and regardless of how the Account is titled, each person signing this Agreement is authorized to request and receive loans on the Account, to terminate or suspend this Agreement and the Account, or to reduce the Maximum Credit; and will be bound by all terms and conditions of this Agreement. Subject to applicable law, all loans will be the joint and individual obligations of all Borrowers and the liability of each will be absolute and unconditional, regardless of the liability of any other party.

**14. STOP PAYMENT.** You may stop payment on a Check by delivering an oral or written stop payment order to us. We will refuse to pay any Check properly identified in a stop payment order which is presented to us for payment after a reasonable time, which shall be at least 12 hours, following our receipt of the order. All oral stop payment orders expire after 14 days unless the order is confirmed in writing. Written stop payment orders are effective for six months unless renewed in writing. Under the law, there are certain situations where a check can be enforced against the drawer even though a stop payment order has been issued. If we pay a Check despite receiving your timely stop payment order, the payment will stand unless you can prove that the obligation paid by the Check was unenforceable. All stop orders must include the Account number and Check number, exact amount, and complete payee name.

**15. ASSIGNMENT.** We commit to make loans under this Agreement only to you. You may not assign any of your rights or obligations under this Agreement. We may enforce this Agreement against you, your heirs, personal representatives, executors, administrators, and assigns. You agree that we have the right to assign our rights and responsibilities under this Agreement to any other party.

**16. WAIVER.** You waive presentment, demand and notice of dishonor in connection with any obligations you owe us under this Agreement. You agree that we cannot waive any of our rights under this Agreement unless we have waived them in writing. You further agree that, if we do waive any of our rights, the waiver will apply only to the extent set forth in writing and will not be considered to be a waiver of any other rights which we have under this Agreement.

**17. RIGHTS AND REMEDIES.** We may exercise any rights and remedies which we have under this Agreement together or separately. We do not waive any other rights or remedies that we have under the law even though we have not specifically identified them in this Agreement. You agree that any representations or warranties that you have made to us in connection with this Agreement will survive the execution of this Agreement.

**18. INTERPRETATION.** This Agreement is made in the state of __Illinois__ and will be governed by and interpreted according to the laws of the state of __Illinois__, excepting conflicts of law rules, and Federal law. You agree that any court decision that a provision of this Agreement is invalid will not affect the validity of any other provision, but if any court decides that any provision of this Agreement is invalid, illegal or unenforceable, that provision will be considered to be stricken from this Agreement.

**19. COMMUNICATIONS.** We may report information about this loan to a credit bureau or any other person we believe to have a legitimate business need for the information and we may also report to our affiliates information from your credit application, your credit bureau report, or any other information we have about you unless you request otherwise by writing us at Attn: Market Research, Firstar Bank, P. O. Box 532, Milwaukee, Wisconsin 53201-0532. You authorize us and give us your consent to communicate with your spouse (if any) about this loan or its collection.

## YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill, and we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

UN5145B (UNIV) 8/98

*3223971*

OFFICE OF THE REGISTRAR
OF TITLES
HENNEPIN COUNTY, MINNESOTA
CERTIFIED FILED ON
NOV 10 1999
REGISTRAR OF TITLES
DEPUTY

COPY

#9366
SR/CD

# CONSUMER MORTGAGE
## (JUNIOR LIEN)


(304)

| BORROWER | MORTGAGOR |
|---|---|
| DENNIS E HECKER | DENNIS E HECKER A SINGLE PERSON |
| ADDRESS | ADDRESS |
| 1615 NORTHRIDGE DR<br>MEDINA MN 55391 | 1615 NORTHRIDGE DR<br>MEDINA MN 55391 |
| TELEPHONE NO.   IDENTIFICATION NO.<br>612 512-8869 | TELEPHONE NO.   IDENTIFICATION NO.<br>612 512-8869 |

This Mortgage ("Security Instrument") is given on AUGUST 5, 1999 by Mortgagor indicated above ("Mortgagor") to Firstar Bank U.S.A., N.A., 1529 White Oak Drive, Waukegan, IL 60085 ("Lender"). Borrower indicated above ("Borrower") owes Lender the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 Dollars ($ 250,000.00 ) evidenced by the following Promissory Note(s) ("Note") of Borrower to Lender:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $250,000.00 | 08/05/99 | 08/05/04 | | 9366 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Security Instrument; and (c) the performance of Borrower's and Mortgagor's covenants and agreements under this Security Instrument and the Note. For this purpose, Mortgagor does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in HENNEPIN County, Minnesota:

LOT 15, BLOCK 3, NORTH RIDGE FARM, ACCORDING TO THE RECORDED PLAT THEREOF, HENNEPIN COUNTY, MINNESOTA.

UNIVERSAL TITLE BOX 537
39·7057C

COPY

Henn Co MRT
NJK# 21862
11/1/99
Paid $600.00
Duplicate

which has the address of: 1615 NORTHRIDGE DR, MEDINA, MN 55391

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

The Mortgagor and Lender further covenant and agree as follows:

1. **MORTGAGOR'S OWNERSHIP.** Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2. **PAYMENT OF PRINCIPAL AND INTEREST; PREPAYMENT AND LATE CHARGES.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note. The failure of Borrower to do so shall be a default under this Mortgage.

3. **FUNDS FOR TAXES AND INSURANCE.** Subject to applicable law or to a written waiver by Lender, Mortgagor shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items". Mortgagor shall not be obligated to make such payments of Funds to Lender to the extent that Mortgagor makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

**EXHIBIT B**

LP-MN595 © John H. Harland Co. (7/15/97) (800) 937-3799                                                                                      Page 1 of 4 _____ Initials

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Mortgagor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Mortgagor interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Mortgagor to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Mortgagor any interest or earnings on the Funds. Mortgagor and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Mortgagor, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Mortgagor the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Mortgagor in writing, and, in such case Mortgagor shall pay to Lender the amount necessary to make up the deficiency. Mortgagor shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Mortgagor any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

4. **APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender shall be applied: first, to any prepayment charges due under the Note; second, to late payment charges; third, to amounts payable under paragraph 3, along with any other expenses; fourth, to interest due; and last, to principal due, or, in any other order as determined by Lender, in Lender's sole discretion.

5. **PRIOR MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** Mortgagor shall perform all of Mortgagor's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Mortgagor's covenants to make payments when due. Mortgagor shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

6. **HAZARD OR PROPERTY INSURANCE.** Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval which shall not be unreasonably withheld. If Mortgagor fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 8.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Mortgagor.

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraphs 2 and 3 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

7. **PRESERVATION, MAINTENANCE AND PROTECTION OF THE PROPERTY; LOAN APPLICATION; LEASEHOLD.** Mortgagor shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Mortgagor shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Mortgagor may cure such a default and reinstate, as provided in paragraph 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Mortgagor's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Mortgagor shall also be in default if Mortgagor, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Mortgagor's occupancy of the Property. If this Security Instrument is on a leasehold, Mortgagor shall comply with all the provisions of the lease. If Mortgagor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

8. **PROTECTION OF LENDER'S RIGHTS IN THE PROPERTY.** If Mortgagor fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 8, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 8 shall become additional debt of Mortgagor secured by this Security Instrument. Unless Lender agrees to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Mortgagor requesting payment.

9. **REHABILITATION LOAN AGREEMENT.** Mortgagor shall fulfill all of Mortgagor's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Mortgagor enters into with Lender. Lender, at Lender's option, may require Mortgagor to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Mortgagor may have against parties who supply labor, materials or services in connection with improvements made to the Property.

10. **INSPECTION.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Mortgagor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

11. **CONDEMNATION.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Mortgagor. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Lender otherwise agrees in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Mortgagor. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Lender otherwise agrees in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due. If the Property is abandoned by Mortgagor, or if, after notice by Lender to Mortgagor that the condemnor offers to make an award or settle a claim for damages, Mortgagor fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender otherwise agrees in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraphs 2 and 3 or change the amount of such payments.

12. **BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A WAIVER.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

13. **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Mortgagor, subject to the provisions of paragraph 18. Mortgagor's covenants and agreements shall be joint and several. Any Mortgagor who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower or Mortgagor may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Mortgagor's consent.

14. **LOAN CHARGES.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected which exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

15. **NOTICES.** Any notice to Mortgagor provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Mortgagor designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Mortgagor. Any notice provided for in this Security Instrument shall be deemed to have been given to Mortgagor or Lender when given as provided in this paragraph.

16. **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

17. **MORTGAGOR'S COPY.** Mortgagor shall be given one conformed copy of the Note and of this Security Instrument.

18. **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN MORTGAGOR.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Mortgagor is sold or transferred and Mortgagor is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower and Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower or Mortgagor must pay all sums secured by this Security Instrument. If Borrower or Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower or Mortgagor.

19. **MORTGAGOR'S RIGHT TO REINSTATE.** If Mortgagor meets certain conditions, Mortgagor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower or Mortgagor: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's and Mortgagor's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower or Mortgagor, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 18.

20. **HAZARDOUS SUBSTANCES.** Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Mortgagor shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Mortgagor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Mortgagor has actual knowledge. If Mortgagor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Mortgagor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **ACCELERATION; REMEDIES.** Lender shall give notice to Borrower and Mortgagor prior to acceleration following breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 18 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower and Mortgagor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower and Mortgagor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower and Mortgagor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **RELEASE.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Mortgagor. Mortgagor shall pay any recordation costs.

23. **WAIVER OF HOMESTEAD.** Mortgagor waives all right of homestead exemption in the Property.

24. **INTEREST ON ADVANCES.** The interest rate on advances made by Lender under paragraph 8 shall not exceed the maximum rate allowed by applicable law.

25. **REVOLVING LINE OF CREDIT.** [X] If checked, this Mortgage secures advances made under a home equity revolving line of credit. The credit limit for the line of credit is $ __250,000.00__, which is the principal sum of the indebtedness secured by this Mortgage. The indebtedness secured by this Mortgage is due and payable on __AUGUST 5, 2004__.
All advances made at any time by the bank in accordance with the terms of the home equity line of credit agreement, and all interest on the advances, shall be secured by this Mortgage. However, at no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance with this Mortgage to protect the security of this Mortgage, exceed the stated credit limit for the line of credit.

26. **ADDITIONAL TERMS.**

Notwithstanding anything to the contrary in Section 3 of this Mortgage, Mortgagor shall have no obligation to pay to Lender on the day payments are due under the Note any additional sums for Escrow Items (as that term is defined in Section 3 of this Mortgage) unless and until Lender delivers written notice to Mortgagor requiring additional monthly payments of Funds for Escrow Items.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in this Security Instrument and in any exhibits, addenda, or rider(s) executed by Mortgagor and recorded with it.
Witnesses:

_____ (Seal)
DENNIS E HECKER                  Mortgagor

Firstar Bank U.S.A., N.A.

_____ (Seal)
                                 Mortgagor

_____ (Seal)
                                 Mortgagor

_____ (Seal)
                                 Mortgagor

State of __MINNESOTA__
County of __HENNEPIN__ } ss.

This instrument was acknowledged before me on this __5__ day of __August 1999__ by
__DENNIS E HECKER A SINGLE PERSON__

WITNESS MY HAND AND OFFICIAL SEAL.
My Commission expires: __JANUARY 31, 2000__

DONNA C. RIZNER
NOTARY PUBLIC—MINNESOTA
HENNEPIN COUNTY
My Commission Expires Jan. 31, 2000

State of _____
County of _____ } ss.

This instrument was acknowledged before me on this _____ day of _____ by _____

WITNESS MY HAND AND OFFICIAL SEAL.
My Commission expires: _____
                                 Notary Public

Tax statements for the real property described in this instrument should be sent to: _____

This instrument was prepared by: __Firstar Bank U.S.A., N.A., 1529 White Oak Drive, Waukegan, IL 60085__
After recording return to: ~~xxxxxx~~ __Firstar Bank U.S.A., N.A., P.O. Box 3427, Oshkosh, WI 54903__

OFFICE OF COUNTY RECORDER, COUNTY OF _____ MINNESOTA.
I hereby certify that the within mortgage was filed in this office for record on the _____ day of _____,
at _____ o'clock _____ M. and was duly recorded in Book _____ of Deeds, page _____ or _____
☐ Copied  ☐ Microfilmed and was duly recorded as instrument No. _____
_____ County Recorder. By _____ Deputy.

_____ No. _____   _____ County Treasurer
Registration Tax hereon of _____                 By _____, Deputy
_____ Dollars   Countersigned:
paid.
                                              _____ County Auditor
                                              By _____, Deputy

LP-MN595 © John H. Harland Co. (7/16/97) (800) 637-3799                              Page 4 of 4 _____ Initials




## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, U.S. BANK NATIONAL ASSOCIATION ND, a national banking association, successor through merger to Firstar Bank U.S.A., N.A., a national banking association ("Assignor"), hereby sells, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, a national banking association ("Assignee"), all of Assignor's right, title and interest in and to that certain Consumer Mortgage (Junior Lien) dated August 5, 1999, and recorded in the Office of the Registrar of Titles of Hennepin County, Minnesota on November 10, 1999, as Document No. 3223971, together with all right and interest in the promissory note and obligations therein specified and the debt thereby secured.

Dated as of November 19, 2004.

U.S. BANK NATIONAL ASSOCIATION ND,
a national banking association, successor through
merger to Firstar Bank U.S.A., N.A., a national
banking association

By _____
Its _Vice President_____

STATE OF MINNESOTA    )
                      : ss.
COUNTY OF HENNEPIN    )

The foregoing instrument was acknowledged before me this 23rd day of August, 2005, by _Laura F. Bednarski_____, the _Vice President_____ of U.S. BANK NATIONAL ASSOCIATION ND, a national banking association, on behalf of said national banking association.

_____
Notary Public

*This instrument was drafted by and
upon recording should be returned to:*
BRIGGS and MORGAN, P.A.
2200 IDS Center
Minneapolis, Minnesota 55402
Attention: Steven J. Ryan, Esq.



TRACY J KNEWTSON
Notary Public
Minnesota
My Commission Expires January 31, 2010



EXHIBIT
C

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY 09-50779    Ch. 7 |
| Dennis E. Hecker, | MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF |
| Debtor. | FROM THE AUTOMATIC STAY |

U.S. Bank National Association (the "Bank") submits the memorandum in support of its Motion for Relief from the Automatic Stay.

## ARGUMENT

Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>    (A) The debtor does not have an equity in such property; and
>
>    (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362. The Bankruptcy Code provides an opportunity for relief from the automatic stay for cause, including lack of adequate protection. 11 U.S.C. § 362(d)(1). The Bankruptcy Code also provides an opportunity for relief from the automatic stay with respect to property in which a debtor has no equity and which is not necessary to the debtor's reorganization. 11 U.S.C. § 362(d)(2).

Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(1). The interests of the Bank are not adequately protected. The standards for adequate protection in the Eighth Circuit are set forth in *In Re Martin*, 761 F.2d 472 (8th Cir. 1985). Continued use of the collateral and the passage of time result in depreciation of value. The Bank is not being compensated for this depreciation. Nor is the Bank being compensated for interest as it continues to accrue on the subject loans. Such circumstances constitute cause justifying relief from the stay. *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988).

Pursuant to 11 U.S.C. § 362(g), the burden is on the debtor to prove the absence of cause or the existence of adequate protection.

As separate grounds for relief, the Debtor lacks equity in the subject property, and this being a liquidation case, no reorganization is in prospect.

WHEREFORE, the Bank requests the relief set forth in the accompanying verified motion.

Dated: September 14, 2009                     STEIN & MOORE, P.A.

                                                     /e/   Eric J. Sherburne
Eric J. Sherburne, #279389
Attorneys for Movant
332 Minnesota St., Ste. W-1650
St. Paul, MN 55101
651-224-9683
651-223-5212 fax

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                      BKY 09-50779            Ch. 7

    Dennis E. Hecker,                  UNSWORN DECLARATION
                                      FOR PROOF OF SERVICE
            Debtor.

---

The undersigned, an employee Stein & Moore, P.A., declares that on September 14, 2009, she served the following:

1. Notice of Hearing and Motion for Relief from the Automatic Stay;
2. Memorandum in Support of Motion for Relief from the Automatic Stay; and
3. Proposed order,

on each of the entities named below, by U.S. mail (unless otherwise indicated) by mailing to each of them a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing the same in the post office at St. Paul, Minnesota, addressed to each of them as follows:

| | |
|---|---|
| Dennis E. Hecker<br>P.O. Box 1017<br>Crosslake, MN 56442 | Clinton E. Cutler<br>ccutler@fredlaw.com |
| Micahel B. Lubic<br>Sonnenschein Nath & Rosenthal LLP<br>601 S Figueroa St Ste 2500<br>Los Angeles, CA 90017-5704 | Kendall L. Bader<br>kbader@fredlaw.com<br><br>Douglas W. Kassebaum<br>dkassebaum@fredlaw.com |
| Stephen F Grinnell<br>stephen.grinnell@gpmlaw.com | Cynthia A. Moyer<br>cmoyer@fredlaw.com |
| Joseph W. Lawver<br>jlawver@messerlikramer.com | Randall L. Seaver, Trustee<br>rlseaver@fullerseaverramette.com |
| Brad A Sinclair<br>bsinclair@serklandlaw.com | Matthew R. Burton<br>mburton@losgs.com |
| Craig E. Reimer<br>creimer@mayerbrown.com | U.S. Trustee<br>ustpregion12.mn.ecf@usdoj.gov |
| Marilyn J Washburn<br>washburn@riezmanberger.com | Brian Leonard<br>bleonard@losgs.com |

| | |
|---|---|
| Jeffrey D. Klobucar<br>jklobucar@foleymansfield.com | Recovery Management Systems Corp<br>claims@recoverycorp.com |
| Thomas Lallier<br>tlallier@foleymansfield.com | Jamie R. Pierce<br>jpierce@hinshawlaw.com |
| Rebecca G. Sluss<br>rsluss@oppenheimer.com | Gordon B. Conn<br>conn@kwgc-law.com |
| Patti H. Bass<br>ecf@bass-associates.com | Andrea M. Hauser<br>ahauser@losgs.com |
| Nauni J. Manty<br>ecf@mantylaw.com | Ralph Mitchell<br>rmitchell@lapplibra.com |
| Connie Lahn<br>connie.lahn@fmjlaw.com | William R. Skolnick<br>wskolnick@skolnick-shiff.com |
| David E. Runck<br>david.runck@fmjlaw.com | Robert G. Parish<br>rparish@faegre.com |
| Michael W. Malter<br>michael@bindermalter.com | Michael L. Meyer<br>mlmeyer@ravichmeyer.com |
| Matthew A. Swanson<br>matthew.swanson@leonard.com | Monica L. Clark<br>clark.monica@dorseylaw.com |
| Andrew Paul Moratzka<br>apm@mcmlaw.com | Bruce H. Carlson<br>bruce.carlson@mlcfargolaw.com |

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 14, 2009                              /e/  Christy L. Johnson
                                                                            Christy L. Johnson

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | BKY 09-50779 | Ch. 7 |
| Dennis E. Hecker, | ORDER | |
| | FOR RELIEF FROM | |
| Debtor. | THE AUTOMATIC STAY | |

This case is before the Court on a motion by U.S. Bank National Association for an order for relief from the automatic stay. Based on the motion and file,

IT IS ORDERED:

1. U.S. Bank National Association is granted relief from the automatic stay of 11 U.S.C. § 362 with respect to real property described as follows:

    **Lot 15, Block 3, North Ridge Farm, according to the recorded plat thereof, Hennepin County, Minnesota.**

2. Notwithstanding FED. R. BANKR. P. 4001(a)(3), this Order is effective immediately.

_____
Honorable Robert J. Kressel
United States Bankruptcy Judge