UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                              Case No. BKY 09-50779

                    Debtor.                                              Chapter 7 Case

## DEBTOR'S NOTICE OF HEARING AND MOTION FOR PROTECTIVE ORDER RELATING TO HIS 2004 EXAMINATION

TO:    The Office of the United States Trustee and Other Parties in Interest as Specified in Local Rule 9013.

1.      Dennis E. Hecker, the above-referenced Debtor ("Debtor"), moves the Court for the relief requested below and gives notice of a hearing.

2.      The Court will hold the hearing on this Motion at **3:00 p.m.** on **Wednesday, October 7, 2009,** in Courtroom 8 West, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, before the Honorable Robert J. Kressel.

3.      Any response to this Motion must be filed and delivered not later than October 2, 2009, which is three days before the time set for the hearing (excluding Saturdays, Sundays, and Holidays), or filed and served by mail not later than September 28, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays and Holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 1070-1 and 1073-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The petition commencing this chapter 7 case was filed on June 4, 2009 (the "Filing Date").  The case is currently pending in this Court.

5.      This motion arises under 11 U.S.C. § 523 and Fed. R. Bankr. P. 7007, 7026, and

9013.  This motion is filed under Local Rules 9013-1 through 3.  Notice of the hearing on this

motion is provided pursuant to Bankruptcy Rule 2002(a) and Local Rules 9013-1 through 3 and

2002-1(b).  Debtor requests the relief described below.

## FACTUAL BACKGROUND

6.      On July 22, 2009, the Trustee filed a motion for permission to take a number of

2004 examinations, including the Debtor's 2004 examination (see Docket Entry No. 78).  Debtor

did not oppose this request.  On August 13, 2009, the Court issued its Order granting the

Trustee's request (Docket Entry No. 110).

7.      Thereafter, during the week of September 14, 2009, Debtor learned at least one

witness was called to testify before a federal grand jury that was investigating him and his

business affairs.  Debtor further learned that the focus of the inquiry related in part to allegations

made by Chrysler Financial Services Americas, LLC ("Chrysler") in the adversary proceeding it

commenced against Debtor.  Debtor has been unable to learn the full scope of the grand jury's

investigation, however.

8.      In the meantime, on September 17, 2009, the Trustee served by mail a Notice of

Examination of Dennis E. Hecker under Bankruptcy Rule 2004.  See Exhibit A hereto.  The

2004 Examination is set for October 14, 2009, at 9:00 a.m.[1]

9.      As a result, Debtor files this Motion for a Protective Order to stay his 2004

Examination (the "Motion").  Debtor makes this Motion because the United States Attorney for

the District of Minnesota has convened a grand jury to determine whether a criminal indictment

---

[1] Even if Debtor's Motion for a Protective Order is denied, it is unlikely the examination will occur on that exact day because of scheduling issues.  In addition, the Debtor has requested that the Trustee produce the documents the Trustee has received from third parties but to date, those documents have not been produced.  The Trustee has stated an intention to move for a protective order on this issue, but so far, no such motion has been filed.

should issue against Debtor.  At this time, Debtor does not know the scope or extent of the grand jury's inquiry, but understands it relates at least in part to his dealings with Chrysler, and perhaps other dealings with other entities and/or persons.  Because of the uncertainty regarding the scope of the grand jury's inquiry, it is not possible at this time to effectively limit the areas of inquiry in the 2004 examination in order to fully protect Debtor's rights under the U.S. Constitution, including his right to invoke his Fifth Amendment testimonial privileges.  Nor should Debtor be forced to choose between invoking his Fifth Amendment testimonial privilege (thereby weakening his position in this proceeding and certain related adversary proceedings) or answering fully the questions posed, thereby increasing his risk in any criminal proceeding.

10.      In order that Debtor's rights in this civil proceeding and any criminal proceeding are fully protected, Debtor's 2004 examination should be stayed until the conclusion of the criminal investigation and any criminal proceeding against Debtor.  In the alternative, and at a minimum, Debtor seeks a protective order that declaring that certain topics, including any questions related to the eight on-going adversary proceedings, are off-limits in the 2004 examination.

WHEREFORE, Debtor respectfully requests that this Court enter an order: (a) staying Debtor's 2004 examination until the conclusion of any criminal proceeding against Debtor, and (b) granting such other and further relief as the Court deems just and equitable.

Pursuant to Local Rule 9013-2(a), Debtor's Motion is accompanied by a Memorandum of Law, Declaration, Proposed Order, and Certificate of Service.

FREDRIKSON & BYRON, P.A.

Dated:  September 23, 2009

*/s/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
Cynthia A. Moyer (#211229)
Kendall L. Bader (#389001)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077

-and-

*/s/ William R. Skolnick*
William R. Skolnick
Skolnick & Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue
Minneapolis, Minnesota 55402
Phone (612) 667-7600
Fax (612) 667-7601

ATTORNEYS FOR DEBTORS

4622749

# EXHIBIT A

EXHIBIT "A"

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                   BKY No.:  09-50779

Dennis E. Hecker,                             Chapter 7

           Debtor.

### NOTICE OF EXAMINATION OF DENNIS E. HECKER
### UNDER BANKRUPTCY RULE 2004

**PLEASE TAKE NOTICE**, that the undersigned, as attorneys for Randall L. Seaver, Trustee, will take the oral deposition of Dennis E. Hecker, before a notary public or some other qualified officer, at the offices of Leonard, O'Brien, Spencer, Gale & Sayre, 100 South Fifth Street, Suite 2500, Minneapolis, Minnesota on October 14, 2009, at 9:00 a.m., and thereafter by adjournment until the same shall be completed.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE, LTD.**

/e/ Matthew R. Burton

Dated:  September 17, 2009       By:_____

         Matthew R. Burton, #210018
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota  55402
Telephone:  (612) 332-1030
Facsimile:  (612) 332-2740

ATTORNEYS FOR RANDALL L. SEAVER, TRUSTEE

409201

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                    Case No. BKY 09-50779
            Debtor.                                          Chapter 7 Case

---

**DECLARATION OF WILLIAM F. MOHRMAN IN SUPPORT OF DEBTOR'S MOTION
FOR PROTECTIVE ORDER RELATING TO HIS 2004 EXAMINATION**

---

I, William F. Mohrman, after being first duly sworn, deposes and states as follows:

1.      I am an attorney at Mohrman & Kaardal, P.A. and make this Declaration in
Support of Debtor's Motion for Protective Order Relating to his 2004 Examination.

2.      On September 16, 2009, attorneys for Chrysler Financial Services Americas LLC
("Chrysler Financial") deposed Ms. Cindy Bowser pursuant to Notice of Taking Deposition.  I
attended the deposition on behalf of Debtor.  Ms. Bowser also testified that she had received a
subpoena from the Grand Jury the U.S. Attorney convened to investigate Mr. Hecker compelling
her testimony before the Grand Jury.  Ms. Bowser testified in her deposition that she appeared
before and provided testimony to the Grand Jury on September 14, 2009.

3.      Attached as Exhibit 1 to this Declaration is a true and correct copy of a Subpoena
the U.S. Attorney for the District of Minnesota served on Debtor.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Dated: September 23, 2009

_____
William F. Mohrman

AO110 (Rev. 12/89) Subpoena to Testify before Grand Jury        NAE : ds    USAO   2009R00247                    ~Snider:IRS

**ORIGINAL**

# UNITED STATES DISTRICT COURT

STATE AND _____    DISTRICT OF _____    MINNESOTA

TO:    Denny Hecker's Automotive Group, Inc.
and any other entity owned or controlled
by Dennis E. Hecker

**SUBPOENA TO TESTIFY
BEFORE GRAND JURY**

SUBPOENA FOR:
☐ PERSON    ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE<br>308 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415 | COURTROOM<br>GRAND JURY ROOM |
| | DATE AND TIME<br>September 14, 2009 @ 9:00 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

See attachment.

Compliance with this subpoena may be achieved by appearing before the Grand Jury on the date and time specified with the records; or by providing the requested documents to Special Agent Shauna Snider, Internal Revenue Service, Criminal Investigations Division, 250 Marquette Avenue, Suite 560, Minneapolis, MN 55401, (651) 767-3246.

☐  *Please see additional information on reverse.*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK<br>Richard D. Sletten<br>(By) Deputy Clerk | DATE<br><br>July 30, 2009 |
| This subpoena is issued on application<br>of the United States of America<br><br>UNITED STATES ATTORNEY | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>Nicole A. Engisch<br>300 SOUTH FOURTH STREET, SUITE 600<br>MINNEAPOLIS, MN 55415        (612) 664-5600 |

* If not applicable, enter "none"

AO110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

ATTACHMENT FOR DENNY HECKER'S AUTOMOTIVE GROUP ET AL.

For the period beginning January 1, 2006, and continuing through the present, all documents and records, in whatever form and at whatever location, as follows:

1.  Documents and records reflecting or related to financing from Chrysler Financial for the financing of vehicles, including fleet lease vehicles. Such documents and records to include:

    a. supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of vehicles used as collateral for loans;

    b. any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from Chrysler Financial;

    c. documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

    d. agreements and other documents regarding vehicles purchased from Chrysler Motors, Hyundai Motor America, Toyota, GM, Suzuki, Nissan, and Mitsubishi, including those purchased under guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases;

    e. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f. any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    g. any "Chrysler" file maintained by Dennis Hecker or his employees;

1

    h. any documents, including a Rolodex, of Chrysler contacts;

    i. documents reflecting or related to any financial transactions with respect to payments by Chrysler Financial in or about November and December 2007.

2. Documents and records reflecting or related to Hyundai Motor America with respect to purchase or leasing of vehicles, including fleet lease vehicles. Such documents and records to include:

    a. documents reflecting and related to any agreements between any of Hecker's entity and Hyundai Motor America, including supply agreements and agreements pursuant to guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases.

    b. documents related to the alleged fraudulently obtained floor plan(s) agreement(s) or financing approved in November 2007;

    c. any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    d. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    e. any "Hyundai" or "Hyundai Motor" file maintained by Dennis Hecker or his employees;

    f. documents reflecting or related to any financial transactions with respect to payments by Hyundai Motor America in or about November and December 2007.

3. Documents and records reflecting or related to Hyundai Motor Finance Company with respect to financing of vehicles. Such documents and records to include

2

   a. supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of vehicles used as collateral for loans;

   b. any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from Hyundai Motor Finance Company;

   c. documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

   d. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

   e. any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

   f. any "Hyundai Motor Finance" file maintained by Dennis Hecker or his employees;

   g. documents reflecting or related to any financial transactions with respect to payments by Hyundai Motor Finance Company in or about February and August 2008.

4. Documents and records reflecting or related to Mitsubishi with respect to purchase or leasing of vehicles, including fleet lease vehicles. Such documents and records to include:

   a. documents reflecting and related to any agreements between any of Hecker's entity and Mitsubishi, including supply agreements and agreements pursuant to guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases.

    b.  documents related to an alleged fraudulently obtained floor plan(s) agreement(s) or financing approved in or about 2002-2003

    c.  documents related to transaction fees or advertising-time credits or discount credits for commercial TV air time;

    d.  any altered or forged documents, including invoices, bills of sale, or other documents, created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    e.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f.  any "Mitsubishi" file maintained by Dennis Hecker or his employees.

5.    Documents and records reflecting or related to GE Capital, Gelco Corporation, GE Fleet and/or VFS Financing, Inc. with respect to purchase or leasing of vehicles, including fleet lease vehicles, as well as with respect to financing for a Bombardier Challenger aircraft and aircraft equipment. Such documents and records to include:

    a.  supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of airplane(s), airplane equipment and/or vehicles used as collateral for loans;

    b.  any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from GE Capital, Gelco Corporation, GE Fleet and/or VFS Financing, Inc;

    c.  documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

4

     d.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

     e.  any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

     f.  any "GE Capital," "Gelco Corporation," "GE Fleet" and/or "VFS Financing, Inc" file maintained by Dennis Hecker or his employees.

6.  Documents and records reflecting or relating to the purchase and/or sale and use of airplanes by Dennis E. Hecker and/or Hecker's entities. Such documents and records to include:

     a.  documents reflecting and related to purchase agreements for planes, loan applications, cancelled checks for loan issuance, appraisals, loan payment history, flight logs, payments made to pilots, mechanics and others for use of the plane, and correspondence between buyer(s) and seller(s).

     b.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

7.  Documents and records reflecting or related to Advantage Rent-A-Car, including Southwest-Tex Leasing Co., ARC Venture Holding, and Advantage Touch. Such documents and records to include:

     a.  financial statements, financial projections, statements of revenues and expense, and assessment of profitability of each rental car business location, including spreadsheet projections provided to Chrysler Financial in November 2007;

     b.  documents reflecting or related to repairs or reimbursement for repairs;

    c.  documents reflecting or related to complaints by State Farm, Advantage Touch and/or any other insurance company with regard to alleged fraudulent claims;

    d.  documents reflecting or related to the National Association of Attorneys General Task Force on Car Rental Industry Advertising and Practices and its "Final Report and Recommendations of the National Association of Attorneys General Task Force on Car Rental Industry Advertising and Practices";

    e.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f.  any "Advantage Rent-A-Car" file maintained by Dennis Hecker or his employees.

8.  Documents and records reflecting or related to the financial condition of Hecker's entities. Such documents and records to include:

    a.  documents and records reflecting and related to periodic financial/net worth statements, statements of income and/or expenses, books, records, receipts, invoices, bank account records, account applications, deposit statements/slips, notes, checks, invoices and/or bills, journals, ledgers, credit card billing statements and receipts, calendars, billings, agreements, contracts, safe deposit box records and keys;

    b.  documents and records reflecting an related to cash receipts and cash disbursements, any other financial records relating to any of Hecker's entities;

    c.  checking account ledgers, including hand-prepared documents;

    d.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

9. Documents and records reflecting or relating to any of Hecker's entities failure to pay state sales tax and/or failure to pay off any customer's liens on trade in vehicles. Such documents records to include:

   a. documents and records reflecting or relating to customer complaints taken by Dennis E. Hecker, Hecker's entities and/or any employees regarding sales taxes not being paid and/or liens not being paid; and

   b. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

10. Documents and records reflecting or relating to any transfer of money and assets by Hecker and/or certain of Hecker's entities to other Hecker's entities and/or any third party, including such transfers that were made with intent to hinder, delay or defraud creditors of the transferring entities. Such documents and records to include:

   a. documents reflecting or related to wire transfers or other payments and transfers of money;

   b. documents reflecting or related to any fixed asset listings of Hecker/Hecker's entities;

   c. documents reflecting or related to any closing files or other documents relating to the sale of any Hecker dealerships, including but not limited to Inver Grove Toyota;

   d. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

11. Documents and records reflecting or relating to personnel files which show job titles, dates of employment, duties and responsibilities, location where employed, personnel issues, and contact information for employees of Dennis E. Hecker and/or Hecker's entities;

7

employment agreements, severance agreements, confidentiality agreements, and non-compete agreements.

12. Documents and records reflecting or relating general ledgers and accounting software for Hecker's entities.

13. Documents and records reflecting or relating to bank records for Hecker's entities from 2006 to the present.

14. Documents and records reflecting or relating to any accounting audit including forensic accounting audit.

15. Cash over $10,000.

The terms "Hecker's entities" includes but is not limited to Rosedale Fleet Leasing II LLC, Rosedale Dodge, Inc., Walden Fleet Services II, Inc., Denny Hecker's Automotive Group, Inc., Walden Investment, LLC, and Southwest-Tex Leasing Co., Inc., d/b/a Advantage Rent-A-Car, Den-Star of Minnesota, LLC, and all other entities owned and controlled by Denny E. Hecker.

The terms "document(s)" and "record(s)" includes all the foregoing items of evidence in whatever form and by whatever means such documents, their drafts, or their modifications have been created or stored, including, but not limited to, any handmade form (such as drawing, writing, painting, with any implement or surface, directly or indirectly); any photographic form (such as prints, slides, videotapes, photocopies);  any mechanical form (such as printing or typing) and any electronic or magnetic form (such as tape recordings, cassettes, compact discs, information on an electronic or magnetic storage device).

8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                                    Case No. BKY 09-50779

    Debtor.                                                          Chapter 7 Case

---

**DEBTOR'S MEMORANDUM IN SUPPORT OF MOTION
FOR A PROTECTIVE ORDER RELATING
TO HIS 2004 EXAMINATION**

---

## INTRODUCTION

Debtor Dennis E. Hecker ("Debtor") files this Memorandum in support of his Motion for

a Protective Order Relating to his 2004 Examination (the "Motion") so that he does not need to

sit for a 2004 examination until after the conclusion of the grand jury investigation and any

subsequent criminal proceeding.

## FACTUAL BACKGROUND

The facts are as set forth in the Motion.  All terms capitalized herein have the meaning

ascribed to them in the Motion.

## LEGAL ANALYSIS

I.      **This Court Has Discretion to Stay the 2004 Examination Because of the Parallel
        Criminal Proceeding.**

Federal courts, including the bankruptcy courts, have routinely recognized their inherent

power to stay a civil action pending completion of a related criminal proceeding.  See, e.g.,

Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir.), cert. denied, 116 S. Ct. 94

(1995); White v. Mapco Gas Prods., Inc., 116 F.R.D. 498, 502 (E.D. Ark. 1987); In re MGL

Corp., 262 B.R. 324, 327 (Bankr. E.D. Pa. 2001) (stating that stay may be granted as "incidental

to the power inherent in every court to control the disposition of the causes on its docket . . .")

(quoting Landis v. North American Co., 29 U.s. 248, 254-55 (1936)).  The United States

- 1 -

Supreme Court has explained that a civil proceeding should be stayed pending the outcome of a

parallel criminal investigation whenever "the interests of justice seem[] to require such action."

United States v. Kordel, 397 U.S., 1, 12 n.27 (1970).

The purpose of such a stay is to relieve the defendant from facing the Hobson's choice of

selecting between "invoking the fifth amendment in a civil case, thus risking loss there, or

answering the questions in the civil context, thus risking subsequent criminal prosecution."

Brock v. Tolkow, 109 F.R.D. 116, 119 (E.D.N.Y. 1985).

The decision of whether to stay a proceeding depends of the specific facts and

circumstances of the case.  See Kordel, 397 U.S. at 12.  In making such a determination, courts

typically consider the following factors: (1) the similarity of the issues in the civil and criminal

cases; (2) the status of the criminal case; (3) the plaintiff's interest in proceeding and the

potential prejudice to the plaintiff by any delay; (4) the private interest of and burden imposed on

the defendant; (5) the interests of the court; and (6) the public interest.  See, e.g., Walsh

Securities, Inc. v. Cristo Property Mgmt, Ltd., 7 F.Supp.2d 523, 526-27 (D. N.J. 1998).

## II.   Application of These Six Factors to the Case at Bar Reveals a Stay of Debtor's 2004 Examination Is Warranted.

### A.   The Issues in the Civil and Potential Criminal Cases Against Debtor Could Overlap.

The similarity of issues in the civil and criminal cases pending against a party is

considered the "most important issue at the threshold" in determining whether or not to grant a

stay of a civil case.  See Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D.

201, 203 (1989).  Thus, when the same set of facts underlies both the pending civil and potential

criminal actions, a court should stay some or all of the civil proceeding.  See, e.g., Brock, 109

F.R.D. at 119 (staying discovery in a civil case for breach of fiduciary duties under ERISA

pending the outcome of a criminal investigation by the Department of Justice regarding the same factual circumstances).  For example, the court in Walsh Securities granted a stay of discovery where the civil defendants faced a criminal investigation for the same set of allegedly fraudulent real estate transactions involved in the civil case.  7 F.Supp.2d at 527; Brumfield v. Shelton, 727 F. Supp. 282, 284 (E.D. La. 1989) (granting a stay where the facts at issue in the civil and criminal proceedings were the same).

In the instant case, the Trustee's 2004 examination of Debtor is by its nature wide-ranging and exploratory.  Some courts have labeled it a "fishing expedition," because the Trustee is entitled to examine the Debtor on all aspects of his financial affairs and the protections of Fed. R. Civ. P. 26 do not apply.  See, e.g., In re Valley Forge Plaza Associates, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (observing that "R2004 permits a party invoking it to undertake a broad inquiry of the examiner, in the nature of a 'fishing expedition'" and "the scope of a R2004 examination is even broader than that of discovery permitted under the F.R.Civ.P. . . .").  By definition, the topics in the 2004 examination could overlap with the focus of the grand jury investigation, the precise parameters of which are not known.  As a result, this factor weighs strongly in favor of granting a stay of Debtor's 2004 examination.

### B.    The Grand Jury is Impaneled and Considering Charges Against Debtor.

A second factor considered when determining whether to grant a partial or full stay of a civil case is the stage to which the parallel criminal proceedings have progressed.  See Walsh Securities, 7 F.Supp.2d at 527.  The issuance of an indictment is not a prerequisite to granting a stay, because the outcome of every case depends on the particular facts and circumstances.  See id.  The presence of an active investigation by a criminal authority does, however, weigh significantly in favor of granting a stay.  See id.  Thus, the court in Walsh Securities granted a

- 3 -

stay of discovery in a civil fraud case where, even though no indictments had been rendered

against the defendants, there was an active criminal investigation ongoing.  Id.; see also

Brumfield, 727 F. Supp. at 284 (granting a stay where no indictments had been rendered); In re

Marceca, 131 B.R. 774, 778 (S.D.N.Y. 1991) (same).

Here, Debtor is the target of an ongoing grand jury investigation.  Several individuals

have already testified before the grand jury.  Because of the active and ongoing criminal

investigation of Debtor, the 2004 examination in this case should be stayed.

### C.    The Trustee Would Suffer Little Prejudice by a Stay of Debtor's 2004 Examination

The degree of prejudice caused to the party seeking discovery (here, the Trustee) by a

stay in the proceedings is another factor considered by the courts in determining whether to grant

the request for a protective order.  See Walsh Securities, 7 F. Supp.2d at 528.  Here, the Debtor is

not seeking a stay of all proceedings in his bankruptcy case, but only a limited stay of his own

2004 examination.  A limited stay is viewed favorably by the courts as a way to keep the case on

track and thereby, protect the interests of the party seeking discovery, while still protecting the

interests of the debtor/defendant.  See, e.g., United States v. Certain Parcel of Land,

Moultonboro, 781 F. Supp. 830, 834 (D.N.H. 1992) (granting a stay of discovery); Brock, 109

F.R.D. at 119-20 (same).

Here, the Trustee would be free to conduct other 2004 examinations (many have been

requested) and conduct document discovery.  As soon as the criminal inquiry and any resulting

criminal case are resolved, he could conduct the Debtor's 2004 examination.  While this case

would be delayed, the delay harms the Debtor more than any other party (because he may not

receive his discharge in a timely fashion).  In the meantime, the Trustee is collecting assets of the

estate for the benefit of the creditors, so their interests will be protected.  As a result, this factor

weighs in favor of a stay.

### D. Debtor Could Be Irreparably Prejudiced if He Is Forced to Proceed With His 2004 Examination

The prejudice suffered by a party (here, the Debtor) in being forced to proceed with a

2004 examination is a significant factor weighing in favor of granting a stay.  See Walsh

Securities, 7 F.Supp.2d at 528.  By proceeding with the examination in this case, while a parallel

criminal action is pending, the debtor will be forced to "blindly choose" whether to assert his

constitutional rights and thereby risk having a negative inference drawn against him and

potentially put his ability to obtain a discharge at risk , or waive his constitutional rights and risk

a criminal indictment or conviction.  See Power Securities, 142 F.R.D. at 323 (staying a civil

defendant's deposition testimony).  Significantly, the civil proceeding, "if not deferred, might

undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of

criminal discovery beyond the limits [otherwise established], expose the basis of the defense to

the prosecution in advance of criminal trial, or otherwise prejudice the case." Brock, 109 F.R.D.

at 119.  Thus, protection of the defendant's rights against self-incrimination is paramount to any

inconvenience or delay to the party seeking discovery.  See id. at 121.

Here, Debtor could be irreparably prejudiced if he were forced to proceed with the 2004

examination.  Because the parameters of the criminal investigation are not wholly known, it may

focus on many facets of the Debtor's financial affairs, which would otherwise be ripe for inquiry

in the 2004 examination.  As a result, information solicited from Debtor during the 2004

examination could be useful in the criminal case.  That means Debtor would be required to assert

his Fifth Amendment privilege in response to many questions posed by the Trustee during his

2004 examination.  The assertion of this right, however, could allow the Trustee to draw adverse

inference[s] against the Debtor and jeopardize the Debtor's ability to obtain a discharge.

Conversely, if Debtor fully and completely answers the questions posed to him in the 2004

examination, he risks indictment and conviction in the criminal action.  Under either scenario,

Debtor faces risks that would not be present if the 2004 examination were stayed.  Because of

these risks and the prejudice that will be suffered by Debtor without a stay, a stay of the 2004

examination should be granted.

### E.  The Interests of the Court and the Public Will Be Advanced by a Stay of Debtor's 2004 Examination

Two other factors considered when determining whether to grant a stay are whether the

interests of the court and the public will be served by such a stay.  See Walsh Securities, 7

F.Supp.2d at 528-29.  Specifically, the court has an interest in the efficient disposition of cases.

See id. at 528.  However, where the court may be required to resolve on-going privilege issues

because of a parallel criminal proceeding, the court should grant a stay in the civil case.  See id.

The matter will be resolved most efficiently if all information is available and Debtor is able to

testify fully.

The public interest likewise will not be impaired by a stay of Debtor's examination.

While the public interest would not be served if a tangible threat of immediate and serious harm

to the public existed, such is not the case here.  Compare Brock, 109 F.R.D. at 120 (granting a

stay where there was no threat to the public) with Kordel, 397 U.S. at 11 (denying a stay because

of the risk that misbranded drugs would be disseminated to the public).  Here, there is no risk of

immediate and serious harm to the public.  There is no evidence that there is any threat to public

safety.  Furthermore, staying Debtor's 2004 examination will not postpone indefinitely any

interest the public may have in resolution of this proceeding.  Thus, because the interests of the

court and the public will be maintained, a stay of Debtor's 2004 examination should be granted.

### III.    If the 2004 Examination Is Not Stayed in its Entirety, Certain Topics Should Be Off-Limits in the Inquiry

Fed. R. Bankr. P. 2004(b) provides that the debtor may be examined with respect to the acts, conduct, or property of the debtor, the liabilities and financial condition of the debtor, any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge.  As a result, the scope of the 2004 examination is very broad and wide latitude as to the questioning is usually permitted.  See Matter of Wilcher, 56 B.R. 428 (Bankr. N.D. Ill. 1985) (labeling the examination a "fishing expedition").  Moreover, the protections under Fed. R. Civ. P. 26 (i.e., discovery must be reasonably calculated to lead to the discovery of admissible evidence) do not apply to the 2004 examination.

In the case at bar, while Debtor requests that the 2004 examination be stayed in its entirety, if the Court concludes otherwise and allows the 2004 examination to proceed, the scope should be constrained and certain topics should be declared off-limits.  At a minimum, the Trustee should be precluded from examining the Debtor on any issues relating to the eight adversary proceedings that have been commenced, and in particular the adversary proceeding commenced by Chrysler.  Bankruptcy courts have typically required the discovery related to adversary proceedings to be conducted only in the adversary proceeding, and not pursuant to a 2004 examination.  See In re 2435 Plainfield Avenue, Inc., 223 B.R. 440, 455 (Bankr. D.N.J. 1998) (quashing subpoena for 2004 examination, explaining "[t]he majority of courts that have address this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending" (citing cases)).  As such, these topics should be off-limits in any 2004 examination of the Debtor.

## <u>CONCLUSION</u>

Based on the foregoing, Debtor respectfully requests that the Court stay the Debtor's 2004 examination in this case until the criminal investigation has been resolved.

WHEREFORE, Debtor respectfully requests that the Court enter an order: (a) granting his Motion for a Protective Order with respect to his 2004 examination; and (b) granting such other and further relief as the Court deems just and equitable.

Dated:  September 23, 2009                FREDRIKSON & BYRON, P.A.

*/s/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
Cynthia A. Moyer (#211229)
Kendall L. Bader (#389001)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077

-and-

*/s/ William R. Skolnick*
William R. Skolnick
Skolnick & Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue
Minneapolis, Minnesota 55402
Phone (612) 667-7600
Fax (612) 667-7601

ATTORNEYS FOR DEBTOR

4622736_1.DOC

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                          Case No. BKY 09-50779
                        Debtor.                                     Chapter 11 Case

---

## CERTIFICATE OF SERVICE

---

Kendall L. Bader, under penalty of perjury, states that on September 23, 2009, he caused to be served the following:

1. Debtor's Notice of Hearing and Motion for Protective Order Relating to his 2004 Examination;

2. Declaration of William F. Mohrman in Support of Debtor's Motion for Protective Order Relating to his 2004 Examination;

3. Debtor's Memorandum of Law in Support of Motion for Protective Order Relating to his 2004 Examination;

4. Order Granting Motion for Protective Order Relating to Debtor's 2004 Examination; and

5. Certificate of Service

by sending true and correct copies to the parties on the attached service list.


Dated:  September 23, 2009                    */s/ Kendall L. Bader*_____
                                              Kendall L. Bader


4623877_1.DOC

Dennis E. Hecker
Service List
Bky No. 09-50779

**SERVICE VIA ECF**

U.S. Trustee's Office
1015 US Courthouse
300 S Fourth St
Minneapolis MN 55415
ustpregion12.mn.ecf@usdoj.gov

Randall L. Seaver
U.S. Trustee
Portland Corporate Center
12400 Portland Avenue South, #132
Burnsville, MN  55337
rlseaver@fullerseaverramette.com

Randall L. Seaver
c/o Matthew R. Burton
Matthew R. Burton Esq.
Andrea M. Hauser
Leonard, O'Brien, Spencer, Gale &
Sayre
100 South Fifth Street, #2500
Minneapolis MN 55402
mburton@losgs.com
ahauser@losgs.com

Randall L. Seaver
c/o Gordon B. Conn Jr.
Kalina, Wills, Gisvold & Clark &
PLLP
6160 Summit Drive, Suite 560
Minneapolis MN 55430
conn@kwgc-law.com

Randall L. Seaver
c/o Tyler D. Candee
Ralph Mitchell
Lapp, Libra, Thomson, Stoebner &
Pusch
2500 One Financial Plaza
120 South Sixth Street
Minneapolis MN 55402
tcandee@lapplibra.com
rmitchell@lapplibra.com

U.S. Bank National Association
c/o Monica Clark
Dorsey & Whitney, LLP
50 South Sixth Street, #1500
Minneapolis, MN  55402-1498
clark.monica@dorseylaw.com

Hyundai Capital America
c/o Connie A. Lahn
David E. Runck
Fafinski Mark & Johnson, PA
400 Flagship Corporate Center
775 Prairie Center Drive
Eden Prairie, MN  55344
connie.lahn@fmjlaw.com
david.runck@fmjlaw.com

Tamitha Hecker
c/o Nauni Jo Manty
Manty & Associates, P.A.
510 First Avenue North, #305
Minneapolis, MN  55403
ecf@mantylaw.com

United States Rent A Car and
Maria Romano
c/o Jamie R. Pierce
Hinshaw & Culbertson, LLP
333 South Seventh Street, #2000
Minneapolis, MN  55402
jpierce@hinshawlaw.com

Chrysler Financial Services
Americas, LLC, f/k/a
DaimlerChrysler Financial Services
Americas, LLC
c/o Stephen F. Grinnell
Gray, Plant, Mooty, Mooty &
Bennett, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
stephen.grinnell@gpmlaw.com

Chrysler Financial Services
Americas LLC, f/k/a
DaimlerChrysler Financial Services
Americas, LLC
c/o Craig E. Reimer
Mayer Brown, LLP
71 South Wacker Drive
Chicago, IL  60606
creimer@mayerbrown.com

Chrysler Financial Services
Americas, LLC, f/k/a
DaimlerChrysler Financial Services
Americas, LLC
c/o Marilyn J. Washburn
Riezman Berger, P.C.
7700 Bonhonne, 7th Floor
St. Louis, MO  63105
MN_bank@riezmanberger.com

Crown Bank
c/o Thomas J. Lallier
Jeffrey D. Klobucar
Foley & Mansfield, P.L.L.P.
250 Marquette Avenue, #1200
Minneapolis MN 55401
tlallier@foleymansfield.com
jklobucar@foleymansfield.com

JPMorgan Chase Bank, N.A.
c/o Matthew A. Swanson
Leonard, Street and Deinard, PA
2300 Fifth Street Towers
150 South Fifth Street
Minneapolis MN 55402
matthew.swanson@leonard.com

Toyota Financial Savings Bank
Toyota Motor Credit Corporation
c/o Michael L. Meyer
Ravich Meyer Kirkman McGrath
Nauman & Tansey, P.A.
4545 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
mlmeyer@ravichmeyer.com

GE Money Bank
c/o Recovery Management Systems
Corp.
Attn:  Ramesh Singh
25 S.E. Second Avenue, #1120
Miami, FL  33131-1605
claims@recoverycorp.com

HSBC Bank Nevada, N.A.
c/o Patti H. Bass
Bass & Associates, P.C.
3936 E. Ft. Lowell Road, #200
Tucson, AZ  85712-1083
ecf@bass-associates.com

Associated Bank
c/o Joseph W. Lawver
Messerli & Kramer P.A.
1400 Fifth Street Towers
100 South Fifth Street
Minneapolis MN 55402-1217
jlawver@messerlikramer.com

VISIONBank
c/o Bruce H. Carlson
McNair, Larson & Carlson, Ltd.
51 Broadway, #600
Fargo, ND  58102
bruce.carlson@mlcfargolaw.com

Blackstone Financial, LLC
c/o Brad A. Sinclair
Serkland Law Firm
10 Roberts Street
P.O. Box 6017
Fargo, ND  58108-6017
bsinclair@serklandlaw.com

Dennis E. Hecker
Service List
Bky No. 09-50779

TCF National Bank
c/o Robert G. Parish
Faegre & Benson, LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
rparish@faegre.com

Alliance Bank
c/o Brian F. Leonard
Leonard, O'Brien, Spencer, Gale &
Sayre
100 South Fifth Street, #2500
Minneapolis MN 55402
bleonard@losgs.com

Alliance Bank
c/o Kathleen K. Statler
Larry D. Espel
Greene Espel PLLP
200 South Sixth Street, #1200
Minneapolis, MN 55402
kstatler@greeneespel.com
lespel@greeneespel.com

LKMCD Properties, LLC
c/o Andrew P. Moratzka
Mackall, Crounse & Moore, PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis MN 55402-2859
apm@mcmlaw.com

Grant Thornton, LLP
c/o Rebecca G. Sluss
Oppenheimer, Wolff & Donnelly
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis MN 55402
rsluss@oppenheimer.com

Dennis E. Hecker
c/o William F. Mohrman
mohrman@mklaw.com

Dennis E. Hecker
c/o William R. Skolnick
Skolnick & Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402
wskolnick@skolnick-shiff.com

Christi M. Rowan
c/o William R. Skolnick
Skolnick & Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402
wskolnick@skolnick-shiff.com

Anchor Bank, fsb
c/o Nicholas J. Vivian
Eckberg, Lammers, Briggs, Wolff
& Vierling, PLLP
1809 Northwestern Avenue
Stillwater, MN 55082
nvivian@eckberglammers.com

**SERVICE VIA EMAIL**

***Debtor***

Dennis Hecker
Denny Hecker Automotive Group,
Inc.
500 Ford Road
Minneapolis MN 55426
heckerauto@aol.com

Toyota Financial Savings Bank
c/o Michael B. Lubic
Sonnenschein Nath & Rosenthal,
LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017-5704
mlubic@sonnenschein.com

John J. Sorci Trust
c/o Michael W. Malter
Julie H. Rome-Banks
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
michael@bindermalter.com
Julie@bindermalter.com

4571482_1/058978.0002

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                                    Case No. BKY 09-50779
                              Debtor.                                        Chapter 7 Case

**ORDER GRANTING MOTION FOR PROTECTIVE ORDER
RELATING TO DEBTOR'S 2004 EXAMINATION**

Debtor's Motion for Protective Order (the "Motion") came on for a hearing before the undersigned United States Bankruptcy Judge.   Appearances are noted on the record.   All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion.

Based upon the arguments of counsel, all the files, records and proceedings herein, the Court being advised in the premises in the Court's findings of fact and conclusions of law, if any, have been stated orally and recorded in open court following the close of argument:

IT IS HEREBY ORDERED,

1.      The Debtor's Motion is granted.

2.      Any 2004 Examination of Debtor is postponed until the conclusion of the grand jury investigation and any criminal proceeding against Debtor.

Dated: _____, 2009            _____
                                     United States Bankruptcy Judge

4623595_1.DOC