UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| In re: | Chapter 7 |
| Dennis E. Hecker, | MEMORANDUM OPINION AND ORDER DISALLOWING HOMESTEAD EXEMPTION |
| Debtor. | |
| | BKY 09-50779 |

_____

At Minneapolis, Minnesota, September 25, 2009.

This case came on for hearing on September 2, 2009 on the objection of Chrysler Financial Services Americas LLC, f/k/a/ DaimlerChrysler Financial Services Americas LLC, to the debtor's homestead exemption claim. Clinton E. Cutler and William F. Mohrman appeared on behalf of the debtor; Stephen F. Grinnell appeared on behalf of Chrysler Financial Services Americas LLC; and Matthew R. Burton appeared on behalf of the trustee, Randall L. Seaver, who also appeared. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157(a) and (b)(1), and 1334(a) and (b); and Local Rule 1070-1. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

## FACTS

1.      Dennis E. Hecker owned and operated dozens of auto dealerships, car rental franchises, and other businesses until this year.

2.      Hecker lived in Medina, Minnesota from at least 2002 until sometime in the middle of 2009. Shortly before June 4, 2009, Hecker moved to 11700 Cross Avenue, Crosslake, Minnesota.

3.      Hecker filed a voluntary chapter 7 petition on June 4, 2009.  The street address he provided was 11700 Cross Avenue, Crosslake, Minnesota.

4.      On July 1, 2009, Hecker filed his schedules.  He listed assets of $18,509,972.15 and liabilities of $766,754,240.50.  Among the many assets listed, he asserted ownership interests in three Crosslake, Minnesota properties.  He claimed one of the three properties as exempt on his Schedule C (Exemptions) under Minn. Stat. §§ 510.01 and 510.02.  The value of the claimed exemption was listed as $0.00 and the current value was listed as $975,000.00.  These numbers were both wrong and later corrected.  See paragraphs 7 and 8 below.  The description noted that the title was held by Jacob Holdings of Cross Lake LLC, but Hecker claimed personal ownership through reverse piercing pursuant to *Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn. 1985).

5.      Jacob Holdings of Cross Lake LLC is wholly owned by Jacob Properties of Minnesota LLC, which is owned 91% by Hecker, 5% by Rosedale Dodge, Inc. (which is owned 100% by Hecker), and 4% by trusts for his children (1% by the J. H. Trust, 1% by the H. H. Trust, 1% by the K. H. Trust, and 1% by the S. H. Trust).  Jacob Holdings of Cross Lake LLC and Jacob Properties of Minnesota LLC own multiple properties.

6.      On July 15, 2009, Hecker testified at his meeting of creditors that throughout his marriage, he created limited liability companies to hold assets as he acquired them in order to prevent his wife from sharing in "any of the upside or any of the downside."  He believed that if he acquired assets during the marriage and held them in his own name, they would not have been protected by his antenuptial agreement with his wife.

7.      On August 21, 2009, Hecker filed an amended Schedule C (Exemptions), increasing the amount of his claimed homestead exemption from $0.00 to $330,000.00, which is the current Minnesota limit on the equity in non-agricultural property that can be exempted as a homestead.

8.      On September 1, 2009, Hecker filed an amended Schedule A (Real Property) and a second amended Schedule C (Exemptions).  Among other changes, the amended schedules corrected what appears to have been a mistake on the original schedules.  Hecker had scheduled

2

interests in several Crosslake properties but confused the addresses. The property that Hecker is seeking to exempt as a homestead, 11700 Cross Avenue, was valued by mistake at $975,000.00 on the original Schedule A but amended to $3,983,000.000 on the amended Schedule A. The amount of the secured claims was amended from $1,050,000.00 to $4,400,000.00.

9.      The parties are in agreement about most of the relevant facts, but they disagree about the value of the property at 11700 Cross Avenue and about how much, if any, equity Jacob Holdings of Cross Lake LLC has in the property. Chrysler believes that the value is far greater than the amount scheduled by Hecker. Estimates of the property value range from approximately $3.9 million to $8.9 million. The parties agreed that a determination of value is not necessary to the disposition of this objection.

10.      TCF National Bank holds three notes secured by the Crosslake properties. The notes, which total approximately $6.5 million, are secured by a single mortgage that covers all three Crosslake tracts. Hecker personally guaranteed all three notes.

11.      Hecker granted Chrysler Financial a security interest in substantially all of his personal property. Chrysler Financial perfected its lien by filing a UCC-1 financing statement in January 28, 2009.

12.      11700 Cross Avenue is not classified as a homestead property for real estate tax purposes. It is classified by the Crow Wing County Assessor as "Seasonal Recreational Residential" property. Although Chrysler made a point of these facts in its motion, it does not dispute that the Crosslake home is Hecker's residence and that if Hecker were permitted to claim a homestead exemption at all, it would be in the Crosslake property, not the Medina property or any other property in which Hecker asserts an ownership interest.

## DISCUSSION

The only question before the court is whether Hecker is permitted under Minnesota law to claim an exemption in a Crosslake, Minnesota property, which he occupies but does not own.

3

More particularly, the issue is whether Hecker may claim a homestead exemption under Minn. Stat. § 510.01 in the 11700 Cross Avenue property, which is owned by a limited liability company that is wholly owned by a second limited liability company of which he holds a majority interest, utilizing the doctrine of " reverse piercing of the corporate veil."

Hecker chose to exempt property under the laws of the state of Minnesota pursuant to 11 U.S.C. § 522(b)(2)(A). *See In re Jenkins*, 300 B.R. 348, 349 (Bankr. D. Minn. 2003). Federal Rule of Bankruptcy Procedure 4003(c) provides that "the objecting party has the burden of proving that the exemptions are not properly claimed." I think Chrysler has met that burden by demonstrating that Hecker does not own the Crosslake property. Under Minnesota law, "The burden is on the debtor claiming a homestead exemption to establish compliance with the statute." *Jensen v. Christensen*, 11 N.W.2d 798 (Minn. 1943). Ultimately, this decision does not turn on who has the burden. In Minnesota, a debtor's ability to exempt a certain amount of property is a constitutional right. Minnesota's Bill of Rights provides: "A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." Minn. Const. art. I, § 12. Minnesota statutes provide for a homestead exemption as follows:

> The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.

Minn. Stat. § 510.01 (2002). The homestead exemption therefore is limited to a house that is occupied *and* owned by the debtor.

The parties agree that Hecker occupies the house but does not personally own it. The property is owned by Jacob Holdings of Cross Lake LLC. So the answer sounds easy. The statute as written requires a debtor to own property in order to claim it exempt. Hecker does not own the property, so it would seem he could not exempt it. However, because I am applying

4

Minnesota law, I am bound to apply it as interpreted by the Minnesota Supreme Court. Hecker asks the court to disregard the corporate formalities and exercise the court's equitable power to "reverse pierce" the corporate veil in order to deem him the owner of the property so that he may exempt it as a homestead pursuant to Minn. Stat. § 510.01. "Whether to pierce a corporate veil is a legal determination that, in our circuit, is governed by state law." *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997).

Jacob Holdings of Cross Lake LLC and Jacob Properties of Minnesota LLC are Minnesota limited liability companies. "[A] member of a limited liability company is protected from personal liability for the company's acts, debts, liability, and obligations, unless the corporate veil is pierced." *Krueger v. Zeman Constr. Co.*, 758 N.W.2d 881, 890 (Minn. App. 2008) (citing Minn. Stat. § 322B.303, subds. 1, 2 (2006)). Minnesota extends the doctrine of veil piercing to limited liability companies: "The case law that states the conditions and circumstances under which the corporate veil of a corporation may be pierced under Minnesota law also applies to limited liability companies." Minn. Stat. § 322B.303, subds. 1 & 2 (2009).

Piercing the corporate veil is the doctrine under which courts "[disregard] the legal concept that a corporation is a distinct entity" in order to hold "that where an individual owns all, or practically all, the stock of a corporation, the corporation and such individual will be regarded as one and the same if the equities of a case so require." *Erickson-Hellekson-Vye Co. v. A. Wells Co.*, 15 N.W.2d 162, 173 (Minn. 1944); *see also Roepke v. W. Nat'l Mut. Ins. Co.,* 302 N.W.2d 350, 352 (Minn. 1981). "Disregard of the corporate entity theories is equitable in nature, and generally is not available, absent fraud." *G.G.C. Co. v. First Nat'l Bank of St. Paul,* 287 N.W.2d 378, 384 (Minn. 1979). In traditional veil piercing cases, the Minnesota courts apply a two-prong test:

> The first prong focuses on the shareholder's relationship to the corporation. Factors that are significant to the assessment of this relationship include whether there is insufficient capitalization for purposes of corporate undertaking, a failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of the corporation as merely a facade for individual

dealings. The second prong requires showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness.

*Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) (citing *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.,* 283 N.W.2d 509, 512 (Minn. 1979)).

Piercing of the corporate veil is a doctrine that has evolved to treat creditors equitably. When the doctrine applies, a creditor who is nominally a creditor of a corporation or limited liability company can collect its debt from an individual personally.   Similarly, "reverse piercing" generally refers to piercing the corporate veil in order to hold a corporate entity liable to an outsider for the debts of a corporate insider.  *See, e.g., Official Comm. of Unsecured Creditors v. Banta Corp. (In re Xyan.Com, Inc.)*, 299 B.R. 357 (Bankr. E.D. Pa. 2003); *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 580 S.E.2d 806 (Va. 2003).  Minnesota courts have allowed a *debtor*, whose residence is owned by a corporate entity of which the debtor is the principal, under "carefully limited circumstances," to pierce the corporate veil in order to claim a homestead exemption.  *Cargill, Inc. v. Hedge*, 375 N.W.2d 477, 480 (Minn. 1985).  *Insider* reverse piercing has rarely been applied outside of Minnesota, and the application of the doctrine to allow a debtor to exempt assets held by a corporate entity appears to be unique to Minnesota. *See* Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33 (1990).

The two prominent reverse pierce homestead exemption cases are *Hedge* and *Euerle Farms*.  In *Cargill v. Hedge*, the Hedges (a married couple) purchased a 160-acre farm by contract for deed.  They created a family farm corporation, of which the wife was the sole shareholder.  They assigned their vendees' interest in the farm to the corporation.  Cargill obtained a judgment and purchased the property at an execution sale.  The Hedges sought to enjoin the proceedings and have 80 acres of the property exempted from execution as their homestead.  The court was moved by the unfairness of the situation that would leave the family farmers without the homestead exemption to which they would have been entitled if they had not incorporated.  The court applied the reverse pierce doctrine to disregard the corporate entity and allow them to exempt the 80 acre homestead.  *Hedge,* 375 N.W.2d at 478-80.  In the *Euerle Farms* case, the Euerles incorporated their family farm following the death of one of the family

6

members.  *State Bank in Eden Valley v. Euerle Farms, Inc.*, 441 N.W.2d 121 (Minn. App. 1989).

The Euerles owned all of the corporate stock and the trial court had found that there was a close

identity between the Euerles and Eurele Farms and that the corporation was their alter ego.  *Id*. at

124.  The Euerles occupied their family farm homes before, during and after the incorporation,

and received homestead tax exemptions on the farm property.  *Id*.  The Minnesota Court of

Appeals held that the application of the reverse pierce doctrine under those circumstances was

not clearly erroneous.  *Id*.

The Minnesota Supreme Court has expressed concern about enabling a corporate

shareholder to play fast and loose with corporate formalities, depending on which best suits the

shareholder's interests.  In *Hedge*, the court stated:

> One of the features of a corporation is limiting creditor liability to the corporate
> assets. We are aware of the danger of a debtor being able to raise or lower his
> corporate shield, depending on which position best protects his property.
> Consequently, a reverse pierce should be permitted in only the most carefully
> limited circumstances.

*Hedge,* 375 N.W.2d at 480.  Minnesota courts consider 1) "the degree of identity between the

individual and his or her corporation" and "the extent to which the corporation is an alter ego";

and 2) "whether others, such as a creditor or other shareholders, would be harmed by a pierce."

*Hedge* at 479; *see also Roepke,* 302 N.W.2d at 352, 353 (allowing reverse pierce where the

insider "owned all, or substantially all, of the stock," "treated the property as his own," and "no

shareholder or creditor would be adversely affected" by the pierce, but "limit[ing] the holding to

the facts peculiar to this case.").  An insider seeking a reverse pierce is required to demonstrate

"that it was unfair and unjust not to pierce the corporate veil."  *Miller & Schroeder, Inc. v.

Gearman*, 413 N.W.2d 194, 196-97 (Minn. App. 1987).

I.      **The Limited Liability Companies Are Not Hecker's Alter Egos**

"When using the alter ego theory to pierce the corporate veil, courts look to the 'reality

and not form, with how the corporation operated and the individual defendant's relationship to

that operation.'" *Hoyt Properties, Inc. v. Prod. Res. Group, L.L.C.,* 736 N.W.2d 313, 318 (Minn.

2007) (quoting *Victoria Elevator Co.,* 283 N.W.2d at 512). Hecker operated a multi-million dollar auto enterprise through a series of limited liability companies and other corporate entities. Unlike the family farmers in *Hedge* or *Euerle Farms*, whose only business was farming, the companies created by Hecker were part of a large web of interconnected businesses.

Hecker owns 91% of Jacob Properties of Minnesota LLC. He also owns 100% of Rosedale Dodge, Inc., which owns 5% of Jacob Properties of Minnesota LLC. It is clear that he owns "substantially all" of the stock in Jacob Properties of Minnesota LLC. *Roepke,* 302 N.W.2d at 352. However, aside from the fact that Hecker owns a majority interest in Jacob Properties of Minnesota LLC, the only fact alleged by Hecker that would support a finding that Jacob Properties of Minnesota LLC is his alter ego, is that he is its sole governor and president. These facts, without more, do not establish that Jacob Properties of Minnesota LLC is Hecker's alter ego. Jacob Properties of Minnesota LLC is an investment business. It owns over fifty properties. There is no allegation of undercapitalization, failure to observe corporate formalities, nonpayment of dividends, siphoning of funds by a dominant shareholder, nonfunctioning of other officers and directors, or absence of corporate records. *Victoria Elevator Co*., 283 N.W.2d at 512.

Hecker created Jacob Holdings of Cross Lake LLC in order to acquire properties in Crosslake, Minnesota without his wife gaining a property interest in them. He did not want her to share in "any of the upside or any of the downside." Hecker believed that if he acquired assets during the marriage and held them in his own name, they would not have been protected by his antenuptial agreement. Although Hecker personally made payments for the costs of improvements, taxes, and the mortgage and maintains that he did not have any expectation of repayment, those payments were treated as advances to Jacob Holdings of Cross Lake LLC on its books and records. In addition, that entity owns a total of five properties, some of which were purchased for future commercial development. The facts do not support the conclusion that either Jacob Properties of Minnesota LLC or Jacob Holdings of Cross Lake LLC are Hecker's alter egos.

8

**II.     Shareholders and Creditors Would Be Adversely Affected by the Pierce**

Hecker also did not meet his burden of demonstrating that reverse piercing Jacob Holdings of Cross Lake LLC's corporate veil would not adversely affect shareholders and creditors.  The sole shareholder of Jacob Holdings of Cross Lake LLC is Jacob Holdings of Minnesota LLC.  While Hecker holds a majority interest in Jacob Holdings of Minnesota LLC, there are five other shareholders that would be harmed by Hecker's homestead exemption.  First, Rosedale Dodge, Inc. would be adversely affected.  Although Hecker is its principal and he believes he would benefit from the homestead exemption, Rosedale Dodge, Inc. is a separate corporate entity with its own financial interests and its own creditors.  In addition, there are the four trusts for his children.  While it may be true that the minor children would benefit from their father's homestead exemption because it would theoretically allow them to keep their home, they are not the shareholders.[1]  The trusts are separate legal entities, and Hecker's homestead exemption would diminish the value of the trusts.  Furthermore, Jacob Holdings of Cross Lake LLC, Jacob Holdings of Minnesota LLC, Rosedale Dodge, Inc. and Hecker each have their own creditors, including Chrysler Financial.  Chrysler Financial holds a perfected security interest in the assets of Rosedale Dodge, Inc. and in nearly all of Hecker's personal property, including his membership interest in Jacob Property of Minnesota LLC.

In *Roepke,* the court considered prejudice to shareholders and creditors to be the most important factor when applying the reverse piercing doctrine.  *Roepke,* 302 N.W.2d at 352-53.  In weighing harm to creditors, Hecker emphasizes the *Hedge* court's observation that "Creditors are deemed to extend credit in awareness that, should an individual debtor default, a homestead is exempt."  *Hedge,* 375 N.W.2d at 479.  However, the *Hedge* court continues, "Here, when Cargill extended credit, it was to Sam Hedge, and only after suit was filed did Cargill discover the existence of Hedge Farm, Inc."  The court appears to have been referring to the particular situation of a creditor who has extended credit to an individual and only later learned of the corporate entity.  *See also Euerle Farms,* 441 N.W.2d at 125 (Where the creditor had been put on

---

[1]     Even if the homestead exemption were allowed, it is doubtful that Hecker would be able to continue residing at the property for much longer.  Ongoing payments toward the property taxes and enormous mortgage seem unsustainable given Hecker's current lack of income.  It is also unclear whether Jacob Holdings of Cross Lake LLC actually has any equity in the property.

notice of 200 acres of homestead property within the corporation by a financial statement that identified those acres as homestead, the court stated, "Any unfairness caused to creditors by the homestead exemption is inherent in the exemption itself.").  Here, there are a number of creditors, some of whom extended credit to the limited liability companies and some of whom extended credit to Hecker personally.  Homestead exemptions are only available to individuals, so obviously a creditor would not expect a corporate entity to claim a homestead exemption.  In this case, it would be particularly inequitable to presume Hecker's creditors to be aware that the property might be exempt as a homestead, because the Crosslake property is owned by a corporate entity that is owned not by an individual but by another corporate entity, which in turn is owned by an individual, four trusts, and another corporate entity.  Additionally, the Crosslake property had always been treated by Hecker as recreational property and it was only on the eve of bankruptcy that he tried to make it his homestead.

### III.     The Equities of the Case Do Not Support Reverse Piercing and It Would Not Be Unfair or Unjust Not To Pierce the Corporate Veil

The facts of Hecker's case do not support the equitable remedy of veil piercing.  Not only has he failed demonstrate a sufficient closeness of identity and a lack of prejudice to shareholders and creditors, but just as importantly, he has not demonstrated that it would be "unfair and unjust not to pierce the corporate veil." *Gearman,* 413 N.W.2d at 196-97.  Hecker is an experienced businessman who has owned and operated dozens of auto dealerships, car rental franchises and other businesses.  The *Gearman* case also involved an established, experienced businessman who, perhaps unlike the family farmers in *Hedge* and *Euerle Farms*, had created and acted through his corporate entity with a sophisticated understanding of its benefits:

> In this case we have two established, experienced business parties involved in a commercial transaction. Gearman has acted through his corporation for over twenty years, held various properties through it, acquired title to the Hotel in 1980 and executed two mortgages through it, and enjoyed the benefits thereof. It is therefore neither unfair nor unjust to leave Gearman in a position where he must repay money he borrowed in order to carry on business activities.

10

*Gearman* at 197.  Hecker acquired the Crosslake properties through a limited liability company as part of an intentional strategy to keep them out of his wife's hands.  He enjoyed the benefits of the limited liability protection for many years.  He owned many properties through his limited liability companies and surely would have had the means to purchase a homestead property in his own name.

In both *Hedge* and *Euerle Farms*, the parties seeking the homestead exemption through reverse piercing would have been entitled to the exemption *prior* to incorporating, and the question before the court was whether the debtors *lost* their homestead exemptions by incorporating. The property in this case was not Hecker's homestead prior to formation of the limited liability company.  It was not classified as a homestead property for real estate tax purposes.  It was only on the eve of bankruptcy that he decided to move into the home and claim it as his homestead.  Unlike the situations in *Hedge* and *Euerle Farms*, this property is not a farm and is not essential to Hecker's business, but rather it is a luxury lakefront property.  There are important policy considerations supporting the homestead exemption, and Minnesota has "'long recognized the importance, notwithstanding the just demands of creditors, for a debtor's home to be a 'sanctuary.'"  *Hedge,* 375 N.W.2d at 480 (quoting *Denzer v. Prendergast,* 126 N.W.2d 440, 443 (Minn. 1964)).  However, Hecker has the burden under Minnesota law to demonstrate that it would be unfair or unjust not to pierce the corporate veil, and he has not done so.  *Gearman,* 413 N.W.2d at 196-97.

**CONCLUSION**

What Hecker seeks is equitable in nature.  Courts have often repeated the equitable maxim, "he who seeks equity must do equity, and he who comes into equity must come with clean hands." *Gully v. Gully,* 599 N.W.2d 814, 825 (Minn. 1999) (quoting *Hruska v. Chandler Assocs., Inc.,* 372 N.W.2d 709, 715 (Minn. 1985)).  This case demonstrates "the danger of a debtor being able to raise or lower his corporate shield, depending on which position best protects his property." *Hedge,* 375 N.W.2d at 480.  To allow Hecker to disregard the corporate formalities he created for the purpose of shielding his assets from his wife would be an abuse of the remedy, especially where the result would be to allow him to claim an exemption in a luxury

11

home that he only began to occupy days before filing his petition and had not previously treated as a homestead.  The facts of this case simply do not support the application of the equitable remedy of reverse piercing of the corporate veil.

        THEREFORE, IT IS ORDERED:


        The debtor's homestead exemption claim is disallowed.  The property at 11700 Cross Avenue, Crosslake, Minnesota is not exempt.


                                        /e/ Robert J. Kressel
                                        ROBERT J. KRESSEL
                                        UNITED STATES BANKRUPTCY JUDGE


                            NOTICE OF ELECTRONIC ENTRY AND
                            FILING ORDER OR JUDGMENT
                            Filed and Docket Entry made on *09/25/2009*
                            Lori Vosejpka, Clerk, By amm, Deputy Clerk