## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                   Case No.  09-50779-RJK
                                                    Chapter 7
        Debtor.

---

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM AUTOMATIC STAY

---

TO:    The Debtor and other interested parties specified in Local Rule 9013-3.

    1.    AnchorBank, fsb, ("Movant"), a secured creditor of Debtor herein, by its undersigned attorney, moves the Court for the relief requested below and gives notice of hearing herewith.

    2.    The Court will hold a hearing on this motion at 2:00 p.m. on October 22, 2009, Courtroom 8W, U.S. Bankruptcy Court, 300 South Fourth Street, Minneapolis, Minnesota 55415 or as soon thereafter as counsel can be heard.

    3.    Any response to this motion must be filed and delivered not later than October 19, 2009, which is three (3) days (excluding Saturdays, Sundays and holidays) before the time set for the hearing or filed and served by mail not later than October 13, 2009, which is seven (7) days before the time set for the hearing (excluding Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING.**

    4.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, FRBP Nos. 5005 and Local Rule 1070-1.  This is a core proceeding, the Petition commencing this case was filed on June 4, 2009 and is now pending in this Court.

    5.    This motion arises under 11 U.S.C § 362 and Federal Rules of Bankruptcy

Procedure 4001, and is filed under Federal Rules of Bankruptcy Procedure 9014 and Local Rules 9006-1 and 9013-1 to 9013-3. Movant requests relief from the automatic stay of 11 U.S.C. § 362(a) with respect to certain real property subject to Movant's valid security interest.

6.      Debtor is the owner of that certain real property located at 106 Mariner Way, Bayport, Minnesota 55003 ("Parcel A") and 205 Mariner Way, Bayport Minnesota 55003 (Parcel B") (collectively the "Property"), legally described as:

> Parcel A:
> Unit 3, Building 1, Condominium Number 62, Waterford on the St. Croix, a Condominium together with an undivided 1/41st interest in the common areas and facilities as set forth in the Declaration and shown on the Condominium Plan on file and of record in the office of the Washington County Recorder.
>
> Parcel B:
> Unit 4, Building 8, Condominium No. 62, Waterford on the St. Croix, Second Supplemental Condominium Plat, together with an undivided 1/41st interest in common areas and facilities as set forth in the Declaration and shown on the Condominium plat on file and of record in the office of the Washington County Recorder, Minnesota.

7.      The indebtedness of Debtor for Parcel A is evidenced by a Note and Mortgage dated December 12, 1994, filed of record in the County Recorder's Office in and for Washington County, Minnesota, on the 22nd day of December, 1994 as Document No. 826868 (the "First Mortgage"). A true and correct copy of the Note and Mortgage are attached hereto and incorporated by reference as Exhibit A.

8.      The indebtedness of Debtor for Parcel B is evidenced by a Note and Mortgage dated December 12, 1994, filed of record in the County Recorder's Office in and for Washington County, Minnesota, on the 22nd day of December, 1994 as Document No. 826869 (the "Second Mortgage"). A true and correct copy of the front pages of the Note and Mortgage are attached hereto and incorporated by reference as Exhibit B.

9.      Debtor has failed to pay monthly mortgage payments on each mortgage since March 12, 2009 and, as of September 29, 2009, is in default in the amounts of $7,996.58 and $7,977.90 on the First and Second Mortgages respectively, together with reasonable attorneys' fees and costs incurred pursuant to the Notes and Mortgages. Debtor has failed to make any offer of adequate protection. Accordingly, Movant's interest is inadequately protected.

10.     The total amount due under the First Mortgage and Note as of September 29, 2009 is $60,392.35 with interest accruing at the rate of $9.02 per diem.

11.     The total amount due under the Second Mortgage and Note as of September 29, 2009 is $50,651.26 with interest accruing at the rate of $7.56 per diem.

12.     The 2008 tax-assessed value of Parcel A is $314,000.00. The 2009 tax-assessed value of Parcel B is $307,900.00. Given the economy of the real estate market, the assessed values highly exaggerate the market value of the Properties. According the Amended Schedule A, Debtor has estimated the value of each Parcel A and Parcel B to be $300,000.00.

13.     The amounts of secured claims against each of the Parcels are in excess of $550,000.000, and accordingly, Movant's interest in the premises is not protected, there is no equity in the property and the property is not necessary to an effective reorganization.

14.     Upon information and belief, Debtor intends to permit the foreclosure sale of the real property and has no intention of reaffirmation of the debt.

15.     The failure of Debtor to provide Movant with adequate protection of its secured interest entitles Movant to the relief from the automatic stay. By reason of the foregoing, Movant is entitled, pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2), to have the automatic stay lifted and vacated so it can commence foreclosure of the mortgages pursuant to Minnesota Statutes.

WHEREFORE, AnchorBank, fsb, by its undersigned attorney, moves the Court for an

Order that the automatic stay provided by 11 U.S.C. Section 362(A) be terminated to permit

Movant to foreclose its mortgages on the subject real property and for such other and further relief

as may be just and equitable.

**ECKBERG,   LAMMERS,   BRIGGS,
WOLFF & VIERLING, P.L.L.P.**

Dated:  September 29, 2009

By: _/e/ Nicholas J. Vivian_____
    Nicholas J. Vivian (#0333669)
    *Attorneys for Creditor ANCHORBANK, FSB*
    1809 Northwestern Avenue
    Stillwater, MN 55082
    (651) 439-2878

## VERIFICATION

I, Steven Wood, a Credit Counselor III with AnchorBank, fsb, the Movant herein, and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September **29th**, 2009

Steven Wood

# EXHIBIT A

826868

OFFICE OF
COUNTY RECORDER
WASHINGTON COUNTY
FILED ON

DEC 22  12 29 PM '91
826868
DOC
JOHN A FRANZEN
COUNTY RECORDER
BY

F-3

ATTORNEY'S TITLE OF STILLWATER
1835 NORTHWESTERN AVENUE
STILLWATER, MN 55082

Return to:
AnchorBank, S.S.B.
Attn: Title Closing
P.O. Box 7933
Madison, WI 53707-7933

19.50

(Space Above This Line For Recording Data)

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   DECEMBER 12, 1994                        The mortgagor is
DENNIS E HECKER,  and  Tamitha D. Hecker,
husband and wife                        ("Borrower")  This Security Instrument is given to AnchorBank, s s b
which is organized and existing under the laws of the STATE OF WISCONSIN, and whose address is  25 West Main Street, Madison,
Wisconsin 53703 ("Lender").  Borrower owes Lender the principal sum of  ONE HUNDRED SEVENTY EIGHT THOUSAND FIVE HUNDRED
AND NO/100
Dollars (U.S $ 178,500.00 )   This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on   JANUARY 1, 2025                    and for interest at
the yearly rate of   7.950    percent  This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For
this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in
Washington         County, Minnesota

2600?

Unit 3, Building 1, Condominium Number 62, Waterford on the St. Croix, a Condominium
together with an undivided 1/41st interest in the common areas and facilities as set
forth in the Declaration and shown on the Condominium Plat on file and of record in the
office of the Washington County Recorder, Minnesota.

13-Dec-94    WASHINGTON COUNTY    No. 33789
Registration tax hereon of $410.55 Paid
MN Conservation Fund M.S. 473H $5.00 Paid
R.H. STAFFORD, Auditor-Treasurer  by D.W. STROBEL

TAMITHA D. HECKER HAS EXECUTED THIS MORTGAGE FOR THE SOLE PURPOSE OF
SUBJECTING HER MARITAL INTEREST IN THE PROPERTY TO THE LIEN OF THE
MORTGAGE.  TAMITHA D. HECKER SHALL NOT HAVE ANY PERSONAL LIABILITY
FOR THE INDEBTEDNESS SECURED THEREBY.

This is not homestead property.

which has the address of   109 MARSH-IL WAY                        BAYPORT
[Street]    [City]
Minnesota    55003        ("Property Address");
[Zip Code]
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a
part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security
Instrument as the "Property"

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property
and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property
against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to
constitute a uniform security instrument covering real property

MINNESOTA -Single Family  Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3024    Page 1 of 5    9/90    30241
USA

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, (e) yearly mortgage insurance premiums, if any, and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums  These items are called "Escrow Items "  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any funds held by Lender  If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied  first, to any prepayment charges due under the Note, second, to amounts payable under paragraph 2, third, to interest due, fourth, to principal due, and last, to any late charges due under the Note

**4  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance  This insurance shall be maintained in the amounts and for the periods that Lender requires  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause  Lender shall have the right to hold the policies and renewals  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due  The 30-day period will begin when the notice is given

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments  If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition

**MINNESOTA** –Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3024    Page 2 of 5    9/90    30242

0231239

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**MINNESOTA** --Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3024    Page 3 of 5    9/90    30243

0221232

**14  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

**15.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision  To this end the provisions of this Security Instrument and the Note are declared to be severable

**16.  Borrower's Copy**  Borrower shall be given one conformed copy of the Note and of this Security Instrument

**17.  Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**18.  Borrower's Right to Reinstate.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of  (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged  Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under paragraph 17

**19.  Sale of Note, Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made  The notice will also contain any other information required by applicable law

**20.  Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

**21.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence**

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Interest on Advances.** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☒ 1- 4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] | Agreement Modifying Note and Mortgage-Owner occupied | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

_____ (Seal)
                        --Borrower

_____ (Seal)
DENNIS E HECKER          --Borrower

_____ (Seal)
                        --Borrower

_____ (Seal)
Tamitha D. Hecker        --Borrower

———————————— [Space Below This Line For Acknowledgement] ————————————

STATE OF    MINNESOTA              )
                                   ) ss
COUNTY OF   HENNEPIN               )

The foregoing instrument was acknowledged before me this   DECEMBER 12, 1994
                                                                              (date)
by    DENNIS E. HECKER AND Tamitha D. Hecker,                        husband and wife
                        (person(s) acknowledging)

_____ (SEAL)
Notary Public

DONNA C. RIZNER
NOTARY PUBLIC - MINNESOTA
HENNEPIN COUNTY
My Commission Expires 5-2-97

This instrument was prepared by    Bruno F. Rahn, Jr

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this __12TH__ day of __DECEMBER   1994__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to __ANCHORBANK, S S B.__ (the "Lender") of the same date and covering the Property described in the Security Instrument and located at

__106 MARINER WAY, BAYPORT, MINNESOTA 55003__

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as

Waterford on the St. Croix

[Name of Condominium Project]

(the "Condominium Project") If the owners association or other entity which acts for the Condominium Project (the "Owners Association) holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest

**CONDOMINIUM COVENANTS** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents The "Constituent Documents" are the (i) Declaration or any other document which creates the Condominium Project, (ii) by-laws, (iii) code of regulations, and (iv) other equivalent documents Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property, and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower

**C** **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

**D. Condemnation** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to

(i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain,

(ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender,

(iii) termination of professional management and assumption of self-management of the Owners Association, or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

**F. Remedies** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider

_____ (Seal)
                        -Borrower

_____ (Seal)   DENNIS E. HECKER              -Borrower
                        -Borrower

_____ (Seal)   Tamitha D. Hecker            -Borrower
                        -Borrower

**MULTISTATE CONDOMINIUM RIDER** - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          Form M3140  9/90
0231239

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____ (Seal)
DENNIS E HECKER                        -Borrower

_____ (Seal)
Tamitha D. Hecker                        -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

Form M3171   9/90

0131299

# EXHIBIT B



826869

OFFICE OF
COUNTY RECORDER
WASHINGTON COUNTY
FILED ON

DEC 22   12 29 PM '94
826869

DOC
JOHN A FRANZEN
COUNTY RECORDER
BY

ATTORNEY'S TITLE OF STILLWATER
1835 NORTHWESTERN AVENUE
STILLWATER, MN 55082

Return to:
AnchorBank, S S B
Attn Title Closing
PO Box 7933
Madison, WI 53707-7933

P.3

1950

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   DECEMBER 12, 1994                     The mortgagor is
DENNIS E. HECKER,   and Tamitha D. Hecker, husband adn wife
                                ("Borrower")  This Security Instrument is given to AnchorBank, ***
which is organized and existing under the laws of the STATE OF WISCONSIN, and whose address is   25 West Main Street, Madison,
Wisconsin 53703 ("Lender").  Borrower owes Lender the principal sum of   ONE HUNDRED FIFTY FIVE THOUSAND AND NO/100

Dollars (U.S. $  155,000.00    )  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on   JANUARY 1, 2025                     and for interest at
the yearly rate of   8.050   percent  This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For
this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in
Washington        County, Minnesota

20302

Unit 4, Building 8, Condominium Number 62, Waterford on the St. Croix, Second
Supplemental Condominium Plat, together with an undivided 1/41st interest in the common
areas and facilities as set forth in the Declaration and shown on the Condominium plat on
file and of record in the office of the Washington County Recorder, Minnesota.

No. 33788
WASHINGTON COUNTY
Registration tax hereon of $156.50 Paid
13-Dec-94                         #5.00 Paid
MN Conservation Fund M.S. 473H        by D.M. SINOHET
R.W. STAFFORD, Auditor-Treasurer

TAMITHA D. HECKER HAS EXECUTED THIS MORTGAGE FOR THE SOLE PURPOSE OF
SUBJECTING HER MARITAL INTEREST IN THE PROPERTY TO THE LIEN OF THE
MORTGAGE.  TAMITHA D. HECKER SHALL NOT HAVE ANY PERSONAL LIABILITY
FOR THE INDEBTEDNESS SECURED THEREBY.

This is not homestead property.

which has the address of   205 MARINER WAY                           ,   BAYPORT
                                [Street]                                         [City]
Minnesota    55003       ("Property Address"),
            [Zip Code]
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a
part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security
Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property
and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property
against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to
constitute a uniform security instrument covering real property

MINNESOTA --Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3024   Page 1 of 5    9/90    30241
                                                                                                            05/94

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, (e) yearly mortgage insurance premiums, if any, and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums  These items are called "Escrow Items"  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any funds held by Lender  If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied  first, to any prepayment charges due under the Note, second, to amounts payable under paragraph 2, third, to interest due, fourth, to principal due, and last, to any late charges due under the Note

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance  This insurance shall be maintained in the amounts and for the periods that Lender requires  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause  Lender shall have the right to hold the policies and renewals  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due  The 30-day period will begin when the notice is given

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments  If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition

MINNESOTA --Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3024    Page 2 of 5    9/90    30242

0231240



**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.



**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default or any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order· (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower  Borrower shall pay any recordation costs

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property

**24. Interest on Advances** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument  [Check applicable box(es)]

☐ Adjustable Rate Rider    ☒ Condominium Rider         ☒ 1- 4 Family Rider

☐ Graduated Payment Rider  ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider

☐ Balloon Rider            ☐ Rate Improvement Rider    ☐ Second Home Rider

☒ Other(s) (specify)    Agreement Modifying Note and Mortgage-Nonowner occupied

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

_____ (Seal)   _____ (Seal)
                          –Borrower   DENNIS E. HECKER         –Borrower

_____ (Seal)   _____ (Seal)
                          –Borrower   Tamitha D. Hecker        –Borrower

——————————— [Space Below This Line For Acknowledgement] ———————————

STATE OF  ~~MINNESOTA~~                )
                                       ) ss
COUNTY OF ~~HENNEPIN~~                 )

The foregoing instrument was acknowledged before me this   DECEMBER 12, 1994
                                                                    (date)

by   DENNIS E. HECKER AND  Tamitha D. Hecker, husband and wife
                          (person(s) acknowledging)

                                                                    (SEAL)

Notary Public

My Commission Expires    DONNA C  RIZNER
                         NOTARY PUBLIC - MINNESOTA
                         HENNEPIN COUNTY
                         My commission expires 3-2-97

This instrument was prepared by    Bruno F. Rahn, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                           Case No. 09-50779-RJK
                                                            Chapter 7
        Debtor.

---

## MEMORANDUM OF LAW

---

AnchorBank, fsb ("Movant") submits this Memorandum of Law in support of its Motion for Relief from Automatic Stay in the above-entitled matter.

### FACTS

Movant holds valid, perfected mortgages on real property owned by the Debtor. On the date of filing, Debtor was delinquent under the Notes affecting the Properties. Since this case was filed, Debtor has made no payments to Movant and the arrears total $7,996.58 and $7,977.90, respectively.

### ARGUMENT

Movant is entitled to relief from the automatic stay pursuant to the relevant provisions of 11 U.S.C. § 362 due to the fact that Debtor has no equity in the Properties securing its indebtedness to Movant and the Debtor has not adequately protected Movant's validly perfected, first priority lien on the Properties. Under Section 362(d) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor:

"(1) for cause, including the lack of adequate protection of an interest in property of such party in interest [or]
(2) with respect to a stay of an act against property under subsection (a) of this section if—
      (A) The debtor does not have an equity in such property; and
      (B) such property is not necessary to an effective reorganization."

I.    **DEBTOR HAS NO EQUITY IN THE PROPERTY SECURING THE INDEBTEDNESS OWED TO MOVANT, AND THE COLLATERAL IS NOT NECESSARY TO AN EFFECTIVE REORGANIZATION.**

Pursuant to §362(d)(2) of the Bankruptcy Code, relief from the stay is appropriate when there is no equity in the property and the property is not necessary to an effective reorganization.  11 U.S.C. §362(d)(2).  See, In Re:  Gellert, 55 B.R. 970 (Bkrtcy. D. N. H. 1983).  Each Parcel has an estimated value of $300,000.00.  The amounts of secured claims against each of the Parcels are in excess of $550,000.000.  There is no equity in the property and further, as this is a Chapter 7 case, the property is not necessary to an effective reorganization.

II.    **MOVANT IS NOT BEING PROVIDED WITH ADEQUATE PROTECTION.**

The Debtor in this case has failed to make payments required by the notes for a period of more than five months.  Debtor has not otherwise provided Movant with adequate protection of its interest in the Properties.  Additionally, as stated in the Motion, there is currently due and owing to Movant the amounts of $60,392.35 and $50,651.26 on the First and Second Mortgages respectively, together with interest, costs, fees and reasonable attorneys' fees which continue to accrue.  Debtor has failed to make any offer of adequate protection to Movant.  Such circumstances constitute cause, within the meaning of §362(d)(1), justifying Movant relief from the automatic stay.  See United States Savings Assn. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)

In accordance with 11 U.S.C. Section 362(g), Debtor has the burden of proving the absence of cause, adequate protection or that the property is necessary to effective reorganization in this matter.

2

## CONCLUSION

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause, where its interest in the secured property is not adequately protected. Further, Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) when Debtor has no equity in the property and the property is not necessary to an effective reorganization. For the reasons set forth herein, Movant is entitled to an order terminating the automatic stay and authorizing Movant to foreclose its security interest in the Properties, and for such other relief as may be just and equitable.

Movant respectfully requests an Order of this Court modifying the automatic stay consistent with the attached proposed Order.

ECKBERG,     LAMMERS,     BRIGGS,
WOLFF & VIERLING, P.L.L.P.

Dated:  September 29, 2009

By: /e/ Nicholas J. Vivian
    Nicholas J. Vivian (#0333669)
    *Attorneys for Creditor ANCHORBANK, FSB*
    1809 Northwestern Avenue
    Stillwater, MN 55082
    (651) 439-2878

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

**In re:**

**Dennis E. Hecker,**                                    **Case No.  09-50779-RJK**
                                                                      **Chapter 7**
                **Debtor.**

---

## ORDER FOR RELIEF FROM AUTOMATIC STAY

---

The above entitled matter came before the Court upon the motion of creditor AnchorBank, fsb ("Movant") seeking relief from the automatic stay pursuant to 11 U.S.C. § 362.  Based upon all of the files and proceedings, the arguments of counsel, and the Court being fully advised of the premises,

IT IS HEREBY ORDERED as follows:

The automatic stay imposed by 11 U.S.C. § 362 is hereby lifted with regard to Case No. 09-50779-RJK in the United States Bankruptcy Court for the District of Minnesota as to the real property over which Movant has an interest; said property is legally described as follows, to-wit:

Parcel A:
Unit 3, Building 1, Condominium Number 62, Waterford on the St. Croix, a Condominium together with an undivided 1/41st interest in the common areas and facilities as set forth in the Declaration and shown on the Condominium Plan on file and of record in the office of the Washington County Recorder.

Parcel B:
Unit 4, Building 8, Condominium No. 62, Waterford on the St. Croix, Second Supplemental Condominium Plat, together with an undivided 1/41st interest in common areas and facilities as set forth in the Declaration and shown on the Condominium plat on file and of record in the office of the Washington County Recorder, Minnesota.

Movant, its successors and assigns may proceed to foreclose its mortgages in accordance with Minnesota Statutes.

Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this Order is effective immediately.

DATED: _____          BY THE COURT:


                                         _____
                                         The Honorable Robert J. Kressel

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                                          Case No.  09-50779-RJK
                                                                                           Chapter 7

        Debtor.

---

## UNSWORN DECLARATION FOR PROOF OF SERVICE

---

The undersigned, an employee of Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P.,

declares that on September 30, 2009, she served the following documents:

1. Notice of Hearing and Motion for Relief from the Automatic Stay;
2. Memorandum in Support of Motion for Relief from Stay; and
3. Proposed Order,

to be filed electronically with the Bankruptcy Court of the United States, District of Minnesota,

through ECF and that a copy of said documents have been served through notification by ECF to

the following:

| | |
|---|---|
| Kendall L. Bader | kbader@fredlaw.com, klbader@yahoo.com |
| Patti H Bass | ecf@bass-associates.com |
| Matthew R. Burton | mburton@losgs.com |
| Tyler D. Candee | tcandee@lapplibra.com, dwegler@lapplibra.com |
| Bruce H. Carlson | bruce.carlson@mlcfargolaw.com, tricia.fossen@mlcfargolaw.com |
| Monica L. Clark | clark.monica@dorseylaw.com |
| Gordon B. Conn | conn@kwgc-law.com |
| Clinton E. Cutler | ccutler@fredlaw.com, mdavis@fredlaw.com |
| Larry D. Espel | lespel@greeneespel.com, lbulson@greeneespel.com; sholenko@greeneespel.com |
| Stephen F Grinnell | stephen.grinnell@gpmlaw.com |
| Joshua A. Hasko | jhasko@messerlikramer.com, nkuhnly@messerlikramer.com |
| Andrea M. Hauser | ahauser@losgs.com |
| David L. Johnson | david.johnson@mlcfargolaw.com |
| Douglas W. Kassebaum | dkassebaum@fredlaw.com, scharter@fredlaw.com; bankruptcy@fredlaw.com |
| Jeffrey D. Klobucar | jklobucar@foleymansfield.com |
| Connie Lahn | connie.lahn@fmjlaw.com, Aong.Moua@fmjlaw.com |
| Thomas Lallier | tlallier@foleymansfield.com |
| Joseph W. Lawyer | jlawver@messerlikramer.com, mnygaard@messerlikramer.com |
| Seth Leventhal | seth.leventhal@fmjlaw.com, sherri.debettignies@fmjlaw.com |

Nauni J Manty        ecf@mantylaw.com
Michael L Meyer      mlmeyer@ravichmeyer.com
Ralph Mitchell       rmitchell@lapplibra.com, jpipp@lapplibra.com
William F Mohrman    mohrman@mklaw.com, gynild@mklaw.com; kaardal@mklaw.com;
grzybek@mklaw.com
Andrew Paul Moratzka apm@mcmlaw.com, jef@mcmlaw.com;ldj@mcmlaw.com
Cynthia A. Moyer     cmoyer@fredlaw.com, cthomas@fredlaw.com
Robert G. Parish     rparish@faegre.com
Jamie R. Pierce      jpierce@hinshawlaw.com,
akulbeik@hinshawlaw.com;mpocock@hinshawlaw.com;kmoore@hinshawlaw.com
Steven R Qualley     steveq@gqlaw.net, squalley@gqlaw.net
Recovery Management Systems Corp      claims@recoverycorp.com
Craig E. Reimer      creimer@mayerbrown.com,
samahdi@mayerbrown.com;srozen@mayerbrown.com;hroin@mayerbrown.com
David E. Runck       david.runck@fmjlaw.com, Aong.Moua@fmjlaw.com
Randall L. Seaver    rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com
Eric J Sherburne     esherburne@steinmoore.com, notices@steinmoore.com
Brad A Sinclair      bsinclair@serklandlaw.com, crohr@serklandlaw.com
William R. Skolnick  wskolnick@skolnick-shiff.com, zpuchtel@skolnick-
shiff.com;petricka@visi.com;rcargill@skolnick-shiff.com
Rebecca G. Sluss     rsluss@oppenheimer.com
Kathleen K. Statler  kstatler@gr-espel.com, storkelson@greeneespel.com
Matthew A. Swanson   matthew.swanson@leonard.com, callie.sanford@leonard.com
US Trustee           ustpregion12.mn.ecf@usdoj.gov


and by mailing thereby enclosing a copy of the same in an envelope with first class postage

prepaid and depositing the same in the post office at Stillwater, Minnesota, addressed to each of

them as listed on the attached service list.


                              ECKBERG,    LAMMERS,    BRIGGS,
                              WOLFF & VIERLING, P.L.L.P.


Dated:  September 30, 2009          By: /e/ Danette Neumann
                                    Danette Neumann

**ACE INSURANCE COMPANY**
P.O. BOX 294836
CLEVELAND OH 44101

**ALDRIDGE, DAN**
11700 CROSS AVE
CROSSLAKE MN 56442

**ALLEN EIDE**
3221 32ND AVENUE SOUTH
SUITE 900
GRAND FORKS ND 58201

**AMERICAN BANK**
1060 DAKOTA DRIVE
MENDOTA HEIGHTS MN 55120

**AMERICAN EXPRESS**
P. O. BOX 0001
LOS ANGELES CA 90096

**American Express Bank FSB**
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

**American Express Centurion Bank**
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

**AMERICAN NATIONAL BANK OF MN**
7638 WOIDA RD
BAXTER MN 56425

**AV CARD/OASIS**
164 LAKE FRONT DR
COCKEYSVILLE MD 21030

**AXIS CAPITAL, INC.**
308 N LOCUST ST
PO BOX 2555
GRAND ISLAND NE 68802

**AXLE CAPITAL, LLC / SAGECREST**
3 PICKWICK PLAZA
GREENWICH CT 06830

**BANK OF THE WEST**
P.O. BOX 65020
WEST DES MOINES IA 50265

**BANK OF THE WEST**
250 MARQUETTE AVENUE
MINNEAPOLIS MN 55401

**BARBARA LYNN CUTTER**
2350 S BEVERLY GLEN BLVD #5
W LOS ANGELES CA 90064

**BAYPORT MARINA ASSOCIATION**
200 5TH STREET
BAYPORT MN 55003

**BELISLE, WAYNE**
1843 EAGLE RIDGE DR
SAINT PAUL MN 55118

**BELLAGIO**
3600 LAS VEGAS BLVD
LAS VEGAS NV 89109

**BREICH, WALTER**
13670 -- 122ND STREET
NORWOOD YOUNG AMERICA MN 55368

**BREMER BANK**
633 SOUTH CONCORD STREET, SUITE 350

**Bremer Bank, N.A.**
c/o Dan Beck, Winthrop & Weinstine, P.A.

SOUTH ST. PAUL MN 55075

225 South Sixth Street, Suite 3500
Minneapolis, MN 55402

**Brian F. Leonard, Trustee**
for ARC Venture Holdings, Inc.
c/o Leonard, O'Brien, Spencer, Gale & Sa
100 South Fifth Street
Suite 2500
Minneapolis, MN 55402

**BRIGGS & MORGAN PA**
2200 IDS CENTER
MINNEAPOLIS MN 55402

**C AND C BOAT WORKS**
36448 CTY RD 66
CROSSLAKE MN 56442

**CA BOARD OF EQUALIZATION**
PO BOX 942879
SACRAMENTO CA 94279-7072

**CA DEPT OF MOTOR VEHICLES**
PO BOX 942869
SACRAMENTO CA 94269-0001

**CITY OF ASPEN**
130 S. GALENA ST.
ASPEN CO 81611

**Carlton Financial Corporation**
1902 E. Wayzata Blvd., Suite 180
Wayzata, MN 55391-2064

**CENTER POINT ENERGY**
P.O. BOX 1144
MINNEAPOLIS MN 55440

**CESSNA AIRCRAFT COMPANY**
P.O. BOX 12270
WICHITA KS 67277

**CITY OF BAYPORT**
294 N. 3RD STREET
BAYPORT MN 55003

**CITY OF MEDINA**
2052 CO RD 24
HAMEL MN 55340

**COMMUNITY NATIONAL BANK**
845 EAST COUNTY ROAD E
VADNAIS HEIGHTS MN 55127

**CONDOR FIREPLACE & STONE CO**
8282 ARTHUR ST NE
MINNEAPOLIS MN 55432

**COOPERATIVE POWER**
P.O. BOX 69
TWO HARBORS MN 55616

**CORNERSTONE BANK**
2627 SOUTH UNIVERSITY
FARGO ND 58103

**CRAIG E. REIMER, ESQ.**
MAYER BROWN
71 SOUTH WACKER DRIVE
CHICAGO IL 60606
**CROW WING COUNTY TREASURER**
JUDICIAL CENTER
213 LAUREL ST

**CROSSLAKE PROPERTY SOLUTIONS**
P.O. BOX 810
CROSSLAKE MN 56442

BRAINERD MN 56401

**DEERWOOD BANK**
P.O. BOX 527
724 W. WASHINGTON STREET
BRAINERD MN 56401

**DONALD M HALSTEAD III**
15626 SUNSET WAY
BRAINERD MN 56401

**ENCORE BANK**
3003 TAMIAMI TRAIL NORTH, SUITE 100
NAPLES FL 34103

**FAMILY HOLDINGS OF MN LLC**
11614 ECHO BAY DRIVE
CROSSLAKE MN 56442

**FIFTH THIRD BANK**
999 VANDERBILT BEACH, 7TH FLOOR
MD B9997E
NAPLES FL 34108

**GE CAPITAL, FLEET SERVICES**
3 CAPITAL DRIVE
EDEN PRAIRIE MN 55344

**GELCO CORPORATION**
THREE CAPITAL DRIVE
ATTN: GENERAL COUNSEL
EDEN PRAIRIE MN 55344

**GEMB LENDING, INC.**
P.O. BOX 57091
IRVINE CA 92619

**GMAC MORTGAGE**
9661 W. 143RD STREET
SUITE 200
ORLAND PARK IL 60462

**GWYN M DOENZ**
10600 COUNTRY DRIVE
PINE CITY MN 55063

**DON GILBERT**
1700 PHEASANT RUN
HUDSON WI 54016

**ELIZABETH A JOHNSON**
PO BOX 624
PINE RIVER MN 56474

**EXXONMOBILE OIL CORPORATION**
ATTN JENNIFER FRASER
120 MCDONALD STREET SUITE B
SAINT JOHN NB CANADA E2J 1M5

**FIFTH THIRD BANK**
C/O RICHARD J. SWIFT, JR.
GARLICK STETLER & SKRIVIAN LLP
9115 CORSEA DE FONTANA WAY STE 100
NAPLES FL 34109

**GE CAPITAL**
1415 WEST 22ND STREET, SUITE 600
OAKBROOK IL 60523

**GEMB LENDING INC**
2995 RED HILL AVE STE 250
COSTA MESA CA 92626

**GMAC MORTGAGE**
P.O. BOX 4622
WATERLOO IA 50704

**GMAC, LLC**
15303 94TH AVENUE
ORLAND PARK IL 60462

**HECKER, SANDRA**
13755 - 84TH PL N
MAPLE GROVE MN 55369

**HENNEPIN COUNTY TREASURER**
300 S SIXTH ST
A600 GOVERNMENT CNT
MINNEAPOLIS MN 55487

**HOME FEDERAL SAVINGS BANK**
1016 CIVIC CENTER DR NW
STE 300
ROCHESTER MN 55903

**INTERBANK EDINA**
3400 WEST 66TH STREET, SUITE 100
EDINA MN 55435

**IRS**
DEPARTMENT OF TREASURY
OGDEN UT 84201

**JACOB PROPERTIES OF ASPEN, LLC**
500 FORD RD
MINNEAPOLIS MN 55426

**JAVAN CARL**
13942 GRAND OAKS DR
BAXTER MN 56425

**JC BROMAC**
11860 S. LA CIENEGA BLVD.
LOS ANGELES CA 90250

**KAPLAN STRANGIS & KAPLAN PA**
5500 WELLS FARGO CENTER
90 SOUTH 7TH STREET
MINNEAPOLIS MN 55402

**KEVIN LUEDTKE**
18703 ISLAND RESORT ROAD
PINE CITY MN

**KLEINBANK**
14141 GLENDALE ROAD
SAVAGE MN 55378

**HOLY CROSS ENERGY**
3799 HWY 82
GLENWOOD SPRINGS CO 81602

**HYUNDAI MOTOR AMERICA**
10550 TALBERT AVE
MOUNTAIN VALLEY CA 92708

**INTER BANK**
P.O. BOX 986
NEWARK NJ 07184

**INTERNAL REVENUE SERVICE**
SPECIAL PROCEDURES BRANCH
389 US COURTHOUSE 316 N ROBERT
ST. PAUL MN 55101

**JACOB HOLDINGS OF MEDINA, LLC**
500 FORD RD
MINNEAPOLIS MN 55426

**JASON S. COLBAUGH**
PO BOX 1220
BRAINERD MN 56401

**JAVER ESQUIVEL**
2807 W AVE 30
LOS ANGELES CA 90065

**JP MORGAN CHASE BANK, N.A.**
726 MADISON AVENUE
NEW YORK NY 10021

**KELLY K. HECKER**
13905 - 53RD AVE N. APT. 1
PLYMOUTH MN 55446

**KLEINBANK**
1550 AUDUBON RD STE 200
CHASKA MN 55318

**KLOBUCAR, JEFFREY D, ESQ**
250 MARQUETTE AVE
STE 1200

MINNEAPOLIS MN 55401

**KSTP-FM LLC**
3415 UNIVERSITY AVE
SAINT PAUL MN 55114

**LAKE BANK, N.A., THE**
613 FIRST AVENUE
TWO HARBORS MN 55616

**LALLIER, THOMAS J**
FOLEY & MANSFIELD
250 MARQUETTE AVE STE 1200
MINNEAPOLIS MN 55401

**LLOYD SECURITY**
1097 10TH SE
MINNEAPOLIS MN 55414

**LUBIC, MICHAEL, ESQ.**
601 S FIGUEROA ST
STE 2500
LOS ANGELES CA 90017-5704

**M&I BANK**
770 N. WATER STREET
MILWAUKEE WI 53202

**MAC OF PINE CITY, LLC**
3221 32ND AVENUE SOUTH
SUITE 900
GRAND FORKS ND 58201

**MARC D. KOHL**
39101 DARLING LANE
HINCKLEY MN 55037

**MARC E TRESSLER**
3400 BARBARA LN
BURNSVILLE MN 55337

**MARSH CONSUMER**
333 SOUTH SEVENTH, STE 1600
MINNEAPOLIS MN 55402-2427

**MARSHALL BANK FIRST**
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS MN 55402

**MCENROE, CATHERINE**
LEONARD STREET & DEINARD
150 S FIFTH ST STE 2300
MINNEAPOLIS MN 55402

**MEYER, MICHAEL, ESQ.**
4545 IDS CENTER
80 S EIGHTH ST
MINNEAPOLIS MN 55402

**MICHAEL REYES**
PO BOX 205
BACKUS MN 56435

**MIKDEN PROPERTIES**
7002 6TH STREET NORTH
OAKDALE MN 55128

**MINNESOTA DEPT. OF REVENUE**
PO BOS 64649
SAINT PAUL MN 55164-0649

**MINNESOTA DEPT. OF REVENUE**
MAIL STATION 7701
SAINT PAUL MN 55146-7701

**MIRAGE**
3400 LAS VEGAS BLVD
LAS VEGAS NV 89109

**MN DEPT OF PUBLIC SAFETY**
DRIVER & VEHICLE SERVICES
445 MINNESOTA ST

**MONICA CLARK, ESQ.**
50 S SIXTH ST
STE 1500
MINNEAPOLIS MN 55402-1498

**NATHAN THIEMAN**
1030 8TH AVE SW
PINE CITY MN 55063

**NEVADA STATE BANK**
6505 NORTH BUFFALO DRIVE
LAS VEGAS NV 89131

**NITROGREEN**
P.O. BOX 41
MAPLE PLAINE MN 55359

**NORTHRIDGE FARM ASSOCIATION**
P.O. BOX 767
WAYZATA MN 55391

**OLD REPUBLIC SURETY**
1503 - 42ND ST
STE 100
DES MOINES IA 50305

**PREMIER AQUARIUM**
6340 IRVING AVE S.
RICHFIELD MN 55423

**PREMIER BANKS**
1875 W. HIGHWAY 36
ROSEVILLE MN 55113

**PRINDLE, DECKER & AMARO, LLP**
310 GOLDER SHORE - 4TH FLOOR
LONG BEACH CA 90802

**PROHOVSKY, BILL**
11700 CROSS AVE
CROSSLAKE MN 56442

SAINT PAUL MN 55101-5160
**MOSS AND BARNETT**
4800 WELLS FARGO CENTER
90 S. 7TH STREET
MINNEAPOLIS MN 55402

**NEIMAN MARCUS**
P.O. BOX 5235
CAROL STREAM IL 60197

**NIEDERNHOEFER, MANFRED**
1563 RIVERCREST RD
LAKELAND MN 55043

**NORTHMARQ CAPITAL**
3500 AMERICAN BLVD WEST, SUITE 500
BLOOMINGTON MN 55431

**NORTHWOODS BANK**
PO BOX 112
PARK RAPIDS MN 56470

**PRALLE, GARY**
3625 PINE HOLLOW PL
STILLWATER MN 55082

**PREMIER BANK, A MINNESOTA
CORPORATION**
C/O THE LAW OFFICE OF STEVEN L.
MACKEY
1054 BUCHER AVENUE
SHOREVIEW MN 55126

**PRESS A DENT INC**
1154 S HIGH ST
DENVER CO 80210

**PROFESSIONAL SERVICE BUREAU**
11110 INDUSTRIAL CIRCLE NW
STE B
ELK RIVER MN 55330-0331

**R. OLSON/WATERFRONT PROPERTIES**
73 N BROADWAY
FARGO ND 58102

**RIVERLAND BANCORPORATION**
700 SEVILLE DRIVE
JORDAN MN 55352

**RIVERWOOD BANK/FIRST FEDERAL
SAVINGS BAN**
CROSSLAKE - LOAN PRODUCTION OFFICE
PO BOX 899
CROSSLAKE MN 56442

**RONALD R SMETANA**
11057TH STREET SW
PINE CITY MN 55063

**RUNCK, DAVID E, ESQ.**
400 FLAGSHIP CORP CENTER
775 PRAIRIE CENTER DR
EDEN PRAIRIE MN 55344

**SCHUYLER SCARBOROUGH**
19181 SPENCER ROAD UNIT #15
BRAINERD MN 56401

**SILVER CLIFF ASSOCIATION**
1201 CEDAR LAKE RD S.
MINNEAPOLIS MN 55416

**ST. CROIX YACHT CLUB**
P.O. BOX 2263
STILLWATER MN 55082

**STATE OF MINNESOTA DEPT OF
REVENUE**
600 NORTH ROBERT STREET
ST. PAUL MN 55101

**SUMMERS PROPERTY MANAGEMENT**
111K AABC
ASPEN CO 81611

**RANDY'S SANITATION**
P.O. BOX 169
DELANO MN 55328

**ROE, JESSICA LIPSKY, ESQ.**
BERNICK LIFSON ET AL
500 WAYZATA BLVD STE 1200
MINNEAPOLIS MN 55416

**ROYAL JEWLERS**
73 BROADWAY
FARGO, ND 58102

**RUTH ANN BIEDERMAN**
414 7TH AVE NE
PINE CITY MN 55063

**SCOTT A. KEYPORT**
1802 AIRWAVES RD NE
PINE CITY MN 55063

**SOURCE GAS**
P.O. BOX 660474
DALLAS TX 75266

**State Farm Mutual Automobile Insurance
Company**
c/o Jeffrey Chadwick
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661

**STORCHECK CLEANERS**
857 7TH STREET
ST. PAUL MN 55106

**SWANSON, MATTHEW A, ESQ.**
150 S FIFTH ST
STE 2300

MINNEAPOLIS MN 55402

**TCHIDA, BRYANT D., ESQ.**
LEONARD STREET & DEINARD
150 S 5TH ST STE 2300
MINNEAPOLIS MN 55402

**TAMMY L. RUSHING**
748 A WILFRED ROAD
HUDSON WI 54016

**THE MIRAGE CASINO-HOTEL**
C/O MARK W. RUSSELL ESQ
3400 LAS VEGAS BLVD S
LAS VEGAS NV 89109

**TOYOTA FINANCIAL SERVICES**
301 CARLSON PKWY, STE. 210
MINNETONKA MN 55305

**US BANK VISA CARD**
P.O. BOX790408
ST. LOUIS MO 63179

**VENTURE BANK**
5601 GREEN VALLEY DRIVE
SUITE 120
BLOOMINGTON MN 55437

**VFS FINANCING, INC.**
10 RIVERVIEW DR
ATTN BETH BONELL
DANBURY CT 06810

**VICTORIA INSURANCE**
1100 LOCUST STREET
DES MOINES IA 50391

**WAGENER, MAURICE J.**
13700 WAYZATA BLVD
HOPKINS MN 55305

**WASHINGTON COUNTY TREASURER**
GOVERNMENT CENTER
14949 - 62ND ST N
STILLWATER MN 55082

**WASHINGTON MUTUAL BANK, FA**
400 E MAIN ST
STOCKTON CA 95290

**WASTE PARTNERS**
P.O. BOX 677
PINE RIVER MN 56474-0677

**WATERFORD ASSOCIATION**
P.O. BOX 1353
MINNEAPOLIS MN 55480-1353

**WELLS FARGO**
C/O DAVID GALLE
45 SOUTH SEVENTH ST, STE 3300
MINNEAPOLIS MN 55402

**WELLS FARGO BANK N.A.**
LOAN ADJUSTMENT GROUP
90 SOUTH 7TH STREET
MINNEAPOLIS MN 55402

**WELLS FEDERAL BANK**
53 FIRST ST. SW
WELLS MN 56097

**WI DEPT OF TRANSPORTATION**
PO BOX 7949
MADISON WI 53707

**WILLIAM BRODY**
BUCHALTERNEMER
1000 WILSHIRE BLVD, STE 1500
LOS ANGELES CA 90017-2457

**ZAPPIA, THOMAS M., ESQ.**
ZAPPIA & LEVAHN
941 HILLWIND RD NE STE 301
MINNEAPOLIS MN 55432

**WORLD OMNI FINANCIAL CORP.**
190 JIM MORAN BOULEVARD
DEERFIELD BEACH FL 33442