## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

-----------------------------------------------

BKY No. 09-50779

In re:

Dennis E. Hecker,

Debtor.

**TRUSTEE'S REPLY MEMORANDUM TO
DEBTOR'S RESPONSE TO TRUSTEE'S
MOTION FOR PROTECTIVE ORDER
REGARDING 11 U.S.C. §704**

-----------------------------------------------

### BACKGROUND

On June 4, 2009 the Debtor filed bankruptcy.  Schedules were due on June 22, 2009.  On June 17, 2009, search warrants were executed on Debtor's homes and business headquarters.  On June 22, 2009, the Debtor filed an application to extend the time to file schedules to July 1, 2009. An order was entered extending the time.

Over 120 days have passed since this case was commenced.  The Debtor has apparently made no effort to review the documents which were seized in the execution of the June 17, 2009 search warrants.  Affidavit of Randall L. Seaver dated October 6, 2009 ("**Seaver Aff.**") at par. 2.

The Debtor has never filed amended Schedules I and J.  The original schedules have "0.00" on every line.

In response to this motion, the Debtor has not provided the Court with any detail of the supposed "efforts" he has made and time he has expended in compiling information to prepare and file truthful schedules.

It does appear, however, that since filing his bankruptcy petition, the Debtor has had time to take vacation trips to Hawaii and Las Vegas.[1]  He has also had the time available to attempt to purchase a multi-million dollar home in Kenwood.  Seaver Aff., Ex. A.

---

[1] It appears from the tickets that these may have been tickets purchased by the Debtor pre-petition and exchanged post-petition.

The value of this bankruptcy estate will be increased by the amount of additional assets the Trustee is able to locate. Solely through the Trustee's efforts in seeking the truth, the Trustee discovered the transfer of a $154,000 ring to Jessica Robb,[2] and the transfers by the Debtor of (1) a 2008 Harley Davidson motorcycle; (2) his interest in a 2008 Malibu Wavesetter boat; and (3) a 2007 Cobalt boat. <u>None of those items were voluntarily disclosed by the Debtor until after confronted with the Trustee's knowledge of those items</u>. Similarly, the Debtor did not disclose the magnitude of transfers to his girlfriend, Christi Rowan, until he knew the Trustee was undertaking an investigation regarding those transfers and had conducted substantial discovery designed to uncover the truth. Suddenly, the Debtor "remembered," among other things, that he had spent over $30,000 to purchase a dog for Christi Rowan in February 2009, just months before the commencement of this bankruptcy case.

Additionally, the Debtor has never scheduled nor disclosed an extensive dock/lift system in place at his Crosslake vacation property. The Trustee discovered the existence of those items and the Debtor has now offered to purchase those items from the estate for $25,000.

The Trustee does not believe the existence of any of these items and transfers would have been voluntarily disclosed by the Debtor and, in fact, they were not voluntarily disclosed by the Debtor. The only disclosures occurred after the Debtor was confronted with evidence or knew the Trustee was about to obtain evidence regarding those items.

The "game" of concealing assets continues for the Debtor. As another example, the Debtor pre-paid for the lease of a home in Sturgis, South Dakota for the 2009 Sturgis Motorcycle Rally. The prepayment had been made prior to his filing. Seaver Aff., Ex. A (Rowan 0069).

---

[2] While the Trustee has been able to discover the $154,000 transfer to Jessica Robb, it appears, from the e-mail sent by Debtor to Ms. Robb on August 3, 2009, that there may be other "items" transferred by Mr. Hecker to her from 2007-2009. Seaver Aff., Ex. A, (Rowan 54). Other than a $10,000.00 cash transfer disclosed, the Debtor has not disclosed additional transfers to Ms. Robb in his statement of financial affairs.

The Debtor was even reminded of the prepayment by his assistant, Susan Miller.  *Id.*
Nonetheless, the Debtor never disclosed the existence of this asset, nor the existence of the lease
in his schedules.  This is another valuable asset concealed by the Debtor.

Another example of the Debtor disclosing assets only after the Trustee became aware of
their existence was the concealment by the Debtor of many watches including several Rolex
watches.  The Debtor's original schedules listed watches.  However, when the Trustee reviewed
insurance schedules (which he obtained from the Debtor), the Trustee discovered other watches
which were not scheduled by the Debtor.  The Trustee sued the Debtor in Adv. No. 09-5020 to
gain possession of both the scheduled and unscheduled watches.  After being sued, the Debtor
turned over the additional, unscheduled Rolex watches in mid-July 2009.  Finally, on September
1, 2009, the Debtor filed an Amended Schedule disclosing the existence of those watches that the
Trustee's litigation had forced him to disclose.  It is believed that those watches have a value in
the tens of thousands of dollars.

It is against this background of duplicity and concealment that the Court must consider
the Trustee's request.  To the extent that the Debtor learns that the Trustee has knowledge of
additional assets or transfers or other relevant information not previously disclosed by the
Debtor, the Debtor may elect to then "disclose" those items.  On the other hand, if the Debtor
does not know what additional assets the Trustee has discovered, the Debtor may offer some
truthful testimony about additional assets which have not been scheduled, but have not yet been
discovered by the Trustee.  That is, the possibility of the Trustee discovering additional assets for
the estate will be enhanced if the Trustee is able to conduct the Rule 2004 examinations without
the Debtor having been able to inspect records compiled by the Trustee.  Further, the Trustee's
investigation would be pursuing less of a "moving target."

3

1.    __The Debtor has made no effort to review his own records__.

The Debtor claims that he "cannot review his own records." That is not true. What is true is that he has not even bothered to seek to review the records which are in the possession of the authorities. The Debtor has not contacted the U.S. Attorney to arrange to review records. If he had done so, he would have been able to review them. Seaver Aff., par 2. The Debtor cannot use his failure to seek access to his records as a basis to obtain access to all the records that the Trustee has worked diligently, and at great expense, to compile. If the heading of the Debtor's paragraph on this section had been accurate, it would have stated: "The Debtor has made no attempt to review his own records." The disregard that this Debtor has shown for presenting complete and accurate evidence to this Court cannot now be rewarded by granting the Debtor unfettered access to the Trustee's investigation records, compiled at great expense to the estate.

## LEGAL ARGUMENT

The question before the Court is whether, given the facts in this case, the Trustee should be excused, furnishing "such information concerning the estate and the estate's administration as is requested by a party-in-interest," as otherwise required by 11 U.S.C. §704(7).

The Debtor argues that there is an eight factor test in determining whether to grant the Trustee the requested relief. The statute, in its plain language, does not provide an 8 factor test as suggested by the Debtor in his memorandum. The statute simply provides that such information will be produced "unless the court orders otherwise."

The question is "under what circumstances should a bankruptcy court order that a trustee does not have to produce documents to a debtor pending further order of the court?"[3] The

---

[3] Although the Trustee's motion, because of concerns that others acting on the Debtor's behalf would seek information from the Trustee, sought relief authorizing the Trustee not to disclose information, the goal and intent of the Trustee's motion is to obtain an order from the Court that the Trustee does not have to provide information and documents obtained by the Trustee to the Debtor under 11 U.S.C. §704(7) pending further order of the Court.

Debtor's assertion that there is an eight factor test can quickly be disposed of. The cases cited by the Debtor all arise under the Rules of Civil Procedure, and specifically, Rule 26(c) which governs the issuance of a protective order under certain circumstances.[4]

This is not an adversary proceeding and the Trustee is not seeking relief under Bankruptcy Rule 7026. Relief is sought under 11 U.S.C. §704(a)(2) which provides that information must be furnished "unless the court orders otherwise." Thus, the good cause standard, and specific items for consideration developed under Rule 26, have no application to this matter.

The Trustee believes this Court should consider whether the issuance of an order by this Court excusing the Trustee from opening his records to the Debtor would (1) further the policies of the Bankruptcy Code; and, (2) enhance the ability of the Trustee to fulfill his fiduciary duties of collecting and reducing to money property of the estate, investigating the financial affairs of the Debtor, and opposing the discharge of the Debtor. The Trustee believes that consideration of these factors require the issuance of an order excusing the Trustee from making information available to the Debtor pending further order of the Court.

1.      **Bankruptcy Code policy favors non-disclosure to the Debtor at this time**

This Debtor appears to believe that he is entitled to be treated far differently than any other debtor. Every other debtor, regardless of the complexity of their affairs, is expected to file truthful and complete schedules. Generally, those schedules are required to be filed at the time the bankruptcy case is commenced. This Debtor commenced his case on June 4, 2009, but did not file schedules and a statement of financial affairs at that time. Those documents were then due on June 22, 2009. Presumably, the Debtor and his attorneys were "working diligently" on

---

[4] Rule 26 is applicable in adversary proceedings pursuant to Bankruptcy Rule 7026. This may be a "contested matter" under Bankruptcy Rule 9014, implicating Bankruptcy Rule 7026, but the Trustee is not seeking relief under that provision.

gathering information and preparing those documents at least from the moment the bankruptcy petition was filed.  On June 17, 2009, just five days before the Debtor was required to file those schedules and statement financial affairs, certain of the Debtor's records were seized by law enforcement authorities in raids on the Debtor's homes and business.  By the time those records were seized the Debtor and his counsel should have been well on their way to having complete and truthful schedules and a statement financial affairs for filing.

The Debtor then obtained an additional extension of time to complete his filing and one of the stated reasons for which such an extension was the seizure of records by the authorities. The time for the Debtor to file schedules was again extended to July 1, 2009.  The Debtor did file his statement of financial affairs and schedules on that date.  The schedules and statement of financial affairs contain many misstatements and omissions.  For instance, schedules  I  and  J contained "0.00" for every single line in the Debtor's original schedules. Despite the passage of over 120 days since his filing, the Debtor has not disclosed a single item of income or expenses in his schedules.  Despite the passage of over 100 days since records were taken by authorities, the Debtor has apparently made no effort to review those records at the office of the U.S. Attorney.

While apparently having no time to file truthful information in this case, the Debtor has found time to take vacations in Hawaii and Las Vegas.  Seaver Aff., Ex. A.  The Debtor has also found time to negotiate for the purchase of a multimillion dollar home.  *Id.*

The Trustee, on the other hand, as this Court knows from the record before it, has expended extensive time and estate monies in gaining information about the Debtor's business and financial affairs.  Many of the Debtor's concealments, transfers, and false statements have

already been brought to the attention of the Court.  See, "Background," above, for a sampling of those items.

As a part of his investigation of the Debtor's financial affairs, the Trustee set the examination of the Debtor for October 14, 2009.[5]  The Debtor has apparently decided that he and his attorneys can simply let the Trustee do his work, at substantial expense to the estate, and later stroll into the Trustee's office and review all of the records the Trustee has compiled.  The Debtor will then know "what the Trustee knows" and can testify accordingly.

This is a treatment accorded to no other debtor.  Every other debtor files, or is expected to file, truthful schedules and a statement of financial affairs.  Debtor Dennis Hecker is not special and is not entitled to special treatment.  If all debtors treated their obligations under the Bankruptcy Code with such disdain, the system would fail.  If all debtors asserted that they needed to see what information the Trustee had before they submitted to a Rule 2004 examination, and before they could file accurate schedules, the system would fail.  The policy of voluntary and truthful disclosure is squarely against the Debtor having the ability to review all records collected by the Trustee, at least at this juncture in the case.

2.    **The Trustee's duties to collect property of the estate, investigate the financial affairs of the Debtor, and oppose the discharge of the Debtor will all be enhanced by the Debtor not having access to records obtained by the Trustee at this time.**

The Trustee has a duty to collect property of the estate, investigate the financial affairs of debtors and, if advisable, oppose the discharge of a debtor.  None of those duties will be furthered by allowing the Debtor unfettered access to the fruits of the Trustee's extensive and expensive labors at this point in the case.  To allow a Debtor to simply wait before submitting to

---

[5] The Debtor has told this Court through his filing that, apparently, he does not intend to appear at the scheduled examination because of unspecified "scheduling issues."

a Rule 2004 examination would be an affront to the basic policies of honesty and disclosure of the Bankruptcy Code.

The Debtor's apparent argument that he will not be able to truthfully answer questions unless he knows, in advance, what documentary evidence is possessed by the Trustee, reveals his true motivation.  Contrary to the Debtor's representations to the Court, the Trustee cannot "trick" the Debtor into perjuring himself.  Truthful testimony is solely within the Debtor's control.  All this Debtor has to do is to testify truthfully.  He does not need to review documents in the Trustee's possession prior to his examination in order to provide truthful testimony.

<u>CONCLUSION</u>

Providing Debtor with the special treatment that he is requesting is contrary to the intention and goals of the disclosure requirements of 11 U.S.C. §704(7).  The Trustee's request for an order excusing compliance with 11 U.S.C. §704(7) until further order of the Court should be granted.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE, LTD.**

/e/  Matthew R. Burton

Dated:  October 6, 2009                    By:_____
                                                    Matthew R. Burton, #210018
                                                    100 South Fifth Street, Suite 2500
                                                    Minneapolis, Minnesota  55402
                                                    Telephone:  (612) 332-1030
                                                    Facsimile:  (612) 332-2740

ATTORNEYS   FOR   RANDALL   L.
SEAVER, TRUSTEE

410284

8

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

-----------------------------------------------

BKY No. 09-50779

In re:

Dennis E. Hecker,                                    **AFFIDAVIT OF RANDALL L. SEAVER**

       Debtor.

-----------------------------------------------

STATE OF MINNESOTA    )
                             )
COUNTY OF DAKOTA     )            Randall L. Seaver, being first duly sworn,
deposes and states as follows:

    1.     I am the Trustee in the above matter and have knowledge of the facts contained herein.

    2.     I have been advised by an attorney in the Office of the U.S. Attorney that on the request of the Debtor or his attorney, that office would have made and would now make records seized from the Debtor available to him for review.  I have also been advised that no such request has been made.

    3.     Christi Rowan recently produced some records in response to a Rule 2004 Subpoena.  Attached as Exhibits A are true and correct copies (with redaction if appropriate) of documents provided by Ms. Rowan bearing control numbers Rowan 0027, 40,  41, 54, 56, 57 and 69.

    4.     Attached hereto as Exhibit B is a true and correct copy (with redaction where appropriate) of a statement produced by TCF for a TCF account for New Dimension Advisors, LLC for the time period ending 8/31/09.  I believe that New Dimension Advisors, LLC is a business entity used by the Debtor for post-petition activities.

    5.     Attached hereto as Exhibit C are true and correct copies of the Debtor's original B(7) and the supplemental B(7).  After the complaint in ADV No. 09-5020 was filed, the Debtor turned additional unscheduled watches over to me.  Those watches are itemized at the Debtor's

Supplemental Schedule B(7) filed on September 1, 2009. I have met with a representative from AAA Watches and he has inspected watches turned over by the Debtor. It was estimated by that individual that the value of Rolex and other watches not originally scheduled by the Debtor, but turned over to the Trustee after commencement of ADV No. 09-5020, which watches are itemized at Supplemental Schedule B(7), filed by the Debtor on September 1, 2009, have a total value of in the tens of thousands of dollars. On July 13, ADV No. 09-5020 was commenced by me against the Debtor, seeking, among other things, the turnover of unscheduled watches. I request that the court take judicial notice of that complaint.

6.      Attached hereto as Exhibit D is a true and correct copy of one page of a "transaction detail account" report was provided to me by Mr. Hecker's attorneys. It is my understanding that this report relates to transactions by Mr. Hecker. I have underlined apparent payments to the Mathiesens and the apparent payment for the purchase of a 2008 Harley Davidson motorcycle.

7.      Attached hereto as Exhibit E is a true and correct copy of a document entitled "Lease Agreement" provided to me by Steve Mathiesen.

FURTHER YOUR AFFIANT SAYETH NOT.



Randall L. Seaver

Subscribed and sworn to before me
this __6__ day of October, 2009.

Notary Public

KARI L. FOGARTY
Notary Public-Minnesota
My Commission Expires Jan 31, 2010

```
  From: heckerauto
Subject: Important
   Date: August 26, 2009 7:07:51 AM CDT
     To: Eric Redlinger
     Cc: Christl Rowan
Reply-To: heckerauto@aol.com
```

Eric make this last and final offer.  2.4 purchase price c/d for 2 years int at 6 percent
200k down at closing
100k in 12 months
Bal in 24 months


Or
100k down rent for 2years purchase price 2.4 any time during 24 months for all cash. If don't exercise purchase they keep 100k

Its my intention to spend 100k this fall painting land scape pool and window treatments etc.

I can do the 2nd tomorrow.

Thanks denny
200k down
Sent via BlackBerry by AT&T



ROWAN0027

From: ▓▓▓▓▓▓▓▓▓▓▓
Subject: Re: Arrive
Date: August 20, 2009 1:53:06 PM CDT
To: Ms <mshulman@mirage.com>
Cc: Christi Rowan ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Reply-To: hecker▓▓▓▓▓▓▓▓

Matt I am sorry. We arrive Fri at 430 I am all screwed up on my times. Everything else the same. Thanks. Denny
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Shulman, Matt" <mshulman@mirage.com>

Date: Thu, 20 Aug 2009 08:47:53
To: ▓▓▓▓▓▓▓▓▓▓▓▓
Subject: Re: Arrive


??????

----- Original Message -----
From: hecker▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
To: Shulman, Matt
Sent: Thu Aug 20 08:46:21 2009
Subject: Re: Arrive

Matt good morning
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Shulman, Matt" <mshulman@mirage.com>

Date: Wed, 19 Aug 2009 13:06:32
To: <HECKERA▓▓▓▓▓▓▓▓▓▓
Subject: Arrive


Thur or fri? Tail #

ROWAN0040

From: heckera████████
Subject: Fw: Dolphins
Date: August 19, 2009 11:42:21 AM CDT
To: Christi Rowan ████████████████████
Reply-To: heckerauto@aol.com

Sent via BlackBerry by AT&T

-----Original Message-----
From: heckera████████████

Date: Wed, 19 Aug 2009 16:42:09
To: Ms<mshulman@mirage.com>
Subject: Re: Dolphins

████████████ christi 35. Thanks a Lani? I got $$$$ 4 _u. 630 PM
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Shulman, Matt" <mshulman@mirage.com>

Date: Wed, 19 Aug 2009 09:15:51
To: <HECKER████████████>
Subject: Dolphins

Need name and specific ages of kids for dolphins.   Eta thur?

ROWAN0041

```
   From: heckerauto██████████
   Date: August 3, 2009 10:31:27 PM CDT
     To: Jessica 11Robb ███████████████████
Reply-To: heckerauto██████████
```

Jessica,

The items that you were given by myself from June 2007 - 2009 have been given to the trustee. By the request of my attorneys by
the trustee , it's best that all are returned ASAP.
When the items are ready for pick up I will send a courier to retrieve them.
As you are aware of the abusive publicity and negative recourse
Of the BK , this may keep you out of being subject to the media frenzy.


Sent via BlackBerry by AT&T

ROWAN0054

Redacted

---

**The following flights are confirmed:**
**Date: Tuesday, August 4**                              **Flight: NW 624**
**Departs: Honolulu-Int'l, HI (HNL) at 5:15PM**                              ( Check in on August 3 )

Arrives: Minneapolis/St. Paul-Int'l, MN (MSP) at 6:05AMon Wednesday, August 5
Class of Service: First Class(P)                    Seat: 06-A, 06-B, 06-C
Flight Duration: 7 hours 50 minutes                Approximate Miles: 3,967
Meal Service: Dinner                               Aircraft: Airbus A330
Note: Operated by Northwest Airlines
Note: Check in with Northwest / Delta Air Lines

**The following E-Tickets have been issued:**
**Passenger Name:HECKER/DENNIS.E**
**Receipt Information for your E-Ticket Number(s):0122176830964**
**E-Ticket Issue Date: March 02, 2009**

| Flight | Origin-Destination | Date | Fare Basis Code | Status |
|---|---|---|---|---|
| NW 0221 | MSP-HNL | 28Mar2009 | F7R9N | Exchanged |
| NW 4994 | HNL-OGG | 28Mar2009 | F7R9N | Exchanged |
| NW 9295 | OGG-SLC | 04Apr2009 | F7R9N | Exchanged |
| NW 1026 | SLC-MSP | 05Apr2009 | F7R9N | Exchanged |

Base Fare: USD2073.42                                    Tax: 23.50
**Tax:78.62     Tax: 18.00**
Fare Includes fuel surcharge If applicable.                E-Ticket Total:USD2193.54
Method of Payment:   American Express ***********7006
Fare Calculation: 7 MSP NW X/HNL Q100.00NW OGG 936.71NW X/SLC Q100.00NW MSP
936.71USD2073.42END NW ZPMSPSFOHNLOGGSLC XT10.00AY 13.50XF MSP4.5OGG4.5SLC4.5
Other Restrictions: NON-REFUNDABLE
Name/Place of Issue: NWA.COM US E-TICKET TAR MPLS/ST PAUL MN/

**Passenger Name:HECKER/DENNIS.E**
**Receipt Information for your E-Ticket Number(s):0122180771353**
**E-Ticket Issue Date: June 07, 2009**

| Flight | Origin-Destination | Date | Fare Basis Code | Status |
|---|---|---|---|---|
| NW 0625 | MSP-HNL | 09Jul2009 | YR07UPNQ | Exchanged |
| NW 0624 | HNL-MSP | 18Jul2009 | YR07UPNQ | Exchanged |

Base Fare: USD2182.10                                    Tax: 14.00
**Tax:81.90     Tax: 7.20**
Fare Includes fuel surcharge If applicable.                E-Ticket Total:USD2285.20
                              Additional amount collected during ticket exchange:USD241.66
Method of Payment:   Visa***********6633
Fare Calculation: MSP NW HNL1091.05NW MSP1091.05USD2182.10END NW ZPMSPHNL XT
5.00AY9.00XF MSP4.5HNL4.5
Other Restrictions: NON-REFUNDABLE
Name/Place of Issue: NWA.COM US E-TICKET TAR MPLS/ST PAUL MN/

**Passenger Name:HECKER/DENNIS.E**

ROWAN0056

Receipt Information for your E-Ticket Number(s):0122182506275
E-Ticket Issue Date: July 24, 2009

| Flight | Origin-Destination | Date | Fare Basis Code | Status |
|--------|-------------------|------|-----------------|--------|
| NW 0625 | MSP-HNL | 29Jul2009 | YA00UPRQ | Flown |
| NW 0624 | HNL-MSP | 06Aug2009 | YA00UPRQ | Exchanged |

Base Fare: USD2409.24                                    Tax: 14.00
Tax: 88.76    Tax: 7.20
Fare includes fuel surcharge if applicable.                    E-Ticket Total:USD2519.20
                              Additional amount collected during ticket exchange:USD384.00
Method of Payment:    American Express ***********1032
Fare Calculation: MSP NW HNL1204.62NW MSP1204.62USD2409.24END NW ZPMSPHNL XT
5.00AY9.00XF MSP4.5HNL4.5
Other Restrictions: NON-REFUNDABLE 2285.20 USD
Name/Place of Issue: NWA.COM US E-TICKET TAR MPLS/ST PAUL MN/

Passenger Name:HECKER/DENNIS.E
Receipt Information for your E-Ticket Number(s):0122182778636
E-Ticket Issue Date: July 31, 2009

| Flight | Origin-Destination | Date | Fare Basis Code | Status |
|--------|-------------------|------|-----------------|--------|
| NW 0624 | HNL-MSP | 03Aug2009 | P0 | Exchanged |

Base Fare: USD2551.93                                    Tax: 14.00
Tax: 93.07    Tax: 7.20
Fare includes fuel surcharge if applicable.                    E-Ticket Total:USD2666.20
                              Additional amount collected during ticket exchange:USD147.00
Method of Payment:    Visa***********4986
Fare Calculation: MSP NW HNL1204.62NW MSP1347.31USD2551.93END NW ZPMSPHNL XT
5.00AY9.00XF MSP4.5HNL4.5
Other Restrictions:
Name/Place of Issue: NWA.COM US E-TICKET TAR MPLS/ST PAUL MN/

Passenger Name:HECKER/DENNIS.E
Receipt Information for your E-Ticket Number(s):0122182849956
E-Ticket Issue Date: August 04, 2009

| Flight | Origin-Destination | Date | Fare Basis Code | Status |
|--------|-------------------|------|-----------------|--------|
| NW 0624 | HNL-MSP | 04Aug2009 | P0 | Available |

Base Fare: USD2551.93                                    Tax: 93.07
Tax: 5.00    Tax: 16.20
Fare includes fuel surcharge if applicable.                    E-Ticket Total:USD2666.20
Method of Payment:    Visa***********4986
Document(s) Used during E-Ticket Issue: 0122182778636    Document(s) value total:    USD2666.20
Fare Calculation: MSP NW HNL 1204.62 NW MSP 1347.31 USD2551.93END NW ZPMSPHNL XT 7.20ZP
9.00XF MSP4.5HNL4.5
Other Restrictions:
Name/Place of Issue: NWA TICKETING CENTER SINGAPORE/

Redacted

ROWAN0057

**From:** heckerauto@aol.com
**Subject:** Fw:
**Date:** July 29, 2009 10:13:51 AM CDT
**To:** Christi Rowan ━━━━━━━━━━━━━━━
**Reply-To:** heckerauto@aol.com

Sent via BlackBerry by AT&T

---

**From:** "Susan A. Miller"
**Date:** Wed, 29 Jul 2009 07:47:03 -0500
**To:** Denny Hecker ━━━━━━━━━━
**Subject:**

Sturgis:

Your rental unit with the Mathisens starts July 30th thru August 9th.

---

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to clients of the Denny Hecker Automotive Group may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it to the sender and delete it completely from your computer system.

ROWAN0069



TCF NATIONAL BANK
801 MARQUETTE AVE
MINNEAPOLIS MN  55402

**Page 1**
STATEMENT DATE
08-31-09
7532
8

S T A T E M E N T

8      168 99
NEW DIMENSION ADVISORS LLC
500 FORD RD
MINNEAPOLIS MN  55426-1062

REFER YOUR FRIENDS TO TCF AND GET
REWARDED! $25 FREE FOR YOU, $50 FREE
FOR YOUR FRIENDS. PICK UP YOUR FORMS
AT ANY TCF BANK OR PRINT THEM ONLINE
AT WWW.TCFBANK.COM. OFFER SUBJECT
TO LIMITATIONS AND REQUIREMENTS. SEE
A TCF REPRESENTATIVE FOR DETAILS.

FOR INFORMATION CALL GREG DREHMEL          612-661-8349

   PAYING WITH YOUR TCF CHECK CARD IS EASY AND SAFE.  TO MAKE EVERYDAY PURCHASES, SIMPLY PRESENT YOUR
   CARD AT PARTICIPATING RETAILERS, SELECT CREDIT, AND SIGN!  IF YOU HAVE NOT ALREADY ACTIVATED YOUR
   CHECK CARD, CALL 1-800-823-0919.  MEMBER FDIC.

**FREE SMALL BUSINESS CHECKING**               STATEMENT PERIOD 08-01-09 THROUGH 08-31-09
**ACCOUNT NUMBER**          7532
**ACCOUNT SUMMARY**   BALANCE 07-31-09      CHECKS/WITHDRAWALS      DEPOSITS/ADDITIONS      BALANCE 08-31-09
                          31,569.40             53,339.76                36,063.36              14,293.00

AS OF 08/25/2009, YOUR TCF MILES PLUS BUSINESS REWARDS POINT TOTAL WAS 2,078.
TO REDEEM OR TO ACCESS YOUR MOST RECENT
TCF MILES PLUS BUSINESS REWARDS POINT TOTAL, PLEASE SIGN IN TO
ONLINE BANKING AT WWW.TCFBANK.COM AND CLICK ON THE REWARDS TAB.

**CHECKS PAID**

| CHECK NUMBER | AMOUNT PAID | DATE PAID | REF NUMBER | CHECK NUMBER | AMOUNT PAID | DATE PAID | REF NUMBER | CHECK NUMBER | AMOUNT PAID | DATE PAID | REF NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 717.00 | 0831 | 81169151 | 1008 | 5,300.00 | 0818 | 82134200 | 1011 | 5,800.00 | 0821 | 25045256 |
| * 1005 | 3,000.00 | 0807 | 25018107 | 1009 | 231.44 | 0819 | 83011622 | 1012 | 900.00 | 0813 | 24009463 |
| 1006 | 750.00 | 0810 | 81266383 | 1010 | 5,690.00 | 0826 | 83031632 | * 1014 | 9,800.00 | 0826 | 83028359 |
| 1007 | 1,500.00 | 0811 | 82133849 | | | | | | | | |

* INDICATES A SKIP IN SEQUENTIAL CHECK NUMBERS

**OTHER WITHDRAWALS AND CHARGES**

| DATE | AMOUNT | DESCRIPTION | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 0814 | 12,000.00 | WITHDRAWAL-WIRE TRANSFER | 0826 | 5,000.00 | MIRAGE HOTEL & CAS |
| 0814 | 25.00 | WIRE TRANSFER FEE | | | LAS VEGAS      NV |
| 0824 | 2,078.49 | SCOOP LAS VEGAS IN | 0827 | 70.00 | UNAVL FDS FEE-ITEM NT PD |
| | | LAS VEGAS      NV | 0827 | 35.00 | NSF FEE-ITEM PAID |
| 0825 | 357.83 | J CREW #584 | 0831 | 15.00 | WIRE TRANSFER FEE |
| | | LAS VEGAS      NV | 0831 | 70.00 | STOP PAYMENT FEE |

**DEPOSITS AND OTHER ADDITIONS**

| DATE | AMOUNT | DESCRIPTION | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 0812 | 5,073.36 | DEPOSIT          REF # 23055450 | 0827 | 5,690.00 | RETURNED CHECK # 1010 |
| 0826 | 7,500.00 | DEPOSIT          REF # 23033971 | 0828 | 500.00 | DEPOSIT          REF # 25054123 |
| 0827 | 9,800.00 | RETURNED CHECK # 1014 | 0831 | 7,500.00 | DEPOSIT-WIRE TRANSFER |

FOR BALANCE, CHECKS PAID INFORMATION, FUNDS TRANSFER, DEPOSIT VERIFICATION, OR OTHER CUSTOMER SERVICE
QUESTIONS, VISIT US ONLINE AT TCFBANK.COM, OR CALL: 612-TCF-BANK (612-823-2265).  TOLL FREE AT
1-800-823-2265.  TDD 612-339-3075.  THANK YOU FOR BANKING WITH TCF.  NSF\OVERDRAFT FEE IS $35.



T000003

| Watches | Band | Make | Model | Misc. | Lot Value |
|---|---|---|---|---|---|
| yellow 18k | 18K Gold | Rolex | Day Date | | |
| yellow 18k | 18K Gold | Rolex | Daytona | | |
| yellow 18k | 18K Gold | Rolex | Submariner | | $22,400 |
| yellow 18k | Leather | Rolex Cellini | Cellini | | |
| Stainless | Leather | Tudor | Tiger Woods | | |
| *Stainless | Stainless | Yahtmaster | Rolex | | |
| | | | | | |
| Stainless | Leather black | Breitling | Chrono | lookalike | |
| Stainless | Stainless | Breitling | Colt Superdean | | $750 |
| *Stainless | Navy Rubber | Breitling | Chrono | lookalike | |
| | | | | | |
| Stainless | Rubber | Hublot | Big Bang | lookalike | |
| Stainless | Leather | Corum | Joker | | $8,750 |
| Stainless | Leather | Baume Mercier | Tank | | |
| *Rose Gold | Chocolate Rubber | Hublot | Big Bang | | |
| | | | | | |
| Stainless | Rubber | Panerai | Luminor | lookalike | |
| Stainless | Leather | Panerai | Luminor | | |
| Stainless | Stainless | Montblanc | GMT | | $2,500 |
| Stainless | Stainless | Montblanc | Chrono | | |
| Goldplate | Leather | Montblanc | Chrono | | |
| | | | | | |
| Stainless | Leather | Euro Watch Co. | Ganador | | |
| Stainless | Leather | Officin a del tempo | #A26361 | | |
| Stainless | Leather | Damiani | Tank | | $300 |
| Stainless | Leather | Versace | Chrono | | |
| Stainless | Stainless | Versace | | | |
| | | | | | |
| Stainless | Both | Kobold | Automatic | | |
| Stainless | Both | Kobold | Automatic | | |
| BLK Stainless | Rubber | Momo | Chrono | | $150 |
| Stainless | Leather | Chevy logo | | | |
| Stainless | Rubber | Empirio Armani | | | |
| | | | | | |
| Stainless | Yellow Rubber | Techno Marine | | | |
| Stainless | Blue Rubber | Techno Marine | | | |
| Stainless | Black Rubber | Swiss Army | | | $250 |
| Stainless | Stainless | Swiss Army | | | |
| Stainless | Stainless | Swiss Army | | | |
| | | | | | |
| Stainless | Leather | Grimoldi | Borgonvo | | |
| Stainless | Nylon | Nixon | Square | | |
| *Stainless | Rubber | Tommy Bahama | | | $100 |
| Stainless | Stainless | Tommy Hilfiger | | | |
| Stainless | Nylon | Tommy Bahama | | | |
| | | | | | |
| ? | | | Cartier | Travel Clock | $90 |
| | | | | | |
| 18k | Ring | | N/A | Wedding band | $24,000 |



EXHIBIT C

Hecker - Supplemental Exhibit B(7)

| Watches | Band | Make | Model | Misc. | Lot Value |
|---|---|---|---|---|---|
| Stainless | Stainless | Breitling | | | |
| Silver | Black leather | Breitling | | | |
| Black | | Bulgari | | Lookalike | |
| | Orange | Lockman | | | |
| | Leather | Panerai | | | |
| | | Panerai | Luminor Marina | | |
| | Brown leather | Panerai | Luminor | | |
| | Red | Porsche | | | |
| Black face with gold trim | Gold | Rolex | Submariner | | |
| Blue face with gold trim | Stainless | Rolex | Submariner | | |
| Gold | Gold | Rolex | Yachtmaster | | |
| Gold | Gold | Rolex | Daytona | | |
| Platinum | Platinum | Rolex | Day/Date | | |
| Black face with stainless trim | Black leather | Tudor | Tiger | | |


EXHIBIT D

## LEASE AGREEMENT

LEASEE
DENNY HECKER
500 FORD ROAD
MINNEAPOLIS, MN 55426
612 850 1254/763 493 2093 fax

LEASOR
STEVE AND JULIE MATHIESEN
612 WEBER DR.
STURGIS, SD 57785

RENTAL FEE
$8000.00
$ 500.00 Discount
$7500.00 TOTAL RENTAL FEE
$1000.00 Non-refundable deposit due Nov 24, 2008
$6500.00 rental balance due by January 1, 2009

LENGTH OF STAY
THURSDAY JULY 30, 2009 NOON THROUGH
SUNDAY AUGUST 9, 2009 NOON

OCCUPANCY
8 PERSONS MAXIMUM. NO PARTIES, NO PETS.
OCCUPANTS WILL ABIDE BY DIRECTIONS/
REQUESTS ASSOCIATED WITH LIMITATIONS
OF PROPERTY/UTILITIES.

NON-SMOKING. NO SUBLEASING ALLOWED. LEASEE WILL BE LIABLE FOR
DAMAGES UNDER CONDITIONS OF LEASE. NO TENTS OR CAMPERS. THE
OCCUPANTS OF STATED PROPERTY WILL ADHERE TO THE LAWS AND
ORDINANCES OF THE STATE OF SOUTH DAKOTA, MEADE COUNTY AND
THE CITY OF STURGIS. NOT RESPONSIBLE FOR INJURIES. ACCIDENTS OR
NEGLIGENCE.

LEASEE
SIGNATURE _____ for D. HECKER _____

LESSOR
SIGNATURE _____

EMERGENCY/LOCAL CONTACT PERSON TO BE DETERMINED.



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

------------------------------------------------

BKY No. 09-50779

In re:

Chapter 7

Dennis E. Hecker,

        Debtor.

------------------------------------------------

### UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2009, I caused the following documents:

> ***Trustee's Reply Memorandum to Debtor's Response to Trustee's Motion for Protective Order Regarding 11 U.S.C. §704 and Affidavit of Randall L. Seaver***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

/e/  Stephanie Wood

Dated:  October 6, 2009
_____

Stephanie Wood
100 South Fifth Street, Suite 2500
Minneapolis, MN  55402
(612) 332-1030

409686