**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In re:

DENNIS E. HECKER,

   Debtor.

Bky. 09-50779

Chapter 7

**NOTICE OF HEARING AND PRECAUTIONARY MOTION OF TOYOTA MOTOR
SALES, U.S.A., INC. FOR RELIEF FROM THE AUTOMATIC STAY**

TO:   The Debtor and other entities specified in Local Rule 9013-3.

1.   Toyota Motor Sales, U.S.A., Inc. ("TMS") moves the Court for the relief requested below (the "Motion") and gives notice of hearing.

2.   The Court will hold a hearing on this Motion at 2:00 P.M. on November 12, 2009, in Courtroom No. 8W, at the United States Courthouse, at 300 South Fourth Street, in Minneapolis, Minnesota.

3.   Any response to this Motion must be filed and served by delivery not later than November 6, 2009, which is three days before the time set for the hearing (excluding Saturdays, Sundays and holidays), or filed and served by mail not later than November 2, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this Chapter 7 case was filed on June 4, 2009. The case is now pending in this Court.

5.   This Motion arises under 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001. This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9006-1, 9013-1, 9013-2 and 9017-1. TMS

requests relief to permit it to effectuate the termination of a Dealer Agreement, as more fully described below.

6. TMS and Brainerd Imports, LLC ("Brainerd Imports"), an entity owned by the Debtor,[1] are parties to a Toyota Dealer Agreement dated July 30, 2007 (the "Dealer Agreement"), whereby TMS appointed Brainerd Imports as an authorized Toyota dealer for the dealership located at 7036 Lake Forest Road in Baxter, Minnesota (the "Brainerd Location").

7. Prior to the commencement of this case, as a result of violations of the Dealer Agreement and in compliance with Minnesota state law, TMS sent a Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota dated March 25, 2009 (the "First Termination Notice").[2] The First Termination Notice stated that the Dealer Agreement would terminate on June 23, 2009. *See* Minn. Stat. § 80E.08(2)

8. TMS agreed to extend the termination of the Dealer Agreement under the First Termination Notice by letter extensions dated June 22, 2009, August 21, 2009, and August 27, 2009. In the August 27, 2009 extension, TMS agreed to extend the termination of the Dealer Agreement under the First Termination Notice through October 6, 2009.

9. On July 7, 2009, TMS sent a Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota (the "Second Termination Notice"), stating that the Dealer Agreement would terminate pursuant to the Second Termination Notice on October 6, 2009. *See* Minn. Stat. § 80E.08(2).

10. Starting in August 2009, the Brainerd Location was closed for more than seven consecutive business days. Based on the closure of the Brainerd Location,[3] TMS sent another

---

[1] On information and belief, Brainerd Imports is 99% owned by the Debtor and 1% by Inver Grove Investments, Inc., which itself is owned 100% by the Debtor.

[2] Brainerd Imports does business as "Hecker's Brainerd Baxter Toyota."

[3] The First Termination Notice and the Second Termination Notice were based, among other things, on Brainerd Imports' failure to maintain an adequate flooring line and to provide TMS with certain financial information.

2

Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota dated September 10, 2009 (the "Third Termination Notice" and, together with the First Termination Notice and the Second Termination Notice, collectively, the "Termination Notices"), stating that the Dealer Agreement would terminate under the Third Termination Notice on September 29, 2009. *See* Minn. Stat. § 80E.08 (3)(a)(2).4

11.     Since the filing of his case in June, the Debtor identified to TMS three prospective purchasers (including the most recent purchaser, Paul Walser) for the Brainerd Imports Toyota assets. In the hope that the Debtor would consummate an acceptable transfer of the Brainerd Imports Toyota assets, TMS repeatedly withheld (but explicitly retained) enforcement of its legal right to terminate the Dealer Agreement. Based on the terms of the most recent proposal—a September 14, 2009 Asset Purchase Agreement for the Toyota assets held by Brainerd Imports (the "Asset Purchase Agreement")—TMS agreed to extend the termination of the Dealer Agreement through October 6, 2009 and, subsequently, through October 22, 2009, by letter extensions dated September 25, 2009 and October 6, 2009.

12.     On October 16, 2009, based on TMS's receipt and review of documents customarily relied upon to evaluate and approve an asset transfer, TMS gave its written conditional and contingent approval of the transfer of the Brainerd Imports Toyota Dealer Agreement to Paul Walser as reflected in the Asset Purchase Agreement. TMS also agreed, in a letter dated October 22, 2009, to extend the termination of the Dealer Agreement through November 2, 2009 to correspond with the date set forth in its October 16, 2009 letter of conditional and contingent approval. Accordingly, the Dealer Agreement terminates as of November 2, 2009 pursuant to its terms and as provided for in the final extension.5

---

4   Brainerd Imports has no colorable defenses to the merits of TMS's Termination Notices. As an example, the fact that the dealership has had its doors closed for a period well beyond seven consecutive business days is a non-curable default under the Dealer Agreement specifically enforceable by Minnesota state law. *See* Minn. Stat. § 80E.08(3)(a)(2).

5   On October 27, 2009, in reliance on its receipt of the Trustee's Motion to Approve the Settlement Agreement (the Asset Purchase Agreement), TMS gave a second written

3

13. The parties did not comply with the terms of the conditional approval. Subsequently, on November 2, 2009, counsel for the Chapter 7 Trustee advised TMS that it appears that the proposed buyer is abandoning the transaction.

14. Therefore, after more than four months of granting extensions of its right to enforce its Termination Notices, TMS has filed this Motion to effectuate the termination of the Brainerd Imports Toyota Dealer Agreement at its earliest opportunity—on the date of the termination of the Dealer Agreement and upon information from the Chapter 7 Trustee that the proposed transaction does not appear to be going forward.

15. Termination of the Dealer Agreement is effectuated by, among other things, taking steps so that the dealer no longer has the ability to purchase cars from TMS or seek reimbursement for warranty work it performs—*i.e.*, the dealer no longer has access to the computer-based ordering or warranty-reimbursement system. To the extent necessary (as discussed more fully in the Memorandum), TMS seeks relief from the stay to take the appropriate and usual steps to effectuate the termination of the Dealer Agreement.

16. TMS respectfully submits that relief is necessary in this case to minimize the consequences of a delay in the effectuation of the termination of the Dealer Agreement. The abrupt closure of the Brainerd Location has left TMS without representation in the Brainerd area. The nearest Toyota dealer for most customers in this area is in St. Cloud, more than 60 miles away from the now-closed Brainerd Location. Customers who are interested in purchasing a Toyota vehicle, or in having warranty repairs and other service work performed on their Toyota car or truck, have been seriously inconvenienced by the closure of the Brainerd Location.

---

conditional and contingent approval of the transfer of the Brainerd Imports Toyota assets. Among the explicit conditions of TMS's second contingent and conditional approval were: (1) that the parties obtain this Court's consent to the transfer of the Brainerd Imports Toyota assets as required under the terms of the Asset Purchase Agreement and (2) that the parties execute all documents necessary to consummate the transfer of the Brainerd Imports Toyota assets by October 30, 2009.

17. In 2008, the dealership's last year of full operation, the Brainerd Location wrote over 3500 Repair Orders for Toyota service customers at the dealership. The Brainerd Location also sold 613 new cars and trucks to Toyota customers in 2008. These customers in the Brainerd area are now without a convenient Toyota dealership at which they can purchase a Toyota vehicle or have authorized service performed on a Toyota vehicle to ensure that it is roadworthy and in compliance with the Toyota warranty.

18. Brainerd Imports has been under a Notice of Intent to Terminate since March 25, 2009. TMS and the Brainerd community have suffered significant adverse consequences as a result of the dealership's failure to comply with its obligations under the Dealer Agreement and state law. The failure of Brainerd Imports, the Debtor, and other necessary parties to consummate not just one but three separate transfers of the Toyota dealership assets in the past several months make it clear that TMS and the Brainerd community will continue to suffer if Brainerd Imports is allowed to further delay termination through the artifice of illusory buy/sell proposals.

19. In addition, without representation in the Brainerd area, TMS is losing sales and service opportunities to competitors, and thereby suffering significant damage to its image. A number of dealers have expressed an interest in the Brainerd Location, but Brainerd Imports cannot be replaced as a Toyota dealer in Brainerd—despite the fact that it is closed—until it is terminated. Accordingly, effectuating the termination of the Dealer Agreement will hasten the reopening of a new Toyota dealer in Brainerd and the resumed provision of sales and services to Toyota customers and potential customers.

20. If testimony is necessary to any facts relevant to this Motion, TMS reserves the right to have its representatives testify as to any such facts.

WHEREFORE, for the reasons more fully set forth in the Memorandum, TMS respectfully moves the Court for entry of an Order, if required, granting it immediate relief from the automatic stay so that it may effectuate the termination of the Dealer Agreement and granting such other relief as may be just and equitable.

Dated: November 2, 2009                                DORSEY & WHITNEY LLP

 

                                                                                   By: /e/ Katherine A. Constantine
Katherine A. Constantine (# 123341)
Steven J. Wells (# 0163508)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Toyota Motor Sales, U.S.A., Inc.

## VERIFICATION

I, Doug Bishop, Managing Counsel of Toyota Motor Sales, U.S.A., Inc., the movant named in the foregoing Notice of Hearing and Precautionary Motion For Relief of Automatic Stay, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on November 2, 2009

Signed: _____
Doug Bishop

Doug Bishop
Managing Counsel
Toyota Motor Sales, U.S.A. Inc.
19001 S. Western Ave
Torrance, CA 90501

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DENNIS E. HECKER,

Debtor.

Bky. 09-50779

Chapter 7

## MEMORANDUM IN SUPPORT OF PRECAUTIONARY MOTION OF TOYOTA MOTOR SALES, U.S.A., INC. FOR RELIEF FROM THE AUTOMATIC STAY

Toyota Motor Sales, U.S.A., Inc. ("TMS"), by and through its undersigned counsel, files this Memorandum in support of its Precautionary Motion for Relief from the Automatic Stay (the "Motion"), and respectfully states as follows:

### BACKGROUND

TMS and Brainerd Imports, LLC ("Brainerd Imports"), an entity owned by the Debtor,[1] are parties to a Toyota Dealer Agreement dated July 30, 2007 (the "Dealer Agreement"), whereby TMS appointed Brainerd Imports as an authorized Toyota dealer for the dealership located at 7036 Lake Forest Road in Baxter, Minnesota (the "Brainerd Location"). Prior to the commencement of this case, pursuant to violations of the Dealer Agreement and in compliance with Minnesota state law, TMS sent a Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota dated March 25, 2009 (the "First Termination Notice").[2] The First Termination Notice stated that the Dealer Agreement would terminate on June 23, 2009. *See* Minn. Stat. § 80E.08(2). TMS agreed to extend the termination of the Dealer Agreement under the First Termination Notice by letter extensions dated June 22, 2009, August 21, 2009, and

---

[1] On information and belief, Brainerd Imports is 99% owned by the Debtor and 1% by Inver Grove Investments, Inc., which itself is owned 100% by the Debtor.

[2] Brainerd Imports does business as "Hecker's Brainerd Baxter Toyota."

August 27, 2009. In the August 27, 2009 extension, TMS agreed to extend the termination of the Dealer Agreement under the First Termination Notice through October 6, 2009.

On July 7, 2009, TMS sent a Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota (the "Second Termination Notice"), stating that the Dealer Agreement would terminate pursuant to the Second Termination Notice on October 6, 2009. *See* Minn. Stat. § 80E.08(2). Starting in August 2009, the Brainerd Location was closed for more than seven consecutive business days. Based on the closure of the Brainerd Location,[3] TMS sent another Notice of Intent to Terminate to the Debtor and Hecker's Brainerd Baxter Toyota dated September 10, 2009 (the "Third Termination Notice" and, together with the First Termination Notice and the Second Termination Notice, collectively, the "Termination Notices"), stating that the Dealer Agreement would terminate under the Third Termination Notice on September 29, 2009. *See* Minn. Stat. § 80E.08(3)(a)(2).[4]

Since the filing of his case in June, the Debtor identified to TMS three prospective purchasers (including the most recent purchaser, Paul Walser) for the Brainerd Imports Toyota dealership assets. In the hope that the Debtor would consummate an acceptable transfer of the Brainerd Imports Toyota assets, TMS repeatedly withheld (but explicitly retained) enforcement of its legal right to terminate the Dealer Agreement. Based on the terms of the most recent proposal—a September 14, 2009 Asset Purchase Agreement for the Toyota dealership assets held by Brainerd Imports (the "Asset Purchase Agreement")—TMS agreed to extend the

---

[3]  The First Termination Notice and the Second Termination Notice were based, among other things, on Brainerd Imports' failure to maintain an adequate flooring line and to provide TMS with certain financial information.

[4]  Brainerd Imports has no colorable defenses to the merits of TMS's Termination Notices. As an example, the fact that the dealership has had its doors closed for a period well beyond seven consecutive business days is a non-curable default under the Dealer Agreement specifically enforceable by Minnesota state law. *See* Minn. Stat.§ 80E.08(3)(a)(2).

2

termination of the Dealer Agreement through October 6, 2009 and, subsequently, through October 22, 2009, by letter extensions dated September 25, 2009 and October 6, 2009.

On October 16, 2009, based on TMS's receipt and review of documents customarily relied upon to evaluate and approve an asset transfer, TMS gave its written conditional and contingent approval of the transfer of the Brainerd Imports Toyota assets to Paul Walser as reflected in the Asset Purchase Agreement. TMS also agreed, in a letter dated October 22, 2009, to extend the termination of the Dealer Agreement through November 2, 2009 to correspond with the date set forth in its October 16, 2009 letter of conditional and contingent approval. Accordingly, the Dealer Agreement terminates as of November 2, 2009 pursuant to its terms and as provided for in the final extension.[5]

Termination of the Dealer Agreement is effectuated by, among other things, taking steps so that the dealer no longer has the ability to purchase cars from TMS or seek reimbursement for warranty work it performs—*i.e.*, the dealer no longer has access to the computer-based ordering or warranty-reimbursement system. To the extent necessary (as discussed more fully herein), TMS seeks relief from the stay to take the appropriate and usual steps to effectuate the termination of the Dealer Agreement.

---

[5] On October 27, 2009, in reliance on its receipt of the Trustee's Motion to Approve the Settlement Agreement (the Asset Purchase Agreement), TMS gave a second written conditional and contingent approval of the transfer of the Brainerd Imports Toyota assets. Among the explicit conditions of TMS's second contingent and conditional approval were: (1) that the parties obtain this Court's consent to the transfer of the Brainerd Imports Toyota assets as required under the terms of the Asset Purchase Agreement and (2) that the parties execute all documents necessary to consummate (close) the transfer of the Brainerd Imports Toyota assets by October 30, 2009.

3

## DISCUSSION

### TMS's Motion is Timely

TMS delayed the filing of its Motion to enable the Debtor, the prospective purchaser, and other necessary parties as much time as possible to consummate the Asset Purchase Agreement and obtain the consent of the Chapter 7 Trustee and this Court, as required under the Asset Purchase Agreement.[6] However, the parties did not comply with the terms of the conditional approval. Subsequently, on November 2, 2009, counsel for the Chapter 7 Trustee advised TMS that it appears that the proposed buyer is abandoning the transaction. Therefore, after more than four months of granting extensions of its right to enforce its Termination Notices, TMS has filed its Motion to effectuate the termination of the Brainerd Imports Toyota Dealer Agreement at its earliest opportunity—on the date of the termination of the Dealer Agreement and upon information from the Chapter 7 Trustee that the proposed transaction does not appear to be going forward.

TMS respectfully submits that relief is necessary in this case to minimize the consequences of a delay in the effectuation of the termination of the Dealer Agreement. The abrupt closure of the Brainerd Location has left TMS without representation in the Brainerd area. The nearest Toyota dealer for most customers in this area is in St. Cloud, more than 60 miles away from the now-closed Brainerd Location. Customers who are interested in purchasing a Toyota vehicle, or in having warranty repairs and other service work performed on their Toyota car or truck, have been seriously inconvenienced by the closure of the Brainerd Location.

---

[6] TMS agreed to issue the prior extensions in reliance on the Debtor's submission of two earlier buy/sell proposals and with the hope that the dealership assets could be transferred rather than terminated. Those proposals, like the instant Asset Purchase Agreement, never received approval by this Court and never proceeded to closing.

4

In 2008, the dealership's last year of full operation, the Brainerd Location wrote over 3500 Repair Orders for Toyota service customers at the dealership. The Brainerd Location also sold 613 new cars and trucks to Toyota customers in 2008. These customers in the Brainerd area are now without a convenient Toyota dealership at which they can purchase a Toyota vehicle or have authorized service performed on a Toyota vehicle to ensure that it is roadworthy and in compliance with the Toyota warranty.

Brainerd Imports has been under a Notice of Intent to Terminate since March 25, 2009. TMS and the Brainerd community have suffered significant adverse consequences as a result of the dealership's failure to comply with its obligations under the Dealer Agreement and state law. The failure of Brainerd Imports, the Debtor, and other necessary parties to consummate not just one but three separate transfers of the Toyota franchise in the past several months makes it clear that TMS and the Brainerd community will continue to suffer if Brainerd Imports is allowed to further delay termination under the artifice of illusory buy/sell proposals.

In addition, without representation in the Brainerd area, TMS is losing sales and service opportunities to competitors, and thereby suffering significant damage to its image. A number of dealers have expressed an interest in the Brainerd Location, but Brainerd Imports cannot be replaced as a Toyota dealer in Brainerd—despite the fact that it is closed—until it is terminated. Accordingly, effectuating the termination of the Dealer Agreement will hasten the reopening of a new Toyota dealer in Brainerd and the resumed provision of sales and services to Toyota customers and potential customers. For these reasons, TMS asks that the Court grant its request for relief.

### **TMS's Motion Is Precautionary**

TMS did not seek stay relief in connection with the issuance of the Termination Notices. It did not need to: As set forth above, the Debtor is not a party to the Dealer Agreement, which is between TMS and Brainerd Imports. Moreover, the First Termination Notice was sent <u>pre-petition</u>. As a result of that Notice—and but for TMS's extensions of the termination date, which were made only to accommodate Brainerd Imports—the Dealer Agreement would have terminated without further action, based simply on the passage of time. While TMS believes that neither property of the Debtor nor property of the estate are implicated by the termination of the Dealer Agreement and the effectuation of that termination, TMS now seeks stay relief out of an abundance of caution, in light of some of the unusual positions asserted in this case and the interest in this dealership expressed by the Chapter 7 Trustee.

TMS's position is reinforced by actions taken by this Court in this case. For example, in its Memorandum Opinion and Order Disallowing Homestead Exemption entered on September 25, 2009, this Court refused to allow the Debtor to utilize the reverse-piercing-of-the-corporate-veil-doctrine to claim a homestead exemption in property owned by a limited liability company wholly owned by a second limited liability company in which the Debtor holds a majority interest. In disallowing the Debtor's claimed homestead exemption, this Court determined, among other things, that the limited liability companies owned by the Debtor are not his alter egos. For similar reasons, the automatic stay does not extend to actions taken against those entities owned by the Debtor, such as the sending of Termination Notices to Brainerd Imports.

However, because the *effectuation* of the termination involves actions by TMS which have a more discernible impact on Brainerd Imports than the issuance of Termination Notices,

6

and in consideration of certain positions previously taken in this case, TMS seeks relief from the stay to permit it to effectuate the termination of the Dealer Agreement.

## TMS Is Entitled to Stay Relief Under Section 362(d)

TMS is entitled to stay relief under Section 362(d)(1) and (2). Under the Bankruptcy Code, the court must grant relief from the stay if either of two alternatives is met:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d). With the exception of the equity issue, the debtor bears the burden of proof on all elements. *In re Marion Street Partnership*, 108 B.R. 218, 224 (Bankr. D. Minn. 1989); 11 U.S.C. § 362(g).

TMS is entitled to relief from stay for "cause." As set forth above, the Dealer Agreement expires *by its own terms* on November 2, 2009. The automatic stay does not enlarge contractual rights, and thus "will not prevent the automatic termination of a contract by its own terms." *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989). Accordingly, the post-petition termination of the Dealer Agreement by its terms constitutes "cause" under Section 362(d)(1).

Alternatively, TMS is entitled to relief under 11 U.S.C. § 362(d)(2). Under 11 U.S.C.

7

§ 362(d)(2), a creditor is entitled to relief from the stay if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. Here, the Debtor does not have equity in the Dealer Agreement – he is not a party to that agreement. Moreover, the Debtor is not reorganizing. *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005) (stating that, in a Chapter 7 case, "by definition, the property is not necessary for an effective reorganization"). Accordingly, TMS is entitled to relief from the automatic stay under Section 362(d)(2).

## CONCLUSION

WHEREFORE, TMS respectfully moves the Court for entry of an Order, if required, granting it immediate relief from the automatic stay under 11 U.S.C. § 362, so that it may effectuate the termination of the Dealer Agreement, and granting such other relief as may be just and equitable.

Dated: November 2, 2009

DORSEY & WHITNEY LLP

By: /e/ Katherine A. Constantine
Katherine A. Constantine (# 123341)
Steven J. Wells (# 0163508)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Toyota Motor Sales, U.S.A., Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DENNIS E. HECKER,

Debtor.

Bky. 09-50779

Chapter 7

## ORDER

The above-entitled matter came on for hearing before the above Court and the undersigned Judge on November 12, 2009, upon the Precautionary Motion of Toyota Motor Sales, U.S.A., Inc. for Relief from the Automatic Stay (the "Motion"). Appearances are as noted in the record. Capitalized terms appearing herein but not otherwise defined shall have the meanings contained in the Motion. Notice of the hearing on the Motion being adequate, and the Court, being fully advised of the premises, and based upon the Motion, all of the files and records in this case and the arguments of counsel, IT IS HEREBY ORDERED:

1. The Motion is granted.

2. The automatic stay is lifted to permit Toyota to effectuate the termination of the Dealer Agreement.

3. Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this Order is effective immediately.

Dated: November __, 2009

_____
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY COURT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Bky. 09-50779 |
| DENNIS E. HECKER, | Chapter 7 |
| Debtor. | |

## UNSWORN AFFIDAVIT OF SERVICE

Monica Clark states that on the 2nd day of November 2009, she did cause the (i) Notice of Hearing and Precautionary Motion of Toyota Motor Sales, U.S.A., Inc. for Relief From the Automatic Stay, (ii) Memorandum in Support of Precautionary Motion of Toyota Motor Sales, U.S.A., Inc. for Relief from the Automatic Stay, and (iii) [proposed] order, to be filed electronically with the Clerk of Court through ECF, and served via CM/ECF or Express Mail on the parties listed on Exhibit A.

Dated: November 2, 2009

DORSEY & WHITNEY LLP

By: /e/ Monica Clark
Monica Clark (# 28211X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Toyota Motor Sales, U.S.A., Inc.

# EXHIBIT A

*VIA ECF:*

Counsel for Debtor:

| | |
|---|---|
| Clinton E. Cutler | ccutler@fredlaw.com |
| Cynthia A. Moyer | cmoyer@fredlaw.com |
| Douglas W. Kassebaum | dkassebaum@fredlaw.com |
| Kendall L. Bader | kbader@fredlaw.com |

Trustee:

Randall L. Seaver
12400 Portland Avenue South, Suite 132
Burnsville, MN  55337                                    rlseaver@fullerseaverramette.com

Counsel for Trustee:

| | |
|---|---|
| Andrea M. Hauser | ahauser@losgs.com |
| Gordon B. Conn | conn@kwgc-law.com |
| Matthew R. Burton | mburton@losgs.com |
| Ralph Mitchell | rmitchell@lapplibra.com |

U.S. Trustee:

U.S. Trustee
1015 U.S. Courthouse
300 S. 4th St.
Minneapolis, MN  55415                                    ustpregion12.mn.ecf@usdoj.gov

Other Parties:

Alliance Bank
c/o Larry D. Espel                                         lespel@greeneespel.com
Kathleen K. Statler                                        kstatler@greeneespel.com

AnchorBank, fsb
c/o Nicholas J. Vivian                                     nvivian@eckberglammers.com

Associated Bank
c/o Joseph W. Lawver                                       jlawver@messerlikramer.com

Beal Bank Nevada
c/o Aaron R. Hartman                                       ahartman@aoblaw.com

| | |
|---|---|
| Blackstone Financial, LLC<br>c/o Brad A. Sinclair | bsinclair@serklandlaw.com |
| Christi M. Rowan<br>c/o William R. Skolnick | wskolnick@skolnick-shiff.com |
| Chrysler Financial Services Americas LLC<br>c/o Stephen L. Grinnell<br>Craig E. Reimer<br>Nicholas N. Nierengarten | stephen.grinnell@gpmlaw.com<br>creimer@mayerbrown.com<br>nicholas.nierengarten@gpmlaw.com |
| Crown Bank<br>c/o Jeffrey D. Klobucar | jklobucar@foleymansfield.com |
| GE Money Bank (Mervyn's)<br>c/o Recovery Management Systems Corp.<br>Attn: Ramesh Singh | claims@recoverycorp.com |
| Tamitha Hecker<br>c/o Nauni Jo Manty | ecf@mantylaw.com |
| HSBC Bank Nevada, N.A. (Neiman Marcus)<br>c/o Patti H. Bass | ecf@bass-associates.com |
| Hyundai Capital America<br>c/o Connie Lahn<br>David E. Runck | Connie.Lahl@fmjlaw.com<br>David.Runck@fmjlaw.com |
| John J. Sorci Trust<br>c/o Michael W. Malter<br>Julie H. Rome-Banks | michael@bindermalter.com<br>julie@bindermalter.com |
| JPMorgan Chase Bank, N.A.<br>c/o Matthew A. Swanson | matthew.swanson@leonard.com |
| Midwest Motors LLC<br>LKMCD Properties LLC<br>First National Bank<br>c/o Andrew Paul Moratzka | apm@mcmlaw.com |
| TCF National Bank<br>c/o Robert G. Parish | rparish@faegre.com |
| Toyota Financial Savings Bank<br>c/o Michael L. Meyer<br>Michael B. Lubic | mlmeyer@ravichmeyer.com<br>mlubic@sonnenschein.com |

4810-8724-4548\1

Toyota Motor Credit Corporation
c/o Timothy J. Peters

tpeters@peterslawplc.com

United States Rent A Car, Inc.
c/o Jamie R. Pierce

jpierce@hinshawlaw.com

U.S. Bank National Association
c/o Monica L. Clark

clark.monica@dorsey.com

VISIONBank
c/o Bruce H. Carlson

bruce.carlson@mlcfargolaw.com

*VIA EXPRESS MAIL*

Debtor:

Dennis E. Hecker
P.O. Box 1017
Crosslake, MN  56442

Other:

Bayport Marina Association, Inc.
Attn:  President, Managing Agent or Other Officer
200 Fifth Avenue South
Bayport, MN  55003

Linda M. Berreau, CPA, CMA, CFE
16418 Gladys Lane
Minnetonka, MN  55345