Q And they'd hold the paper on those financings?
A They would not pay to third-party retailers. It would be for people in the business of buying and selling stuff.
Q So what they were doing is they were financing others' purchase of inventory?
A To be resold.
Q Right.
A Yes.
Q So Northstate Financial wasn't in the business of buying a boat for itself to sit there and hold it and then resell it?
A I am Northstate Finance, for all intensive purposes. Northstate Finance is a separate company, LLC, but at the direction of whatever I chose to do is what they did.
Q Were they in that business?
A Were they a boat dealer?
Q Yes.
A No.
Q Were they a motorcycle dealer?
A No. They weren't a car dealer either.
Q Right. They financed car dealers, right?
A They financed car dealers who had inventories of cars, boats. The only thing they didn't finance

EXHIBIT 1



DENNIS E. HECKER
MINNEAPOLIS, MN
5208
DATE 12/2/08
PAY TO THE ORDER OF
Wild Prairie Harley
$ 23,590
Twenty three thousand five hundred ninety
Private Client Group
usbank
usbank.com
MEMO
05208

PAY TO THE ORDER OF
WELLS FARGO BANK MN, N.A.
FOR DEPOSIT ONLY
WILD PRAIRIE MOTORSPORTS, INC

| R/T Number | 09100002 | Processing Date | 20081204 |
|---|---|---|---|
| Sequence Number | 004050091656 | Amount | 23590.00 |
| Account Number | 2088 | Serial Number | 000000000000000 |

EXHIBIT 1A





**WILD PRAIRIE HARLEY-DAVIDSON/BUELL**
12480 Plaza Drive • EDEN PRAIRIE, MN 55344
PH: (952) 698-5000 • FAX: (952) 698-6004 • www.wildprairiehd.com

Stock #: 0904353VES Date: 11/28/2008 Salesperson BILL B SIGEL

Buyer Name: (Last) NORTHSTATE (First) FINANCIAL (Middle)

Co-Buyer Name: (Last) (First) (Middle)

Address: 500 FORD ROAD City: MINNEAPOLIS State: MN County: Zip: 55426

Home Phone: Bus. Phone: Buyer DOB: Co-Buyer DOB:

Buyer D.L. #: Co-Buyer D.L. #:

Buyers Insurance Co: Policy #:

PLEASE ENTER MY ORDER FOR: New ☐ Used ☐ Demo ☐ Lienholder Address

| YEAR | MAKE | MODEL | BODY | TRANSMISSION | COLOR | INTERIOR |
|---|---|---|---|---|---|---|
| 2008 | HD | FXDSE2 | MC | | 061 COBALT/A | |

| VIN # | LIC. # | TAB EXP. DATE | STATE | MILEAGE | DELIVERED ON OR ABOUT |
|---|---|---|---|---|---|
| 1HD1PS814SK927133 | | | | 10 | 11/28/2008 |

| OTHER CHARGES: | |
|---|---|
| USED H.O.G. MEMBER | N/A |
| TOTAL | N/A |

| | |
|---|---|
| CASH PRICE OF VEHICLE | 23,590.00 |
| FREIGHT | N/A |
| DEALER INSTALLED OPTIONS XXXXXXXXXXXXXXXXXXXXXXX SET UP | N/A |
| ACCESSORIES | -359.80 |
| LABOR | 359.80 |
| SUBTOTAL BEFORE TRADE | 23,590.00 |
| MVP | N/A |
| EXTENDED SERVICE PLAN | N/A |
| GAP | N/A |
| PREPAID MAINTENANCE | N/A |
| PREPAID WORK ORDER | N/A |
| GIFT CARD | N/A |
| DEBT PROTECTION | N/A |
| CREDIT LIFE/AH | N/A |
| OTHER CHARGES | N/A |
| MONEY ON ACCOUNT | N/A |
| TOTAL | 23,590.00 |
| LESS TRADE-IN ALLOWANCE FOR USED VEHICLE | N/A |

**TRADE-IN DATA**

| YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|
| | | | MC |

VIN #

LIEN HOLDER'S NAME

ADDRESS

| LICENSE PLATE # | LICENSE STATE | EXP. DATE |
|---|---|---|
| | | |

| MILEAGE NOW | TRANSMISSION |
|---|---|
| | |

DOES YOUR TRADE-IN HAVE A BRANDED TITLE OR INSURANCE SALVAGE HISTORY? YES ☐ NO ☐

| | | | |
|---|---|---|---|
| LICENSE PLATE | N/A | SUBTOTAL | 23,590.00 |
| TITLE FEES | N/A | TRADE DIFFERENCE | N/A |
| TRANSFER FEES | N/A | STATE & LOCAL TAXES | N/A |
| LIEN RECORDING FEE | N/A | FEDERAL LUXURY TAX | N/A |
| OPTIONAL ELECTRONIC TRANSFER FEE | N/A | DOCUMENT ADMINISTRATIVE FEE | N/A |
| TOTAL | N/A | SERVICE CONTRACT | N/A |
| TOTAL LICENSE & FEES | | | N/A |
| CASH SUBMITTED WITH ORDER | N/A | SUBTOTAL | 23,590.00 |
| LESS BALANCE OWING TO LIENHOLDER ON TRADE-IN | N/A | | N/A |
| TOTAL DOWN PAYMENT | | | N/A |
| **TOTAL AMOUNT DUE ON DELIVERY** | | | 23,590.00 |

**POLLUTION CONTROL SYSTEM DISCLOSURE (TRADE-IN VEHICLE)**

In order to comply with Minnesota Statutes, Section 325E.0951, no person may transfer a motor vehicle without providing a written disclosure to the transferee (buyer) certifying the condition of the pollution control system.

Transferor (seller) hereby certifies, to the best of his/her knowledge, that the pollution control systems on this vehicle being traded in, including the restricted gasoline fill pipe, have not been removed, altered, or rendered inoperative.

Seller's Signature ⓧ

**DEALER'S DISCLAIMER OF WARRANTY**

The Dealer expressly disclaims all warranties, either express or implied on the vehicle sold, except any warranties offered and explained in Paragraph 16 on the back of this contract. Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of the contract.

Buyer's Signature ⓧ

**DEALER'S POLLUTION CONTROL SYSTEM DISCLOSURE (VEHICLE BEING SOLD)**

Transferor (Dealer) hereby certifies, to the best of his/her knowledge, that the pollution control systems on this vehicle being sold, including the restricted gasoline fill pipe, have not been removed, altered, or rendered inoperative.

**IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

BUYER SIGNS X DATE 11/28/2008

CO-BUYER SIGNS X DATE

**Buyer agrees that this Agreement includes all of the terms and conditions on the front and back side hereof, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises, with any retail installment sale contract, the complete and exclusive statement of the terms of the agreement relating to**

EXHIBIT 1B

*HARRISON K-9 SECURITY SERVICES, LLC.*

*112 FARMINGDALE COURT*
*Aiken, South Carolina 29805*
*Ph: (803) 649-5936 Fax: (803) 649-3034*

# ***BILL OF SALE***

## *11 February 2009*

11-24-09 18

*Sold to Christi Rowan-Westmoreland for $34,750.00 one solid black male European German Shepherd named Nexus von Walshagen. "Nexus" is sold as an Executive Companion dog.*

*He is given a sixty-day replacement guarantee covering suitability and a six-month replacement guarantee covering genetic disorders. The dog must be returned in the same or better condition as he was on date of purchase for replacement guarantee to be effective.*

*Sire:* *Ayk von Haus Heldmann*

*Dam:* *Haifa von Walshagen*

*DOB:* *February 04, 2007*

*Tattoo:* *F-I 4422*

*** Harrison K-9 Security Services, LLC, regrets we do not issue monetary refunds for trained adult dogs.***

EXHIBIT 1C

| Some Hecker Funded Check deposits and checks from Hecker or Hecker Entities deposited into Rowan/Trustone Account | | |
|---|---|---|
| Date of Deposit | Amount | Document Control # |
| 6/25/08 | 15,000.00 | Trusteone 52 & 53 |
| 1/14/09 | 9,500.00 | Trustone 270 |
| 2/3/09 | 8,500.00 | Trustone 337 & 339 |
| 3/2/09 | 1,500.00 | Trustone 327 |
| 3/4/09 | 13,500.00 | Trustone 329 |
| 3/4/09 | 4,846.61 | Trustone 328 |
| 3/17/09 | 10,500.00 | Trustone 319 |
| 4/4/09 | 8,500.00 | Trustone 339 |
| 4/14/09 | 20,000.00 | Trustone 343 |
| 4/22/09 | 10,000.00 | Trustone 352 |
| 5/7/09 | 5,000.00 | Trustone 398 |
| 5/7/09 | 5,611.00 | Trustone 399 |
| 6/1/09 | 4,500.00 | Trustone 377 |
| 6/2/09 | 5,500.00 | Trustone 378 |
| 6/3/09 | 4,600.00 | Trustone 392 |
| | **$127,075.61** | |

EXHIBIT 2

| Some Cash Deposits into Rowan Trustone Account | | |
|---|---|---|
| Date of Deposit | Amount | Document Control # |
| 8/13/08 | 2,800.00 | Trustone 116 |
| 8/20/08 | 9,800.00 | Trustone 119 |
| 8/25/08 | 2,000.00 | Trustone 123 |
| 9/2/08 | 4,000.00 | Trustone 135 |
| 9/4/08 | 2,500.00 | Trustone 137 |
| 10/1/08 | 4,000.00 | Trustone 166 |
| 10/3/08 | 7,000.00 | Trustone 168 |
| 10/28/08 | 9,000.00 | Trustone 185 |
| 11/24/08 | 1,500.00 | Trustone 212 |
| 11/25/08 | 2,000.00 | Trustone 213 |
| 12/1/08 | 9,800.00 | Trustone 247 |
| 12/12/08 | 3,000.00 | No # |
| 12/19/08 | 5,000.00 | Trustone 235 |
| 1/22/09 | 2,800.00 | Trustone 275 |
| 1/26/09 | 5,400.00 | Trustone 278 |
| 3/3/09 | 2,000.00 | Trustone 311 |
| 3/5/09 | 2,000.00 | Trustone 312 |
| | 74,600.00 | |



EXHIBIT 3



WALDEN AUTO LEASING HOLDING CO.
500 FORD ROAD
MINNEAPOLIS, MN 55426

USBANK
24-84/1230

CHECK NO. 1107

1107

PAY $5,611.00

TELLER #551

MAY 07 2009

DATE 5/7/2009

AMOUNT 5,611.00

TO THE ORDER OF

TWO SIGNATURES REQUIRED

Date:05/07/2009 RT:123000848 Branch:1 Teller:551 Sequence:7575164 Account:[redacted]9492 Serial:1107 Amount:$5,611.00 TranCode:0

ENDORSE HERE

# EXHIBIT 4

WALDEN AUTO LEASING HOLDING CO.
500 FORD ROAD
MINNEAPOLIS, MN 55426

USBANK
24-84/1230

1106

CHECK NO.
1106

PAY $5,000.00

DATE 5/7/2009

AMOUNT 5,000.00

TO THE ORDER OF CASH

TELLER #551

MAY 07 2009

TWO SIGNATURES REQUIRED

Security Features Included. Details on back.

Date:05/07/2009 RT:123000848 Branch:1 Teller:551 Sequence:7575162 Account:[redacted]492 Serial:1106 Amount:$5,000.00
TranCode:0

ENDORSE HERE

783445

DO NOT

WARNING: Original document has an artificial watermark on reverse side.

BANK OF THE WEST
BLAINE BRANCH
10930 CLUB WEST PARKWAY
BLAINE, MN 55449

0097900660

90-78/1211

TELLER #208
JUN 04 2009

PURCHASER: ***WALDEN FLEET SERVICES***

JUN 03, 2009

PAY TO THE ORDER OF ***CHRISTY ROWAN***

$ ***4,600.00*

Four Thousand Six Hundred Dollars and 00/100

CASHIER'S CHECK

AUTHORIZED SIGNATURE

9450

Date:06/04/2009 RT:121100782 Branch:1 Teller:208 Sequence:7350930 Acc[redacted] Serial:9450 Amount:$4,600.00
TranCode:0

*FEDERAL BANKING ACT 1987 - FEDERAL RESERVE REG. CC

PAYEE ENDORSEMENT AREA

THIS AREA FOR BANK USE ONLY

78345

**WALDEN FLEET SERVICES II, INC.**
500 FORD ROAD
MINNEAPOLIS, MN 55426

BANK OF THE WEST
1-800-488-2265
75-96/912

11443

CHECK NO.
11443

PAY $5,500.00

GOLDEN VALLEY
JUN 01 2009
VESTIBULE

DATE 6/2/2009

AMOUNT 5,500.00

TO THE ORDER OF

TWO SIGNATURES REQUIRED

Security Features Included. Details on back.

Date:06/01/2009 RT:91200961 Branch:1 Teller:472 Sequence:7059432 Account:[redacted]71 Serial:11443 Amount:$5,500.00
TranCode:0

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

WALDEN FLEET SERVICES II, INC.
500 FORD ROAD
MINNEAPOLIS, MN 55426

BANK OF THE WEST
1-800-488-2265
75-96/912

11442

CHECK NO.
11442

PAY $4,500.00

GOLDEN VALLEY
JUN 01 2009
VESTIBULE

DATE 6/1/2009

AMOUNT 4,500.00

TO THE ORDER OF

TWO SIGNATURES REQUIRED

Security Features Included. Details on back.

[redacted]00571

Date:06/01/2009 RT:91200961 Branch:1 Teller:472 Sequence:7059434 Account:[redacted]0571 Serial:11442 Amount:$4,500.00
TranCode:0

ENDORSEMENTS

78345

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE



DENNIS E. HECKER
500 FORD ROAD
MINNEAPOLIS, MN 55426

5122

17-7000/2910 188
9852001008

4/3/09

Date

PAY to the order of CHRISTY RONAN $ 8500

Eight thousand five hundred

Dollars

TELLER 495

APR 03 2009

TCF BANK
www.tcfbank.com
(612) TCF-BANK
Open 7 Days

For

[redacted]1008 05122

Date:04/06/2009 RT:291070001 Branch:1 Teller:495 Sequence:7744534 Account[redacted]008 Serial:5122 Amount:$8,500.00
TranCode:0



DENNIS EARL HECKER
952-512-8800
500 FORD ROAD
MINNEAPOLIS, MN 55426

5093

17-7000/2910 1

TELLER #056
MAR 0 4 2009

DATE 3/4/09

PAY TO THE ORDER OF

$ 13,500

Accepted as $13,500

Thirteen thousand Five hundred DOLLARS

TCF BANK
Minnesota's Most Convenient Bank
TCF National Bank
801 Marquette Avenue
Minneapolis, MN 55402
612-TCF-BANK

FOR

5093

Date:03/04/2009 RT:291070001 Branch:1 Teller:56 Sequence:7052728 Account:[redacted]8 Serial:5093 Amount:$13,500.00
TranCode:0

The following security features... not standard security standards
Security Features
Security Screen
Microprint Signature Line
Chemical Sensitivity

**DENNIS E HECKER**
500 FORD RD.
MINNEAPOLIS, MN 55420

**TELLER #551**

75-1110/913
900845

3064

Date 1-14-09

$ 9,500 —

One thousand five hundred no/100 DOLLARS

JAN 14 2009

**VISION**Bank
3000 25th St. S. • Fargo, ND 58103
701-364-2020 • www.visionbanks.com

3064

Date:01/14/2009 RT:91311106 Branch:1 Teller:551 Sequence:7398634 Account ███ Serial:3064 Amount:$9,500.00 TranCode:0

ENDORSE HERE

DO NOT WRITE
NF LOW THIS LINE


DENNIS E. HECKER
SUSAN A. MILLER
500 FORD ROAD
MINNEAPOLIS, MN 55426

TELLER #593
JUN 25 2008

75-1041/960
5055

DATE 6/27/08

PAY TO THE ORDER OF

$ 15,000.xx

Fifteen Thousand Dollars 00/100 DOLLARS

BREMER BANK, NATIONAL ASSOCIATION
360 CEDAR STREET • (651)290-2424
SAINT PAUL, MN 55101
24-HOUR BANKING 1-800-908-BANK
www.bremer.com

MEMO

05055

Date:06/25/2008 RT:96010415 Branch:1 Teller:593 Sequence:7843783 Account:[redacted]350 Serial:5055 Amount:$15,000.00 TranCode:0

50
1-5-10

ENDORSE HERE
783475







DENNIS E. HECKER
500 FORD ROAD
MINNEAPOLIS, MN 55426
5112
17-7000/2910 168
TELLER #551
MAR 17 2009
3/17/09
PAY to the Order of
$ 10,500
Dollars
TCF BANK
www.tcfbank.com
(612) TCF-BANK
For
05112

Date:03/17/2009 RT:291070001 Branch:1 Teller:551 Sequence:7723604 Account:[redacted]008 Serial:5112 Amount:$10,500.00
TranCode:0





DEPOSIT TICKET
CHRISTI ROWAN
150 PORTLAND AVE S UNIT 201
MINNEAPOLIS, MN 55401
DATE 1-30-2009
20,000.00
20 000.00
20,000.00
Associated Bank 01/30/2009 13:16 0019 091
Deposit 20 000.00
DENNIS EARL HECKER
5068
TCF BANK
$ 20,000
5068

Account 3335 Date 01-30-2009 Amount 20000.00 Serial 0
Acct_CC 3335

Account 008 Date 01-30-2009 Amount 20000.00
Serial 5068 Acct_CC 08

AB 000062

EXHIBIT 5



DEPOSIT

CHRISTI ROWAN
150 PORTLAND AVE S UNIT 201
MINNEAPOLIS, MN 55401

DATE 4/23/2009

15,000.-

,000.-

Associated Bank

04/23/2009 11:00 0019 091
15,000.00
Deposit
$ 15,000.00

803 335

Account 03335 Date 04-23-2009 Amount 15000.00 Serial 0
Acct_CC 3335

Associated Bank

CASH-IN

0019149

15,000.00
149 04/23/2009 11:00 0019 091
Cash In

149

Account 500 Date 04-23-2009 Amount 15000.00 Serial 19149
Acct_CC 0091



DEPOSIT TICKET

CHRISTI ROWAN
150 PORTLAND AVE S UNIT 201
MINNEAPOLIS, MN 55401

DATE 4/24/09

6000
6000
6,000.00
Associated Bank 24/2009 12:02 0017 091
Deposit
6000

Account 335 Date 04-24-2009 Amount 6000.00 Serial 0
Acct_CC 3335

CASH-IN

Associated Bank

001794
6,000.00
149 04/24/2009 12:02 0017 091
Cash In

Account 500 Date 04-24-2009 Amount 6000.00 Serial 1794
Acct_CC 0091

AB000070

| Some Checks from Hecker Deposited into Rowan Associated Bank Account | | |
|---|---|---|
| Deposit | Amount | Document Control # |
| 1/30/2009 | 20,000.00 | AB000062 |
| | $20,000.00 | |

| Some Cash Deposited into Rowan Associated Bank Account | | |
|---|---|---|
| Deposit | Amount | Document Control # |
| 4/23/09 | 15,000.00 | AB000069 |
| 4/24/09 | 6,000.00 | AB000070 |
| | $21,000.00 | |



THE BACK OF THIS CHECK CONTAINS AN ARTIFICIAL WATERMARK - DO NOT ACCEPT WITHOUT NOTING WATERMARK-HOLD AT AN ANGLE TO VIEW WATERMARK

DIVERSIFIED INVESTMENT ADVISORS
4333 Edgewood Road NE • Mail Drop 0001 • Cedar Rapids, IA 52499

CHECK NO: 0111427182

AMOUNT: $*********4,846.61

DATE: Feb 23, 2009

PAY: FOUR THOUSAND EIGHT HUNDRED FORTY-SIX AND 61/100 DOLLARS**************

TO THE ORDER OF: DENNIS HECKER

TELLER #056
MAR 04 2009

TRANS REFERENCE NO: 20090220901441

JPMorgan Chase Bank, N.A.
Chicago, IL

Not Valid Unless Cashed Within Six Months

AUTHORIZED SIGNATURE

⑈0111427182⑈ ⑆[redacted] [redacted]5759⑈

Date:03/04/2009 RT:71923226 Branch:1 Teller:56 Sequence:7052726 Account:[redacted]739 Serial:111427182 Amount:$4,846.61 TranCode:0

EXHIBIT 6



DEREK J. CHERNE
MICHELLE CHERNE
MEDINA, MN

75-7146/2919
0596

5744

TELLER #551

DATE 4/22/09

APR 23 2009

PAY TO THE ORDER OF Denny Hecker $ 10,000.—

Ten thousand and no/100 DOLLARS

VOYAGER BANK
952-345-8070
10953 Wayzata Boulevard
Minnetonka, MN 5530

MEMO

⑆291971469⑆ ⑈ 5744

Date:04/23/2009 RT:291971469 Branch:1 Teller:551 Sequence:7744870 Account:0596 Serial:5744 Amount:$10,000.00
TranCode:0

PAY TO THE ORDER OF
CHASE RAVEN
8345





South Metro FEDERAL CREDIT UNION

Prior Lake, MN [redacted]
(952) 445-0888

CASHIER'S CHECK

NOT VALID AFTER 90 DAYS

MID-STATES CORPORATE FCU
EAGAN, MN

70486

DATE 03-02-09

AMOUNT *****1500.00

No. 070486

AMOUNT: ONE THOUSAND FIVE HUNDRED AND-NO\100

PAY TO THE ORDER OF: DENNY HECKER

RE: ADAM CROOKS

TELLER #056
MAR 0 4 2009

AUTHORIZED SIGNATURE

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

⑈070486⑈ ⑆[redacted]0000⑈

Date:03/04/2009 RT:296081516 Branch:1 Teller:56 Sequence:7052724 Account:[redacted]0000 Serial:70486 Amount:$1,500.00
TranCode:0

ENDORSE CHECK HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE.

Security Feature

The security features listed below, as well as those not listed, exceed industry guidelines.

*FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

| DEALER NAME | DEALER TELEPHONE NUMBER | DEALER FAX NUMBER |
|---|---|---|
| JAGUAR LAND ROVER MINNEAPOLIS | 763 - 222 - 2200 | 763 - 222 - 2211 |

# APPLICANT'S CREDIT STATEMENT

(X) Individual Credit
( ) Joint Credit

Check Appropriate Box

[X] If you are applying for individual credit in your name and relying on your own income or assets and not the income or assets of another personas the basis for repayment of the credit requested, complete only Section A.

[ ] If you are applying for joint credit with another person, complete sections A and B.
We intend to apply for joint credit

( ) Community Property State
( ) Business Application

__________ Applicant __________ Co-Applicant

- If you are married and live in a community property state, please complete Section A about yourself and Section B about your spouse. You must sign this application. Your spouse must sign this application only if s/he wishes to be a Co-Applicant.

## A. Applicant's Personal Credit Information

| SOCIAL SECURITY NUMBER or (TAX ID) | FIRST NAME OR BUSINESS NAME | MI | LAST NAME |
|---|---|---|---|
| [redacted]1135 | CHRISTI | M | ROWAN |

| EMAIL ADDRESS | DRIVER'S LICENSE # | DRIVER'S LICENSE STATE |
|---|---|---|
| | [redacted]1306 | mn |

| DATE OF BIRTH (MM/DD/YYYY) | HOME PHONE # | CELL PHONE # (See below) | TIME AT ADDRESS | HOUSING STATUS |
|---|---|---|---|---|
| 08 / 28 / 1973 | [redacted]- 5113 | [redacted]- 9080 | 9 YRS __ MOS | Homeowner |

| CURRENT STREET # AND NAME | APT/SUITE # | PO BOX # | RURAL ROUTE |
|---|---|---|---|
| 715 EAST RIDGE DR | | | |

| CITY | STATE | ZIP CODE | MTG PYMT OR RENT |
|---|---|---|---|
| NORTHFIELD | MN | 55057 | 0 |

| PREVIOUS STREET # AND NAME | APT/SUITE # | PO BOX # | RURAL ROUTE |
|---|---|---|---|
| | | | |

| CITY | STATE | ZIP CODE | TIME AT ADDRESS |
|---|---|---|---|
| | | | __ YRS __ MOS |

| EMPLOYED BY or TYPE OF BUSINESS (if business application) | EMPLOYMENT STATUS | OCCUPATION |
|---|---|---|
| GANNETT | Employed | ATTORNEY |

| BUSINESS PHONE # | TIME EMPLOYED | SALARY | SALARY TYPE |
|---|---|---|---|
| [redacted] - 9080 | 8 YRS 6 MOS | 189000 | Annually |

| PREVIOUS EMPLOYMENT (if less than 2 yrs at current) | EMPLOYMENT STATUS | BUSINESS PHONE # | TIME EMPLOYED |
|---|---|---|---|
| | | - - | __ YRS __ MOS |

__________
OCCUPATION

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

| OTHER INCOME | SOURCE OF OTHER INCOME |
|---|---|
| | |

**By providing my cell phone number, I give my prior express consent to receive calls and text messages from the creditor or its third party debt collector at that number, including calls and messages made by using an autodialer or prerecorded message.**

J-1 000007

Printed on 04/07/2009 at 02:17 PM



## FOR DEALER USE ONLY

○ A/C ○ Cruise ○ Man. Trans. ○ Sunroof ○ Stereo ○ Pwr. Windows
○ Pwr. Seats ○ 4WD ○ T-Top ○ Alum./Wire Wheel ○ Leather Seats ○ Pwr. Door Locks

VEHICLE OPTIONS

| DEALER NAME | DEALER # | VEHICLE TYPE | PRODUCT TYPE | TERM | STOCK# |
|---|---|---|---|---|---|
| JAGUAR LAND ROVER MINNEAPOLIS | 107604 | New | Retail | 72 | R3706 |

| VIN # | YEAR | MAKE | MODEL DESCRIPTION | TRIM |
|---|---|---|---|---|
| SALMF13428A296951 | 2008 | land rover | range rover | 4dr wgn sc |

VEHICLE SOURCE: 

☐ CERTIFIED PREOWNED

| CASH SELLING PRICE | SALES TAX | T&L | CASH DOWN | FRONT-END FEES | REBATE | NET TRADE | GROSS CAP/ UNPAID BALANCE |
|---|---|---|---|---|---|---|---|
| 87526 | 5712 | 1287 | 7000 | | 1500 | | 86025 |

| ACCIDENT/HEALTH INS | CREDIT LIFE | GAP | WARRANTY | BACK-END FEES |
|---|---|---|---|---|
| | | | | |

| MSRP | INVOICE/WHOLESALE VALUE | WHOLESALE SOURCE | RETAIL VALUE | RETAIL SOURCE |
|---|---|---|---|---|
| 96600 | 88276 | | | |

| MILEAGE | EST PAYMENT | APR |
|---|---|---|
| 16 | | |

☐ VEHICLE BOOKOUT

VEHICLE BOOKOUT DATE:

EST AMT FINANCED:

VEHICLE BOOKOUT OPTIONS

LENDER PROGRAM:

### TRADE IN

| YEAR | MAKE | MODEL DESCRIPTION | TRIM |
|---|---|---|---|
| | | | |

TRADE FINANCED BY:

TRADE MONTHLY PYMT:

J-1 000008

Printed on 04/07/2009 at 02:17 PM

## B. Co-Applicant's Personal Credit Information

FIRST NAME OR BUSINESS NAME | MI | LAST NAME

EMAIL ADDRESS | DRIVER'S LICENSE # | DRIVER'S LICENSE STATE

__ / __ / ____ DATE OF BIRTH ( . ) | - - HOME PHONE # | - - CELL PHONE # (See below) | ___ YRS ___ MOS TIME AT ADDRESS | HOUSING STATUS

CURRENT STREET # AND NAME | APT/SUITE # | PO BOX # | RURAL ROUTE

CITY | MTG PYMT OR RENT

PREVIOUS STREET # AND NAME | APT/SUITE # | PO BOX # | RURAL ROUTE

CITY | ___ YRS ___ MOS TIME AT ADDRESS

EMPLOYED BY or TYPE OF BUSINESS (if business application) | EMPLOYMENT STATUS | OCCUPATION

- - BUSINESS PHONE # | ___ YRS ___ MOS TIME EMPLOYED | SALARY | SALARY TYPE

PREVIOUS EMPLOYMENT (if less than 2 yrs at current) | EMPLOYMENT STATUS | - - BUSINESS PHONE # | ___ YRS ___ MOS TIME EMPLOYED

OCCUPATION | RELATIONSHIP

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

OTHER INCOME | SOURCE OF OTHER INCOME

ADDITIONAL COMMENTS

SHE LEFT THE PHONE OFF HER FRAUD ALERT ON PURPOSE. YOU CAN REACH HER ON HER CELL AT [redacted]-9080 TO CONFIRM HER IDENTITY. THANKS, DEAN

**By providing my cell phone number, I give my prior express consent to receive calls and text messages from the creditor or its third party debt collector at that number, including calls and messages made by using an autodialer or prerecorded message.**

J-1 000009

## AGREEMENT

The words "you," "your" and "yours" mean each person submitting this application. The words "we," "us," "our" and "ours" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application.

You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us the dealers. This application will be reviewed by such financial institutions on behalf of themselves and us the dealer. In addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions.

You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of that transaction. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you at any time whatsoever. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report.

You agree that we may verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to provide us with such information. You further authorize us to gather whatever credit and employment history we consider necessary and appropriate in evaluating this application and any other applications submitted in connection with the proposed transaction.

We may keep this application and any other application submitted to us and information about you whether or not the application is approved. You certify that the information on the application and in any other application submitted to us, is true and complete. You understand that false statements may subject you to criminal penalties.

## FEDERAL NOTICES

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## STATE NOTICES

**California Residents:** An applicant, if married, may apply for a separate account.

**Ohio Residents:** Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**New Hampshire Residents:** If this is an application for balloon financing, you are entitled to receive, upon request, a written estimate of the monthly payment amount that would be required to refinance the balloon payment at the time such payment is due based on the creditor's current refinancing programs.

**New York Residents:** In connection with your application for credit, we may request a consumer report which contains information on your credit worthiness, credit standing, personal characteristics and general reputation. If we grant you credit, we or our loan servicer may order additional consumer reports in connection with any update, renewal or extension of the credit. If you ask us, we will tell you whether we obtained a consumer report and if we did, we will tell you the name and address of the consumer reporting agency that gave us the report.

**Vermont Residents:** By signing below you authorize us and our employees or agents to obtain and verify information about you (including one or more credit reports, information about your employment and banking and credit relationships) that we may deem necessary or appropriate in evaluating your loan application. If your application is approved and the loan is made, you also authorize us, and our employees and agents, to obtain additional credit reports and other information about you in connection with reviewing the account, increasing the available credit on the account (if applicable), taking collection on the account, or for any other legitimate purpose.

**Married Wisconsin Residents:** Wisconsin law provides that no provision of any marital property agreement, or unilateral statement, or court order applied to marital property will adversely affect a creditor's interests unless, prior to the time that the credit is granted, the creditor is furnished with a copy of the agreement, statement or decree, or has actual knowledge of the adverse provision. If you are making this application individually, and not jointly with your spouse, the full name and current address of your spouse must be properly disclosed in the co-applicant section of this application.

This application may be submitted to the following financial institutions [Name(s) and Address(es)] ______________________

***BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ AND AGREE TO THE TERMS AND DISCLOSURES ON THE THREE PAGES OF THIS APPLICATION.***

| X [signature] | 4-9-09 | X | |
|---|---|---|---|
| APPLICANT'S SIGNATURE | DATE | CO- APPLICANT'S SIGNATURE | DATE |

COPYRIGHT (C) 2007 DEALERTRACK, INC. ALL RIGHTS RESERVED.

J-1 000010

Printed on 04/07/2009 at 02:17 PM

| 22222 | Void ☐ | a Employee's social security number 1135 | For Official Use Only ► OMB No. 1545-0008 |
|---|---|---|---|

| Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|
| b Employer identification number (EIN) | 1788 | 1 Wages, tips, other compensation | 177751.00 | 2 Federal income tax withheld | 41804.00 |
| c Employer's name, address, and ZIP code | MULTIMEDIA HOLDINGS COMPANY, I GANNETT<br>7950 JONEB BRANCH DRIVE<br>MCLEAN VA 22107 | 3 Social security wages | 189500.00 | 4 Social security tax withheld | 11749.00 |
| | | 5 Medicare wages and tips | 189500.00 | 6 Medicare tax withheld | 2747.00 |
| | | 7 Social security tips | | 8 Allocated tips | |
| d Control number | 16-0331690 | 9 Advance EIC payment | | 10 Dependent care benefits | |
| e Employee's first name and initial / Last name / Suff. | CHRISTI M / ROWAN | 11 Nonqualified plans | | 12a See instructions for box 12 | C 11.74 |
| f Employee's address and ZIP code | 715 E RIDGE DRIVE<br>NORTHFIELD MN 55057 | 13 Statutory employee ☐ Retirement plan ☒ Third-party sick pay ☐ | | 12b | D 16500.00 |
| | | 14 Other | | 12c | |
| | | | | 12d | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| MN | 6082 | 177751.00 | 13953.00 | | | |

Form **W-2** Wage and Tax Statement **2008**

Department of the Treasury—Internal Revenue Service

For Privacy Act and Paperwork Reduction Act Notice, see back of Copy D.

Copy A For Social Security Administration — Send this entire page with Form W-3 to the Social Security Administration; photocopies are not acceptable.

**Do Not Cut, Fold, or Staple Forms on This Page — Do Not Cut, Fold, or Staple Forms on This Page**

| 22222 | Void ☐ | a Employee's social security number 1135 | For Official Use Only ► OMB No. 1545-0008 |
|---|---|---|---|

| Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|
| b Employer identification number (EIN) | 1788 | 1 Wages, tips, other compensation | 177751.00 | 2 Federal income tax withheld | 41804.00 |
| c Employer's name, address, and ZIP code | MULTIMEDIA HOLDINGS COMPANY, I GANNETT<br>7950 JONES BRANCH DRIVE<br>MCLEAN VA 22107 | 3 Social security wages | 189500.00 | 4 Social security tax withheld | 11749.00 |
| | | 5 Medicare wages and tips | 189500.00 | 6 Medicare tax withheld | 2747.00 |
| | | 7 Social security tips | | 8 Allocated tips | |
| d Control number | 16-0331690 | 9 Advance EIC payment | | 10 Dependent care benefits | |
| e Employee's first name and initial / Last name / Suff. | CHRISTI M / ROWAN | 11 Nonqualified plans | | 12a See instructions for box 12 | C 11.74 |
| f Employee's address and ZIP code | 715 E RIDGE DRIVE<br>NORTHFIELD MN 55057 | 13 Statutory employee ☐ Retirement plan ☒ Third-party sick pay ☐ | | 12b | D 16500.00 |
| | | 14 Other | | 12c | |
| | | | | 12d | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| MN | 3082 | 177751.00 | 13953.00 | | | |

EXHIBIT D

Form **W-2** Wage and Tax Statement **2008**

Department of the Treasury—Internal Revenue Service

For Privacy Act and Paperwork Reduction Act Notice, see back of Copy D.

EXHIBIT 7




UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - -

In re: BKY No. 09-50779

Dennis E. Hecker, Chapter 7

Debtor.

- - - - - - - - - - - - - - - - - -

RULE 2004 EXAMINATION OF
CHRISTI MICHELE ROWAN

Taken October 13, 2009
Commencing at 9:14 a.m.

REPORTED BY: Kay Lynn Hinsch, RPR
www.paradigmreporting.com

Rule 2004 Examination of CHRISTI MICHELE ROWAN, taken on the 13th day of October, 2009, commencing at 9:14 a.m., at Leonard, O'Brien, Spencer, Gale & Sayre, 100 South Fifth Street, Suite 2500, Minneapolis, Minnesota, before Kay Lynn Hinsch, Registered Professional Reporter and Notary Public of and for the State of Minnesota.

APPEARANCES

On Behalf of Randall L. Seaver, Trustee:
MATTHEW R. BURTON, ESQUIRE
Leonard, O'Brien, Spencer, Gale & Sayre, Ltd.
100 South Fifth Street
Suite 2500
Minneapolis, Minnesota 55402
mburton@losgs.com

On Behalf of Christi Michele Rowan:
WILLIAM R. SKOLNICK, ESQUIRE
Skolnick & Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402
wskolnick@visi.com

NOTE: The original transcript will be delivered to Matthew R. Burton, Esquire, pursuant to the applicable Rules of Civil Procedure.

INDEX

WITNESS: Christi Michele Rowan
Examination by Mr. Burton

EXHIBITS:

Number 1 - Subpoena for Rule 2004 Examination......6
Number 2 - Compilation of documents..9,49,95,140,187
Number 3 - Letter dated October 6, 2009 to William Skolnick from Matthew R. Burton..............17
Number 4 - Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree...19
Number 5 - Amended Bankruptcy Schedule............28
Number 6 - Documents from Jaguar for 2008 Range Rover.......................................30
Number 7 - Documents from Jaguar for 2008 Range Rover..................................48, 52
Number 8 - Documents from Jaguar for 2006 Range Rover.......................................55
Number 9 - Letter of Intent dated April 18, 2008 for 150 Portland Avenue, Suite 201...........61
Number 10 - Neiman Marcus documents...............63
Number 11 - Invoice for ladies diamond oval hoop earrings....................................67
Number 12 - US Bank Visa charges..................68
Number 13 - Optical Shop of Aspen invoice.........75
Number 14 - Dennis Basso invoice for fur coat.....77

EXHIBITS (cont'd)

Number 15 - Letter dated August 24, 2009 from Matthew R. Burton...........................78
Number 16 - Receipts from Chrome Hearts..........83
Number 17 - Client Detail for Dennis Hecker and Christi Rowan...............................84
Number 18 - Sales receipts from R.F. Moeller.....89
Number 19 - Receipts from Belle Reve Boutique....91
Number 20 - Information from Harrison K-9 Security Services...........................93
Number 21 - Residential Lease...................139
Number 22 - E-mails between Christi Rowan and Jane Ketroser.............................173
Number 23 - E-mails between Christi Rowan and Dennis Hecker.............................175
Number 24 - Compilation of e-mails..............177
Number 25 - Check number 5503 for $8,000........185
Number 26 - Compilation of checks...............186
Number 27 - Accounting of Dennis E. Hecker......192
Number 28 - Third Supplemental Affidavit of Tamitha D. Hecker..........................205

OBJECTIONS:

By Mr. Skolnick: Pages 21, 29, 47, 162

EXHIBIT
C

EXHIBIT 8

Page 37

Q. More or less?
A. More versus less.
Q. Did this $189,000 number come from you?
A. Same application. I never filled out a new application. They took it direct out of the system. I've had it in there since '96. And they never asked me if anything changed.
MR. SKOLNICK: So the answer is no.
BY MR. BURTON:
Q. So if we went back every year it would always say 189?
A. Correct.
Q. And you don't know where that came from?
A. 189? Okay. I made $150,000 --
MR. SKOLNICK: No. Do you know how that number got on this piece of paper is the question.
THE WITNESS: Yes, because I put it down back in '96.
MR. SKOLNICK: Okay.
THE WITNESS: Oh, assume, 2006. Excuse me.
MR. SKOLNICK: All right. That answers the question.
BY MR. BURTON:
Q. If you turn a few pages there's a signature

Page 38

on April 9th of '09. Is that your signature?
A. Correct.
MR. SKOLNICK: You're talking about the page that says "Agreement" at the top?
MR. BURTON: Yes.
MR. SKOLNICK: I just want to make sure we're all on the same page. Thank you, Counsel.
MR. BURTON: You're welcome.
BY MR. BURTON:
Q. The next page has some W-2s. Are these your W-2s for 2008?
A. They're not.
Q. Okay. How did it come to be that these are in the file?
A. I gave it to them.
Q. You gave them these W-2s?
A. Correct.
Q. And they're -- are they doctored?
A. Correct.
Q. Okay. And who did that?
A. I did.
Q. And why?
A. I was asked to go get a vehicle, and I did, and I knew what I could qualify for.
Q. When you say you knew what you could

Page 39

qualify for, you mean knowing what your income was at the time, which is from the photography business, were you worried that you wouldn't qualify for this vehicle?
A. My debt ratio, with having my existing lease, I knew it would be difficult --
Q. Okay.
A. -- to qualify.
Q. And so how did you alter these W-2s? Or, I'm sorry, there's just one W-2.
A. Correct.
Q. How did you alter it?
A. I changed the numbers.
Q. So what did you do, white them out and type in different numbers and then make a copy or something?
A. Yep.
Q. And did you actually have W-2s for 2008 from Gannett?
A. Correct.
Q. And do you recall what the number may have actually been?
A. I believe it was around 96,000.
Q. Okay. Did you alter this document at the request of Mr. Hecker?

Page 40

A. No.
Q. But was he asking you to go get this car?
A. He asked me to, yes.
Q. And was he aware that you may have had --
A. No.
Q. -- some issues of qualifying?
MR. SKOLNICK: Now answer the question.
A. No.
BY MR. BURTON:
Q. Can you turn the page, please?
A. (Witness complies.)
Q. Now, this is a check from you on an Associated Bank account; is that right?
A. Correct.
Q. And this is money that Mr. Hecker gave you?
A. This check did not clear.
Q. Okay. Can you tell me about that?
A. I wrote the check. There was not any money in it.
Q. There was not any money in it. What do you mean, you wrote the check and the dollar amount was left blank?
A. No. When I wrote the check, Mr. Hecker had not given me any money for the down payment --
Q. Okay.

 JAGUAR

LAND-ROVER

Jaguar Minneapolis | Land Rover Minneapolis

8905 Wayzata Blvd. Phone (763) 222-2200
GOLDEN VALLEY, MINNESOTA 55426

Customer E-mail:

Stock #: R3706 Date: 04/09/09 Salesperson: ADAM GREGORY WHITE

Buyer Name: (Last) ROWAN (First) CHRISTI (Middle) MICHELE

Co-Buyer Name: (Last) (First) (Middle)

Address: 715 EAST RIDGE DR City: NORTHFIELD State: MN County: RICE Zip: 55057

Home Phone: (507)664-9080 Bus. Phone (612)701-9080 Buyer DOB: 08/28/73 Co-Buyer DOB:

Buyer D.L.#: W213266661306 Co-Buyer D.L. #:

Buyers Insurance Co. AMERICAN FAMILY Policy #: [redacted]71-FPPA-MN Agent TODD VISKOCIL Phone (952)938-2911

PLEASE ENTER MY ORDER FOR: New ☐ XX Used ☐ Demo ☐ as follows: SS#

| YEAR | MAKE | CARLINE | MODEL DESC. | TRANSMISSION | COLOR | INTERIOR |
|---|---|---|---|---|---|---|
| 2008 | LAND ROVER | RANGE ROVER | SUPER CHG | AUTO. | | |

| VIN # | LIC. # | TAB EXP. DATE | STATE | MILEAGE | DELIVERED ON OR ABOUT |
|---|---|---|---|---|---|
| SALMF13428A296951 | PERMIT | | MN | 16 | 04/09/09 |

**TRADE-IN DATA** GET CERTIFICATE OF TITLE!!

| YEAR | MAKE | CARLINE | MODEL DESC. |
|---|---|---|---|
| | | | |

VIN #

LIEN HOLDERS NAME

ADDRESS

| LICENSE PLATE # | LICENSE STATE | EXP. DATE |
|---|---|---|
| MILEAGE NOW | TRANSMISSION | COLOR |

**POLLUTION CONTROL SYSTEM DISCLOSURE (TRADE-IN VEHICLE)**

In order to comply with Minnesota Statutes, Section 325E.0951, no person may transfer a motor vehicle without providing a written disclosure to the transferee (buyer) certifying the condition of the pollution control system.

Transferor (seller) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being traded in, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

Seller's Signature X

**DEALER'S DISCLAIMER OF WARRANTY**

The Dealer expressly disclaims all warranties either express or implied on the vehicle sold, except any warranties offered and explained in Paragraphs 10 through 13 on the back of this contract. Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of this contract.

Buyer's Signature X [signature]

**DEALER'S POLLUTION CONTROL SYSTEM DISCLOSURE (VEHICLE BEING SOLD)**

Transferor (Dealer) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being sold, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

| | |
|---|---|
| CASH SUBMITTED WITH ORDER | 13924.94 |
| LESS BALANCE OWING TO | N/A |
| TOTAL DOWN PAYMENT | 13924.94 |
| LICENSE | 6.00 |
| TITLE | 15.25 |
| TRANSFER | 4.00 |
| REGISTRATION FEE | 1173.00 |
| A.O.S. | 14.00 |
| TOTAL | 1212.25 |

| | |
|---|---|
| CASH PRICE OF VEHICLE | 87526.00 |
| FREIGHT | N/A |
| DEALER INSTALLED OPTIONS | N/A |
| REBATE TO DEALER OWNER LOYALTY | -1500.00 |
| MY TRADE DOES NOT HAVE A BRANDED TITLE OR INSURANCE SALVAGE HISTORY X | |
| TOTAL | 86026.00 |
| LESS ALLOWANCE FOR USED VEHICLE, AS APPRAISED | N/A |
| TAXABLE AMOUNT | 86026.00 |
| TAX | 5611.69 |
| DOCUMENT ADMINISTRATIVE FEE | $75.00 |
| SERVICE CONTRACT | N/A |
| LICENSE AND FEES | 1212.25 |
| CASH SUBMITTED WITH ORDER | 13924.94 |
| LESS BALANCE OWING TO LIENHOLDER ON TRADE-IN | N/A |
| TOTAL AMOUNT DUE ON DELIVERY | 79000.00 |

The front and back of this CONTRACT comprise the entire CONTRACT affecting this purchase. The DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature. You certify that no credit has been extended by dealer for the purchase of this motor VEHICLE. You certify that you are 18 years of age or older, and acknowledge receiving a copy of this contract.

The terms of this CONTRACT were agreed upon and the CONTRACT signed in this dealership on the date noted at top of this form. If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended.

**IMPORTANT:** THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.

NOTICE OF SALESPERSON'S LIMITED AUTHORITY. This contract is not valid unless signed and accepted by Sales Manager or Officer of Company.

EXHIBIT 8A

Accepted ⓧ [signature] X [signature]

J-1 000001

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Buyer |
|---|---|---|
| No.<br>Date APRIL 9th, 2009 | HANSORD PONTIAC COMPANY<br>8905 WAYZATA BLVD.<br>GOLDEN VALLEY MN 55426<br>"We" and "us" mean the Seller above, its successors and assigns. | CHRISTI MICHELE ROWAN<br>715 EAST RIDGE DR<br>NORTHFIELD MN 55057<br>"You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, over time, the Motor Vehicle (Vehicle) and services described below. Your purchase is subject to the terms and conditions of this contract and security agreement (Contract). The Vehicle is sold in its present condition, together with the usual accessories and attachments.

Description of Motor Vehicle Purchased — Year 2008 Make LAND ROVER Model RANGE ROVER — VIN SALMF13428A296951 Lic. No./Year PERMIT ☒ New ☐ Used — Other:

Description of Trade-In

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 79000.00, plus finance charges accruing on the unpaid balance at the rate of 7.74 % per year from today's date until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **LOAN ADMINISTRATION FEE:** You agree to pay an additional, nonrefundable loan administration fee of $25.00 that will be ☐ paid in cash. ☐ paid pro rata over the contract term. ☐ withheld from the proceeds (if this fee is withheld from the proceeds, the amount is included in the principal sum).

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 15424.94 |
|---|---|---|---|---|
| 7.74 % | $ 20312.48 | $ 79000.00 | $ 99312.48 | $ 114737.42 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1379.34 | MONTHLY BEGINNING: 05/24/2009 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

☒ **Late Charge:** If a payment is more than 10 days late, you will be charged 5% OF THE UNPAID LATE PAYMENT OR $7.28, WHICHEVER IS GREATER. ☒ This amount may increase so as to always be the highest amount allowed by law under Minn. Stat. § 47.59.

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.

☒ If you pay off this Contract early, you will not be entitled to a refund of part of the loan administration fee.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured
☐ Single ☐ Joint Prem. $ N/A Term N/A

**Credit Disability:** Insured
☐ Single ☐ Joint Prem. $ N/A Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| Vehicle Price (incl. sales tax of $ 5611.69) | | $ 93137.69 |
| Service Contract, Paid to: N/A | | $ N/A |
| Cash Price | | $ 93137.69 |
| Manufacturer's Rebate | $ 1500.00 | |
| Cash Down Payment | $ 13924.94 | |
| Deferred Down Payment | $ N/A | |
| a. Total Cash/Rebate Down | | $ 15424.94 |
| b. Trade-In Allowance | $ N/A | |
| c. Less: Amount owing | $ N/A | |
| Paid to: N/A | | |
| d. Net Trade-In (b. minus c.) | | $ N/A |
| e. Net Cash/Trade-In (a. plus d.) | | $ 15424.94 |
| Down Payment (e.; disclose as $0 if negative) | | $ 15424.94 |

5-1 000002

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1379.34 | MONTHLY BEGINNING: 05/24/2009 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

[X] **Late Charge:** If a payment is more than 10 days late, you will be charged 5% OF THE UNPAID LATE PAYMENT OR $7.28, WHICHEVER IS GREATER. [X] This amount may increase so as to always be the highest amount allowed by law under Minn. Stat. § 47.59.

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.

[X] If you pay off this Contract early, you will not be entitled to a refund of part of the loan administration fee.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured ______
☐ Single ☐ Joint Prem. $ N/A Term N/A

**Credit Disability:** Insured ______
☐ Single ☐ Joint Prem. $ N/A Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer ______ d/o/b ______ Buyer ______ d/o/b ______

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $N/A Deductible, Collision Coverage $ N/A
☐ $N/A Deductible, Comprehensive Cov. $ N/A
☐ Fire-Theft and Combined Additional Coverage $ N/A
☐ ______ $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **MOTOR VEHICLE SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Motor Vehicle Service Contract to cover N/A

This Service Contract will be in effect for N/A

**ASSIGNMENT:** This Contract and Security Agreement is assigned to ENDURA FINANCIAL FEDERAL CR UN, the Assignee, phone ______. This assignment is made [X] under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.

Seller: By [signature] Date 04/09/2009

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| Vehicle Price (incl. sales tax of $ 5611.69) | | $ 93137.69 |
| Service Contract, Paid to: N/A | | $ N/A |
| **Cash Price** | | $ 93137.69 |
| Manufacturer's Rebate | $ 1500.00 | |
| Cash Down Payment | $ 13924.94 | |
| Deferred Down Payment | $ N/A | |
| a. Total Cash/Rebate Down | | $ 15424.94 |
| b. Trade-In Allowance | $ N/A | |
| c. Less: Amount owing | $ N/A | |
| Paid to: N/A | | |
| d. Net Trade-In (b. minus c.) | | $ N/A |
| e. Net Cash/Trade-In (a. plus d.) | | $ 15424.94 |
| **Down Payment** (e.; disclose as $0 if negative) | | $ 15424.94 |
| **Unpaid Balance of Cash Price** | | $ 77712.75 |
| Paid to Public Officials - Filing Fees | | $ 1212.25 |
| Insurance Premiums* | | $ N/A |
| Amount to Finance line e. (if e. is negative) | | $ N/A |
| To: N/A | | $ N/A |
| To: HANSORD PONTIAC COMPANY* | | $ 75.00 |
| To: N/A | | $ N/A |
| To: N/A | | $ N/A |
| **Total Other Charges/Amounts Pd. to Others** | | $ 1287.25 |
| Less: **Prepaid Finance Charges** | | $ N/A |
| **Amount Financed** | | $ 79000.00 |

*We may retain or receive a portion of this amount.

## NOTICE TO BUYER

**(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer:

Signature CHRISTI MICHELE ROWAN Date 04/09/2009

Signature ______ Date ______

Seller: By [signature]

000003

MINNESOTA RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

© 1982, 1995 Wolters Kluwer Financial Services – Bankers Systems™ Form RS-SI-MV-MN 4/5/2006

MOTOR VEHICLE – NOT FOR MANUFACTURED HOMES

## RESIDENTIAL LEASE

**THIS LEASE AGREEMENT** is entered into effective as of May 1, 2009, by and between Dennis E. Hecker (**"Landlord"**) and Christi M. Rowan (**"Tenant"**).

**TO THE TENANT:** This Lease is a binding legal document. By signing it, you and the Landlord agree to be bound by everything it contains. Before signing this Lease , make sure that you understand what the Lease means. After you sign the Lease, ask for a and keep a copy.

1. **Definitions**. In the Lease, **"Landlord"** means the owner of the Premises and anyone authorized to act on the owner's behalf.**"Tenant"** means, collectively the persons who have signed this Lease and will be occupying the Premises as a result of agreeing to this Lease, each of whom agrees that the obligations of Tenant hereunder shall be considered the joint and several responsibility of each person signing this Leaseand Tenant, meaning that if anyone of the persons who are defined hereunder as the Tenant fails to preform, Landlord may look to anyone or more of thosepersons for performance of all the obligations of Tenant under this Lease. The **"Premises"** means the residence located at 1615 North Ridge Drive , Medina, Minnesota 55391.

2. **Lease of the Premises.** Landlord agrees to lease the Premises to Tenant, and Tenant agrees to lease the Premises from Landlord, durning the Term (as defined below), subject to the provisions and conditions of this Lease.

3. **Term.** Tenant shall lease the Premises for the twenty four (24) month period beginning May 1, 2009, and ending on April 30, 2011 (the **"Term"**).Tenant acknowledges that Tenant must vacate the Premises at the end of the Term, but agrees to give Landlord written notice not later than sixty (60) days before the end of the Term if Tenant does not wish to remain in the Premises. If Tenant does not give this notice, Landlord may , but shall not be required, to consider this Term to be extended up to an additional sixty (60) days.

4. **Rent.** Rent will consist of the payment by Tenant of Five Thousand and 00/100 Dollars ($5,000.00) each month during the Term of the Lease.Rent credit for the two (2) months of the Term shall be paid by Tenant improvements after execution of this Lease, as described in paragraph 6, below.Rent for subsequent months shall be payable not later than the first day of each subsequent calendar month. Rent for partial months shall be pro -rated on a per diem basis. Tenant will pay a Twenty Five Dollar ($25.00) service charge if Tenant does not pay the full monthly rent by the first day of the month.Tenant also will be assessed a Twenty Five Dollar ($25.00) charge for any check not honored by Tenants bank.



5. Utilities. Tenant shall pay as additional rent all utility payments incurred for the Premises during the periods that Tenant has the right to occupy the Premises durning the Term of this Lease. The amounts payable by Tenant for utilities shall be paid on or before the date those payments are due and shall be paid by Tenant directly to each utility company billing for particular utility. Water and City sewer charges for the Premises will, however, be paid directly by Landlord, and Tenant shall reimburse Landlord for such payments relating to time periods within the Term of this Lease within ten (10) days after receipt of a bill from Landlord. Tenant shall not waste any utilities.

6. Rent and Security Deposit. Tenant shall pay for approved Leasehold improvements up to an amount equal to but no more than the first (1st) and second (2nd) month's Rent payable by Tenant. Landlord shall give Tenant a written statement (a) for additional rent or other money owed to Landlord, (b) for damage to Premises beyond ordinary wear and tear, and/or for failure to return the premises to clean condition. Tenant shall not offset rent due under this Lease. Landlord grants Tenant first (1st) right of refusal of any offer Landlord receives and has fourteen (14) business days to exercise there first (1st) right of refusal offer.

7. Use of the Premises. The Premises may be used only for residential purposes, and only Christi M. Rowan and family may live in the Premises. Tenant will not use the Premises for any other purpose which might threaten the safety of the building or unreasonably disturb neighbors. Tenant shall not use the Premises for any unlawful activity. Tenant shall not use the Premises in any way that would cause a cancelation, restriction or increase in Landlord's insurance. Tenant shall not act in aloud, boisterous, unruly or thoughtless manner, or disturb the rights of those who live in neighboring properties to peace and quite if Landlord consents to the keeping of any pets, Landlord may require an additional security deposit. Tenant shall not keep a waterbed or water-filled furniture in the premises. Tenant shall not use or store on or near the premises any flammable or explosive substance. Tenant will keep the Premises clean and will not abuse any of the fixtures, furnishings or appliances in the premises. If Tenant causes damage in any part of the Premises, other than reasonable wear and tear Landlord will charge the Tenant for the damage. It will be Tenants duty to preform any day-to-day, maintenance and repair of the Premises, including cleaning and painting, at Tenants own expense. Landlord will have no duty to maintenance or repair the Premises.

8. Landlord's Right to Enter the Premises. Landlord may enter the Premises at reasonable times for purposes of inspecting the Premises, making necessary repairs to the Premises, or for showing the Premises to any prospective purchaser or tenant. Before entering the Premises, Landlord must make a reasonable effort to notify Tenant.

9. Moving Out. Even if Tenant moves out, Tenant will be responsible for paying the charges specified in paragraphs four and five of this Lease throughout the Term of this Lease. Landlord does not have any duty to renew this Lease.

10. Alterations and Improvements. Tenant may not alter the Premises or make any changes to the Premises without the prior written consent of Landlord. If Landlord consents to Tenant making any alterations or changes to the Premises, the alterations or changes will belong to Landlord at the end of the Term of this Lease and may not be removed by Tenant without the prior written consent of Landlord.

11. Liens and Claims. Tenant may not permit any liens or claims for which Tenant is responsible to become filed against the Premises. If Landlord suffers any loss because of the filing of any lien or demand on the Premises, Tenant shall pay Landlord the amount of the costs incurred by Landlord, including attorneys' fees attributable to the filing of the lien or demand.

12. Assignment and Subletting. This Lease is a personal agreement between Landlord and Tenant. Tenant may not sublet the Premises to others or assign to others any right or rights which Tenant may have under this Lease.

13. Damage by Fire or Other Casualty. If the Premises is damaged by fire or other casualty, Landlord may terminate this Lease by giving written notice to Tenant within thirty (30) days after the damage by fire or other casualty. Tenant shall immediately notify Landlord of any damage to the Premises. Tenant's obligation to pay Rent after the Premises are damaged to the extent the Premises become uninhabitable will be governed by applicable law. Landlord shall not be liable for damage to any of Tenant's personal property, even if Landlord is negligent. Tenant agrees to carry renter's insurance as provided in paragraph 17 of this Lease.

14. Default/Eviction. Tenant shall be in default if Tenant does not pay any amount payable by Tenant under this Lease by the date that payment is due. Tenant shall also be in default if Tenant violates any of the other provisions of this Lease. Tenant shall be considered in default if Landlord reasonably determines that Tenant is involved in any criminal activity (other than as a victim), regardless of whether Tenant has been arrested or convicted for such activity. Tenant shall also be considered in default if Tenant or Tenant's guests abuse alcohol, drugs or other controlled substances in the Premises, as reasonably determined by Landlord. If Tenant or Tenant's guests unreasonably disturb neighbors, damage the Premises or the property of neighbors, Tenant will be considered in default. If Tenant's living or housekeeping habits pose a risk to health or safety, or damage the Premises, Tenant will be considered to be in default. If Tenant defaults, Landlord may terminate this Lease, bring an eviction action or seek other legal or equitable remedies, including recovery of Landlord's reasonable attorneys' fees and court costs. If Tenant defaults and Landlord does not terminate this Lease or evict Tenant, Landlord

may still terminate this Lease, evict Tenant or pursue other available legal or equitable remedies for any other Tenant default. **Tenant acknowledges that Landlord has a "ZERO TOLERANCE POLICY" for violence, drug use and other criminal activity.**

15. Notice. Any notice which may be given or must be given under the terms of this Lease is to be given in the following manner: Tenant shall mail the notice by certified mail, return receipt requested, to Landlord at 500 Ford Road, Minneapolis, MN 55426. Notice to Tenant shall be sent by Landlord in the same manner addressed to Tenant at the Premises.

16. Condition of the Premises. Tenant has inspected the Premises and has found the Premises to be in a condition that is acceptable to Tenant, and therefore agrees to accept the Premises in "as-is" condition, and with all faults.

17. Insurance and Liability. Tenant shall maintain, at Tenant's expense, insurance covering Tenant's personal belongings and agrees that Tenant will look to its own insurance if Tenant's personal belongings or the belongings of others that are in the Premises from time to time during the Term of this Lease should be damaged, no matter how the damage occurs and whether or not the damage is caused by Landlord negligent acts or failures to act. Tenant shall also maintain appropriate liability insurance for Tenant. Tenant agrees to indemnify, hold harmless and defend Landlord against any claims, actions, and costs, including reasonable attorneys' fees, arising out of, or resulting from: (i) all negligent or wrongful acts by Tenant, Tenant's guests, invitees or contractors; (ii) the use of the Property by Tenant, or by Tenant's guests and invitees; and (iii) any breach of this Lease by Tenant. Landlord shall not be liable for, and Tenant waives, all claims for damage or injuries sustained by Tenant, its guests and invitees, or resulting from any act or occurrence in or about the Premises.

18. Signatures. Each person named as Tenant has read this Lease and all of us agree to abide by its Terms. We have received a copy of this Lease.

LANDLORD: 5/1/09 DATE

By: ______________________

Its: ______________________

TENANT: 5/1/09 DATE

By: ______________________

Its: ______________________

 

JAGUAR
Jaguar
Minneapolis

LAND ROVER

Land Rover
Minneapolis

8905 Wayzata Blvd. Phone (763) 222-2200
GOLDEN VALLEY, MINNESOTA 55426

Customer E-mail:

Stock #: R3621 Date: 11/20/08 Salesperson: ADAM GREGORY WHITE

Buyer Name: (Last) ROWAN (First) CHRISTI (Middle) MICHELE

Co-Buyer Name: (Last) CAB WEST LLC (First) (Middle)

Address: 715 EAST RIDGE DR City: NORTHFIELD State: MN County: RICE Zip: 55057

Home Phone: (507)664-9080 Bus. Phone (612)701-9080 Buyer DOB: 08/28/73 Co-Buyer DOB:

Buyer D.L.#: W213266661306 Co-Buyer D.L. #:

Buyers Insurance Co AMERICAN FAMILY Policy #: 11329376077FPPA MN Agent: TODD VISKOCIL Phone: (952)938-2911

PLEASE ENTER MY ORDER FOR: New ☐ XX Used ☐ Demo ☐ as follows: SS#

| YEAR | MAKE | CARLINE | MODEL DESC. | TRANSMISSION | COLOR | INTERIOR |
|---|---|---|---|---|---|---|
| 2008 | LAND ROVER | RANGE ROVER | SUV | AUTO. | | |

| VIN # | LIC. # | TAB EXP. DATE | STATE | MILEAGE | DELIVERED ON OR ABOUT |
|---|---|---|---|---|---|
| SALMF13438A291452 | PERMIT | | MN | 15 | 11/20/08 |

**TRADE-IN DATA** GET CERTIFICATE OF TITLE!!

| YEAR | MAKE | CARLINE | MODEL DESC. |
|---|---|---|---|
| | | | |

VIN #

LIEN HOLDERS NAME

ADDRESS

| LICENSE PLATE # | LICENSE STATE | EXP. DATE |
|---|---|---|
| | | |

| MILEAGE NOW | TRANSMISSION | COLOR |
|---|---|---|
| | | |

| | |
|---|---|
| CASH PRICE OF VEHICLE | N/A |
| FREIGHT | N/A |
| DEALER INSTALLED OPTIONS | N/A |
| | N/A |
| 12 11-24-09 | |
| LEASE TERM 24 @ PAYMENTS OF 2200.00 | |
| RESIDUAL VALUE = 44436.00 | |
| MILES INCLUDED IN LEASE = 21000 | |
| MY TRADE DOES NOT HAVE A BRANDED TITLE OR INSURANCE SALVAGE HISTORY X | |
| TOTAL | N/A |
| LESS ALLOWANCE FOR USED VEHICLE, AS APPRAISED | N/A |
| TAXABLE AMOUNT | N/A |
| TAX | N/A |
| DOCUMENT ADMINISTRATIVE FEE | $75.00 |
| SERVICE CONTRACT | N/A |
| LICENSE AND FEES | N/A |
| CASH SUBMITTED WITH ORDER | |
| LESS BALANCE OWING TO LIENHOLDER ON TRADE-IN | N/A |
| TOTAL AMOUNT DUE ON DELIVERY | N/A |

**POLLUTION CONTROL SYSTEM DISCLOSURE (TRADE-IN VEHICLE)**

In order to comply with Minnesota Statutes, Section 325E.0951, no person may transfer a motor vehicle without providing a written disclosure to the transferee (buyer) certifying the condition of the pollution control system.

Transferor (seller) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being traded in, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

Seller's Signature X

**DEALER'S DISCLAIMER OF WARRANTY**

The Dealer expressly disclaims all warranties either express or implied on the vehicle sold, except any warranties offered and explained in Paragraphs 10 through 13 on the back of this contract. Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of this contract.

Buyer's Signature X

**DEALER'S POLLUTION CONTROL SYSTEM DISCLOSURE (VEHICLE BEING SOLD)**

Transferor (Dealer) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being sold, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

| | |
|---|---|
| CASH SUBMITTED WITH ORDER | N/A |
| LESS BALANCE OWING TO | N/A |
| TOTAL DOWN PAYMENT | N/A |
| LICENSE | N/A |
| TITLE | N/A |
| TRANSFER | N/A |
| REGISTRATION FEE | N/A |
| A.O.S. | N/A |
| TOTAL | N/A |

The front and back of this CONTRACT comprise the entire CONTRACT affecting this purchase. The DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature. You certify that no credit has been extended by dealer for the purchase of this motor VEHICLE. You certify that you are 18 years of age or older, and acknowledge receiving a copy of this contract.

The terms of this CONTRACT were agreed upon and the CONTRACT signed in this dealership on the date noted at top of this form. If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and YOU have accepted the credit extended.

**IMPORTANT:** THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.

NOTICE OF SALESPERSON'S LIMITED AUTHORITY. This contract is not valid unless signed and accepted by Sales Manager or Officer of Company.

EXHIBIT 10 (A)

T-1 000021

From: Dennis Hecker<dennishecker@sprint.blackberry.net>
To: Christi Rowan <christimrowan@mac.com>
Sent: 11/16/2008 5:55:01 PM
Subject: Re: budget

How? Does he not pay any thing

---

**From**: christi rowan <christimrowan@mac.com>
**Date**: Sun, 16 Nov 2008 17:54:29 -0600
**To**: <dennishecker@sprint.blackberry.net>
**Subject**: Re: budget

60k
On Nov 16, 2008, at 5:53 PM, Dennis Hecker wrote:

Cc debt how much to pay off

---

**From**: christi rowan <christimrowan@mac.com>
**Date**: Sun, 16 Nov 2008 17:51:22 -0600
**To**: <dennishecker@sprint.blackberry.net>
**Subject**: Re: budget

the break down

1500.00 northfield mortgage
420.00 boat
4000.00 the whitney
cc debt 6000.00
1200.00 pays, insurance, grocery , gas , misc

On Nov 16, 2008, at 5:41 PM, Dennis Hecker wrote:

How broke down with rent 4k 9700 for?

---

**From**: christi rowan <christimrowan@mac.com>
**Date**: Sun, 16 Nov 2008 17:29:24 -0600
**To**: <dennishecker@sprint.blackberry.net>
**CC**: <heckerauto@aol.com>
**Subject**: budget

# Total - 13170.00

# House information:



Housing ( food ,health insurance) 1200.00 monthly
The Whitney 4000.00 , monthly
Northfield Property - 3100.00 monthly (christi pays 1/2 until sold ) $1550.00
2006 Larson Boat - Loan TFCU pymt $420.00 , Balance 28,306k

**Unsecured Debt : Credit Cards ( all closed) Nothing in my name**
**we equally share all of the debt .**

**Monthly commitment - payments of these cc listed below**
**$6000.00 mo**
**Total 87,400 / 2 = 43,700**

**Bank of America [redacted]305 $9300.00 -**
**Bank of America [redacted]098 $7300.00 -**

**Capital One 83578 $10,000.00 -**

**Citi Card 5072 $18,000.00 -**

**TFCU [redacted]933 $10,000.00 -**

**WAMU 7110 $7,000.00 -**

**Wells Fargo [redacted]189 $2000.00 -**
**[redacted]348 $2000.00 -**

**[redacted]107 $10,000.00 -**

| | |
|---|---|
| **Discover Card** | **$10,000.00 -** |
| **JCREW [redacted]757** | **$800.00 -** |
| **PBKids [redacted]968** | **$1000.00 -** |

Page 14

this before, but just to get it on the record, there are actually payments being made on this vehicle; is that right?
A To American National Bank, yes.
Q And have you been making those?
A Yes, I have.
Q Okay. I'm showing you now what has been marked as Exhibit Number 5, and Exhibit Number 5 is another document from your dissolution proceeding. It's an affidavit that is entitled Affidavit of Dennis E. Hecker. And if you turn to page 8 of this document, there's a signature space there. That's your signature, correct?
A That's correct.
Q All right. At page 4 of that affidavit there's a paragraph 14. The first sentence of paragraph 14 says, With regard to the allegations contained in paragraph 23, it has been established that Ms. Rowan resides in the Northridge home and pays $5,000 per month in rent. Do you see that?
A Yes.
Q And has she been paying that rent?
A I think that question is best asked to Ms. Rowan or her attorney as for the confirmation. I'm not sure.

Page 15

Q Is Ms. Rowan employed?
A I believe she's self-employed.
Q And what does she do in that self-employment?
A She has a photography agency.
Q All right. Isn't it true that the only source of her funds to pay $5,000 a month would be from you, Mr. Hecker?
A Can you ask me the question again?
Q Sure. The source of funds for her to be able to pay $5,000 a month on that lease would be funds from you, correct?
A The first question you said the only source; the second question you said the source. I believe that that's an incorrect statement.
Q Where would she get the money to pay those rents?
A I'm not sure to the amount of income, based upon her -- I would be one source, but I don't believe I'm the only source.
Q What other sources are there?
A It would be best to ask her.
Q Well, you entered into a lease with her before this bankruptcy case was commenced, for Northridge, right?
A That's correct.
Q And that lease calls for $5,000 a month in lease

Page 16

payments, correct?
A I believe it does.
Q You knew she was unemployed except for her photography business at the time, correct?
A Yes.
Q Where did you think she was going to get the $5,000 a month to pay the rent?
A You're asking me to speculate where she would get it other than myself or her photography business?
Q I'm asking you where you thought she was going to get $5,000 a month to pay rent on Northridge?
A Well, maybe I can word it better saying that I believe her photography business or a combination of some help from me.
Q Did you know at the time you entered into that lease what sort of income she was generating per month off her photography business?
A I don't recall.
Q But at the same time you entered into that lease, you were giving her money to fund her occupancy of the property on 150 Portland Avenue at the Whitney, weren't you?
A I believe I was helping her with her cost of housing, yes.

Page 17

Q In the months prior to the bankruptcy, let's just say May of 2009, how much money did you transfer to Ms. Rowan?
A I don't recall.
Q Did you look at that and attempt to determine how much money you transferred to her before you filed bankruptcy?
A Can you ask me that question again, please?
Q Sure. Well, I'll come back to it a little bit later.
Back at this exhibit again, Mr. Hecker, your affidavit, at page 5 I'm looking at paragraph -- well, it's a continuation of paragraph 15, and I'm looking at Sections D and E. You're indicating that, Ms. Rowan purchased and maintains the 2008 Range Rover without my assistance. Focusing on that D, is that true, that she purchased that without your assistance?
A I believe she purchased two different Range Rovers. I'm not sure which one you're asking about.
Q It says here at D, Ms. Rowan purchased and maintains the 2008 Range Rover without my assistance. I'm talking about the one you're talking about in your affidavit. And my question

EXHIBIT 12

Q What about Donald Schroeder, that's the next one on the list, why does he -- does he still owe that money?
A He filed bankruptcy and promised to pay the difference over a period of time, but it's probably non-collectible.
Q Okay. And then the next one, Snapdragon Venture with Wayne and Jan Belisle, what's the story on that?
A The story is, or my understanding is that Jan Belisle purchased a flower shop. And Wayne Belisle was her husband, and I had some business dealings with him. They were trying to put together an SBA loan. And at the time to make the transaction go easier, I advanced the funds. And over a short period of time it was to be taken out or refinanced with the SBA or some other TBD later.
Q Is it true that the end result of it is that you're on the hook for that money that they owe you?
A Yes.
Q Okay. Still on this same page, at Item 18 it says, Pending tax refund for tax years 2002 to '6, $2 million. Do you know if the returns

necessary to generate that refund have been filed, Mr. Hecker?
A No, they haven't.
MR. SEAVER: Could you read back the question, please.
(Whereupon, the question was read back by the court reporter.)
BY MR. SEAVER:
Q Is that because of the lack of money to pay the accountants?
A I believe so.
Q Do you think that they're prepared and ready to file, Mr. Hecker?
A No.
Q Okay. Still on this Exhibit 8, it says page 10 of 127 up at the top. And then at Item 21 there's GELCO Corporation Sales Commission Agreement for $6 million. That's the agreement that you discussed informally with Mr. Skolnick and Mr. Burton and I at the meeting we had here awhile ago, correct?
A That's correct.
Q And your recollection was -- You didn't have it in front of you, of course, but your recollection was that there was some obligation to Dennis

Hecker personally on that commission agreement, or is that your recollection?
A Several people have interpreted it several different ways.
Q And whatever it says, it says. I'm not trying to trick you.
A That's correct.
Q I just want to get your impression of it. Were you under the impression, at least, that money would go directly to Dennis Hecker on that document or on that agreement?
A The agreement calls out for the money to go to myself or to other entities.
Q When they were making payments, when GELCO was making payments, rather, were they coming to you personally or were they going to one of the entities?
A I don't honestly know.
Q Okay. Well, those payments were $75,000 a month, correct?
A Correct.
Q All right. And when did they cease making those payments?
A November.
Q Of '08?

A Of '08.
Q Okay. Why were you told they were ceasing to make the payments?
A There was default payment for Advantage or to GE Fleet for Advantage's Fleet.
Q When did Advantage file its Chapter 11 bankruptcy?
A December of '09 -- '08. I'm sorry.
Q Still continuing on this Schedule B, there are -- And I'm looking now at page 10, down at the bottom, where it talks about dirt bikes and liquidation value provided by Forest Lake Motor Sports. There are indications there and then on the next page that Forest Lake Motor Sports provided liquidation values of other things too. My question is this: Were those written valuations?
A Yes, they were.
Q So you have those somewhere?
A I believe we turned them in to the -- to you.
Q You think I --
A Yes, you have them.
Q You think I have them?
A Yes.
Q Okay. Continuing on with this same exhibit, over

at Item 35, it says page 12 of 127 up at the top. It talks about memberships here, and there's Bayport Marina, then Spring Hill Club, and then social memberships in various clubs believed to have no value. What clubs are those, the social membership clubs?
A The Minneapolis Club.
Q Okay. Is that the only one you can think of?
A We have the Running Four Club.
Q And is that a social membership?
A Actually, part of it is and part of it isn't.
Q There are two clubs, right?
A One club with two delineations.
Q Okay. In one club there was a $200,000 membership fee, correct?
A That's correct.
Q And that's the club, the part of it that includes the golf privileges, correct?
A That's correct.
Q When is the last time you played there?
A Approximately three years ago.
Q Okay. Where is Roaring Fork located? It's in Colorado, right?
A Correct.
Q Was it near the condo that you had in Colorado?

A It's about a half hour away.
Q All right. Was it because you had the condo in Colorado that you bought the Roaring Fork membership?
A There were some other Minnesotans that had memberships there.
Q Okay. And then the other component of Roaring Fork, not the golf part, but the other part, that was just a $10,000 membership fee, correct?
A That's correct.
Q And both the 200,000 and the $10,000 membership fees have been paid in full, correct?
A That's correct.
Q All right. The next page of this Exhibit 8, that's the list of the watches again. This list, Mr. Hecker, did you review this list personally before you signed this signature declaration that's Exhibit Number 7?
A This list, to the best of my knowledge, was put together by the people who provided the appraisal. We gave you a copy of the appraisal.
Q Okay. So --
A Basically put all the watches in one or two suitcases and sent them over to them for an appraisal.

Q So the watches you sent over to that place for appraisal, they generated their values and then sent the watches back, right?
A That's correct.
Q Then this list came off the value list that they gave you?
A That's correct.
Q All right. So did you review this list, which is at Exhibit 8, before you signed this signature declaration, which is Exhibit 7?
A I'm not sure from the signing of that and when this list came in what the time period was of -- Did I review it? I don't understand your question.
Q Okay.
A I mean, I don't think that -- Go ahead.
Q Okay. Well, your schedules were filed on July 1 of 2009. This is the court stamp up at the top on the first page. And then your signature declaration, this is Exhibit 7, indicates it was signed on July 1. I'm just giving you that for background.
This list of watches, had you reviewed that list when you signed this signature declaration?

MR. CUTLER: Randy, you're asking if he reviewed this specific document at the time that he signed that signature declaration; is that it?
BY MR. SEAVER:
Q That is what I'm asking.
A I don't recall.
Q Okay. If you had, you would have noticed that watches were missing, wouldn't you?
A At the time I'm -- With all the trauma and what was going on, I'm not sure I would have. I mean, I had so many watches, I...
Q Where were you -- To come back to this, where were you when you signed this signature declaration?
A I'm not sure.
Q Okay. And the schedules here, they were filed on July 1. Did you review the completed schedules before they were filed?
A Well, the schedules were work product of everybody putting the information together, and it was to the best of our ability that we put everything together that we had. And based upon that is what I signed the document.
Q Sure. But my question is, did you actually

review, before they were filed, these schedules and Statement of Financial Affairs that were filed with the Court on July 1 of 2009?

MR. CUTLER: And, again, you're asking if he reviewed the papers, right?

BY MR. SEAVER:

Q Yes. I'm asking if you reviewed the documents that were filed with the Court on July 1 of 2009 before they were filed?

A Yes.

Q And you didn't notice any inaccuracies in any of those?

A I mean, I think we filed 135 pages of schedules. And, as I said, a number of people helped put them together in the middle of a government raid. I'm not sure that -- I did my best to be honest and forthwith as I could.

Q You didn't notice any inaccuracies in the schedules when they were filed?

MR. SKOLNICK: I'm sorry, Madam Court Reporter, could you read the question back?

(Whereupon, the question was read back by the court reporter.)

THE WITNESS: At the time I don't believe so.

BY MR. SEAVER:

Q Okay. Continuing on with Exhibit 8, at the Statement of Financial Affairs, that starts at page 80 of this exhibit. And turn to the second page of that, which will say page 81 of 127 up at the top. And that's the section that says, income other than from employment or operation of business. And it says for 2009 year to date, $20,921, and then it says gross income before adjustments for losses and pass-through depreciation.

My question is, where did this $20,921 figure come from?

A I believe that number came from Greg Orthun.

Q Do you know what that number is composed of?

A No, I don't.

Q And then go back one page toward towards the front. It's the first page of the Statement of Financial Affairs at paragraph number 1, the income from employment or operation of business. And for 2009 year to date it says W-2 income of $101,319. Would that information have come from Greg Orthun also?

A Correct.

Q Who is Mr. Orthun; what does he do, I mean?

A He's the chief financial officer and handled all the tax preparation for the last 15 years for all my companies.

Q Is he CFO for all the companies?

A I'm not sure of his executive title, but he's handle the tax preparation for all my personal stuff for the last 15 years and compiles all the information between the companies for tax returns.

Q Is he still employed by one of the --

A Yes, he is.

Q Okay. Who is he employed by?

A I believe it might be Denny Hecker Auto Group or one of the leasing companies.

Q Okay. Continuing on with this exhibit, at Item 4, this is page 82 of 127, it's suits and administrative proceedings. There's an item there. It's about five, six items down. It says, Northstate Financial Corporation v. Motorpless, Inc., a replevin action. Do you know what that's about?

A It was an individual who Northstate financed and was unable to pay his balances due Northstate Financial.

Q Did he or that business, were they holding some

property of Northstate Financial?

A They had sold some cars on trust.

Q So when the lawsuit was started, you thought they still had the property, but they didn't?

A They didn't.

Q Okay. Continuing with this same exhibit, at page 83 of 127 there is a lawsuit that says Dennis Hecker v. Boyd Morrow, conciliation court in Scott County. One of them says, settled 6/1 of '09. Did Mr. Morrow pay some money per that settlement?

A I don't honestly know.

Q Okay. Well, it's in conciliation court. Was it a pretty small amount of money you were fighting about?

A I didn't handle it at all.

Q Okay. Still at this same exhibit, if you go to page 85 of 127, it's the gift section. Generally on the gift section of this filing, Mr. Hecker, what steps did you take to determine what gifts had been given in the year prior to filing?

A On page 85?

Q Well, let's talk about page 85 to start with. The only name on that page is Tamitha Hecker, correct?

Q And Exhibit 60 are documents that I received through your attorney. And this group of documents is the valuation that you had done for the watches and your ring by Embellir, correct?
A That's correct.
Q And up at the top -- And I'm just looking at the first page, but up at the top of the first page it says April 28, 2009, correct?
A Yes.
Q And then I'll represent to you I believe the other pages have the same date. How long prior to that were the watches and the ring delivered to Embellir?
A A couple days. I'm not sure.
Q Okay. Did you deliver them yourself?
A No.
Q Okay. Who did?
A Will Plumber.
Q Okay.

(Hecker Exhibit 61 was marked for identification by the court reporter.)

BY MR. SEAVER:
Q Mr. Hecker, Exhibit 61 is in front of you now, which is a group of documents that you produced to me which appear to be a 2007 1120S U.S. Income