# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                        BKY No.:  09-50779

Dennis E. Hecker,                                                        Chapter 7

                Debtor.

_____

                               Adv. Case No.:  09-5___

Randall L. Seaver, Trustee,

                Plaintiff,

vs.                                                        **ADVERSARY COMPLAINT**

Christi M. Rowan,

                Defendant.

_____

      Randall L. Seaver, Trustee ("**Trustee**") of the bankruptcy estate of Dennis E. Hecker ("**Debtor**"), as and for his Complaint against Defendant Christi M. Rowan ("**Defendant**") states and alleges as follows:

      1.      The Trustee is the duly appointed Chapter 7 Trustee of the bankruptcy estate of the Debtor.

      2.      This bankruptcy case was commenced on June 4, 2009 by the filing of a voluntary Chapter 7 Petition ("**Filing Date**").

      3.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

      4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.  This case arises under 11 U.S.C. §§541, 542, 544, 548, 550 and 551.

5.     Defendant and Debtor have been friends for many years and their relationship, especially from 2008 forward, developed into a romantic relationship.

6.     Defendant is holding or controlling property of this bankruptcy estate which was owned by the Debtor prepetition, or was purchased with the Debtor's monies prepetition and placed in a home titled in the Debtor's name and located at 1615 Northridge Drive, Medina, Minnesota ("**Northridge**").  That property is within the residence of the Defendant and the Debtor.  All of the foregoing is referred to herein as the "**Property**."

7.     Upon information and belief, Defendant may nominally control or be the conduit for other assets owned by the Debtor that are held by, or in the name of, the Defendant.  The Defendant is a willing participant in a scheme to secrete assets owned by the Debtor.  Defendant had assisted with actual fraud upon Debtor's creditors and this bankruptcy estate.

8.     In January 2009, Chrysler Financial commenced a lawsuit against Debtor seeking a judgment in excess of $400,000.000.00.   In April, 2009, a judgment in the amount of $476,952,874.60  was  entered  against  Debtor.    The  Debtor's  schedules  list  assets  of $18,509,972.15 and liabilities of $766,754,240.50.

9.     In October of 2008, Defendant's marriage to Brent Rowan was dissolved by the Hennepin County District Court (Court File No. 27-FA-08-6101) (the "**Decree**").   In that proceeding, assets of Defendant were disclosed.  A redacted copy of the Decree is attached hereto as Exhibit A.  The Decree evidences that Defendant had an income of approximately $8,000.00 per month and very significant debt.

10.     Defendant resides at Northridge, a home titled in Debtor's name and his former homestead, pursuant to a "lease."   A copy of the lease is attached hereto as Exhibit B (the

"**Lease**"). One lease payment of $5,000.00 was tendered to the Trustee and returned by the Trustee. Defendant has not made further lease payments to the Debtor or the Trustee.

11.     Debtor and Defendant claim that Defendant paid for improvements at Northridge and, therefore, she was excused from making payments on the Lease until August of 2009. In reality, Debtor paid for most or all of the improvements.

12.     The majority of the work performed on Northridge was by Brent Rowan, Defendant's former husband, through his company, BCR Construction, Inc. ("**BCR**").

13.     The estimate from BCR for all of its work to Northridge was $39,460.00. Debtor funded in excess of this amount for work to Northridge. In the year before filing, Northridge was significantly upgraded.

14.     In November of 2008, Defendant leased a 2008 Land Rover Range Rover ("**RR1**") having a sticker price of $96,000.00. That vehicle has a monthly lease payment of $2,178.16 per month. The $7,500.00 cash needed at closing of the lease for RR1 was transferred to Defendant by the Debtor.

15.     The same month that Chrysler obtained its judgment, April 2009, the Debtor acquired a new SUV. The Defendant assisted Debtor in obtaining a vehicle for Debtor. Defendant returned to the same car dealer where she obtained RR1 and this time, purchased in her name, at a cost of $86,026.00 for a 2008 Land Rover Range Rover ("**RR2**").

16.     In order to purchase RR2, Defendant claimed that she was an attorney earning $189,000.00 per year and provided the dealer with a falsified W2 for the year 2008 to support her asserted income. Defendant knew that she would not otherwise qualify for financing. Copies of pages 38 through 48 of Defendant's 2004 examination are attached hereto as Exhibit C. A redacted copy of the falsified W2 is attached hereto as Exhibit D.

17.     The down payment for RR2 of $13,000.00 was transferred to Defendant by Debtor and $1,000.00 was charged to her Teacher Federal Credit Union ("**TFCU**") credit card. The monthly payment for RR2 is $1,379.34 bringing the monthly payments for RR1 and RR2 to a total of $3,557.50. Upon information and belief, Debtor is funding most or all of the payments for RR1 and RR2.

18.     Defendant claimed that her earned income has not varied significantly since her divorce in the fall of 2008. However, her bank deposits since that time have significantly varied.

19.     In the year prior to filing, the Debtor caused over $235,000.00 in cash and checks to be transferred to Defendant. Some of those monies were deposited into her account at Trustone Credit Union. The funds came from the Debtor, monies owed to Debtor, accounts funded by Debtor, and from Debtor-controlled entities. A list of apparent cash and check transfers to Defendant deposited into her Trustone Credit Union account are attached hereto as Exhibit E. Copies of deposit slips and instruments for deposits into Defendant's Trustone account, at least most of which were generated by the Debtor, are attached hereto as Exhibit F.

20.     Defendant also deposited monies from Hecker into an account held by her at Associated Bank. Those deposits exceeded at least $40,000.00 in the year prior to filing. An itemization of apparent Hecker funded deposits into that account is attached hereto as Exhibit G. Examples of deposits, at least most of which were generated by the Debtor, are attached hereto as Exhibit H.

21.     Defendant also deposited monies transferred from Hecker into an account held at Wells Fargo Bank to which she had access.

22.     Furniture and other personal property, which are property of the bankruptcy estate, are located at Northridge.

23.     While Debtor claimed that one of his homes in Crosslake was his homestead, in reality, he used the Crosslake property as a recreation facility and did not reside there.

24.     According to Defendant's testimony, Debtor's then-employee, Erik Dove, an unlicensed attorney, drafted the Lease referred to in paragraph 10 hereof.  The Lease was created for the purpose of a scheme to preserve a Twin Cities home for the Debtor.

25.     The purported Lease, with a payment of $5,000.00 per month, is for significantly less than the carrying cost of Northridge.

26.     The Debtor made transfers to or for the benefit of Rowan in the year prior to filing, through the charging of items for her benefit on his American Express and Visa cards in an amount exceeding $125,000.  Those charges included $60,000 for a fur coat, $15,000 for a watch, over $30,000 for a Harrison Dog, over $11,000 for lodging at the St. Regis Hotel in Aspen, CO, and other charges for lodging in Cabo San Lucas, airfare to Cabo, airfare to Hawaii, and lodging in Cabo San Lucas.

27.     Debtor has funded the Defendant's acquisition of RR1 and RR2, including the initial down payments and subsequent payments.

28.     Debtor paid for Defendant's lease of a luxury Minneapolis apartment located at 150 Portland Avenue South (at the former Whitney Hotel) from 2008 to 2009 at $4,000.00 per month including a $4,000.00 deposit which was due back to Defendant at the commencement of this case ("**Whitney Deposit**").

29.     Debtor has funded tuition for Debtor's daughter at Breck School.

30.     In the year prior to filing, Debtor has paid for Defendant and her family to travel to Mexico, Texas and Hawaii and for her stay at luxury hotels, such as the St. Regis in Aspen, Colorado ($11,555.90).  Examples of costs funded by the Debtor are lodging in Los Cabos,

Mexico, which exceeded $3,747.00, travel costs including Phoenix (over $2,147.60), Hawaii (over $6,579.00) for Defendant and her children and discount travel certificates.

31.     In the year prior to filing, the Debtor funded many shopping ventures for Defendant including, but not limited to, Neiman Marcus (over $34,000.00), Gorsuch ($10,680.00), Gucci (Debtor indirectly financed Defendant's purchases in excess of $2,300.00), Belle Reve Boutique (Debtor funded at least $4,343.38) and other luxury retailers.  Debtor has allowed Defendant to use his store credit cards for purchases the amount of which is unknown. Debtor has funded cosmetic surgery for Defendant at a cost of at least $7,000.00.  Together, the preceding paragraphs, including the Lease constitute the "**Transfers**."

32.     As used herein, Transfers includes all transfers of value to Defendant including, but not limited to, cash, checks, credit, airline tickets and rent-free use of various properties.

33.     Upon information and belief, Defendant possesses or controls financial records, together with other written and electronic information, regarding the Debtor (the "**Information**").

34.     At all times material hereto, Debtor was insolvent and under great pressure from his creditors.

### COUNT I - TURNOVER

35.     The Trustee realleges and incorporates herein by reference the foregoing paragraphs of this Complaint.

36.     The Property is property of the estate pursuant to 11 U.S.C. §541(a).

37.     The Trustee is entitled to an order requiring Defendant to turnover the Property, Information and lease payments for Northridge to the Trustee pursuant to 11 U.S.C. §542(a) and (e).[1]

## COUNT II – FRAUDULENT TRANSFER AS TO PRESENT AND FUTURE CREDITORS BY CONSTRUCTIVE FRAUD, UNIFORM FRAUDULENT TRANSFER ACT (UFTA), MINN. STAT. §513.44(a)(2) AND 11 U.S.C. §548(a)(1)(B)

38.     The Trustee hereby realleges and incorporates herein by reference the foregoing paragraphs of this Complaint.

39.     Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or when the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

40.     Pursuant to Minn. Stat. §513.44(a)(2) (Uniform Fraudulent Transfer Act), made applicable to this proceeding by 11 U.S.C. §544, and 11 U.S.C. §548(a)(1)(B) and avoidance pursuant to 11 U.S.C. §550, Trustee seeks recovery from Defendant of the value of the Transfers, plus prejudgment interest.

## COUNT III – FRAUDULENT TRANSFER AS TO PRESENT CREDITORS BY CONSTRUCTIVE FRAUD, UNIFORM FRAUDULENT TRANSFER ACT (UFTA), MINN. STAT. §513.45(a) AND 11 U.S.C. §548(a)(1)(B)

41.     The Trustee hereby realleges and incorporates herein by reference the foregoing paragraphs of this Complaint.

---

[1] The Lease payments may be the subject of a settlement between the Trustee and the Debtor.  If that is approved by the Court, then the Trustee will not seek to recover Lease payments herein.

42. Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was insolvent or the Debtor became insolvent as a result of the Transfers.

43. Pursuant to Minn. Stat. §513.45(a) (Uniform Fraudulent Transfer Act), made applicable to this proceeding by 11 U.S.C. §544, and 11 U.S.C. §548(a)(1)(B) and avoidance pursuant to 11 U.S.C. §550, the Trustee seeks avoidance and recovery from Defendants of the value of the Transfers, plus prejudgment interest.

## COUNT IV - DECLARATORY RELIEF

44. The Trustee hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint.

45. Plaintiff is entitled to declaratory relief pursuant to Minn. Stat. Ch. 555 and 11 U.S.C. §541 determining that:

(a) The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

(b) That any equity in RR1 or RR2 is property of the bankruptcy estate;

(c) The refund of the Whitney Deposit is property of the estate; and,

(d) Any personal or real property in the name of Defendant which was acquired with funding of the Debtor is property of the estate.

## COUNT V – INJUNCTIVE RELIEF

46.     The Trustee hereby realleges and incorporates herein by reference the foregoing paragraphs of this Complaint.

47.     The Trustee believes that Defendant is in the possession or control of assets including, but not limited to – Harrison dog, Chanel ring and watch, fur coat and Property which are either recoverable by the Trustee by way of avoidance or remain property of the estate.

48.     Defendant is possession or control of Information and Property which she could easily secrete or transfer so as to avoid the Trustee's recovery thereof.

49.     The Court's intervention is required so as to prevent the estate from suffering irreparable harm by loss of the Property and Information.

50.     The Trustee is entitled to relief of this Court pursuant to 11 U.S.C. §105 and Fed. R. Civ. P. 65 (incorporated into this proceeding by Bank. Rule 7065).

51.     The Trustee requests that the Court enjoin Defendant from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and Property.

52.     The Trustee further requests that the Court enjoin Defendant and require Defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and Property.

53.     The Trustee further requests an order directing Defendant to disclose all Property or Information in her possession or control and to allow the Trustee access thereto.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order and Judgment against Defendant as follows:

1.      Pursuant to Count I, directing Defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and Property, including any amounts due on the Lease, to the Trustee.

2.      For judgment under Counts II and III, avoiding the Transfers, ordering recovery of the Transfers, and awarding a judgment against the Defendant in an amount in excess of $375,000.00, the exact amount to be proven at trial together with interest thereon.

3.      Pursuant to Count IV, determining that personal property at Northridge and other items described in Count V are property of this bankruptcy estate.

4.      Pursuant to Count V, granting the Trustee an injunction, directing Defendant to disclose all Property to the Trustee and to allow the Trustee access thereto.  Further, enjoining Defendant from disposing of or encumbering or transferring any Property.

5.      Such other relief as the Court deems just and equitable in the premises.

                                        **LEONARD, O'BRIEN**
                                        **SPENCER, GALE & SAYRE, LTD.**

                                            /e/  Matthew R. Burton
Dated: January 15, 2010              By_____
                                            Matthew R. Burton, #210018
                                            Attorneys for Randall L. Seaver, Trustee
                                            100 South Fifth Street, Suite 2500
                                            Minneapolis, Minnesota  55402-1216
                                            (612) 332-1030
410774