UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                          Case No. 09-50779 (RJK)

Dennis E. Hecker,

                                                     Chapter 7
              Debtor.

---

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM STAY**

---

To:     Entities specified in Local Rule 9013-3.

        1.      JPMorgan Chase Bank, N.A. ("Chase") moves the Court for an order granting it relief from the automatic stay so that Chase may exercise its right of setoff as to a certain brokerage account of Dennis E. Hecker that was pledged as security for Hecker's indebtedness to Chase, and gives notice of a hearing on this matter.

        2.      The Court will hold a hearing on this Motion at **2:00 p.m.** on **April 8, 2010**, at Courtroom 8 West, at the United States Courthouse, at 310 U.S. Courthouse, 300 South Fourth Street, in Minneapolis, Minnesota.

        3.      Any response to this Motion must be filed and delivered not later than April 3, 2010, which is five days before the time set for the hearing (including Saturdays, Sundays and holidays).  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

        4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1134; and Fed. R. Bankr. P. 7030 and 9016.  This proceeding is a core proceeding.  The Petition commencing this Chapter 7 case was filed on June 6, 2009.  The case is now pending in this Court.

5.     This Motion arises under Fed R. Bankr. P. 4001.  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rule 9013-1 and 9013-2.

## FACTS

6.     Hecker is the owner of a brokerage account with JPMorgan Chase Bank, N.A., which holds securities with a total cash value of approximately $142,499.25 as of March 4, 2010 (the "Account").  The last four digits of the account number are 9100.

7.     As of the petition date, Hecker was indebted to Chase in the aggregate amount of $3,049,717.10.[1]  This indebtedness was reduced to judgment prior to the petition date, and arose from Hecker's default under certain loan documents, including a Promissory Note, a Covenant Agreement, a Control Agreement, and a cross-collateralized Pledge Agreement, each dated April 28, 2008 (collectively, the "Loan Documents").  True and correct copies are attached as Exhibits A – D, respectively.  The Loan Documents provide for the application of New York law.

8.     Chase has a right of setoff against the Account under the Loan Documents, and New York law.

9.     By executing the Promissory Note, Hecker granted Chase a right of setoff in the Account.  The Promissory Note states in relevant part:

> Borrower grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the indebtedness, all Borrower's right, title and interest in and to all Borrower's accounts (whether checking, savings, or some other account) with lender or any subsidiary or affiliate of JPMorgan Chase & Co. (each hereinafter referred to as a "Lender Affiliate")

---

[1]     In support of its claim, Chase filed a proof of claim on September 28, 2009, which has been designated Claim 81-1.  Contemporaneously with this motion, Chase is filing an amended proof of claim to assert that a portion of its claim is secured by the right of setoff, as described below.

and all other obligations at any time owing by Lender or any Lender Affiliate to Borrower.

Ex. A.

10.    In addition, with identical language, the Pledge Agreement provides Chase with the right of setoff against all of Hecker's property in Chase's possession. Ex. D.

11.    Due to an internal oversight, Chase recently became aware of the existence of the approximately $142,499.25 in the Account.

12.    Chase lacks adequate protection of its interest in the Account, and Chase has suffered and continues to suffer harm by virtue of being stayed from exercising its setoff rights.

13.    Chase's right of setoff is "cause" within the meaning of 11 U.S.C. § 362(d)(1), entitling it to relief from the stay to exercise its legal rights.

**WHEREFORE**, Chase moves this court for an order terminating or modifying the automatic stay of 11 U.S.C. § 362(a) to allow Chase to enforce its right of setoff against the Account, and for such other and further relief as the Court deems just and equitable.


Dated: March 25, 2010

*/e/ Robert T. Kugler*
Todd A. Noteboom (#240047)
Robert T. Kugler (#194116)
Bryant D. Tchida (#314298)

**LEONARD, STREET AND DEINARD**
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR
JPMORGAN CHASE BANK, N.A.**

## VERIFICATION

I, Michael Giterman, verify that I have read the foregoing and that the statements made in this Notice of Motion and Motion are true and correct to the best of my knowledge, information and belief.

Dated: March _20_, 2010

Michael Giterman
Vice President of JPMorgan Chase Bank, N.A.

# EXHIBIT A



# PROMISSORY NOTE

| Borrower: | DENNIS E. HECKER<br>500 FORD ROAD<br>MINNEAPOLIS, MN 55426 | Lender: | JPMorgan Chase Bank, NA<br>New York Metro Park Avenue Private Client Services<br>245 Park Avenue, Floor 15,<br>New York, NY 10017 |
|---|---|---|---|

**Date of Note: April 28, 2008**

### Principal Amount: $3,000,000.00

**PROMISE TO PAY.** To repay Borrower's loan, DENNIS E. HECKER ("Borrower") promises to pay to JPMorgan Chase Bank, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million & 00/100 Dollars ($3,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2008, with all subsequent interest payments to be due on the same day of each month after that. Payments and any other credits shall be allocated among principal, interest and fees at the discretion of Lender unless otherwise required by applicable law. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown on loan account statements sent to the Borrower, Lender's address shown in any payment coupon book provided to the Borrower, or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the Prime Rate (the "Index"). "Prime Rate" shall mean the rate announced from time to time by Lender as its prime rate (which rate may not be the lowest, best or most favorable rate of interest which Lender may charge on loans to its customers). Each change in the rate to be charged on this Note will become effective without notice on the same day as the Index changes. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 0.250 percentage points under the Index. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without fee all or a portion of the principal amount owed hereunder earlier than it is due. All prepayments shall be applied to the indebtedness in such order and manner as Lender may from time to time determine in its sole discretion. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Private Client Services Loan Servicing, P.O. Box 36648 Louisville, KY 40233-6648.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note 3.000 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Transfer of Assets.** Borrower leases, sells, or otherwise conveys, or agrees to lease, sell, or otherwise convey, a material part of its assets or business outside of the ordinary course of business.

**Defaults with Respect to Third Parties.** Borrower fails to make any payment when due or fails to comply with or to perform any term, obligation, covenant or condition contained in any agreement between any other person and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Judgments or Decrees.** One or more judgments or decrees shall be entered against the Borrower and such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, whether by judicial proceeding, self-help, or any other method, by any creditor of Borrower, or by any governmental agency against the Collateral or any other assets of Borrower. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, the Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Failure to Comply with Laws.** Borrower fails to comply with all applicable statutes, laws, ordinances and governmental rules, regulations and orders to which it is subject or which are applicable to its business, property and assets.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding Events of Default occurs with respect to any guarantor of the Indebtedness as if the word "guarantor" were substituted for the word "Borrower" in such Event of Default, or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any Event of Default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice (except that in the case of any Event of Default of the type described in the DEFAULT - Insolvency section herein, such acceleration shall be automatic and not at Lender's option), and then Borrower will pay that amount. Borrower shall be liable for any deficiency remaining after disposition of any collateral which Lender may choose to realize upon.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** Borrower grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the Indebtedness, all Borrower's right, title and interest in and to all Borrower's


Exhibit A




accounts (whether checking, savings, or some other account) with Lender or any subsidiary or affiliate of JPMorgan Chase & Co. (each hereinafter referred to as a "Lender Affiliate") and all other obligations at any time owing by Lender or any Lender Affiliate to Borrower. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, without prior notice to Borrower and irrespective of (i) whether or not Lender has made any demand under this Note or the Related Documents or (ii) whether such indebtedness is contingent, matured or unmatured, to the extent permitted by law, to collect, charge and/or setoff all sums owing on the indebtedness against any and all such accounts and other obligations, and, at Lender's option, to administratively freeze or direct a Lender Affiliate to administratively freeze all such accounts and other obligations to allow Lender to protect Lender's security interest, collection, charge and setoff rights provided in this paragraph.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. The unpaid principal balance of this Note shall increase and decrease with each new advance and payment hereunder, as the case may be. Subject to the terms hereof, Borrower may borrow, repay and reborrow hereunder. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**LATE CHARGES.** In the "Late Charge" provision set forth above, the following language is hereby added after the word "greater": "up to the maximum amount of Two Hundred Fifty Dollars ($250.00) per late charge".

**FINANCIAL STATEMENTS.** Borrower shall furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**ENFORCEABILITY AND ORGANIZATION.** Borrower is duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Borrower's execution, delivery and performance of this Note and all the Related Documents have been duly authorized by all necessary action by Borrower. This Note and all the Related Documents constitute legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms. If applicable, Borrower is an entity which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the state of its organization.

**INFORMATION WAIVER.** Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of JPMorgan Chase & Co., any information or knowledge Lender may have about the undersigned or about any matter relating to this document and the Related Documents, and the undersigned hereby waives any right to privacy the undersigned may have with respect to such matters.

**INDEBTEDNESS.** The word "indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents, together with interest on such amounts as provided in this Note, and all obligations, debts and liabilities, plus interest thereon, of Borrower or any one or more of them to Lender, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable; and further includes, without limitation, all principal, interest, and other amounts, costs and expenses payable under the Related Documents, whether executed by the Borrower or by any other person or entity, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Related Documents, together with interest thereon as provided in the Related Documents.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now existing or hereafter arising, executed in connection with the Indebtedness.

**LIABILITIES FOR OBLIGATIONS UNDER RELATED DOCUMENTS.** Borrower also promises to pay to Lender all of the Indebtedness. Borrower acknowledges that some of the Related Documents, pursuant to which Indebtedness may arise, may be executed only by persons or entities other than the Borrower.

**PURPOSE.** Borrower agrees that no advances under this Note shall be used for personal, family or household purposes and that all advances hereunder shall be used solely for business, commercial, agricultural or other similar purposes.

**JURY WAIVER. THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.**

**ADDITIONAL CONDITION TO ADVANCES.** In addition to the conditions identified in the paragraph above entitled "Line of Credit", the Lender will have no obligation to advance funds under the Note if to do so would cause an Event of Default under the Note.

**LINE OF CREDIT CLEARANCE.** Borrower shall, at least once the term of this Note, reduce and maintain the outstanding principal balance of this Note to a zero balance for a period of at least thirty (30) consecutive calendar days.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. It is agreed that any payment which would otherwise for any reason be deemed unlawful interest under applicable law shall be deemed to have been applied to the unpaid principal balance of the Note, or to other indebtedness. The unpaid balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. Unless specifically permitted otherwise by the terms and conditions of this Note, no alteration of or amendment to this Note shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of this Note, or the Related Documents or of any participation interest in this Note or Related Documents to one or more purchasers, whether related or unrelated to Lender. Borrower waives any and all notices of sale of this Note, the Related Documents or of any participation interests, as well as any notices of any repurchases of this Note, the Related Documents, or of any participation interests. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
DENNIS E. HECKER

# EXHIBIT B

# COVENANT AGREEMENT

| Borrower: | DENNIS E. HECKER | Lender: | JPMorgan Chase Bank, NA |
|---|---|---|---|
| | 500 FORD ROAD | | New York Metro Park Avenue Private Client Services |
| | MINNEAPOLIS, MN 55426 | | 245 Park Avenue, Floor 15, |
| | | | New York, NY 10017 |

2074                          2000

THIS IS AN AGREEMENT (the "Agreement") dated as of APRIL 28, 2008, by JPMorgan Chase Bank, NA ("Lender"); and DENNIS E. HECKER (individually, collectively and interchangeably, "Borrower").

**Recitals**

Lender has extended or is extending one or more loans to Borrower (individually, collectively and interchangeably, and including any renewals, extensions or modifications thereof, the "Loan") evidenced by one or more promissory notes (individually, collectively and interchangeably, and including any renewals, extensions or modifications thereof, the "Note") as follows:

Date of Note: APRIL 28, 2008

Principal Amount of Note $3,000,000.00

**Agreement**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

RECITALS. The above Recitals are incorporated by reference into the body of this Agreement as if they were repeated verbatim herein.

AFFIRMATIVE COVENANTS. Borrower covenants and agrees with Lender that, while this agreement is in effect, Borrower will:

Minimum Liquidity. Maintain at all times, Liquidity of not less than 1.5 times the outstanding principal balance of Borrower's promissory note dated APRIL 28, 2008 in the original principal amount of $3,000,000.00 payable to the order of Lender, including renewals, extensions, and modifications of such promissory note. This Minimum Liquidity covenant is in addition to, and does not supersede, any other Minimum Liquidity covenant contained in any agreement between or among Borrower, any guarantor of Borrower's obligations to Lender, and Lender. The term "Liquidity" as used in this covenant means Borrower's unencumbered liquid assets, acceptable to Lender, including cash and publicly traded equity securities, money market accounts, mutual funds, certificates of deposit, municipal bonds and corporate bonds rated Baa3 or better or rated BBB- or better by Standard and Poor's or Moody's Investors' Services, and any marketable direct obligations issued or unconditionally guaranteed by a government or issued by an agency thereof and backed by the full faith and credit of said government, provided however, liquid assets held in a margin account will be included in computing compliance with this covenant in an amount equal to the excess of the market value in such account over 200% of the aggregate outstanding balance of any margin loan secured by such margin account. Liquid assets, for purposes of computing compliance with this covenant, shall not include assets maintained in 401k, IRA, Keogh, SEP or similar retirement accounts or plans or a trust. Within 30 days after the end of each month of each year, Borrower shall furnish to Lender evidence satisfactory to Lender in its sole discretion, that on such date Borrower was in compliance with this covenant.

DEPOSITORY RELATIONSHIP. Establish and maintain Borrower's primary banking relationship with Lender.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each request for an advance or disbursement of Loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any indebtedness exists thereunder, or any commitment or obligation to make any Loan exists hereafter: (a) Borrower, if not an individual, is an entity duly organized and validly existing under the laws of NEW YORK (b) The execution, delivery and performance of this Agreement and all other Related Documents (as defined in the Note) to which Borrower is a party have been duly authorized by all necessary action, require no further consent of any person, regulatory authority or governmental body, and do not conflict with, result in a violation of, or constitute a default under any agreement binding upon Borrower, or any law, regulation or court decree or order applicable to Borrower. (c) This Agreement and all other Related Documents to which Borrower is a party constitute legal, valid and binding obligations of Borrower enforceable in accordance with their respective terms.

TERM. This Agreement shall be effective until the Loan has been paid in full and Lender has no commitments or obligations to make or allow advances or draws under the Loan.

DEFAULT. Failure of Borrower to abide by any of the terms, conditions, covenants or provisions of this Agreement shall, in addition to all other defaults or events of default, be a default or an event of default under the Note.

MISCELLANEOUS PROVISIONS.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of NEW YORK, without giving effect to conflict of laws rules.

Entire Agreement; Binding Effect. This Agreement, together with the Note and all Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth herein, and shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

Amendment. No alteration, amendment, rescission, supplementation, modification or waiver of this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound thereby.

Time. Time is of the essence in the performance of this Agreement.

Waiver. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right for any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, or any course of dealing between Lender and Borrower, or between Lender and any party to any other Related Document, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or such other party as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Costs and Expenses. Borrower agrees to pay upon demand all of Lender's expenses, including attorneys' fees, incurred in connection with the preparation, execution, enforcement, modification and collection of this Agreement or in connection with the Loan made pursuant to this Agreement. Lender may hire one or more attorneys to help collect the Loan if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other person or circumstance. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above, but actually on the dates set forth below.

Borrower: _____
DENNIS E. HECKER

Date: _____

Lender: JPMorgan Chase Bank, NA

By: _____

# EXHIBIT C

 **CONTROL AGREEMENT** 

| **Grantor:** | DENNIS E. HECKER | **Lender:** | JPMorgan Chase Bank, NA |
| | 500 FORD ROAD | | New York Metro Park Avenue Private Client Services |
| | MINNEAPOLIS, MN 55426 | | 245 Park Avenue, Floor 15, |
| | | | New York, NY 10017 |

THIS CONTROL AGREEMENT is attached to and by this reference is made a part of the Commercial Pledge Agreement, dated April 28, 2008, and executed in connection with a loan or other financial accommodations between JPMORGAN CHASE BANK, NA and DENNIS E. HECKER.

JPMorgan Chase Bank, N.A. ("Lender"), DENNIS E. HECKER ("Grantor") and J. P. Morgan Securities Inc. ("Company") hereby agree as follows:

1. **Account.** Company has established securities account number ▉▉▉5170 in the name of DENNIS E. HECKER (the "Account"). Company acknowledges that attached hereto as Exhibit C is a statement of the Account produced by the Company in the ordinary course of its business regarding the property credited to the Account as of the date of such statement. Company does not know of any inaccuracy in the statement. Grantor has granted Lender a security interest in the Account pursuant to a pledge/and or security agreement (the "Pledge"). The parties are entering into this control agreement (this "Agreement") to perfect Lender's security interest in the Account. Company represents that no property in the Account is registered in the name of Grantor, payable to Grantor's order or specially endorsed to Grantor which has not been endorsed to Company or in blank. Company shall treat all property in the Account as "financial assets" under Article 8 of the Uniform Commercial Code of the State of Ohio as in effect from time to time ("UCC").

2. **Control.** Company and Grantor agree the Account is subject to a security interest in favor of Lender and Lender shall have control over the Account in accordance with provisions of the UCC. In regard to the Account, from and after the date of this Agreement, Company shall act only upon Lender's written instructions or entitlement orders, without further consent of Grantor. Grantor hereby expressly authorizes Company to act in accordance with such instructions or entitlement orders without Grantor's consent or concurrence. Further, Grantor agrees not to assert a claim or demand against Company for complying with instructions, entitlement orders or notices received from Lender.

3. **Priority of Lien/Subordination.** Company has not entered into a control agreement with respect to the Account with any other party and agrees that Company will not do so while this Agreement is in effect. Company does not know of any claim to or interest in the Account, except for claims and interests of the parties referred to in this Agreement. Company further represents that the Account is a cash account and that it will not advance margin or other credit to Grantor, except for credit related to the settlement of transactions in the ordinary course of business. Company subordinates in favor of Lender any security interest, lien or right of setoff it may have, now or in the future, against the Account or property in the Account, although Company may retain a prior lien against the property in the Account to secure payment for property purchased for the Account and normal commissions and fees for the Account.

4. **Trading and Distributions Permitted.** Notwithstanding section 2 above, until a "Notice of Sole Control" is given by Lender to Company, Company may comply with the instructions of Grantor relating to any property held in the Account without the consent of Lender. After Lender gives a Notice of Sole Control to Company (a form of which is attached as Exhibit B), Company shall cease complying with instructions or entitlement orders from the Grantor and shall act only upon the instructions of Lender. Until such time as Lender gives a Notice of Sole Control, Grantor may direct Company to exercise any voting rights with respect to the Account.

5. **Fees and Reporting.** All charges and expenses incident to the Account remain in full force and effect and shall continue to be the obligation of Grantor alone. Company expressly agrees that all income, earnings and profits with respect to the Account shall be reported for State and Federal income tax purposes as attributable to the Grantor and not the Lender. Grantor authorizes Company, Lender, and any other person authorized to report income distributions to report all earnings and profits from the Account to any appropriate taxing authority under Grantor's Social Security or Taxpayer Identification Number. Grantor authorizes Company, upon Lender's direction, to send copies of all statements and confirmations for the Account to Lender, and Company agrees to comply with such direction.

6. **Limitation of Liability.** Company undertakes to perform such duties and only such duties as are specifically set forth in this Agreement it being expressly understood that there are no implied duties under this Agreement. In no event shall Company be liable, directly or indirectly, for any (i) damages or expenses arising out of services provided under this Agreement, other than damages which result from Company's gross negligence or willful misconduct, or (ii) indirect, special or consequential damages, even if Company has been advised of the possibility of such damages.

7. **Indemnification.** Grantor agrees to indemnify Company, its officers and employees, and hold it and them harmless for and from all claims, losses, liabilities and expenses, including without limitation, reasonable legal fees and expenses arising from any claim of any party resulting from actions Company takes in accordance with the provisions of this Agreement.

8. **Account Agreement.** This Agreement supplements the account agreement between Company and Grantor. If there is a conflict between this Agreement and any other agreement between Company and the Company, this Agreement shall control; provided, however, that the terms of this Agreement shall not be deemed or construed to make the Lender a party to such account agreement.

9. **Notice.** Any notices and demands under or related to this Agreement shall be in writing and delivered to the intended party at its address or facsimile number stated below, and if to Lender, at its main office if no other address of Lender is specified herein, by one of the following means: (a) by hand, (b) by a nationally recognized overnight courier service, (c) by certified mail, postage prepaid, with return receipt requested, or (d) by facsimile transmission. Notice shall be deemed given: (a) upon receipt if delivered by hand, (b) on the Delivery Day after the day of deposit with a nationally recognized courier service, (c) on the third Delivery Day after the notice is deposited in the mail, or (d) when transmitted to the facsimile number specified below and a confirmation receipt is received by the sender. "Delivery Day" means a day other than a Saturday, a Sunday, or any other day on which national banking associations are authorized to be closed. Any party may change its address for purposes of the receipt of notices and demands by giving notice of such change in the manner provided in this provision.

If to Lender:
Wealth Management Loan Servicing
P.O. Box 32096
Louisville, KY 40232-2096

If to Grantor: To the address identified in the heading of this Agreement

If to Company:
J.P. Morgan Securities, Inc.
Manager, Margin Department
300 S. Riverside
Mail Suite IL1-0291
Chicago, IL 60670-0291
Phone: 312-954-0546
Fax: 312-954-6944

10. **Miscellaneous.** The provisions of this Agreement shall remain in effect until the Lender gives the Company written notice to the contrary. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective legal representatives and corporate successors and assigns. If any provision of this Agreement is determined to be illegal or unenforceable, such provision shall be deemed severable from the balance of the provisions of this Agreement and the remaining provisions shall be enforceable in accordance with their terms.

LENDER: JPMORGAN CHASE BANK, N.A.

By: _Stephen Grech_
Name: _Stephen Grech_
Title: _V.P_

COMPANY: J.P. MORGAN SECURITIES, INC.

By: _____

# Exhibit C

Name: _Maureen Burchess_
Title: _____

THIS CONTROL AGREEMENT IS EXECUTED ON APRIL 28, 2008.

GRANTOR:

X _____
DENNIS E. HECKEN

LASER PRO Lending, Ver. 5.35.00.008 Copr. Harland Finsencial Solutions, Inc. 1997, 2008. All Rights Reserved. - MT    V:\CFI\Finwance\CFI\LPL\G40 FC TR 88431  PR-388

EXHIBIT D

 **JPMorgan**

# COMMERCIAL PLEDGE AGREEMENT

| Grantor: | DENNIS E. HECKER | Lender: | JPMorgan Chase Bank, NA |
| | 500 FORD ROAD | | New York Metro Park Avenue Private Client Services |
| | MINNEAPOLIS, MN 55426 | | 245 Park Avenue, Floor 15, |
| | | | New York, NY 10017 |

THIS COMMERCIAL PLEDGE AGREEMENT dated April 28, 2008, is made and executed between DENNIS E. HECKER ("Grantor") and JPMorgan Chase Bank, NA ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor transfers, pledges and grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means all of Grantor's property (however owned if more than one), in the possession of Lender (or in the possession of a third party subject to the control of Lender or otherwise assigned hereby), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

J.P. MORGAN SECURITIES, INC. account number ████5170, in the name of DENNIS E. HECKER, together with all : (i) securities, commodity contracts, financial assets, other investment property and cash therein, or associated therewith, whether presently or in the future; (ii) accounts and general intangibles pertaining thereto, forming a part thereof, arising thereunder or associated therewith; and (iii) all proceeds and products thereof, accessions thereto and substitutions therefore

In addition, the word "Collateral" includes all of Grantor's property (however owned), in the possession of Lender (or in the possession of a third party subject to the control of Lender or otherwise assigned hereby), whether now or hereafter existing and whether tangible or intangible in character, including without limitation each of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of a writing, microfilm, microfiche, or electronic media.

(E) All income and Proceeds from the Collateral as defined herein.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** Grantor grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the Indebtedness, all Grantor's right, title and interest in and to all Grantor's accounts (whether checking, savings, or some other account) with Lender or any subsidiary or affiliate of JPMorgan Chase & Co. (each hereinafter referred to as a "Lender Affiliate") and all other obligations at any time owing by Lender or any Lender Affiliate to Grantor. This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. Grantor authorizes Lender, without prior notice to Grantor and irrespective of (i) whether or not Lender has made any demand under this Agreement or the Related Documents or (ii) whether such Indebtedness is contingent, matured or unmatured, to the extent permitted by law, to collect, charge and/or setoff all sums owing on the Indebtedness against any and all such accounts and other obligations, and, at Lender's option, to administratively freeze or direct a Lender Affiliate to administratively freeze all such accounts and other obligations to allow Lender to protect Lender's security interest, collection, charge and setoff rights provided in this paragraph.

**REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances, registered pledges, adverse claims, and any other claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Authority; Binding Effect.** Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

**No Further Assignment.** Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** Lender may hold the Collateral until all Indebtedness has been paid and satisfied. Thereafter Lender may deliver the Collateral to Grantor or to any other owner of the Collateral. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, control, receive, or manage the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, retirement, split up, dividend, distribution, or other disposition of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, (3) compromise, compound or release any obligation, (4) release, compromise, renew, extend, exchange, substitute or acquire any new security interest in the Collateral or any other property of any nature securing repayment of the Indebtedness, or (5) waive or fail to exercise any right, power or remedy granted in this Agreement or any Related Document, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more

**Exhibit D**



offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the Income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the Income, to pay and deliver to Lender all Income from the Collateral and to accept Lender's receipt for the payments provided however, until the occurrence of any Event of Default or notice by Lender, Grantor shall be entitled to all cash dividends and all interest paid in the Collateral free of the pledge and security interest provided for in this Agreement.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy, (2) the remaining term of the Note, or (3) be treated as a balloon payment which will be due and payable at the Note's maturity. The Collateral also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Lender shall have no liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement, the Note, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, whether by judicial proceeding, self-help, or any other method, by any creditor of Grantor, or by any governmental agency against the Collateral or any other assets of Grantor. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding Events of Default occurs with respect to any guarantor of the Indebtedness or if the word "guarantor" were substituted for the word "Grantor" in such Event of Default, or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**Failure to Register.** Failure of the issuer, transfer agent, mutual fund company, or broker, as the case may be, to furnish a written statement to Lender recording Lender's security interest to the security, or the identification of any adverse claim that may interfere with Lender's security interest in the Collateral.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Declare all Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor (except that in the case of any Event of Default of the type described in the DEFAULT - Insolvency section herein, such acceleration shall be automatic and not at Lender's option).

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, or any of them, notice at least ten (10) days in advance of the time and place of any public sale, or of the date after which any private sale may be made. Grantor agrees that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor, or any of them, at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Lender is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws. If,



because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered. Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction. Such a sale will be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Rights and Remedies with Respect to Investment Property, Financial Assets and Related Collateral.** In addition to other rights and remedies granted under this Agreement and under applicable law, Lender may exercise any or all of the following rights and remedies: (1) register with any issuer or broker or other securities intermediary any of the Collateral consisting of investment property or financial assets (collectively herein, "investment property") in Lender's sole name or in the name of Lender's broker, agent or nominee; (2) cause any issuer, broker or other securities intermediary to deliver any of the Collateral consisting of securities, or investment property capable of being delivered; (3) enter into a control agreement or power of attorney with any issuer or securities intermediary with respect to any Collateral consisting of investment property, on such terms as Lender may deem appropriate, in its sole discretion, including without limitation, an agreement granting to Lender any of the rights provided hereunder without further notice to or consent by Grantor; (4) execute any such control agreement on Grantor's behalf and in Grantor's name, and hereby irrevocably appoints Lender as agent and attorney-in-fact, coupled with an interest, for the purpose of executing such control agreement on Grantor's behalf; (5) exercise any and all rights of Lender under any such control agreement or power of attorney; (6) exercise any voting, conversion, registration, purchase, option, or other rights with respect to any Collateral; (7) collect, with or without legal action, and issue receipts concerning any notes, checks, drafts, remittances or distributions that are paid or payable with respect to any Collateral consisting of investment property. Any control agreement entered with respect to any investment property shall contain the following provisions, at Lender's discretion. Lender shall be authorized to instruct the issuer, broker or other securities intermediary to take or to refrain from taking such actions with respect to the investment property as Lender may instruct, without further notice to or consent by Grantor. Such actions may include without limitation the issuance of entitlement orders, account instructions, general trading or buy or sell orders, transfer and redemption orders, and stop loss orders. Lender shall be further entitled to instruct the issuer, broker or securities intermediary to sell or to liquidate any investment property, or to pay the cash surrender or account termination value with respect to any and all investment property, and to deliver all such payments and liquidation proceeds to Lender. Any such control agreement shall contain such authorizations as are necessary to place Lender in "control" of such investment collateral, as contemplated under the provisions of the Uniform Commercial Code, and shall fully authorize Lender to issue "entitlement orders" concerning the transfer, redemption, liquidation or disposition of investment collateral, in conformance with the provisions of the Uniform Commercial Code.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the New York Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, reasonable attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Grantor to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy will not bar any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**JURY WAIVER. THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.**

**INFORMATION WAIVER.** Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of JPMorgan Chase & Co., any information or knowledge Lender may have about Grantor or about any matter relating to this Agreement, and Grantor hereby waives any right to privacy Grantor may have with respect to such matters.

**EXAMPLES OF INDEBTEDNESS, INCLUDING DEPOSIT ACCOUNT INDEBTEDNESS, LOAN INDEBTEDNESS, ETC..** Grantor agrees the Indebtedness described herein is used in its most comprehensive sense and means and includes any and all liabilities, obligations and debts of Borrower, or any one of them, to Lender, now existing or hereinafter incurred or created, whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise. As examples, and not as limitation, the Indebtedness of Borrower includes: (a) any overdraft in any deposit account of Borrower, accruing for any reason, (b) any obligations, including any overdraft in any deposit account of Borrower, related to Automated Clearing House ("ACH") services or products, deposit account services or products, or treasury management services or products, including any agreement with respect thereto; (c) any transaction (including any agreement with respect thereto) between Borrower and the Lender or JPMorgan Chase & Co., or any of its subsidiaries or affiliates or their successors, which is a rate swap, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, forward transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar transaction (including any option with respect to any of these transactions) or any combination thereof, whether linked to one or more interest rates, foreign currencies, commodity prices, equity prices or other financial measures (each a "Rate Management Transaction"), (d) any obligation related to any loan or credit transaction (including any agreement with respect thereto), whether evidenced by a promissory note, credit agreement, letter of credit application, or any other agreement; (e) any obligation related to commercial credit card transactions (including an agreement with respect thereto); (f) any obligation related to any lease (including an agreement with respect thereto); (g) any obligation related to any guaranty of the obligations of others by Borrower; (h) any obligation under a Related Document; and (i) all other obligations of Borrower to Lender.

**DETERIORATION OF COLLATERAL.** Grantor further covenants and agrees with Lender that at all times this Agreement is in effect, Grantor shall not permit the outstanding principal balance of the Note to exceed the Collateral Value (as defined below) of the securities, stock, brokerage accounts, cash or other assets described in this Agreement which comprise all or part of the Property for which margin value will be given as indicated in the table set out on the attached Exhibit A, which by this reference is incorporated into this Agreement (the "Marginable Collateral"). "Collateral Value" means the sum of the market values of the Marginable Collateral multiplied by the Margin Percentage applicable to the type of Marginable Collateral as indicated in Exhibit A. Market value shall be determined on the basis of the then-current trading price on the exchange that trades the Marginable Collateral, if traded, or by such other appropriate method determined by Lender in its sole discretion. If at any time Grantor is not in compliance with this paragraph, Grantor shall, within three (3) days following written notice thereof by Lender to Grantor, either (i) deliver and pledge to Lender additional Collateral acceptable to Lender in its sole discretion to cause compliance hereunder, or (ii) reduce the outstanding principal amount of the Note to such amount as is sufficient to cause compliance hereunder. If Grantor fails to take such action within such time, such event shall be an immediate and additional Event of Default hereunder and Lender may exercise any and all rights and remedies (including, without limitation, sale of the Marginable Collateral or other Collateral) without any further notice by Lender to Grantor. Notwithstanding the foregoing, if at any time the outstanding principal balance of the Note exceeds the sum of the market values of the Marginable Collateral, multiplied by the Liquidation Percentage applicable to the type of Marginable Collateral as indicated in Exhibit A, such event shall be an immediate Event of Default hereunder and Lender may exercise any and all rights and remedies (including, without limitation, sale of the Marginable Collateral or other Collateral) without any notice by Lender to Grantor, regardless of whether three (3) days shall have elapsed since any notice by Lender to Grantor.

This Agreement constitutes the final understanding of the Grantor and the Lender with respect to the matters set forth herein and supercedes all previous documents and agreements between the Grantor and the Lender relating to the Collateral in all respects. In the event of a conflict between the terms of this Agreement, and any prior agreement, the terms of this Agreement shall govern.

**CONTROL AGREEMENT.** An exhibit, titled "CONTROL AGREEMENT," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Indemnity.** Grantor hereby agrees to indemnify, defend and hold harmless Lender, and its officers, directors, shareholders, employees, agents and representatives (each an "Indemnified Person") from and against any and all liabilities, obligations, claims, losses, damages, penalties,actions, judgments, suites costs, expenses or disbursements of any kind or nature (collectively, the "Claims") which may be imposed on, incurred by or asserted against, any indemnified Person (whether or not caused by any indemnified Person's sole, concurrent or contributory negligence) arising in connection with this Agreement or the Collateral (including, without limitation, the enforcement of this Agreement and the Related Documents and the defense of any indemnified Person's action and/or inactions in connection with this Agreement and the Related Documents), except to the limited extent that the Claims against the indemnified Person are proximately caused by such indemnified Person's gross negligence or willful misconduct. The indemnification provided for in this Section shall survive the termination of this Agreement and shall extend and continue to benefit each individual or entity who is or has at any time been an indemnified Person hereunder.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the New York Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means DENNIS E. HECKER, and all other persons and entities signing the Note in whatever capacity.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default."

**Event of Default.** The words "Event of Default" mean any of the Events of Default set forth in this Agreement in the Default section of this Agreement.

**Grantor.** The word "Grantor" means DENNIS E. HECKER.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, whether voluntary or involuntary, by agreement or by operation of law, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Cross-Collateralization, Revolving Line of Credit and Future Advances paragraphs as contained in one or more of the Related Documents.

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns.

**Note.** The word "Note" means the Note executed by Grantor in the principal amount of $3,000,000.00 dated April 28, 2008, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.


**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL PLEDGE AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 28, 2008.**

GRANTOR:

X _____
  DENNIS E. HECKER

LASER PRO Lending, Ver. 5.36.20.006  Copr. Harland Financial Solutions, Inc. 1997, 2008  All Rights Reserved  - MN  n:\cfi\Resources\CPL\PL\E09.FC  TR-6527  PR-266

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                     Case No. 09-50779 (RJK)

Dennis E. Hecker,

                                     Chapter 7

           Debtor.

---

**MEMORANDUM OF LAW IN SUPPORT OF  MOTION FOR RELIEF FROM STAY**

---

This Memorandum is submitted in support of the motion of JPMorgan Chase Bank, N.A. for an order granting it relief from the automatic stay.  The facts supporting the requested relief are stated in the accompanying verified motion.

## ARGUMENT

### I.      Chase has a right to setoff against the Account

The Bankruptcy Code does not disturb a creditor's right to setoff if such right arose under non-bankruptcy law prior to the commencement of the bankruptcy case.  11 U.S.C. § 553(a). While the Bankruptcy Code does not create a right of setoff, Section 553(a) provides that, with certain exceptions, any right of setoff otherwise existing is preserved in bankruptcy.  More specifically, a right of setoff is preserved where: (1) the creditor owes a pre-petition debt to the debtor; (2) the creditor holds a pre-petition claim against the debtor; and (3) the debt and the claim are mutual.  *United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir. 1993).  When these conditions are met, "whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizen's Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

In this case, Chase owes a debt to Hecker by virtue of the Account, and Chase has a claim against Hecker for amounts due under the Loan Documents, which has been reduced to

judgment. These obligations arose prior to the commencement of the bankruptcy proceeding. The obligations are mutual because the obligations are held by the same parties in the same capacity. *Cf. In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990) (holding that obligations are not held in the "same capacity" where one party's obligation is in the nature of a trust). The *Gerth* test is satisfied; Chase's non-bankruptcy setoff rights are preserved.[2]

New York law, which the Loan Documents selected as the applicable law, applies a test that is identical to the *Gerth* conditions noted above:[3] A creditor has a right of setoff where (1) the creditor owes a pre-petition debt to the debtor; (2) the creditor holds a pre-petition claim against the debtor; and (3) the debt and the claim are mutual. *In re Cairns & Assocs., Inc.*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007). Therefore, entirely apart from Chase's contractual right to setoff under the Loan Documents, Chase has a valid right of setoff.

## II. Chase's setoff right provides "cause" for relief from the automatic stay

By establishing a right of setoff, a creditor has established a showing of "cause" for relief from the automatic stay under § 362(d)(1). *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Penn. 2000) (citing *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991)); *see also In re Firestone*, 179 B.R. 148, 148 (Bankr. D. Neb. 1995). In the face of a valid right of setoff, the debtor has the burden to rebut the prima facie showing of "cause." *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008).

---

[2]    Furthermore, Chase has not waived its setoff right. It did not disclose its setoff right in its proof of claim due to an oversight, which has not been relied upon or prejudiced any party. *See In re Krause*, 261 B.R. 218, 223 (8th Cir. B.A.P. 2001); *and In re Custom Center, Inc.*, 163 B.R. 309, 316-317 (Bankr. E.D. Tenn. 1994).

[3]    Minnesota applies a substantially similar test as well. Although *Firstar Eagan bank v. Marquette Bank*, 466 N.W.2d 8, 12 (Minn. Ct. App. 1991) ostensibly requires that the funds held by the bank must be "general deposit" rather than "special deposit," this analysis is built into the mutuality requirement as applied under the Bankruptcy Code.

"Cause" exists for relief from the stay because Chase has a valid right of setoff. Under these circumstances – where the setoff right is not sufficient to fully secure Chase's claim – Chase's interest in the funds in the Account is not adequately protected. *Id.* (allowing debtor to rebut presumption of "cause" by showing that creditor's interest was adequately protected by confirmed plan). Furthermore, denying its motion would provide no benefit to Hecker or the estate, as Chase cannot be compelled to turnover funds to which it has a valid right of setoff. And if there is no benefit to denying a motion seeking relief from the stay to apply a setoff, that alone is cause to grant relief. *In re Rivera*, 345 B.R. 229, 235 (Bankr. E.D. Cal. 2005).

## CONCLUSION

Cause exists to terminate or modify the automatic stay to allow Chase to enforce its right of setoff against the Account. Chase requests that the court enter an order providing such relief.


Dated: March 25, 2010

*/e/ Robert T. Kugler*
Todd A. Noteboom (#240047)
Robert T. Kugler (#194116)
Bryant D. Tchida (#314298)

**LEONARD, STREET AND DEINARD**
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR**
**JPMORGAN CHASE BANK, N.A.**

In re:

Dennis E. Hecker,

                                   Debtor.

Case No. 09-50779 (RJK)

Chapter 7

## CERTIFICATE OF SERVICE

I, Ma Xiong, declare, under penalty of perjury, that on March 25, 2010, I filed a:

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM STAY**

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of electronic filing to the following:

**Aaron R. Hartman**; ahartman@aoblaw.com
**Andrea M. Hauser**; ahauser@losgs.com
**Andrew Paul Moratzka**; apm@mcmlaw.com
**Brad A. Sinclair**; bsinclair@serklandlaw.com
**Bruce H. Carlson**; bruce.carlson@mlcfargolaw.com
**Clinton E. Cutler**; ccutler@fredlaw.com
**Connie Lahn**; connie.lahn@fmjlaw.com
**Craig E. Reimer**; creimer@mayerbrown.com
**Cynthia A. Moyer**; cmoyer@fredlaw.com
**David E. Runck**; david.runck@fmjlaw.com
**Douglas W. Kassebaum**; dkassebaum@fredlaw.com
**Eric J. Sherburne**; esherburne@steinmoore.com
**Gordon B. Conn**; conn@kwgc-law.com
**Gregory L. Taddonio**; gtaddonio@reedsmith.com
**James A. Geske**; jgeske@wilfordgeske.com
**Jamie R. Pierce**; jpierce@hinshawlaw.com
**Jeffrey D. Klobucar**; jklobucar@foleymansfield.com
**Joseph W. Lawver**; jlawver@messerlikramer.com
**Kathleen K. Statler**; kstatler@gr-espel.com
**Kendall L. Bader**; kbader@fredlaw.com
**Larry D. Espel**; lespel@greeneespel.com
**Matthew R. Burton**; mburton@losgs.com
**Michael L. Meyer**; mlmeyer@ravichmeyer.com

6735005v1

**Michael W. Malter**; michael@bindermalter.com
**Monica L. Clark**; clark.monica@dorseylaw.com
**Nauni J. Manty**; ecf@mantylaw.com
**Nicholas J. Vivian**; nvivian@eckberglammers.com
**Nicholas N. Nierengarten**; nicholas.nierengarten@gpmlaw.com
**Patti H. Bass**; ecf@bass-associates.com
**Ralph Mitchell**; rmitchell@lapplibra.com
**Rebecca G. Sluss**; rsluss@oppenheimer.com
**Recovery Management Systems Corp**; claims@recoverycorp.com
**Robert G. Parish**; rparish@faegre.com
**Robert J. Hennessey**; rhennessey@lindquist.com
**Stephen F. Grinnell**; stephen.grinnell@gpmlaw.com
**Thomas Lallier**; tlallier@foleymansfield.com
**Timothy J. Peters**; tpeters@peterslawplc.com
**Will R. Tansey**; wrtansey@ravichmeyer.com
**William F. Mohrman**; mohrman@mklaw.com
**William R. Skolnick**; wskolnick@skolnick-shiff.com
**US Trustee**; ustpregion12.mn.ecf@usdoj.gov

I further certify that I caused a copy of the foregoing document and the Notice of Electronic Filing to be served by First Class Mail on the following parties:

> **Leonard Obrien Spencer Gale & Sayre Ltd**
> 100 South 5th Street, Suite 2500
> Minneapolis, MN  55376
>
> **Micahel B. Lubic**
> 10100 Santa Monica Blvd 7th Floor
> Los Angeles, CA  90067
>
> **Fuller Seaver & Ramette**
> c/o Randall Seaver
> 12400 Portland Ave S Ste 132
> Burnsville, MN  55337

Dated:  March 25, 2010                           */e/ Ma Xiong*_____
                                                                   Ma Xiong

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,

                    Debtor.

Case No. 09-50779

Chapter 7

**ORDER**

This matter came on for hearing on the motion of JPMorgan Chase Bank, N.A. on April 8, 2010. Based upon the evidence presented at this hearing, the arguments of counsel, the court makes the following order:

IT IS ORDERED that:

1.     The automatic stay of 11 U.S.C. § 362(a) is terminated with respect to the right of JPMorgan Chase Bank, N.A. to exercise its right of setoff with respect to the account ending in 9910, held in the name of Dennis E. Hecker;

2.     This order shall be effective immediately, notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3).

Dated:                                         _____

                                                Robert J. Kressel
                                                United States Bankruptcy Judge