# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,   BKY No. 09-50779
                    Chapter 7
   Debtor.

## NOTICE OF HEARING AND
## MOTION TO QUASH SUBPOENA DUCES TECUM

TO:   Trustee Randall L. Seaver, by and through his attorney of record, Matthew R. Burton, Leonard, O'Brien, Spencer, gale & Sayre, Ltd., 100 South Fifth Street Ste. 2500, Minneapolis, MN 55402.

James C. Gustafson, by and through undersigned counsel, hereby moves this Court to quash the subpoena duces tecum issued by the Trustee on March 15, 2010. A Hearing on this Motion will be held at 9:30 a.m. on April 13, 2010, in Courtroom 8 West, U.S. Bankruptcy Court, 300 South Fourth Street, Minneapolis, MN 55415. In support of this Motion, Mr. Gustafson relies on the accompanying Memorandum of Law, the arguments previously raised in response to the Trustee's Motion For Order Authorizing Rule 2004 Examination, and upon further points and authorities as may subsequently be raised during a hearing on this Motion.

                              Respectfully submitted,

                              MESHBESHER & ASSOCIATES, P.A.

                              /s/ Steven J. Meshbesher
                              Steven J. Meshbesher
                              Attorney # 127413
                              225 Lumber Exchange Building
                              10 South Fifth Street
                              Minneapolis, MN 55402
Dated: April 5, 2010          Phone: (612) 332-2000

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Dennis E. Hecker,                                   BKY No. 09-50779
                                                               Chapter 7
         Debtor.

**MEMORANDUM IN SUPPORT OF**
**MOTION TO QUASH SUBPOENA DUCES TECUM**

**PROCUEDURAL POSTURE**

On February 23, 2010, Trustee Randall L. Seaver filed a Notice of Hearing and Motion for Order Authorizing Rule 2004 Examinations, seeking the examinations of VisionBank, Ralph Thomas, and James Gustafson. On or about March 3, 2010, Mr. Gustafson, through undersigned counsel, filed an objection to the Trustee's Motion generally based on Mr. Gustafson's Fifth Amendment privileges. A Hearing was held before the Hon. Robert J. Kressel on March 10, 2010. Following the Hearing, the Court entered an Order authorizing the examination of Mr. Gustafson in accordance with Rule 2004 of the Federal Rules of Bankruptcy Procedure. On March 15, 2010, the Trustee issued a Supoena Duces Tecum for Mr. Gustafson's examination – which examination is scheduled for April 22, 2010. The Subpoena also commanded Mr. Gustafson to produce and provide a wide variety of documentation on March 15, 2010.[1] A second subpoena was sent to Wells Fargo Bank, commanding the Bank to produce a substantial amount of Mr. Gustafson's account records on March 25, 2010.

---

[1] See Exhibit A to James Gustafson Subpoena, Attached as Exhibit 1.

**ARGUMENT**

**I.     The Fifth Amendment shields Mr. Gustafson from testifying in any capacity.**

The Fifth Amendment to the U.S. Constitution provides that no person may be compelled to be a witness against themselves in a criminal case.[2] This guarantee was "added to the original constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed."[3] This privilege against self-incrimination "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute" the individual for a criminal offense.[4] In this sense, the instant matter before the Court is similar to the situation presented by the case of United States v. Kordel.[5]

In Kordel, a corporation (Detroit Vital Foods, Inc.) received a series of interrogatories by the FDA in conjunction with a civil forfeiture claim against the company, which action was initiated during an FDA investigation into possible violations of the Food, Drug and Cosmetic Act.[6] After the interrogatories were filed, the FDA served notice upon the company, president (Kordel) and vice-president (Feldten), that the agency contemplated initiating criminal proceedings against Kordel, Feldten and the corporation.[7] The corporation moved to stay civil proceedings (and extend the time in which to answer the interrogatories) pending the outcome of the criminal proceedings, which motion was

---

[2] U.S. Const. Amend. V.
[3] Feldman v. United States, 322 U.S. 487, 489 (1944).
[4] Hoffman v. United States, 341 U.S. 479, 487 (1951), citing Blau v. United States, 340 U.S. 159 (1950).
[5] United States v. Kordel, 397 U.S. 1 (1970).
[6] Id. at 3.
[7] Id. at 3-4.

denied by the District Court.[8] Kordel and Feldten answered the interrogatories as directed. Ultimately, the civil case settled out of court, but Kordel and Feldten were both convicted of Federal Food, Drug and Cosmetic Act violations.[9]

On appeal, Kordel and Feldten argued that the Government's use of the interrogatories to obtain evidence against them in the civil proceeding violated their Fifth Amendment privilege against self-incrimination. The Sixth Circuit U.S. Court of Appeals upheld the District Court's ruling, finding that the answers to interrogatories were given involuntarily, and that Kordel and Feldten were presented with three options: 1) Refuse to answer the interrogatories (thereby forfeiting the subject property in the civil proceeding); 2) Providing false answers to interrogatories (subjecting themselves to perjury); or 3) Answer the interrogatories truthfully and provide the Government with information to secure their indictment and conviction.[10] As such, the Court of Appeals reversed their convictions. On review, the U.S. Supreme Court disagreed holding as follows:

> In this analysis we think the Court of Appeals erred. For Feldten need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination. Surely Feldten was not barred from asserting his privilege simply because the corporation had no privilege of its own, or because the proceeding in which the Government sought information was civil rather than criminal in nature. …
>
> To the contrary, the record shows that nobody associated with the corporation asserted his privilege at all. The respondents do not suggest that Feldten, who answered the interrogatories on behalf of the corporation, did so while unrepresented by counsel or without appreciation of the possible consequences. His failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself.[11]

---

[8] Id. at 4-5.
[9] Id. at 3, 5-6.
[10] Id. at 7.
[11] Id. at 7-10.

Much like the situation in Kordel, Mr. Gustafson has been notified by the Government that he is a target of a criminal investigation involving allegations of mail/wire fraud, money laundering, and bankruptcy fraud. Any answers he may provide during a Rule 2004 Examination could be used against him in a criminal proceeding or, at a minimum, could easily furnish a link in a chain of evidence necessary for prosecutrion. Even the Trustee has acknowledged that "[i]f served with a subpoena, Mr. Gustasfson is free to assert his rights under the 5th Amendment as to testimony."[12] Absent a formal grant of use and derivative use immunity at a minimum[13], Mr. Gustafson cannot be compelled to respond to questioning and the subpoena for his personal examination should be quashed.

II. **The Fifth Amendment also privileges Mr. Gustafson against his involuntary production of documents.**

Beginning with the case of Boyd v. United States[14], the courts have held that the Fifth Amendment privilege against self-incrimination extends beyond the act of literal testimony to the act of document production, although the seemingly broad protection offered or suggested by the Boyd Court has since been narrowed significantly. Nonetheless, there remains ample authority for the proposition that Mr. Gustafson's Fifth Amendment privilege **does** extend to documents requested by the Trustee in this case.

---

[12] See Trustee's Reply Memorandum (Document #415), page 2.
[13] See Kastigar v. United States, 406 U.S. 411 (1972).
[14] Boyd v. United States, 116 U.S. 616 (1886).

### A. Fisher v. United States

In the case of Fisher v. United States[15], two attorneys retained to assist their clients (taxpayers) in connection with an I.R.S. investigation were commanded via subpoena to produce documents (accountants' workpapers, income tax returns, and correspondence) belonging to the clients/taxpayers but held by the attorneys, and (in one of the consolidated cases) an accountant was commanded to appear by separate subpoena to testify regarding the documents.[16]   The attorneys and taxpayers declined to comply with the subpoeanas on Fourth and Fifth Amendment grounds as well as asserting the attorney-client privilege.[17]  The District Court for the Northern District of Texas ordered the summons' and subpoenas to b enforced, but stayed its order pending appeal.[18]  The Third Circuit U.S. Court of Appeals held that, in one case, the taxpayers never acquired a possessory interest in the requested documents which were in turn, not immune or privileged in the possession of an attorney.  In the second case, the Court of Appeals reversed the enforcement order holding that the documents would have been  privileged by the Fifth Amendment if the taxpayer had retained physical possession, and given the attorney-client privilege the taxpayer had a legitimate expectation of privacy and retained the privilege afforded by the Fifth Amendment.[19]  The U.S. Supreme Court granted certiorari to resolve the apparent conflict.

On review, the Court struggled with the issue of the Fifth Amendment privilege in a situation involving documents neither created by the target individuals (the documents were largely created by the taxpayers' accountants) nor in physical possession of the

---

[15] Fisher v. United States, consolidated with United States v. Kasmir, 425 U.S. 391 (1976).
[16] Id., at 394-95.
[17] Id. at 395.
[18] Id.
[19] Id. at 395-96.

target individuals (the taxpayers' attorneys had physical possession).  Given this quandary, the Court held as follows:

> The proposition that the Fifth Amendment prevents compelled production of documents over objection that such production might incriminate stems from *Boyd v. United States*, 116 U.S. 616, 68 S.Ct. 524, 29 L.Ed. 746 (1886). …
>
> To the extent, however, that the rule against compelling production of private papers rested on the proposition that seizures of or subpoenas for "mere evidence" including documents, violated the Fourth Amendment and therefore also transgressed the Fifth, … the foundations for the rule have been washed away.  In consequence the prohibition against forcing the production of documents has long been a rule searching for a rationale consistent with the proscriptions of the Fifth Amendment against compelling a person to give "testimony" that incriminates him.  Accordingly, we turn to the question of what, if any, incriminating testimony with the Fifth Amendment's protection is compelled by a documentary summons.
>
> A subpoena served on a taxpayer requiring him to produce an accountant's workpapers without doubt involves substantial compulsion.  But it does not compel oral testimony.  … Therefore the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer…
>
> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer.  It also would indicate the taxpayers belief that the papers are those described in the subpoena.  … In light of the records before us now, we are confident that however incriminating the contents of the accountant's workpapers might be, the act of producing them the only thing which the taxpayer is compelled to do would not itself involve testimonial self-incrimination. …
>
> Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his "private papers" ….[20]

In sum, the Court found that the compelled production of documentary evidence did implicate the Fifth Amendment privilege, but ultimately declined to extend the Amendment's protection to situations involving documents that were neither created by,

---

[20] Id. at 405, 409-11, and 414.

nor in the possession of, the affected target individual. As for the opposite situation, Justice Brennan addressed the matter in his concurring opinion, stating that the "implication that the [Fifth Amendment] privilege might not protect against compelled production of tax records that are his "private papers" is so contrary to settled constitutional jurisprudence that this and other like implications throughout the opinion prompt me to conjecture that once again the Court is laying the groundwork for future decisions that will tell us that the question here formally reserved was actually answered against the availability of the privilege."[21] Justice Marshall's concurring opinion echoed Justice Brennan's sentiments.[22]

### B. United States v. Doe

In the case of United States v. Doe, the owner of several sole proprietorships received five subpoenas duces tecum – all demanding the production of documents (telephone records, bank records, and business records) – in connection with a grand jury investigation.[23] Doe filed a motion in the federal District Court for the District of New Jersey to quash the subpoenas on Fifth Amendment grounds. The District Court granted the motion except with respect to any documents "required by law to kept or disclosed to a public agency."[24] Specifically, the District Court held that "the act of production would compel respondent to 'admit that the records exist, that they are in his possession, and that they are authentic.'"[25] On appeal, the Third Circuit U.S. Court of Appeals affirmed the District Court's decision, finding that even though the contents of business records are ordinarily not privileged, Mr. Doe could rightfully assert the Fifth

---

[21] Id., J. Brennan, concurring, at 415.
[22] Id., J. Marshall, concurring, at 431-34.
[23] United States v. Doe, 465 U.S. 605, 607 (1984).
[24] Id. at 607.
[25] Id. at 608.

Amendment privilege under one of two analyses: First, that the business records of a sole proprietorship are no different than the individual owner's personal papers; Second, that the act of producing the subpoenaed documents had a communicative aspect of its own.[26] While the Government contended that the subpoenas were nonetheless enforceable due to its offer of immunity, the Third Circuit disagreed finding that no formal request for use immunity had been made.[27] The U.S. Supreme Court granted certiorari to resolve the apparent conflict with Fisher, ultimately affirming and reversing in part the lower courts decisions.

At the outset, the Court disagreed with the Third Circuit's ruling that the contents of the requested documents were privileged:

> The Court in *Fisher* expressly declined to reach the question of whether the Fifth Amendment privilege protects the contents of an individual's tax records in his possession. The rationale underlying our holding in that case is, however, persuasive here. As we noted in IFisher, the Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination. Where the preparation of business records is voluntary, no compulsion is present. …
>
> This reasoning applies with equal force here. Respondent does not contend that he prepared the documents involuntarily or that the subpoena would force him to restate, repeat, or affirm the truth of their contents. The fact that the records are in respondent's possession is irrelevant to the determination of whether the creation of the records was compelled. We therefore hold that the contents of those records are not privileged.[28]

The Court went on, however, to affirm the **result** of the lower courts' rulings, holding that Mr. Doe could not be compelled to produce the documents demanded:

> Although the contents of a document may not be privileged, the act of producing the document may be. … A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. …

---

[26] Id. at 609.
[27] Id. at 609-10.
[28] Id. at 610-12.

> In *Fisher*, the Court explored the effect that the act of production would have on the taxpayer and determined that the act of production would have only minimal testimonial value and would not incriminate the taxpayer. Unlike the Court in *Fisher*, we have the explicit finding of the District Court that the act of producing the documents would involve testimonial self-incrimination. …
>
> The Government, as it concedes, could have compelled respondent to produce the documents listed in the subpoena. Sections 6002 and 6003 of Title 18 provide for the granting of use immunity with respect to the potentially incriminating evidence. … The Government did state several times before the District Court that it would not use respondent's act of production against him in any way. But counsel for the Government never made a statutory request to the District Court to grant respondent use immunity. … [But] [w]e decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of a formal request that the statute requires.[29]

In sum, the Court declined to erode the Fifth Amendment protection as applied to compulsory document production beyond the limits set forth in Fisher, and specifically held that the mere act of producing a document which might ultimately incriminate the producer could not withstand Fifth Amendment scrutiny absent a formal request and grant of use immunity in accordance with the applicable statutory law.

### C. The Fifth Amendment privilege shields Mr. Gustafson from producing the documents requested by the Trustee's subpoena.

All the documents requested by the Trustee's subpoena, enumerated as numbers one through twelve in "Exhibit A To James Gustafson Subpoena" [30] are Mr. Gustafson's personal papers. Even if the contents of the requested documents do not enjoy Fifth Amendment protection per se, the act of producing the documents has a communicative aspect which may tend to incriminate Mr. Gustafson. Absent a formal request and grant of use immunity, Mr. Gustafson cannot be compelled to produce the requested documents and the subpoena duces tecum should be quashed.

---

[29] Id. at 612-615.
[30] Exhibit 1.

Respectfully submitted,

MESHBESHER & ASSOCIATES, P.A.


 /s/ Steven J. Meshbesher 
Steven J. Meshbesher
Attorney # 127413
225 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
Dated: April 5, 2010              Phone: (612) 332-2000

# EXHIBIT A TO JAMES GUSTAFSON SUBPOENA

1. Copies of any and all documents relating to, or evidencing, the receipt of any monies checks, other transfers, or property by you, from January 1, 2009 to date from Dennis E. Hecker ("**Debtor**") or any one of his entities. This includes monies received for any reason, including, without limitation, from loans, earnings, gifts, withdrawals, sales and transfers. This request also includes, but is not limited to, copies of checks and copies of bank account statement reflecting the deposit of any such monies.

2. Copies of any and all receipts for any items purchased for Debtor by you since June 4, 2008 to date.

3. A list of all gifts and all items received by you from Debtor since June 4, 2008 and any documentation related thereto.

4. All correspondence between you and Debtor, written or electronic, since June 4, 2008.

5. Bring to the 2004 examination your U.S. passport that was in effect during the period of June 4, 2007 to June 4, 2009.

6. Complete copies of your personal bank statements for the period of June 4, 2008 through December 1, 2009 including copies of all deposits (other than checks from the U.S. government) and copies of all transfers from said accounts.

7. All documents evidencing the payment, by you to Hecker, or made by you for the benefit of Hecker, or to Christi Rowan or any of Hecker's creditors or family members from June 1, 2008 to present.

8. Your travel records for the period of June 4, 2007 through November 1, 2009.

9. Your personal income tax returns for the years 2008 and 2009.

10. Attached as Exhibit 1 is a copy of check number 5054 drawn on a Wells Fargo account held in the name of James Gustafson, which account ends in number 2887. That check is a check payable to The Golf Club of Scottsdale. Provide all documents, including bills, invoices and any other documents which you consulted, or which directed you or advised you in making the payment to The Golf Club Scottsdale represented by check number 5054.

11. If you have paid any bills or other obligations of Dennis Hecker or Christi Rowan from March 1, 2009 to date, provide copies of all checks by which any such bills were paid.

12. If you have paid any bills or other obligations of Dennis Hecker or Christi Rowan from March 1, 2009 to date, provide copies of all documents evidencing the bills or invoices for which those payments were made, any instructions to you to make such payments, and any and all other correspondence relating to or evidencing any payment of such bills.

418358

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                      BKY No. 09-50779
                                                    Chapter 7
           Debtor.

## ORDER TO QUASH SUBPOENA DUCES TECUM

This case is before the court on the motion of Mr. James C. Gustafson, subject of a subpoena duces tecum issued by the Trustee following this court's previous Order of March 10, 2010 granting the Trustee's Motion for a Rule 2004 Examination.

It is ordered:

Mr. Gustafson's Motion is granted, and the Subpoena Duces Tecum issued to Mr. Gustafson is quashed in its entirety.

Dated: _____          _____
                                                            Robert J. Kressel
                                                            United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                              BKY No. 09-50779
                                                                        Chapter 7

         Debtor.

## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I caused the following documents:

> *Motion to Quash Subpoena Duces Tecum, Memorandum In Support of Motion to Quash Subpoena Duces Tecum and Order (Proposed)*

to be filed electronically with the Clerk of Court through ECF, and that the above docuements will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice in accordance with Local Rule 9006-1(a).

I further certify that I caused copies of the foregoing documents to be mailed via U.S. Mail to the following persons:

Matthew R. Burton
Leonard, O'Brien, et al
100 South Fifth Street, Ste. 2500
Minneapolis, MN 55402


     /s/ Kevin M. Gregorius
Kevin M. Gregorius
Meshbesher & Associates, P.A.
225 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 332-2000