# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                                    BKY No.:  09-50779

Dennis E. Hecker,                                                          Chapter 7

       Debtor.

---

## NOTICE OF HEARING AND EXPEDITED MOTION
## FOR APPROVAL OF SETTLEMENT AGREEMENT

---

TO:    THE ENTITIES SPECIFIED IN LOCAL RULE 9013.

    1.    Plaintiff Randall L. Seaver, the Chapter 7 Trustee (the "Trustee") in the above-captioned Bankruptcy Case, moves the Court for the relief requested below and gives notice of hearing herewith.

    2.    The Court will hold a hearing on this Motion at 2:00 p.m. on June 16, 2010, in Courtroom No. 8 West, U.S. Bankruptcy Court, 300 South Fourth Street, Minneapolis, Minnesota  55415.  Any response to this motion must be filed and served by delivery not later than June 11, 2010 which is five days before the time set for the hearing (including Saturdays, Sundays and holidays).  UNLESS A RESPONSE IS TIMELY SERVED AND FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

    3.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  The petition commencing this Chapter 7 case was filed on June 4, 2009.  The case is now pending in this Court.

    5.    This Motion arises under 11 U.S.C. §§ 506(c), Fed. R. Bankr. P. 7005, 7007 and 9019(a), and Local Rule 9019-1, and is filed pursuant to Local Rules 9006-1(e), 9013-1, 9013-2 and 9013-5. The Trustee seeks approval of a Settlement Agreement entered into in resolution of

claims asserted in two pending Adversary Proceedings: (1) *Randall L. Seaver v. Dennis E. Hecker, et al.*, Adv. No. 09-05045 (the "PSA Dispute"), and (2) *Mackall Crounse & Moore, PLC v. Dennis E. Hecker, et al.*, Adv. No. 10-05015 (the "Interpleader Action"). The Settlement Agreement is attached hereto as <u>Exhibit A.</u>

6. The Parties to the Settlement Agreement are the Trustee and Midwest Motors, LLC ("Midwest Motors"), LKMCD Poperties, LLC ("LKMCD"), Chrysler Financial Services Americas LLC ("Chrysler"), Toyota Financial Savings Bank ("TFSB"). Defendants Inver Grove Motors, LLC, d/b/a Denny Hecker's Inver Grove Toyota ("Seller"), Jacob Holdings of Highway 110, LLC ("JH110") and Jacob Holdings of Akron Avenue LLC ("JH Akron") did not make an appearance or otherwise respond to the Complaint of the Trustee in the PSA Dispute and did not answer the Complaint in the Interpleader Action. (Midwest Motors, LKMCD, Chrysler, TMCC and TFSB are sometimes collectively referred to as the "Defendant Parties").

## BACKGROUND

## I. THE PSA AGREEMENT

7. On or about April 16, 2009, Twin Cities Automotive, LLC ("TCA") and Inver Grove Motors, LLC, d/b/a Denny Hecker's Inver Grove Toyota (the "Seller") entered into a Purchase Agreement (the "Purchase Agreement") pursuant to which TCA was to acquire all or substantially all of the assets of the Toyota automobile dealership owned by Seller and operated out of a location in Inver Grove Heights, Minnesota.

8. In connection with the Purchase Agreement, the Debtor and TCA entered into a Personal Services Agreement (the "PSA") which provided for, among other things, payments to the Debtor in 48 equal monthly installments of $20,833.33 each, commencing as of the date of the closing of the Purchase Agreement.

9.     Toyota Motor Sales USA ("TMS") and its affiliates held certain rights of first refusal with respect to the sale of all or a substantial portion of the assets comprising Seller's dealership operations and real property upon which it was operated.  TMS exercised its right of first refusal and thereafter assigned its interest in the Purchase Agreement to Stephen J. McDaniels, who subsequently assigned his rights therein to Midwest Motors, LLC ("Midwest Motors").  Pursuant to the assignment, Midwest Motors assumed all of the rights and obligations under the PSA.

## II.     THE BANKRUPTCY AND INTERIM STIPULATION

10.     Prior to the closing of the Purchase Agreement between Seller and Midwest Motors, on June 4, 2009, the Debtor filed his petition for voluntary relief under Chapter 7 of the Bankruptcy Code.

11.     Pursuant to a settlement including the Trustee and interested parties, it was agreed that the sale could proceed, with all parties reserving their rights as to the PSA.  It was further agreed that payments made pursuant to the PSA be held in trust by the Trustee pending further order of this Court.  The purchase of the properties and the dealership assets were approved by this Court pursuant to an Order dated June 18, 2009, which approved the settlement agreement between the Trustee, Seller, Midwest, the Debtor, and other parties (the "Stipulation").

## III.     THE PSA DISPUTE

12.     On September 29, 2009, the Trustee commenced the PSA Dispute seeking a determination, among other things, of the respective rights and interests of the Debtor, Trustee, Seller and Defendant Parties in and to amounts payable under the PSA.  The Trustee's Adversary Complaint further seeks surcharge of the proceeds pursuant to 11 U.S.C. § 506(c), in recognition of the Trustee's preservation of amounts payable under the PSA for the benefit of creditors.

13.     In the PSA Dispute, the Debtor, Chrysler, TMCC and TFSB have each claimed rights and interests in and to the amounts payable under the PSA.  The Trustee, Chrysler, TMCC and TFSB have further claimed that amounts payable under the PSA were disguised purchase consideration and constitute an attempted diversion to Debtor of the proceeds of the Seller's assets and the related real property and improvements thereon sold by JH110 and JH Akron to LKMCD.

14.     Midwest Motors, in turn, has asserted that it was entitled to cancel the PSA, to seek return of amounts paid by Midwest into escrow with the Trustee, and further sought an Order terminating Midwest Motors' obligations under the PSA and the cessation of any rights and obligations of Midwest under the PSA to Debtor or any third party.

15.     Subsequent to the closing of the Purchase Agreement, and pursuant to the terms of the Stipulation, Midwest Motors made four (4) monthly payments under the PSA to the Trustee, totaling $83,333.32.

## IV.    NOTICE OF TERMINATION AND EFFORTS TO RESOLVE CLAIMS RELATED TO THE PSA DISPUTE

16.     During the pendency of the PSA Dispute, Midwest Motors notified the Debtor that it would refuse to accept any personal services from the Debtor, relying upon language contained in the PSA as well as well-publicized actions of the Debtor.

17.     Midwest Motors has alleged that it suspended payment of any further amounts due under the PSA pursuant to Section 11 of the PSA as a result of the Trustee's contention, in the PSA Dispute, that amounts due under the PSA should be characterized as a diversion of a portion of the purchase price under the Purchase Agreement and as such, made available for the Debtor's creditors.

18.     Midwest maintains that it formally terminated the PSA by giving written notice to the Debtor that his actions would materially and adversely impact the business, reputation and good will of Midwest and Midwest's affiliates.

19.     Midwest has been using its best efforts with all parties, including the Debtor, to resolve the claims made by the Trustee, Chrysler, TMCC and TFSB.  Midwest maintains that these claims constitute events entitling Midwest to suspend payments under paragraph 11 of the PSA and entitle Midwest to use the amounts otherwise payable under the PSA -

> (y)  to pay any party that is determined by a court of competent jurisdiction, or by any receiver, trustee or creditor appointed by a court of competent jurisdiction, to be legally entitled to receipt of such Fees or (z) as provided for in Section 12 [of the PSA].[1]

20.     Midwest further asserts that it has diligently attempted to resolve the claims of all parties to the present proceeding, including the claims of the Debtor, Trustee and all parties claiming an interest in the PSA.  Pursuant to the terms of the PSA, the Debtor specifically granted to Midwest, as successor to Twin Cities Automotive, LLC, certain powers with respect to Midwest's ability to resolve any claims under the PSA:

> For the avoidance of doubt, the term commercially reasonable efforts in this context shall include that [Midwest] will not settle any Claims for a period of at least six (6) months from the date a Claim is first asserted, in litigation or otherwise, and notice thereof has been provided to Hecker.  [Midwest] . . . shall present to Hecker any settlements it intends to enter into in advance for his approval, which settlements shall be deemed to be approved by Hecker unless [Midwest] has breached its obligations to use commercially reasonable efforts to defend.[2]

21.     Seller, JH110 and JH Akron have not made any appearance or answer in the PSA Dispute.  The Trustee is presently the majority owner of the equity interests of the Seller, JH110 and JH Akron, as a result of the Debtor's bankruptcy filing.

---

[1] *PSA*, ¶ 11.
[2] *PSA*, ¶ 12b (emphasis added).

22.     The Trustee, in his capacity as Trustee and as holder of the Debtor's equity interests in Seller, JH110 and JH Akron, and Defendant Parties, have agreed to resolve any and all claims, rights and obligations in and to the PSA and to resolve the claims asserted in the Trustee's Adversary Complaint in the PSA Dispute upon the terms and conditions set forth in the Settlement Agreement.

23.     Midwest Motors has presented the Settlement Agreement to the Debtor and has advised the Debtor that it intends to enter into this Settlement Agreement, but the Debtor has refused to give his approval to the settlement. Debtor is the only party to the PSA Dispute not willing to accept the Settlement Agreement.

24.     The Debtor is a party to the PSA Dispute and has had notice of the PSA Dispute for a period in excess of six (6) months. Midwest has further utilized commercially reasonable efforts to defend the claims asserted by the Trustee, Chrysler, TFSB and TMCC herein. In accordance with Paragraph 12.b of the PSA, this Court can and should conclude that the Settlement Agreement as it relates to the PSA Dispute is deemed to be approved by the Debtor.

## V.     THE INTERPLEADER ACTION

25,     In connection with the Interpleader Action, Mackall, Crounse & Moore, PLC ("MCM") has deposited the sum of $350,774.26 (the "Escrow Property") with the Trustee, representing a principal balance of $358,994.99 remaining after payment of a portion of the escrow proceeds to Toyota Motor Sales USA, Inc. ("TMS"), plus additional accrued interest thereon. The escrow account was established as part of the Purchase Agreement transaction for the sale of the dealership assets by Seller.

26.     TMS has acknowledged to MCM as escrow agent that TMS is not due any additional sums from the Escrow Property, while the Trustee, Chrysler, TFSB and TMCC have

all made claims in and to the Escrow Property.  Debtor has no interest in the Escrowed Property, save and except any interest he may indirectly have as a result of his bankruptcy estate's ownership interest in the Seller, JH110 and JH Akron.  Midwest and LKMCD have no claim or interest in the Escrow Property.  CornerStone Bank, CornerStone Holding Company, Inc. and Blackstone Financial, LLC have made an appearance in the Interpleader Action and have been added as Defendants by Order of the Bankruptcy Court.  CornerStone Bank, CornerStone Holding Company, Inc. and Blackstone Financial, LLC claim interests in the Escrow Property only through Debtor's rights therein.

27.     The Trustee, as Trustee and as the holder of Debtor's equity interests in Seller, JH110 and JH Akron, and Chrysler, TFSB and TMCC have agreed to settle the competing claims to the Escrow Property as provided herein and to seek Court approval for the disposition of the Escrow Property as set forth in this Settlement Agreement.

## THE PROPOSED SETTLEMENT

### I.      THE PSA SETTLEMENT

28.     Pursuant to the terms of the Settlement Agreement, Midwest Motors has agreed to pay the sum of $500,000 in full satisfaction of any and all obligations which Midwest and/or LKMCD may have to any party, including the Debtor, under the PSA.  The Trustee shall be entitled to retain the sum of $65,000 out of the funds currently held in trust for the benefit of the bankruptcy estate.  Remaining proceeds will be divided among the Defendant Parties as specified in the Settlement Agreement.

29.     In addition, a $100,000 promissory note in favor of Midwest Motors will be cancelled and returned to the Debtor, and Midwest will deliver to the Debtor free and clear title to a 2007 Toyota Tundra pickup truck.

## II. SETTLEMENT OF THE INTERPLEADER ACTION

30.     In settlement of the Interpleader Action, the Escrow Property will be distributed as follows: (1) $150,000 to Chrysler, (2) $5,000 to TMCC, and (3) the balance of the Escrow Property, less court approved attorneys' fees and costs, to TFSB.

## III. OTHER MATERIAL PROVISIONS

31.     The Settlement Agreement is contingent upon Bankruptcy Court approval.  In the event of an appeal from an Order approving the Settlement Agreement, the parties to the Settlement Agreement have agreed upon an allocation and sharing of the costs of the appeal. Under the terms of the proposed Settlement Agreement, the Trustee would be responsible for 7.6% of the costs, capped at $15,222.57.  MCM would act as appellate counsel for the Trustee and the other parties to the Settlement Agreement.

32.     The Settlement Agreement also incorporates standard release language in relation to the claims at issue in the PSA Dispute and Interpleader Action.

33.     The Trustee believes that the settlement is in the best interest of creditors of this estate.

34.     Pursuant to Local Rule 9013-2, the Trustee gives notice that he may, if necessary, testify at the hearing regarding the proposed settlement.

WHEREFORE, the Trustee requests an Order of the Court:

1.    Granting the Trustee's motion for approval of the Settlement Agreement.

2.    For such other and further relief as may be just and equitable under the circumstances of this case.

<table>
<tr><td>Dated: May 25, 2010</td><td>LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.</td></tr>
</table>

Dated: May 25, 2010

LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.

By:_____/e/ *James M. Jorissen*_____
   Matthew R. Burton
   James M. Jorissen
100 South Fifth Street
Suite 2500
Minneapolis, Minnesota  55402
(612) 332-1030

ATTORNEYS FOR RANDALL L. SEAVER
TRUSTEE

## <u>VERIFICATION</u>

I, Randall L. Seaver, Trustee for the Bankruptcy Estate of Dennis E. Hecker, the moving party named in the foregoing Notice of Hearing and Expedited Motion to Approve Settlement Agreement, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Executed on May 25, 2010

_____/e/  *Randall L. Seaver*_____
Randall L. Seaver

422204

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| _____ Debtor. | |

Randall L. Seaver, Trustee,                    Adv. Pro. No. 09-05045

        Plaintiff,

v.

Dennis E. Hecker, Midwest Motors, LLC,
LKMCD Properties, LLC, Chrysler Financial
Services Americas LLC, Toyota Motor Credit
Corporation, Toyota Financial Savings Bank,
Inver Grove Motors LLC, d/b/a Denny
Hecker's Inver Grove Toyota, Jacob Holdings
of Highway 110 LLC, Jacob Holdings of
Akron Avenue LLC,

        Defendants,

---

Mackall, Crounse & Moore, PLC,                 Adv. Pro. No. 10-05015

        Plaintiff,

vs.

Dennis E. Hecker; Chrysler Financial Services
Americas LLC; Toyota Motor Credit
Corporation; Toyota Financial Savings Bank;
Inver Grove Motors LLC d/b/a Denny
Hecker's Inver Grove Toyota; and Jacob
Holdings of Highway 110 LLC, Randall L.
Seaver, Trustee, CornerStone Bank,
CornerStone Holding Company, Inc. and
Blackstone Financial, LLC,

        Defendants.

---

**EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE

### INTRODUCTION

1.     The undersigned parties have entered into this Settlement Agreement and Release with respect to (i) all parties making an appearance in the above-referenced Adversary Proceeding No. 09-05045 involving a Personal Services Agreement ("PSA Dispute") save and except the Debtor, Dennis E. Hecker, and (ii) all defendants in Adversary Proceeding No. 10-05015 involving the disposition of certain funds relating to the transaction that gave rise to the PSA Dispute and that are now held under an escrow agreement (the "Interpleader Action"), save and except the Debtor, CornerStone Bank, CornerStone Holding Company, Inc. and Blackstone Financial, LLC.

2.     The undersigned have entered into this Settlement Agreement in response to (i) the Amended Complaint filed by Randall L. Seaver, Trustee ("Trustee") in the PSA Dispute against Dennis E. Hecker ("Debtor"); Midwest Motors, LLC ("Midwest"); LKMCD Properties, LLC ("LKMCD"); Chrysler Financial Services Americas LLC ("Chrysler"); Toyota Motor Credit Corporation ("TMCC"); Toyota Financial Savings Bank ("TFSB"); Inver Grove Motors, LLC, d/b/a Denny Hecker's Inver Grove Toyota ("Seller"); Jacob Holdings of Highway 110 LLC ("JH110") and Jacob Holdings of Akron Avenue LLC ("JH Akron"). (Midwest, LKMCD, Chrysler, TMCC and TFSB are sometimes collectively referred to as the "Defendant Parties") and (ii) in the Interpleader Action. Seller, JH110 and JH Akron did not make any appearance or answer the Complaint of the Trustee in the PSA Dispute. Seller, JH110 and JH Akron did not answer the Complaint in the Interpleader Action.

2

## THE PERSONAL SERVICES AGREEMENT

3.     The Personal Services Agreement ("PSA") was agreed to by Debtor personally and Twin Cities Automotive, LLC as part of an agreement by which Twin Cities Automotive, LLC was to acquire substantially all of the assets of the Toyota automobile dealership owned by Seller and operated out of a location in Inver Grove Heights, Minnesota (the "Dealership Assets"). The PSA is attached as Exhibit A hereto and provides, among other things, for the payment to Debtor of compensation for personal services to be actually rendered by Debtor pursuant to the PSA payable in 48 equal monthly installments of $20,833.33, each commencing as of the date of the closing of the purchase of the Seller's interest in the Dealership Assets.

4.     Toyota Motor Sales USA ("TMS") and its affiliates held certain rights of first refusal with respect to the sale of all or a substantial portion of the Dealership Assets and real property upon which the Seller's dealership was operated, which right of first refusal TMS exercised after being presented with a copy of the Purchase Agreement between Seller and Twin Cities Automotive, LLC. After exercising its right of first refusal, TMS assigned its interest in the Purchase Agreement to Stephen J. McDaniels, who subsequently assigned his rights therein to Midwest. Midwest did not negotiate any of the terms of the PSA, as it was contractually bound by the terms thereof as assignee. Midwest closed on the purchase of the Seller's Dealership Assets and related real property on terms and conditions that Midwest believes were substantially identical to and for the total consideration agreed to be paid by Twin Cities Automotive, LLC for the Seller's dealership assets, including entry into the PSA.

5.     LKMCD simultaneously acquired the real property upon which Seller operated its business from JH110 and JH Akron. The purchase of the properties and the Dealership Assets were approved by this Court pursuant to an Order dated June 18, 2009, which approved a

3

settlement agreement between the Trustee, Seller, Midwest, the Debtor and other parties (the "Stipulation"). The parties agreed that nothing in the Stipulation or the Order would prejudice any rights, claims or interests, including without limitation, any security interest or lien of the parties to the Stipulation or any creditor of any party to the Stipulation in the payments to be made pursuant to the PSA.

6. On September 29, 2009, the Trustee commenced the PSA Dispute to determine , among other things: (i) the interests of the Debtor, Trustee, Seller and all Defendant Parties in and to the amounts payable to Debtor under the PSA; (ii) the validity of Midwest's contention that it was entitled to cancel the PSA and to seek the return of amounts paid by Midwest into escrow with the Trustee, and (iii) the extent of Midwest's continuing obligations under the PSA in light of its purported termination of the PSA and its cessation of any rights and obligations of Midwest under the PSA to Debtor or any third party.

7. Debtor, Chrysler, TMCC and TFSB have each claimed rights and interests in and to the amounts payable under the PSA. The Trustee, Chrysler, TMCC and TFSB have further claimed that amounts payable under the PSA were disguised purchase consideration and constitute an attempted diversion to Debtor of the proceeds of the Seller's Dealership Assets and the related real property and improvements thereon sold by JH110 and JH Akron to LKMCD. Midwest further claims that it had the right to cancel the PSA and to seek the return of amounts paid by Midwest into escrow with the Trustee. Midwest also has sought an Order terminating Midwest's obligations under the PSA and the cessation of any rights and obligations under the PSA to Debtor or any third party.

8. After the closing of the purchase of the Dealership Assets, and pursuant to the terms of the Stipulation, Midwest made four (4) monthly payments under the PSA to the Trustee,

4

totaling $83,333.32. Thereafter, Midwest notified the Debtor that it would refuse to accept any personal services from the Debtor, relying upon the specific language contained in the PSA as well as the then well-publicized actions of the Debtor. Before the Debtor filed bankruptcy, there was very little negative press involving the Debtor or the Debtor's personal and business entities. Midwest alleges that it suspended payment of any further amounts due under the PSA pursuant to Section 11 of the PSA as a result of the Trustee's commencement of claims that the amounts payable by Midwest under the PSA should be characterized as consideration due Seller, JH110 and/or JH Akron for the sale of their respective assets.

9.      Midwest asserts that it formally terminated the PSA by giving written notice to the Debtor that his actions would materially and adversely impact the business, reputation and good will of Midwest and Midwest's affiliates. A copy of Midwest's notice to the Debtor is attached hereto as Exhibit B.

10.      Midwest has been using its best efforts with all parties, including the Debtor, to resolve the claims made by the Trustee, Chrysler, TMCC and TFSB respecting the PSA, which claims constitute events entitling Midwest to suspend payments under paragraph 11 of the PSA and entitle Midwest to use the amounts otherwise payable under the PSA -

> (y) to pay any party that is determined by a court of competent jurisdiction, or by any receiver, trustee or creditor appointed by a court of competent jurisdiction, to be legally entitled to receipt of such Fees or (z) as provided for in Section 12 [of the PSA].[1]

11.      Seller, JH110 and JH Akron have not made any appearance or answer in the PSA Dispute. Trustee is presently the majority owner of the equity interests of the Seller, JH110 and JH Akron, as a result of the Debtor's bankruptcy filing.

---

[1] *PSA*, ¶ 11.

5

12.     Midwest further asserts that it has diligently attempted to resolve the claims of all

parties to the present proceeding, including the claims of the Debtor, Trustee and all parties

claiming an interest in the PSA.  Pursuant to the terms of the PSA, the Debtor specifically

granted to Midwest, as successor to Twin Cities Automotive, LLC, certain powers with respect

to Midwest's ability to resolve any claims under the PSA:

> For the avoidance of doubt, the term commercially reasonable
> efforts in this context shall include that [Midwest] will not settle
> any Claims for a period of at least six (6) months from the date a
> Claim is first asserted, in litigation or otherwise, and notice thereof
> has been provided to Hecker.  [Midwest] . . . shall present to
> Hecker any settlements it intends to enter into in advance for his
> approval, which settlements shall be deemed to be approved by
> Hecker unless [Midwest] has breached its obligations to use
> commercially reasonable efforts to defend.[2]

Midwest asserts that it and its affiliates have used all commercially reasonable

efforts to defend against the claims made by the Trustee, Chrysler, TFSB and

TMCC respecting the PSA Dispute.

13.     Trustee, within his capacity as Trustee and as the holder of the Debtor's equity

interests in Seller, JH110 and JH Akron, and Defendant Parties, have agreed to resolve any and

all claims, rights, obligations or otherwise in and to the PSA and with respect to the Trustee's

Adversary Complaint in the PSA Dispute as set forth herein.

14.     Midwest has presented to Debtor this settlement and advised Debtor that it intends

to enter into this settlement, and Debtor has refused to give his approval to this settlement.

Debtor is the only party to the PSA dispute not willing to accept this Settlement Agreement.

15.     Midwest, LKMCD, Trustee and Defendant Parties agree that they will seek

Bankruptcy Court approval of this settlement and request that the Court specifically find that

such settlement is binding upon the Debtor pursuant to Paragraph 12.b of the PSA.

---

[2] *PSA*, ¶ 12b (emphasis added).

6

## THE INTERPLEADER ACTION

16. In connection with the Interpleader Action, Mackall, Crounse & Moore, PLC ("MCM") has deposited the sum of $350,774.26 (the "Escrow Property") with the Trustee representing the principal balance of $358,994.99 remaining after payment of a portion of the escrow proceeds to Toyota Motor Sales USA, Inc. ("TMS"), plus additional accrued interest thereon of $1,779.27, less $10,000.00 of fees and expenses incurred by MCM in connection with the Interpleader Action. The escrow account was established as part of the Purchase Agreement transaction for the sale of the Dealership Assets by Seller.

17. TMS has acknowledged to MCM as escrow agent that TMS is not due any additional sums from the Escrow Property, while the Trustee, Chrysler, TFSB and TMCC have all made claims in and to the Escrow Property. Debtor has no interest in the Escrowed Property, save and except any interest he may indirectly have as a result of his bankruptcy estate's ownership interest in the Seller, JH110 and JH Akron. Midwest and LKMCD have no claim or interest in the Escrow Property. CornerStone Bank, CornerStone Holding Company, Inc. and Blackstone Financial, LLC have made an appearance in the Interpleader Action and have been added as Defendants by Order of the Bankruptcy Court. CornerStone Bank, CornerStone Holding Company, Inc. and Blackstone Financial, LLC claim interests in the Escrow Property only through Debtor's bankruptcy estate's rights therein.

18. The Trustee, as Trustee and as the holder of Debtor's equity interests in Seller, JH110 and JH Akron, and Chrysler, TFSB and TMCC have agreed to settle the competing claims to the Escrow Property as provided herein and to seek Court approval for the disposition of the Escrow Property as set forth in this Settlement Agreement.

7

## SETTLEMENT TERMS

### *PSA Dispute Settlement*

A.    For and in consideration of any and all obligations which Midwest may have under the PSA to Debtor, Trustee, Chrysler, TMCC, TFSB, Seller, JH110 and/or JH Akron, Midwest shall pay the sum of $500,000 in complete satisfaction of any and all obligations which Midwest and/or LKMCD may have to any party, including Debtor under the PSA. The sum of $500,000 shall be paid by or on behalf of Midwest as follows:

  i.    Upon entry by the Bankruptcy Court of an order (the "Approval Order") approving this Settlement Agreement, and the Approval Order becoming final and non-appealable (the "Final Approval Order"), Trustee shall retain $65,000 of the amount that it has received from Midwest and held in escrow to date, and Trustee shall release the sum of $18,333.32 to TFSB.

  ii.    Within three days of entry of the Approval Order, Midwest shall deposit the sum of Four Hundred Sixteen Thousand Six Hundred Sixty-Six and 68/100ths Dollars ($416,666.68) with the Bankruptcy Court under Adv. Proc. 09-05045 to be held until the Approval Order becomes a Final Approval Order. When the Approval Order becomes a Final Approval Order, the amount held by the Bankruptcy Court under deposit shall be distributed, as soon thereafter as reasonably practicable, as follows:

| Chrysler | $150,000.00 |
| TFSB | $266,666.68 |

If the Approval Order is reversed or modified on appeal and the order reversing or modifying the Approval Order becomes final and non-appealable, the funds deposited by Midwest with the Bankruptcy Court shall be promptly returned to Midwest and the Trustee shall continue to hold

8

in escrow the funds he has received to date until final disposition of this matter by Court Order or other Settlement Agreement approved by the Court.

B.     When the Approval Order becomes a Final Approval Order, the Debtor's promissory note executed by Debtor in favor of LKMCD evidencing a $100,000 loan made by LKMCD to Debtor following the closing of the purchase of the assets by Midwest and secured by all amounts payable to Debtor under the PSA shall be returned to Debtor marked "Paid in Full," with Debtor having no further obligations thereunder.

C.     When the Approval Order becomes a Final Approval Order, Midwest shall deliver to Debtor title to a 2007 Toyota Tundra, VIN 5TBDV58187S458 (the "Toyota Tundra"). Midwest shall satisfy any outstanding liens or claims Toyota Motor Sales, U.S.A., Inc. ("TMS") or TMCC may have against the Toyota Tundra by providing full payment of all outstanding obligations owed to TMS or TMCC (as the case may be) secured by such vehicle. All payments made by Midwest related to the Toyota Tundra shall be in addition to the PSA settlement payments provided above and the Escrow Property. Midwest shall cause a certificate of title to be issued in favor of Debtor free and clear of any existing liens or lease rights of Midwest or TMCC. Such vehicle shall be conveyed to Debtor "AS IS" and without any warranties as to condition or otherwise.

### *Interpleader Action Settlement*

D.     Upon entry of the Approval Order, the Escrow Property shall be distributed as follows:

| | |
|---|---|
| Chrysler | $150,000.00 |
| TMCC | $5,000.00 |
| TFSB | $195,774.26 |
| TOTAL: | $350,774.26 |

9

### *Generally Applicable Settlement Terms*

E.      This Agreement is not enforceable until the Bankruptcy Court enters the Approval Order. All parties hereto reserve all of their rights and defenses in and to the PSA Dispute and the Interpleader Action in the event an Approval Order is not obtained or any third party successfully appeals such Approval Order.

F.      In exchange for the payments made herein, each party to this Agreement hereby releases each and every other party to this agreement, its predecessors, successors and assigns, along with the current and former officers, directors, shareholders, employees, agents, representatives, parent corporations, subsidiaries and affiliates from any and all claims, counterclaims, actions, losses, damages, costs and expenses (including attorneys' fees) or otherwise that have been or should have been raised in and to the PSA Dispute or in any way related to the PSA, the $100,000 loan made by LKMCD to Debtor, the Toyota Tundra to be transferred to the Debtor by Midwest pursuant to this Agreement, the Interpleader Action, or any and all rights any of them may have in the Escrow Property. Except for TMCC, the parties also release Midwest and LKMCD for any claims related to the consideration payable for the assets of Seller, or the proceeds of the purchase price payable by LKMCD for the real property purchased from JH110 and JH Akron, or otherwise against Midwest, LKMCD or any and all of their respective owners, officers, directors, governors, insurers or attorneys. Notwithstanding the foregoing, however, none of the Trustee, Chrysler, TMCC or TFSB are releasing any rights against Debtor, the Debtor's bankruptcy estate, Seller, JH110, JH Akron, or with respect to any distributions or other property that may be recovered or made available by the Debtor or the Debtor's bankruptcy estate.

G.      Notwithstanding anything to the contrary herein, nothing in this Agreement (or

10

any Approval Order ) shall release, modify, alter, or amend any agreements, notes, security instruments, guaranty agreements, or other documents (collectively, the "TMCC Documents") by and between TMCC and Midwest, LKMCD, Stephen J. McDaniels, and/or any of their affiliates (collectively, the "McDaniels Parties"), or any obligations the McDaniels Parties may owe to TMCC under such TMCC Documents or applicable law, including but not limited to, any agreements related to the acquisition of assets of Seller, JH110 and JH Akron by the McDaniels Parties.

H. Trustee will consent to any corporate or entity resolution on behalf of Seller, JH110 and JH Akron necessary to effect this settlement.

I. Midwest and LKMCD make the payments and other consideration hereunder without admitting any liability or otherwise, and do so for the sole purpose of intending to resolve any and all claims brought against either of them in connection with the PSA, or any claims of lack of adequate consideration payable for the purchase of the Dealership Assets from Seller or the real estate upon which such dealership is operated, the loan made by LKMCD to Debtor, or otherwise.

J. The parties hereto acknowledge that any and all payments hereunder and the settlement and releases provided herein are specifically conditioned upon entry of a Final Approval Order.

K. The parties hereto also acknowledge that all obligations of Midwest, LKMCD and any other party are conditioned upon the Court's approval and granting an Order that Midwest has used all commercially reasonable efforts to defend the claims and that this settlement shall be deemed to have been approved by Debtor pursuant to paragraph 12(b) of the PSA, and that Debtor shall be bound by the terms hereof.

11

L.     In the event of the Debtor or any third party appeals any Approval Order , the following terms shall control:

  i.      Implementation of this Agreement is stayed pending all appeals until final judgment or order is entered and no further appeals remain;

  ii.     MCM will act as lead appellate counsel defending this Agreement and representing Midwest Motors and LKMCD;

  iii.    Other parties to the Agreement reserve the right to retain counsel to represent their respective interests; and

  iv.     For any services rendered by MCM or costs incurred by MCM related to an appeal of such Approval Order , Trustee, Chrysler and TFSB agree to indemnify and hold harmless Midwest and LKMCD up to an aggregate amount of the first $200,000 for attorneys' fees, costs and expenses incurred by Midwest and/or LKMCD with respect to such appeal ("Appeal Obligations"). Chrysler shall pay 35% of the Appeal Obligations; provided, however, that Chrysler's share of the Appeal Obligations shall not exceed $70,000.  The Trustee shall pay 7.6% of the Appeal Obligations; provided, however, that the Trustee's share of the Appeal Obligations shall not exceed $15,200.  TFSB shall pay 57.4% of the Appeal Obligations; provided, however, that TFSB's share of the Appeal Obligations shall not exceed $114,800.

M.     This Agreement does not constitute an admission by any party, either explicitly or implicitly, of any allegations cited in the factual recitations above. This Agreement shall not be admissible in evidence in any proceeding, except to the extent such action or proceeding involves or relates to the enforcement or performance of this Agreement subsequent to Bankruptcy Court approval of this Agreement.

N.     This Agreement represents the complete agreement of the parties and terminates all prior oral and written agreements and supersedes all communications between the parties. No promise, inducement or other agreement has been made to solicit acceptance of this Agreement.

O.     This Agreement shall be governed by the laws of Minnesota and any applicable provisions of Title 11 of the United States Code. The Court in which Debtor's bankruptcy case is pending shall retain jurisdiction over enforcement and interpretation of this Agreement.

P.     This Agreement may be executed in any number of counterparts.

AGREED AND ACCEPTED:

CHRYSLER FINANCIAL SERVICES
AMERICAS LLC

Dated: May    , 2010          By

                              Its:

MIDWEST MOTORS, LLC

Dated: May    , 2010          By
                              Stephen J. McDaniels
                              Its: Chief Manager

13

M.     This Agreement does not constitute an admission by any party, either explicitly or implicitly, of any allegations cited in the factual recitations above. This Agreement shall not be admissible in evidence in any proceeding, except to the extent such action or proceeding involves or relates to the enforcement or performance of this Agreement subsequent to Bankruptcy Court approval of this Agreement.

N.     This Agreement represents the complete agreement of the parties and terminates all prior oral and written agreements and supersedes all communications between the parties. No promise, inducement or other agreement has been made to solicit acceptance of this Agreement.

O.     This Agreement shall be governed by the laws of Minnesota and any applicable provisions of Title 11 of the United States Code. The Court in which Debtor's bankruptcy case is pending shall retain jurisdiction over enforcement and interpretation of this Agreement.

P.     This Agreement may be executed in any number of counterparts.

AGREED AND ACCEPTED:

CHRYSLER FINANCIAL SERVICES
AMERICAS LLC

Dated: May   . 2010                    By_____

                                       Its:_____

                                       MIDWEST MOTORS, LLC

Dated: May   , 2010                    By_____
                                       Stephen J. McDaniels
                                       Its:  Chief Manager

13

LKMCD PROPERTIES, LLC

Dated: May __, 2010

By_____
Stephen J. McDaniels
Its: Chief Manager

TOYOTA MOTOR CREDIT CORPORATION

Dated: May __, 2010

By_____

Its:_____

TOYOTA FINANCIAL SERVICES BANK

Dated: May __, 2010

By_____

Its:_____

Dated: May __, 2010

_____
Randall L. Seaver, Trustee

INVER GROVE MOTORS LLC

Dated: May __, 2010

By_____
Randall L. Seaver
Trustee

JACOB HOLDINGS OF HIGHWAY 110 LLC

Dated: May __, 2010

By_____
Randall L. Seaver
Trustee

JACOB HOLDINGS OF AKRON LLC

Dated: May __, 2010

By_____
Randall L. Seaver
Trustee

14

LKMCD PROPERTIES, LLC

Dated: May___, 2010

By_____
    Stephen J. McDaniels
    Its: Chief Manager

TOYOTA MOTOR CREDIT CORPORATION

Dated: May___, 2010

By_____
    _____
    Its: _____

TOYOTA FINANCIAL SERVICES BANK

Dated: May___, 2010

By_____
    _____
    Its: _____

Dated: May___, 2010

_____
Randall L. Seaver, Trustee

INVER GROVE MOTORS LLC

Dated: May___, 2010

By_____
    Randall L. Seaver
    Trustee

JACOB HOLDINGS OF HIGHWAY 110 LLC

Dated: May___, 2010

By_____
    Randall L. Seaver
    Trustee

JACOB HOLDINGS OF AKRON LLC

Dated: May___, 2010

By_____
    Randall L. Seaver
    Trustee

14

LKMCD PROPERTIES, LLC

Dated: May ___, 2010

By_____
    Stephen J. McDaniels
    Its: Chief Manager

TOYOTA MOTOR CREDIT CORPORATION

Dated: May ___, 2010

By_____

Its:_____

                  SAVINGS
TOYOTA FINANCIAL SERVICES BANK

Dated: May 14, 2010

By_____

Its: President - CEO

Dated: May ___, 2010

_____
Randall L. Seaver, Trustee

INVER GROVE MOTORS LLC

Dated: May ___, 2010

By_____
    Randall L. Seaver
    Trustee

JACOB HOLDINGS OF HIGHWAY 110 LLC

Dated: May ___, 2010

By_____
    Randall L. Seaver
    Trustee

JACOB HOLDINGS OF AKRON LLC

Dated: May ___, 2010

By_____
    Randall L. Seaver
    Trustee

14

LKMCD PROPERTIES, LLC

Dated: May___, 2010

By_____
   Stephen J. McDaniels
   Its: Chief Manager

TOYOTA MOTOR CREDIT CORPORATION

Dated: May___, 2010

By_____

   Its:_____

TOYOTA FINANCIAL SERVICES BANK

Dated: May___, 2010

By_____

   Its:_____

Dated: May___, 2010

_____
Randall L. Seaver, Trustee

INVER GROVE MOTORS LLC

Dated: May___, 2010

By_____
   Randall L. Seaver
   Trustee

JACOB HOLDINGS OF HIGHWAY 110 LLC

Dated: May___, 2010

By_____
   Randall L. Seaver
   Trustee

JACOB HOLDINGS OF AKRON LLC

Dated: May___, 2010

By_____
   Randall L. Seaver
   Trustee

14

APPROVED AS TO FORM AND CONTENT:

Dated: May , 2010

MACKALL, CROUNSE & MOORE, PLC

William J. O'Brien (#184822)
Andrew P. Moratzka (#322131)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, MN 55402
(612) 305-1400
ATTORNEYS FOR DEFENDANTS
MIDWEST MOTORS, LLC, and LKMCD
PROPERTIES, LLC

Dated: May , 2010

LEONARD, O'BRIEN, SPENCER, GALE
& SAYRE, LTD.

Matthew R. Burton (#210018)
James M. Jorissen (#262833)
100 S 5th St, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

ATTORNEYS FOR TRUSTEE
RANDALL L. SEAVER

Dated: May , 2010

GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.

Nicholas N. Nierengarten (#79169)
Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 632-3040

MAYER BROWN LLP
Howard J. Roin, admitted *Pro Hac Vice*
Stuart M. Rozen, admitted *Pro Hac Vice*
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7302

15

APPROVED AS TO FORM AND CONTENT:

Dated: May __, 2010

MACKALL, CROUNSE & MOORE, PLC

_____
William J. O'Brien (#184822)
Andrew P. Moratzka (#322131)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, MN 55402
(612) 305-1400
ATTORNEYS FOR DEFENDANTS
MIDWEST MOTORS, LLC, and LKMCD
PROPERTIES, LLC

Dated: May __, 2010

LEONARD, O'BRIEN, SPENCER, GALE
& SAYRE, LTD.

_____
Matthew R. Burton (#210018)
James M. Jorissen (#262833)
100 S 5ᵗʰ St, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

ATTORNEYS FOR TRUSTEE
RANDALL L. SEAVER

Dated: May __, 2010

GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.

_____
Nicholas N. Nierengarten (#79169)
Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 632-3040

MAYER BROWN LLP
Howard J. Roin, admitted *Pro Hac Vice*
Stuart M. Rozen, admitted *Pro Hac Vice*
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7302

15

APPROVED AS TO FORM AND CONTENT:

Dated: May __, 2010                    MACKALL, CROUNSE & MOORE, PLC

_____
William J. O'Brien (#184822)
Andrew P. Moratzka (#322131)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, MN 55402
(612) 305-1400
ATTORNEYS FOR DEFENDANTS
MIDWEST MOTORS, LLC, and LKMCD
PROPERTIES, LLC

Dated: May __, 2010                    LEONARD, O'BRIEN, SPENCER, GALE
& SAYRE, LTD.

_____
Matthew R. Burton (#210018)
James M. Jorissen (#262833)
100 S 5th St, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

ATTORNEYS FOR TRUSTEE
RANDALL L. SEAVER

Dated: May 24, 2010                    GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.

_____
Nicholas N. Nierengarten (#79169)
Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 632-3040

MAYER BROWN LLP
Howard J. Roin, admitted *Pro Hac Vice*
Stuart M. Rozen, admitted *Pro Hac Vice*
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7302

15

Dated: May ⁄⁄ 2010

ATTORNEYS FOR DEFENDANT CHRYSLER
FINANCIAL SERVICES AMERICAS LLC

PETERS LAW FIRM, P.L.C.

Timothy J. Peters (#269979)
2116 Second Avenue South
Minneapolis, MN 55404
(612) 746-1475

REED SMITH LLP
Gregory L. Taddonio, admitted *Pro Hac Vice*
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-7102

ATTORNEYS FOR DEFENDANT TOYOTA
MOTOR CREDIT CORPORATION

Dated: May , 2010

RAVICH MEYER KIRKMAN MCGRATH
NAUMAN & TANSEY, P.A.

_____
Will R. Tansey (#0323056)
4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-8511

K&L GATES LLP
Michael B. Lubic, admitted *Pro Hac Vice*
10100 Santa Monica Blvd., 7th Floor
Los Angeles, CA 90067
(310) 552-5000

ATTORNEYS FOR DEFENDANT
TOYOTA FINANCIAL SAVINGS BANK

16

ATTORNEYS FOR DEFENDANT CHRYSLER
FINANCIAL SERVICES AMERICAS LLC

Dated: May , 2010                    PETERS LAW FIRM, P.L.C.

_____

Timothy J. Peters (#269979)
2116 Second Avenue South
Minneapolis, MN 55404
(612) 746-1475

REED SMITH LLP
Gregory L. Taddonio, admitted *Pro Hac Vice*
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-7102

ATTORNEYS FOR DEFENDANT TOYOTA
MOTOR CREDIT CORPORATION

Dated: May 25 2010                   RAVICH MEYER KIRKMAN MCGRATH
NAUMAN & TANSEY, P.A.

_____

Will R. Tansey (#0323056)
4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-8511

K&L GATES LLP
Michael B. Lubic, admitted *Pro Hac Vice*
10100 Santa Monica Blvd., 7th Floor
Los Angeles, CA 90067
(310) 552-5000

ATTORNEYS FOR DEFENDANT
TOYOTA FINANCIAL SAVINGS BANK

16

# EXHIBIT A

## Personal Services Agreement

## PERSONAL SERVICES AGREEMENT

**THIS PERSONAL SERVICES AGREEMENT** (the "Agreement") is made and entered into effective upon the Effective Date (as defined below) by and between TWIN CITIES AUTOMOTIVE, LLC, a Delaware limited liability company (the "Company"), and DENNIS E. HECKER, an individual resident of the state of Minnesota ("Hecker").

**WHEREAS,** Hecker has owned, operated and managed numerous automotive dealerships and other businesses related to the automotive industry for more than 35 years, such that Hecker has developed a recognized understanding and expertise within the automotive industry; and

**WHEREAS,** the Company has recently underwent a period of significant growth and desires to have access to parties with experience and skills who will assist the Company manage and integrate its growing operations; and

**WHEREAS,** Hecker possesses the skill set and experience desired by the Company and, therefore, the Company desires to retain Hecker to render services to the Company on the terms and conditions set forth in this Agreement; and

**WHEREAS,** Hecker desires to be retained by the Company on such terms and conditions.

**NOW, THEREFORE,** in consideration of the premises and of the mutual covenants and agreements contained herein, the parties agree as follows:

1. **Services and Performance of Duties.** The Company hereby retains Hecker to provide the Services (as defined below) to the Company. In providing the Services, Hecker shall devote such time, energy and skills as are reasonably necessary to discharge Hecker's duties hereunder. Hecker shall report to and be subject to the direction of the President of the Company. Hecker shall conduct the Services at such times as directed by the President of the Company. The Services shall include one or more of the following: assist in the integration and operation of the Company's affiliated automotive dealerships in the state of Minnesota, whether now owned or hereafter acquired (the "Dealerships"); assist in strategic planning for the Dealerships; assist and recommend advertising programs and strategies for the Dealerships; assist with manufacturer relationships for the Dealerships; develop and assist with fleet sales for the Dealerships; develop and assist in used car marketing and wholesale strategies for the Dealerships; assist in planning, development and construction of facilities and improvements for the Dealerships; assist in finding, analyzing and contracting dealerships for acquisition; and to provide such other services as are reasonably requested by the Company, and Hecker hereby agrees to provide the Services.

2. **Term.** The term of this Agreement (the "Term") shall commence upon the Closing of the transactions contemplated by (and as such term is defined in) that certain Asset Purchase Agreement between Twin Cities Toyota, LLC ("Buyer"), Inver Grove Motors LLC, and Hecker dated of even date herewith (the "Asset Purchase Agreement," and such date, the "Effective Date") and shall continue for a period of four (4) years, unless earlier terminated in accordance with this Agreement. Notwithstanding anything in this Agreement to the contrary, if

the Closing does not occur for any reason, this Agreement will not become effective and will be null and void ab initio. The Company may terminate this Agreement by written notice to Hecker:

(a)     in the event Hecker breaches any representation, warranty, or covenant made by Hecker hereunder;

(b)     in the event Hecker fails to provide the Services as set forth herein and such failure is not remedied within thirty (30) days following written notice from the Company regarding such failure; or

(c)     in the event Hecker takes any action that adversely impacts the business, reputation or goodwill of the Company or any of the Company's affiliates in any material manner.

3.      **Fees.** As compensation for the Services rendered under this Agreement, the Company shall pay Hecker fees equal to One Million Dollars ($1,000,000) (the "Fees"), payable in forty-eight (48) equal, monthly installments of $20,833.33 commencing on the Effective Date. Fees paid under this Agreement shall not be subject to withholding for federal, state or local income or employment taxes, including withholding for FICA contributions. Hecker shall be solely responsible for any and all federal, state and local income taxes, FICA payments and other required deductions, payments or contributions.

4.      **Expense Reimbursement.** The Company shall reimburse Hecker for all reasonable expenses, including reasonable travel expenses, incurred by Hecker on behalf of the Company during the Term of this Agreement, as approved by the Company in advance and upon submission of appropriate documentation of such expenses.

5.      **Nature of Relationship.** Hecker is an independent contractor and neither Hecker nor any employee or agent of Hecker shall be deemed to be an employee of the Company for the purposes of any employee benefit programs, income tax withholding, FICA taxes, unemployment benefits, workers compensation benefits, or otherwise. Hecker shall not have any authority to assume or create any obligation, express or implied, on behalf of the Company.

6.      **Hecker's Warranties, Representations, and Covenants.** Hecker represents, warrants, and covenants to the Company that (i) Hecker shall comply with and not violate any applicable laws in the performance of the Services under this Agreement; (ii) Hecker shall render the Services in a businesslike and professional manner in accordance with generally accepted standards for the nature of the work performed, and shall act in a manner reasonably calculated to protect the good name and business reputation of the Company; (iii) Hecker shall comply with the covenants set forth in Section 16 of the Asset Purchase Agreement; and (iv) no other party has exclusive rights to Hecker's services to be performed hereunder and Hecker is in no way compromising any rights or trust relationships between any other party and Hecker, or creating a conflict of interest or any possibility thereof, for Hecker or for the Company.

7.      **Nondisclosure.** Except as permitted or directed by the Company, or as may be required in the proper discharge of Hecker's duties hereunder, Hecker shall not, during the Term or at any time thereafter, divulge, furnish or make accessible to anyone or use in any way any

2

confidential, trade secret or proprietary information of the Company, including without limitation, whether or not reduced to writing, customer lists, customer files or information, business planning and financial information, contracts, sales and marketing information, business strategy or opportunities for new or developing business (collectively, the "Confidential Information"), which Hecker has prepared, acquired or become acquainted with as a result of his relationship with the Company. Hecker acknowledges that the Confidential Information is the property of the Company, constitutes a unique and valuable asset of the Company and any disclosure or other use thereof, other than for the sole benefit of the Company, would cause irreparable harm to the Company. The foregoing obligations of confidentiality shall not apply to any knowledge or information the entirety of which is now published or subsequently becomes generally publicly known, other than as a direct or indirect result of the breach of this Agreement by Hecker or a breach of a confidentiality obligation owed to the Company by any third party.

**8.      Non-Solicitation.**  Hecker agrees that, during the Term of this Agreement and for a period of eighteen (18) months following termination of this Agreement for any reason, Hecker will not directly or indirectly solicit, induce or attempt to induce any employee of the Company to terminate his or her employment with the Company.

**9.      Return of Property.**  Upon the termination of this Agreement, or upon the Company's request, Hecker shall promptly return to the Company all documents, files or other Company property, including all copies thereof, then in Hecker's possession, control or influence, including without limitation all Confidential Information.

**10.     Injunctive Relief.**  Hecker agrees that it would be difficult to compensate the Company fully for damages for any violation of the provisions of Sections 7 through 13 of this Agreement. Accordingly, Hecker specifically agrees that the Company shall be entitled to temporary and permanent injunctive relief to enforce Sections 7 through 13 of this Agreement and that such relief may be granted without the necessity of proving actual damages. This provision with respect to injunctive relief shall not, however, diminish the right of the Company to claim and recover damages in addition to injunctive relief. Hecker agrees that if the Company is the prevailing party, the Company shall be entitled to recover its costs of litigation and attorney fees incurred in enforcing this Agreement.

**11.     Suspension of Payments.**  The Company shall have the right to suspend payment of the Fees in the event that a third party asserts (a) any claim, whether in a bankruptcy action, foreclosure action or otherwise, that all or any portion of the Fees are or should have been characterized as consideration for the transactions contemplated by the terms of the Asset Purchase Agreement, or any claims of a similar nature, or (b) any claim that the consideration paid by Buyer under the terms of the Asset Purchase Agreement was insufficient or inadequate or (c) any bankruptcy, preference, fraudulent conveyance or claims of a similar nature related to the transactions contemplated by the Asset Purchase Agreement (collectively, "Claims"). With respect to any Fees so suspended, the Company shall have the right to use or make payment of such Fees directly, or through the Buyer, (y) to any party that is determined by a court of competent jurisdiction, or by any receiver, trustee, or creditor appointed by a court of competent jurisdiction, to be legally entitled to receipt of such Fees or (z) as provided for in Section 12 hereof.

3

## 12.    Specific Indemnity and Offsets.

(a)    In the event (i) it is determined by a court of competent jurisdiction, or a trustee, receiver, or creditor appointed by a court of competent jurisdiction, that the consideration paid by Buyer under the terms of the Asset Purchase Agreement was insufficient or inadequate, or (ii) Buyer or any affiliate of Buyer becomes obligated to pay, or agrees to pay, additional consideration or amounts (other than the consideration specified in the Asset Purchase Agreement) whether in connection with a court order, settlement or otherwise, which payment of additional consideration or amounts arises as a result of or related to any Claims, then the Company shall have the right to offset any future Fee payment obligations under this Agreement (including any payments suspended under Section 11) and apply such Fee payment obligations to satisfy in full or in part any liabilities, damages, losses, costs, and expenses incurred by Buyer or any of its affiliates in connection with any such Claims, including without limitation reasonable attorneys fees (in excess of $50,000 incurred by Buyer or any of its affiliates) and any amounts paid in settlement or other resolution of such Claims (collectively, "Losses"). In addition, Hecker shall indemnify, defend and hold harmless, the Company and any of its affiliates for any and all Losses incurred by the Company or any of its affiliates that are not offset by future Fee payment obligations as set forth above; provided, however, that in no event will such indemnification obligation be greater than the amount of the Fees actually paid to Hecker under the terms of this Agreement. The Company and Buyer are affiliates.

(b)    The Company and its affiliates will use commercially reasonable efforts to defend against any Claims so long as Hecker is not in default under the terms of this Agreement. For the avoidance of doubt the term commercially reasonable efforts in this context shall include that the Company will not settle any Claims for a period of at least six (6) months from the date a Claim is first asserted, in litigation or otherwise, and notice thereof has been provided to Hecker. Buyer or Company, as applicable, shall present to Hecker any settlements it intends to enter into in advance for his approval, which settlements shall be deemed to be approved by Hecker unless the Company or Buyer has breached its obligations to use commercially reasonable efforts to defend.

13.    **General Indemnity.**  Hecker shall defend, indemnify and hold the Company harmless from and against any and all liabilities, damages, losses, costs, and expenses (including reasonable attorney fees) which the Company or any of its affiliates may incur or sustain or which may be claimed against the Company or any if its affiliates arising out of or relating to (a) Hecker's performance of the Services or a breach of Hecker's representations, warranties or covenants stated herein, or (b) any act or omission on the part of Hecker or any legal liability on the part of Hecker, in each case related to the performance of his obligations under this Agreement.

## 14.    General Provisions.

14.1    **Waivers.**  No failure on the part of either party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy granted hereby or by any related document or by law.

4

2328527v8

**14.2 Governing law.** This Agreement shall be deemed to be a contract made under the laws of the State of Minnesota and for all purposes it, plus any related or supplemental documents and notices, shall be construed in accordance with and governed by the law of such state without regard to conflict of law provisions.

**14.3 Amendments.** This Agreement may not be and shall not be deemed or construed to have been modified, amended, rescinded, canceled or waived in whole or in part, except by written instruments signed by the parties hereto.

**14.4 Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties regarding the provision of the Services. All previous discussions, promises, representations and understandings between the parties relative to the subject matter of this Agreement, if any, have been merged into this document.

**14.5 Severability.** To the extent that any provision of this Agreement shall be determined to be invalid or unenforceable, the validity and enforceability of the remainder of such provision and of this Agreement shall be unaffected. If any particular provision of this Agreement shall be adjudicated to be invalid or unenforceable, the parties specifically authorize the tribunal making such determination to edit the invalid or unenforceable provision to allow this Agreement, and the provisions thereof, to be valid and enforceable to the fullest extent allowed by law or public policy.

**14.6 Notices.** Any written notice required or permitted hereunder to either party shall be given in writing. Such notice may be delivered by personal delivery, by deposit in the United States Mail, postage prepaid, by any national courier service or by electronically confirmed facsimile transmission with a mailed original.

**14.7 Assignment; Binding Nature.** Hecker shall not assign or transfer this Agreement or any of his rights or duties hereunder to any other person or entity without the prior written consent of the Company. All covenants, stipulations and promises in this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs and legal representatives.

**14.8 Intended Third Party Beneficiaries.** The parties acknowledge and agree that Buyer and each of the affiliates of Buyer are intended third party beneficiaries of this Agreement.

**14.9 Survival of Terms.** The obligations contained in Sections 7 through 14 shall survive the termination of this Agreement indefinitely.

[signature page follows]

5

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

Company:

By: _____

Name: Peter Hasselquist
Title: Chief Executive Officer

Hecker:

_____

Dennis E. Hecker

6

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Company:

By: _____

Name: Peter Hasselquist
Title: Chief Executive Officer

Hecker:

_____
Dennis E. Hecker

6

# EXHIBIT B

## Termination of Personal Services Agreement

1173449 6-APM

Law Offices
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414
www.mcmlaw.com



MACKALL CROUNSEA MOORE n.c

William J. O'Brien
Attorney at Law
(612) 305-1462
wjo@mcmlaw.com

September 30, 2009

EXHIBIT B

**FILE COPY**

**VIA E-MAIL**
Mr. Bruce J. Parker
Kaplan, Strangis & Kaplan, P.A.
5500 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

**CERTIFIED MAIL** $7007 - 25\ 60 - 0000 - 9478 - 3035$
**RETURN RECEIPT REQUESTED**
Mr. Dennis E. Hecker
Inver Grove Motors, LLC
500 Ford Parkway
Minneapolis, MN 55426

  Re: Dennis E. Hecker - Personal Services Agreement
     Our File No. 82337-10

Dear Mr. Hecker and Mr. Parker:

  I am writing to you on behalf of Midwest Motors, LLC ("Midwest Motors"), the successor to Twin Cities Automotive, LLC, with respect to that certain Personal Services Agreement between Midwest Motors, LLC and Dennis E. Hecker dated effective June 19, 2009 ("PSA").

  Midwest Motors previously wrote to Mr. Hecker on July 7, 2009, spelling out the obligations of the services Mr. Hecker was expected to perform under the PSA. Numerous disclosures and claims of Mr. Hecker's actions since that correspondence have been alleged by various third parties, and these actions have been publicly disclosed through the press, court proceedings and third party investigations and what we understand to be criminal investigations. These disclosures have resulted in the public scrutiny of significant personal character issues for Mr. Hecker, which could be linked to Midwest Motors. Those issues adversely impact Midwest Motors' ability to conduct its business, as well as its reputation and the goodwill of its operations and the affiliated dealerships for whom it was contemplated Mr. Hecker would perform his consulting services required under the PSA, as the initial agreement contemplated. Pursuant to paragraph 3(c) of the PSA, Midwest Motors is terminating all of its obligations under the PSA retroactive to the Effective Date.

  Recent actions and disclosures of Mr. Hecker's personal dealings have left Midwest Motors with no choice. Midwest Motors' perception of Mr. Hecker's inability to successfully perform the required consulting services for Midwest Motors and its affiliated dealerships has been crystallized by the constant barrage of negative press surrounding Mr. Hecker since the

MACKALL CROUNSE&MOORE.PLC

Mr. Bruce J. Parker
September 30, 2009
Page 2

business transaction was closed in June of this year. Mr. Hecker's purported "association" with our client was inaccurate. It is unacceptable that the business loan transaction made to Mr. Hecker and his new entity placed Mr. McDaniels personally in the public eye. The characterization of this loan as a "friendly" transaction was misleading, and resulted in both business and personal backlash for Mr. McDaniels. Prior to this complex transaction, Mr. McDaniels did not have a direct business relationship or a personal relationship of any substance with Mr. Hecker. Mr. McDaniels cannot afford to have any business or personal relationships with Mr. Hecker, nor does he have any interest in requesting any information or services from Mr. Hecker now or in the future. Mr. Hecker and Mr. McDaniels have never met to arrange for the consulting services to be performed as originally contemplated by the PSA, and Mr. McDaniels is not willing to do so at this time nor at any time in the future. Mr. McDaniels' only involvement with Mr. Hecker and his companies was through the purchase of certain assets and properties relating to the Inver Grove Toyota dealership.

Neither Mr. McDaniels nor any persons involved with Mr. McDaniels negotiated the original contractual terms for the business transactions, including but not limited to the PSA. The PSA was assigned to Midwest Motors through the legal process after all terms were finalized and negotiated with the original purchaser of the business and agreed upon by Mr. Hecker. Toyota Motor Sales USA exercised its "right of first refusal" on behalf of Mr. McDaniels and Midwest Motors based upon a 25 year positive relationship they have enjoyed. For Midwest Motors to have any association with Mr. Hecker personally would lead the public to believe that Mr. McDaniels and his automobile dealerships desire to have such a business relationship. Neither Mr. McDaniels nor his dealerships can afford to be associated in any way with Mr. Hecker. The business loan which was made to Mr. Hecker by an affiliate of Midwest Motors after closing was a direct result of the complex transactions associated with the Inver Grove Toyota purchase. The loan was part of the overall business transaction and contained normal business terms and was secured by the PSA. This letter does not impact Mr. Hecker's obligations under that loan.

With the recent federal grand jury investigations, State of Minnesota Department of Transportation and taxing authorities investigations, Mr. Hecker is not an individual with whom Midwest Motors can associate for any business purposes as intended under the PSA. Even if none of these allegations turned out to be true, Midwest Motors cannot and will not associate with or utilize the services of Mr. Hecker. The negativity associated with Mr. Hecker's personal name has become very troubling.

Midwest Motors will not engage the personal services of Mr. Hecker in the future under the PSA nor any other business. The PSA, negotiated by others and assigned to Midwest Motors as part of the overall Inver Grove Toyota transaction, requires Mr. Hecker's performance of personal services. The PSA clearly provides, however, that the contract can be terminated should events arise which prevent Mr. Hecker from performing acceptable services for Midwest Motors, LLC. The contract was negotiated by Mr. Hecker and Twin Cities Automotive Group (Midwest Motors' predecessor in interest to the Purchase Agreement) prior to Mr. Hecker's

bankruptcy filing and the continuous extreme negative media attention which surrounds him. These events prevent Midwest Motors, LLC and its affiliates from being able to retain Mr. Hecker for any consulting services in any capacity. Any affiliation with Mr. Hecker can only be perceived as detrimental.

There have been four (4) initial monthly payments which have been made by Midwest Motors to Mr. Hecker's bankruptcy trustee which are being held in escrow. We will be seeking a release of those payments and will engage in discussions directly with the Chapter 7 Trustee for Mr. Hecker's bankruptcy estate to obtain a release of those funds.

One of the conditions for any indemnification of Mr. Hecker and any defense of the PSA is that Mr. Hecker shall not be in default under the terms of the PSA. Pursuant to the provisions contained in paragraph 2(c) of the PSA, Midwest Motors deems Mr. Hecker to be in default thereof for his inability to perform personal services acceptable to Midwest Motors. Midwest Motors has no obligation to defend any claims which may be made against Mr. Hecker with respect to the PSA, including those brought by the Bankruptcy Trustee.

Very truly yours,

MACKALL, CROUNSE & MOORE, PLC

William J. O'Brien

cc: Stephen J. McDaniels (Via e-mail)
Andrew P. Moratzka, Esq. (Via e-mail)
Greg Taddonio, Esq. (Via e-mail)
Michael Lubic, Esq. (Via e-mail)

WJO/clh/1093045v1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                              BKY No.:  09-50779

Dennis E. Hecker,                                                         Chapter 7

                    Debtor.

_____

## MEMORANDUM IN SUPPORT OF MOTION
## TO APPROVE SETTLEMENT
## AND FOR EXPEDITED RELIEF

_____

### <u>INTRODUCTION</u>

Randall L. Seaver, Chapter 7 Trustee for the Estate of Dennis E. Hecker (the "Trustee")

seeks expedited approval of a Settlement Agreement that, if approved, would resolve all claims

in two presently pending Adversary Proceedings: (1) *Randall L. Seaver v. Dennis E. Hecker, et*

*al.*, Adv. No. 09-05045 (the "PSA Dispute"), and (2) *Mackall, Crounse & Moore, PLC v. Dennis*

*E. Hecker, et al.*, Adv. No. 10-05015 (the "Interpleader Action").

As this Court knows, the Debtor and Midwest Motors are parties to a Personal Services

Agreement (the "PSA") that is the subject of the PSA Dispute.  And while Midwest Motors has

steadfastly maintained that it has no liability to the Debtor, the Trustee or anyone else on account

of the PSA, pursuant to the terms of the Settlement Agreement, Midwest Motors has agreed to

contribute more than $400,000 toward the settlement of the Adversary Proceeding.

Pursuant to the Settlement Agreement, several creditors who claim an interest in the PSA

proceeds stand to receive substantial payments.  The Settlement Agreement further allocates

$65,000 of the settlement proceeds related to the PSA Dispute to the Trustee by way of

surcharge under 11 U.S.C. § 506(c).  More than $350,000 currently held in escrow will be

distributed to parties in interest in resolution of the Interpleader Action. The Trustee therefore believes that the contemplated settlement is in the best interest of creditors and the bankruptcy estate.

Expedited relief, moreover, is warranted. Several deadlines loom in PSA Dispute, and resolution of the PSA Dispute is integral to the compromise reached in relation to the Interpleader Action. If the proposed settlement is not approved soon, the Trustee and other parties to these proceedings will need to engage in extensive discovery and other actions necessary to the prosecution of their claims. In the process, the estate will be forced to incur significant expense. Granting relief and approving the accompanying Settlement Agreement will thus preserve and enhance the assets of the bankruptcy estate.

## STATEMENT OF FACTS

The Trustee incorporates by reference the factual averments contained in the accompanying verified Motion. For the Court's convenience, the salient facts are briefly summarized below.

## I. THE PSA

On or about April 16, 2009, Twin Cities Automotive, LLC ("TCA") and Inver Grove Motors,LLC, d/b/a Denny Hecker's Inver Grove Toyota (the "Seller") entered into a Purchase Agreement, pursuant to which TCA was to acquire all or substantially all of the assets of the Seller's Toyota automobile dealership in Inver Grove Heights. As part of the transaction, the Debtor and TCA entered into the PSA. The PSA provided for 48 equal monthly payments to Hecker of $20,833.33, commencing on the date of closing.

Toyota Motor Sales USA ("TMS") had a right of first refusal in relation to the Purchase Agreement. TMS exercised that right and promptly assigned its interest under the Purchase

Agreement to Stephen J. McDaniel, who in turn assigned his rights to Midwest Motors. By virtue of this transaction, Midwest Motors assumed, among other things, all of the Seller's rights and obligations under the PSA.

## II.     THE PSA DISPUTE

Prior to the closing of the Purchase Agreement, the Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Following extensive negotiations, interested parties agreed that the sale could go forward, and entered into a settlement (the "Stipulation"), which this Court approved in an Order dated June 18, 2009. Among other things, the Settlement Agreement provided that payments due under the PSA would be made to the Trustee, who would hold the funds in trust pending further order of the Court.[1] The Stipulation was without prejudice to the rights or interests of any party in and to payments due or to become due under the PSA.

The Trustee commenced the PSA Dispute on September 29, 2009, seeking, *inter alia*, a declaration as to the respective rights and interests of various parties in and to the proceeds from the PSA. The Trustee further sought to surcharge the PSA proceeds pursuant to 11 U.S.C. § 506(c). Several other parties identified in the accompanying Motion have asserted claims to the PSA proceeds. All parties whose consent is required have further agreed to settle the PSA Dispute upon the terms set forth in the accompanying Settlement Agreement.

The lone voice of dissent is the Debtor's. Under the express terms of the PSA, however, the Debtor's consent to the settlement is not required. Rather, he is deemed to have consented to the settlement. Indeed, the PSA explicitly imbues Midwest Motors with broad power to resolve claims without the Debtor's consent:

---

[1]     The Trustee thereafter received and is currently holding in trust four monthly payments totaling $83,333.32.

For the avoidance of doubt, the term commercially reasonable efforts in this context shall include that [Midwest] will not settle any Claims for a period of at least six (6) months from the date a Claim is first asserted, in litigation or otherwise, and notice thereof has been provided to Hecker. [Midwest] . . . shall present to Hecker any settlements it intends to enter into in advance for his approval, <u>which settlements shall be deemed to be approved by Hecker</u> unless [Midwest] has breached its obligations to use commercially reasonable efforts to defend.[2]

Hecker is a party to the PSA Dispute. More than six months have elapsed from the commencement of the PSA Dispute, and Midwest Motors has at all times acted in a commercially reasonable manner in defending against the claims asserted in the PSA Dispute and in its efforts to resolve those disputes.[3] Under the circumstances, this Court can and should conclude that Hecker has consented to the Settlement Agreement as a matter of law.

## III.   THE INTERPLEADER ACTION

In connection with the Interpleader Action, Mackall, Crounse & Moore, PLC ("MCM" has deposited $350,724.26 with the Trustee. Several parties claim an interest in the funds. The Settlement Agreement provides for an agreed upon allocation of the funds held in escrow among several major creditors of the Debtor. The Trustee believes that the settlement as it relates to the Interpleader Action is in the best interests of creditors.

<u>**ARGUMENT**</u>

Federal Rule of Bankruptcy Procedure 9019(a) provides that "the Court may approve a compromise or settlement." There are no perfect settlements, merely a range of reasonable

---

[2]      *PSA*, ¶ 12b (emphasis added).

[3]      Midwest Motors has a litany of additional defenses to payment as it relates to Hecker's claimed interest in the stream of payments under the PSA. Midwest Motors has provided Hecker with notice of termination of the PSA, due to the damage to Hecker's reputation stemming from recent, well-publicized events. The PSA further authorizes Midwest Motors to suspend payments in the event the Trustee, or any other party, seeks to characterize payments under the PSA as a diversion of the purchase price under the Purchase Agreement, as has occurred here, and to pay the funds to the Trustee or other person determined by the Court to be entitled to the funds. While the Trustee maintains that the payments under the PSA appear to have been a diversion of the purchase price, the point is that the Debtor – under any viable interpretation of the PSA – has no entitlement to the funds.

settlements. *PW Enterprises, Inc. v. Kaler (In re Racing Services, Inc.)*, 332 B.R. 581, 586 (8th Cir. Bap 2005). If the proposed settlement falls within the range of reasonable settlements, it may be approved by the Court. *Id.* The Court may approve the settlement, even over objections, if it is found to be in the best interests of the estate as a whole. *La'Teacha Tigue v. Sosne (In re La'Teacha Tigue)*, 363 B.R. 67, 72 (8th Cir. BAP 2007) (*citing Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.*), 730 F.2d 1128, 1135 (8th Cir. 1984).

In determining whether a settlement is in the best interest of the estate, "the Court must consider: 1) the probability of success in the litigation; 2) the difficulties, if any, to be encountered in the matter of collection; 3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; 4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* Application of these factors mandates approval of the Settlement Agreement.

## I.     PROBABILITY OF SUCCESS

The lynchpin of the Trustee's claim, and the claims of other creditors in the PSA Dispute, is that the payments under the PSA are a diversion of the purchase price under the Purchase Agreement. Midwest Motors denies it, and its defenses are in large part grounded in the language of the PSA itself. Getting to the truth of the matter – if a truth outside the four corners of the PSA and related agreements is to be found – would require culling through thousands of pages of documents generated in relation to the closing of the Purchase Agreement and the examination of multiple parties, and perhaps their lawyers, under oath. All of this would occur at great expense to the estate and to those creditors who claim an interest in PSA proceeds. The proposed settlement benefits the estate and several major creditors of the estate, but that outcome is in no way assured if this matter proceeds to trial.

## II.      DIFFICULTIES OF COLLECTION

Although Midwest Motors is no doubt solvent and presumably creditworthy, the proposed Settlement Agreement *assures* that the estate and several large creditors of the estate will recover in the aggregate an amount in excess of $850,000.  While it is clear that the Escrow Property belongs to one or more of the creditors to whom such funds are being distributed, it is by no means clear that the estate or its creditors would recover the additional $500,000 Midwest Motors has promised to pay under the Settlement Agreement.  The Settlement Agreement thus avoids what would appear to be the major obstacle to collection; namely, the prospect that Midwest Motors would prevail on its defenses in the PSA Dispute.

## III.      COMPLEXITY

The litigation to be resolved under the Settlement Agreement is no doubt complex.  As noted above, to prevail, the Trustee and creditor claimants will need to establish that the PSA was a ruse intended to divert a portion of the purchase price under the Purchase Agreement to the Debtor.  While the circumstances attendant to the original agreement for the sale of Inver Grove Toyota – including the Debtor's abysmal financial condition and the fact that the Debtor never reported to work and perhaps never intended to do so – lend credence to this notion, intensive document and deposition discovery would need to be undertaken in order to see if the theory pans out.  Proof that the payments were in fact a diversion of the purchase price might also entail the retention of business valuation experts to opine as to the value of Inver Grove Toyota at the time of the original sale transaction.  The PSA Dispute is a complex one, and that circumstance weighs in favor of approval of the Settlement Agreement.

## IV.  INTERESTS OF CREDITORS

The Trustee believes that the interests of creditors are best served by the settlement. Through the settlement, large creditors who have an interest in the PSA and Escrow Property will secure substantial payments pursuant to an allocation to which they agree.  The estate will receive a recovery of $65,000 as a surcharge for the Trustee's efforts in preserving the PSA proceeds for the benefit of creditors.  Given the complexity and risk involved here, it would not be prudent for the parties to "take a gamble on a piece of litigation which would likely drag on it the future and which could drain the estate of . . . assets it might otherwise have for distribution." *In re Hanson Industries, Inc.*, 88 B.R. 942, 950 (Bankr. D. Minn. 1988).

Continued prosecution of the PSA Dispute would impose considerable risk and expense upon the estate and its creditors.  The outcome of the PSA Dispute is far from certain.  The proposed Settlement Agreement would result in no additional funds being spent in the PSA Dispute and the Interpleader Action and a guaranteed and substantial return for the estate.  Under the circumstances, this Court can and should conclude that the settlement is, indeed, in the best interest of creditors.

## CONCLUSION

The Trustee respectfully requests that the Court approve the Settlement Agreement.  The Settlement Agreement portends an immediate and substantial recovery for the estate and its creditors on a claim whose outcome is far from certain and whose resolution will be expensive and complex.  The Settlement Agreement should be approved.

Dated:  May 25, 2010

LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.

By: _____/e/ *James M. Jorissen*_____
    Matthew R. Burton
    James M. Jorissen
100 South Fifth Street
Suite 2500
Minneapolis, Minnesota  55402
(612) 332-1030

ATTORNEYS FOR RANDALL L. SEAVER TRUSTEE

422207

8

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                    BKY No. 09-50779

Dennis E. Hecker,

        Debtor.

_____

## UNSWORN CERTIFICATE OF SERVICE
_____

I hereby certify that on May 25, 2010, I caused the following documents:

    1.     NOTICE OF HEARING AND EXPEDITED MOTION FOR APPROVAL OF
           SETTLEMENT AGREEMENT;

    2.     MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
           AND FOR EXPEDITED RELIEF; AND

    3.     PROPOSED ORDER APPROVING SETTLEMENT AGREEMENT.

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be
delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice
pursuant to Local Rule 9006-1(a).

I further certify that I caused the same to be mailed by first-class mail, to the following:

### SEE ATTACHED SERVICE LIST


                             /e/  Valerie Rittenbach

Dated:  May 25, 2010       _____

                             Valerie Rittenbach
                             100 South Fifth Street, Suite 2500
                             Minneapolis, MN  55402
                             (612) 332-1030

422471

UNITED STATES RENT A CAR
4744 PARADISE ROAD
LAS VEGAS,, NV  89121

ACE INSURANCE COMPANY
P.O. BOX 294836
CLEVELAND OH 44101

ALDRIDGE, DAN
1600 KENWOOD PKWY.
MINNEAPOLIS MN 55405

ALLEN EIDE
3221 32ND AVENUE SOUTH
SUITE 900
GRAND FORKS ND 58201

AMERICAN BANK
1060 DAKOTA DRIVE
MENDOTA HEIGHTS MN 55120

AMERICAN EXPRESS
P. O. BOX 0001
LOS ANGELES CA 90096

AMERICAN NAT'L BANK OF MN
7638 WOIDA RD
BAXTER MN 56425

ANCHOR BANK
1570 CONCORDIA AVE
SAINT PAUL MN 55104

ANCHOR BANK
P.O. BOX 7933
MADISON WI 53707

AV CARD/OASIS
164 LAKE FRONT DR
COCKEYSVILLE MD 21030

AXIS CAPITAL, INC.
308 N LOCUST ST
PO BOX 2555
GRAND ISLAND NE 68802

AXLE CAPITAL, LLC / SAGECREST
3 PICKWICK PLAZA
GREENWICH CT 06830

AMERICAN BANK
1578 UNIVERSITY AVENUE W
SAINT PAUL, MN 55104

AMERICAN EXPRESS BANK FSB
C/O BECKET AND LEE LLP
PO BOX 3001
MALVERN PA 19355-0701

BARBARA LYNN CUTTER
2350 S BEVERLY GLEN BLVD #5
W LOS ANGELES CA 90064

BAYPORT MARINA ASSOCIATION
200 5TH STREET
BAYPORT MN 55003

BELISLE, WAYNE
1843 EAGLE RIDGE DR
SAINT PAUL MN 55118

BELLAGIO
3600 LAS VEGAS BLVD
LAS VEGAS NV 89109

BREICH, WALTER
13670 -- 122ND STREET
NORWOOD YOUNG AMERICA MN
55368

BREMER BANK
633 SOUTH CONCORD STREET,
SUITE 350
SOUTH ST. PAUL MN 55075

BRIGGS & MORGAN PA
2200 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS MN 55402

C AND C BOAT WORKS
36448 CTY RD 66
CROSSLAKE MN 56442

CA BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279-7072

CA DEPT OF MOTOR VEHICLES
PO BOX 942869
SACRAMENTO CA 94269-0001

CARLTON FINANCIAL
CORPORATION
1907 E. WAYZATA BLVD. SUITE 180
WAYZATA MN 55391

CENTER POINT ENERGY
P.O. BOX 1144
MINNEAPOLIS MN 55440

CESSNA AIRCRAFT COMPANY
P.O. BOX 12270
WICHITA KS 67277

CHRYSLER FINANCIAL
CIMS 740-01-19
6400 S FIDDLERS GREEN CIR.,
STE. 700
ENGLEWOOD CO 80111-4979

CITY OF ASPEN
130 S. GALENA ST.
ASPEN CO 81611

CITY OF BAYPORT
294 N. 3RD STREET
BAYPORT MN 55003

CITY OF MEDINA
2052 CO RD 24
HAMEL MN 55340

COMMUNITY NATIONAL BANK
845 EAST COUNTY ROAD E
VADNAIS HEIGHTS MN 55127

D&H DOCKS
23624 SMILEY ROAD
NISSWA, MN 56468

COOPERATIVE POWER
P.O. BOX 69
TWO HARBORS MN 55616

CORNERSTONE BANK
2280 45TH STREET SOUTH
FARGO, ND  58104

CROSSLAKE PROPERTY
SOLUTIONS
P.O. BOX 810
CROSSLAKE MN 56442

CROW WING COUNTY
TREASURER
JUDICIAL CENTER
213 LAUREL ST
BRAINERD MN 56401

DEERWOOD BANK
611 WASHINGTON STREET NE
BRAINERD MN 56401-3377

DON GILBERT
1700 PHEASANT RUN
HUDSON WI 54016

DONALD M HALSTEAD III
15626 SUNSET WAY
BRAINERD MN 56401

ELIZABETH A JOHNSON
PO BOX 624
PINE RIVER MN 56474

ENCORE BANK
3003 TAMIAMI TRAIL NORTH, #100
NAPLES FL 34103

EXXONMOBILE OIL
CORPORATION
ATTN JENNIFER FRASER
120 MCDONALD STREET SUITE B
SAINT JOHN NB CANADA E2J 1M5

FAMILY HOLDINGS OF MN LLC
11614 ECHO BAY DRIVE
CROSSLAKE MN 56442

FIFTH THIRD BANK
C/O RICHARD J. SWIFT, JR.
GARLICK STETLER & SKRIVIAN
9115 CORSEA DE FONTANA WAY,
#100
NAPLES FL 34109

GE CAPITAL
1415 WEST 22ND STREET, SUITE
600
OAKBROOK IL 60523

GE CAPITAL, FLEET SERVICES
3 CAPITAL DRIVE
EDEN PRAIRIE MN 55344

GELCO CORPORATION
THREE CAPITAL DRIVE
ATTN: GENERAL COUNSEL
EDEN PRAIRIE MN 55344

GEMB LENDING INC
2995 RED HILL AVE STE 250
COSTA MESA CA 92626

GEMB LENDING, INC.
P.O. BOX 57091
IRVINE CA 92619

GMAC MORTGAGE
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034

GMAC MORTGAGE
P.O. BOX 4622
WATERLOO IA 50704

GMAC, LLC
15303 94TH AVENUE
ORLAND PARK IL 60462

GWYN M DOENZ
10600 COUNTRY DRIVE
PINE CITY MN 55063

HECKER, SANDRA
13755 - 84TH PL N
MAPLE GROVE MN 55369

HENNEPIN COUNTY TREASURER
300 S SIXTH ST
A600 GOVERNMENT CNT
MINNEAPOLIS MN 55487

HOLY CROSS ENERGY
3799 HWY 82
GLENWOOD SPRINGS CO 81602

HOME FEDERAL SAVINGS BANK
1016 CIVIC CENTER DR NW
STE 300
ROCHESTER MN 55903

HSBC BANK NEVADA NA
BASS & ASSOCIATES, PC
3936 E FT LOWELL RD, STE 200
TUCSON AZ 85712

HYUNDAI MOTOR AMERICA
10550 TALBERT AVE
MOUNTAIN VALLEY CA 92708

INTER BANK
P.O. BOX 986
NEWARK NJ 07184

INTERBANK EDINA
3400 WEST 66TH STREET, SUITE
100
EDINA MN 55435

INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES BRANCH
389 US COURTHOUSE 316 N
ROBERT
ST. PAUL MN 55101

IRS
DEPARTMENT OF TREASURY
OGDEN UT 84201

JACOB HOLDINGS OF MEDINA,
LLC
500 FORD RD
MINNEAPOLIS MN 55426

JACOB PROPERTIES OF ASPEN,
LLC
500 FORD RD
MINNEAPOLIS MN 55426

JASON S. COLBAUGH
PO BOX 1220
BRAINERD MN 56401

JAVAN CARL
13942 GRAND OAKS DR
BAXTER MN 56425

JAVER ESQUIVEL
2807 W AVE 30
LOS ANGELES CA 90065

JC BROMAC
11860 S. LA CIENEGA BLVD.
LOS ANGELES CA 90250

JOHN J. SORCI TRUST
2300 EAST VALLEY COURT
SAN JOSE CA 95148

JP MORGAN CHASE BANK, N.A.
726 MADISON AVENUE
NEW YORK NY 10021

KAPLAN STRANGIS & KAPLAN PA
5500 WELLS FARGO CENTER
90 SOUTH 7TH STREET
MINNEAPOLIS MN 55402

KELLY K. HECKER
13905 - 53RD AVE N. APT. 1
PLYMOUTH MN 55446

KLEINBANK
14141 GLENDALE ROAD
SAVAGE MN 55378

KSTP-FM LLC
3415 UNIVERSITY AVE
SAINT PAUL MN 55114

LAKE BANK, N.A., THE
613 FIRST AVENUE
TWO HARBORS MN 55616

LLOYD SECURITY
1097 10TH SE
MINNEAPOLIS MN 55414

LUBIC, MICHAEL, ESQ.
601 S FIGUEROA ST
STE 2500
LOS ANGELES CA 90017-5704

M&I BANK
770 N. WATER STREET
MILWAUKEE WI 53202

MAC OF PINE CITY, LLC
3221 32ND AVENUE SOUTH
SUITE 900
GRAND FORKS ND 58201

MARC D. KOHL
39101 DARLING LANE
HINCKLEY MN 55037

MARC E TRESSLER
3400 BARBARA LN
BURNSVILLE MN 55337

MARSH CONSUMER
333 SOUTH SEVENTH, STE 1600
MINNEAPOLIS MN 55402-2427

MARSHALL BANK FIRST
225 SOUTH SIXTH STREET, SUITE
2900
MINNEAPOLIS MN 55402

MCENROE, CATHERINE
LEONARD STREET & DEINARD
150 S FIFTH ST STE 2300
MINNEAPOLIS MN 55402

MICHAEL REYES
PO BOX 205
BACKUS MN 56435

MIKDEN PROPERTIES
7002 6TH STREET NORTH
OAKDALE MN 55128

MINNESOTA DEPT. OF REVENUE
MAIL STATION 7701
SAINT PAUL MN 55146-7701

MINNESOTA DEPT. OF REVENUE
PO BOX 64649
SAINT PAUL MN 55164-0649

MN DEPT OF PUBLIC SAFETY
DRIVER & VEHICLE SERVICES
445 MINNESOTA ST
SAINT PAUL MN 55101-5160

NATHAN THIEMAN
1030 8TH AVE SW
PINE CITY MN 55063

NEIMAN MARCUS
P.O. BOX 5235
CAROL STREAM IL 60197

NEVADA STATE BANK
6505 NORTH BUFFALO DRIVE
LAS VEGAS NV 89131

NIEDERNHOEFER, MANFRED
1563 RIVERCREST RD
LAKELAND MN 55043

NITROGREEN
P.O. BOX 41
MAPLE PLAINE MN 55359

NORTHMARQ CAPITAL
3500 AMERICAN BLVD WEST,
SUITE 500
BLOOMINGTON MN 55431

NORTHRIDGE FARM
ASSOCIATION
P.O. BOX 767
WAYZATA MN 55391

NORTHWOODS BANK
PO BOX 112
PARK RAPIDS MN 56470

OLD REPUBLIC SURETY
1503 - 42ND ST
STE 100
DES MOINES IA 50305

PRALLE, GARY
3625 PINE HOLLOW PL
STILLWATER MN 55082

PREMIER AQUARIUM
6340 IRVING AVE S.
RICHFIELD MN 55423

PREMIER BANKS
1875 W. HIGHWAY 36
ROSEVILLE MN 55113

PRESS A DENT INC
1154 S HIGH ST
DENVER CO 80210

PRINDLE, DECKER & AMARO, LLP
310 GOLDER SHORE - 4TH FLOOR
LONG BEACH CA 90802

PROFESSIONAL SERVICE
BUREAU
11110 INDUSTRIAL CIRCLE NW
STE B
ELK RIVER MN 55330-0331

MICHAEL W. MALTER
BINDER & MALTER LLP
2775 PARK AVENUE
SANTA CLARA, CA 95050

R. OLSON / WATERFORD
PROPERTIES
73 N. BROADWAY
FARGO ND 58102

RANDY'S SANITATION
P.O. BOX 169
DELANO MN 55328

RIVERLAND BANCORPORATION
700 SEVILLE DRIVE
JORDAN MN 55352

RIVERWOOD BANK
LOAN PRODUCTION OFFICE
PO BOX 899
CROSSLAKE MN 56442

ROE, JESSICA LIPSKY, ESQ.
BERNICK LIFSON ET AL
500 WAYZATA BLVD STE 1200
MINNEAPOLIS MN 55416

ROYAL JEWELERS
73 BROADWAY
FARGO, ND 58102

RUTH ANN BIEDERMAN
414 7TH AVE NE
PINE CITY MN 55063

SCHUYLER SCARBOROUGH
19181 SPENCER ROAD UNIT #15
BRAINERD MN 56401

SCOTT A. KEYPORT
1802 AIRWAVES RD NE
PINE CITY MN 55063

SILVER CLIFF ASSOCIATION
1201 CEDAR LAKE RD S.
MINNEAPOLIS MN 55416

SOURCE GAS
P.O. BOX 660474
DALLAS TX 75266

ST. CROIX YACHT CLUB
P.O. BOX 2263
STILLWATER MN 55082

STATE OF MINNESOTA DEPT OF
REVENUE
600 NORTH ROBERT STREET
ST. PAUL MN 55101

STORCHECK CLEANERS
857 7TH STREET
ST. PAUL MN 55106

SUMMERS PROPERTY
MANAGEMENT
111K AABC
ASPEN CO 81611

TCF NATIONAL BANK
801 MARQUETTE AVENUE
MINNEAPOLIS MN 55402

TCHIDA, BRYANT D., ESQ.
LEONARD STREET & DEINARD
150 S 5TH ST STE 2300
MINNEAPOLIS MN 55402

THE MIRAGE CASINO-HOTEL
C/O MARK W. RUSSELL ESQ
3400 LAS VEGAS BLVD S
LAS VEGAS NV 89109

TOYOTA FINANCIAL SAVINGS
BANK
2485 VILLAGE VIEW DRIVE
SUITE 200
HENDERSON NV 89074

TOYOTA FINANCIAL SERVICES
301 CARLSON PKWY, STE. 210
MINNETONKA MN 55305

TOYOTA MOTOR CREDIT CORP
301 CARLSON PKWY STE 210
MINNETONKA MN 55305

U.S. BANK
BC-MN-H22A
800 NICOLLET MALL, 22ND
FLOOR
MINNEAPOLIS MN 55402

US BANK VISA CARD
P.O. BOX 790408
ST. LOUIS MO 63179

VENTURE BANK
5601 GREEN VALLEY DRIVE
SUITE 120
BLOOMINGTON MN 55437

VFS FINANCING, INC.
10 RIVERVIEW DR
ATTN BETH BONELL
DANBURY CT 06810

VICTORIA INSURANCE
1100 LOCUST STREET
DES MOINES IA 50391

VISION BANK
3000 25TH ST. SOUTH
P.O. BOX 10008
FARGO ND 58106

WAGENER, MAURICE J.
13700 WAYZATA BLVD
HOPKINS MN 55305

WASHINGTON COUNTY
TREASURER
GOVERNMENT CENTER
14949 - 62ND ST N
STILLWATER MN 55082

WASHINGTON MUTUAL BANK,
FA
400 E MAIN ST
STOCKTON CA 95290

WASTE PARTNERS
P.O. BOX 677
PINE RIVER MN 56474-0677

WATERFORD ASSOCIATION
P.O. BOX 1353
MINNEAPOLIS MN 55480-1353

WAYNE BELISLE
1843 EAGLE RIDGE
MENDOTA HEIGHTS MN 55118

WELLS FARGO
C/O DAVID GALLE
45 SOUTH SEVENTH ST, STE 3300
MINNEAPOLIS MN 55402

WELLS FARGO BANK N.A.
LOAN ADJUSTMENT GROUP
90 SOUTH 7TH STREET
MINNEAPOLIS MN 55402

WELLS FEDERAL BANK
53 FIRST ST. SW
WELLS MN 56097

WI DEPT OF TRANSPORTATION
PO BOX 7949
MADISON WI 53707

WILLIAM BRODY
BUCHALTERNEMER
1000 WILSHIRE BLVD, STE 1500
LOS ANGELES CA 90017-2457

WORLD OMNI FINANCIAL CORP.
190 JIM MORAN BOULEVARD
DEERFIELD BEACH FL 33442

ZAPPIA, THOMAS M., ESQ.
ZAPPIA & LEVAHN
941 HILLWIND RD NE STE 301
MINNEAPOLIS MN 55432

CRAIG E REIMER
MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, IL  60606

DENNIS E. HECKER
1615 NORTHRIDGE DRIVE
MEDINA, MN 55391

HOWARD J ROIN
MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, IL  60606

MARIA ROMANO
4744 PARADISE ROAD
LAS VEGAS, NV  89121

MICHAEL B. LUBIC
SONNENSCHEIN NATH &
ROSENTHAL LLP
601 S FIGUEROA ST STE 2500
LOS ANGELES, CA 90017-5704

SAJIDA MAHDI ALI
MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, IL  60606

STUART ROZEN
MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, IL  60606

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:                                                    BKY No.:  09-50779

Dennis E. Hecker,                                                    Chapter 7

            Debtor.

_____

**ORDER APPROVING SETTLEMENT AGREEMENT**

_____

        This matter came before the court on the motion of Randall L. Seaver, trustee, seeking an

order authorizing approval of a Settlement Agreement.

        Based upon all the files, records and proceedings herein,

        IT IS ORDERED:

        1.        The trustee's request for expedited relief is granted.

        2.        The trustee's motion for approval of the settlement agreement is granted.


Dated: _____

                                                    _____
                                                    United States Bankruptcy Judge


422368