UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
_____

In re:                                                                                          BKY No.: 09-50779

Dennis E. Hecker,                                                                         Chapter 7

         Debtor.
_____

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO APPROVE SETTLEMENT
_____

**ARGUMENT**

      In his Memorandum of Law in Opposition to Motion to Confirm Settlement Agreement (the "Opposition"), the Debtor, Dennis E. Hecker ("Hecker" or the "Debtor") recurrently characterizes as "baseless" the Trustee's contention that the compensation payable to Hecker under the so-called "Personal Services Agreement" ("PSA") is really a diversion of a portion of the purchase price paid by Midwest Motors, LLC ("Midwest Motors") when it bought Denny Hecker's Inver Grove Toyota ("IGT"). According to Hecker, there is no evidence other than that the PSA was a legitimate contract pursuant to which Hecker intended to provide personal services to Midwest Motors.

      Documents produced in connection with the Trustee's Rule 2004 examination of Hecker, however, quite clearly call into question the verity of Hecker's PSA-related claims. For example, Hecker maintains that the dealership was sold at fair market value. *See* Opposition at 9. To the contrary, Hecker's long-time attorney, Bruce Parker, acknowledged in connection with the purchase transaction that the "buyer [Midwest Motors] is purchasing at a distress price . . . ." *See* Affidavit of James M. Jorissen ("Jorissen Aff.") Ex. A.

It further appears that, as a *quid pro quo* for the diversion to Hecker of what would otherwise have been proceeds from the sale of the dealership – as well as a "100 k bonus and truck" – Hecker agreed to and "did not challenge" Midwest Motors' "valuations or adjustments that were asked of" him. *See* Jorissen Aff. Ex. B. Further, at least according to Hecker, Steven McDaniels, the owner of Midwest Motors, demanded a note in connection with the $100,000 "bonus," but promised that he would make the note "go away" in December 2009. *See* Jorissen Aff. Ex. C. These documents – all authored by the Debtor and his attorneys – quite clearly support an inference that planned payments to Hecker under the PSA were indeed a diversion of the purchase price.

More importantly, it is clear for any number of reasons that Hecker has no viable economic interest under the PSA. Hecker consented to a settlement under the circumstances here present when he signed the PSA. *See* PSA ¶ 12b. Midwest Motors has suspended payment and provided notice of termination of the PSA based on Hecker's well-publicized legal problems. *See id.* ¶ 2(c). Hecker has never performed and will never perform a minute of work under the PSA, and any payments he might receive under the PSA could not be characterized as "wages". Accordingly, since his discharge has been denied in this case, any payments received by Hecker would be subject to the security interests of, and available for levy and execution by, his numerous creditors. Hecker simply has no standing to maintain his objections to the proposed settlement.

The Settlement Agreement stands as an appropriate resolution to a complex, multi-party dispute. After protracted and often heated negotiations, all parties whose consent is required have consented to the settlement. The settlement is in the best interests of the estate. Approval of the Settlement Agreement will protect all interested parties from the substantial cost and

expense, and inherent uncertainty attendant to a resolution on the merits. The Trustee therefore respectfully requests that the Court approve the Settlement Agreement in all respects.

Dated: June 15, 2010

LEONARD, O'BRIEN,
SPENCER, GALE & SAYRE, LTD.

By: /e/ *James M. Jorissen*
    Matthew R. Burton
    James M. Jorissen
100 South Fifth Street
Suite 2500
Minneapolis, Minnesota 55402
(612) 332-1030

ATTORNEYS FOR RANDALL L. SEAVER
TRUSTEE

423679

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:                                                   BKY No.: 09-50779

Dennis E. Hecker,                                        Chapter 7

         Debtor.

## AFFIDAVIT OF
## JAMES M. JORISSEN

STATE OF MINNESOTA    )
                               )ss.
COUNTY OF HENNEPIN    )

James M. Jorissen, being first duly sworn upon oath, deposes and states as follows:

1. I am an adult resident of Minnesota. I am an attorney and shareholder with the law firm of Leonard, O'Brien, Spencer, Gale & Sayre, Ltd. I am one of the attorneys representing Randall L. Seaver, the Chapter 7 Trustee in the above-captioned bankruptcy case. I make this affidavit of my own personal knowledge, and in support of the Trustee's Motion to Approve Settlement Agreement.

2. Attached hereto as <u>Exhibit A</u> is a true and correct copy an April 16, 2009 email from Bruce Parker, counsel for Dennis Hecker, to Hecker and other counsel for Hecker., which was produced to the Trustee in connection with the Trustee's Rule 2004 examination of the Debtor.

3. Attached hereto as <u>Exhibit B</u> is a true and correct copy of an October 2, 2009 email from the Debtor to Steven McDaniels of Midwest Motors, LLC, which was produced to the Trustee in connection with the Trustee's Rule 2004 examination of the Debtor.

4. Attached hereto as <u>Exhibit C</u> is a true and correct copy of a July 1, 2009 email from the Debtor to his counsel, Bruce Parker, which was produced to the Trustee in connection with the Trustee's Rule 2004 examination of the Debtor.

FURTHER YOUR AFFIANT SAYETH NOT.

Dated: June 15, 2010

/e/ James M. Jorissen

James M. Jorissen

| | |
|---|---|
| **From:** | Parker, Bruce |
| **To:** | "heckerauto@aol.com"; "Erik P. Dove"; "Cutler, Clinton"; |
| **CC:** | |
| **Subject:** | FW: Revised documentation |
| **Date:** | Thursday, April 16, 2009 8:40:00 AM |
| **Attachments:** | Briggs Email Logo.gif<br>PCDOCS-#2328527-v5-TCA_Hecker_-_Personal_Services_Agreement.DOC |

Denny, Erik and Clint: Attached is the personal services agreement for the Inver Grove Toyota deal. I could not send the rest of the documents to you off line because the e-mail was too large. Clint, please forward Dennis' e-mail with the other documents attached. There are MAJOR issues with the personal services agreement. My comments are below:

I. Personal Services Agreement

Section 13: Essentially the Pohlads overruled Peter--I am sure at the instigation of the bankruptcy lawyer at Briggs who wants to protect his client. In addition to what Denny and Peter agreed, this provision shifts all of the fraudulent conveyance risk to Denny and lets the buyer pay all of its expenses incurred in defending the fraudulent conveyance or other challenges from the $1 million to Denny. Yesterday, Denny and Peter agreed that if the $1 million in personal service payments is finally determined by a court of competent jurisdiction to be part of the purchase price for the assets then Denny loses the payments and they would be made to where the court said they had to go or if it was determined by a court of competent jurisdiction that buyer had to return the purchased assets (i.e. the deal was unwound) then the personal service agreement and payments thereunder would terminate. This provision includes that agreement but also says if there is a challenge to this structure then all costs incurred by buyer in contesting come out of the $1 million and if it is determined that buyer must pay more then such amount comes out of the $1 million. My biggest problem with this provision is that buyer is purchasing at a distress price and has nothing at risk if there is a challenge--even its expenses in the contest.

Section 12: The payments are suspended in any instance where the indemnity under Section 13 might come into play.

Section 8: No additional non-compete was ever discussed. As Clint has counseled this undermines the argument that the payment is for services. This section must be deleted. Clint are you okay with the reference to the non-compete in the asset purchase agreement in section 6(iii)? Also, Denny should not have to agree not to



EXHIBIT A

purchase another car dealership within a 25 mile radius of Inver Grove Toyota for the next 4 years. The non-compete would be breached by Denny's consulting arrangements with Walser.

Section 9: The non-solicit should be limited to employees. If Denny gets another dealership, customers of the Company's dealerships might buy from Denny's dealership and such would violate this provision.

Section 14: The general indemnity should be either deleted or limited to breach of the representations, warrants and covenants in the agreement and nothing else.

I have a couple of suggestions. Denny, you will neet to tell Toyota Financial about the personal services agreement. I think it will give the buyer comfort that the major secured creditor is okay with the personal sevices agreement if Toyota Financial will say it is okay. Have you told John Spencer that you will have a personal services agreement with the buyer as part of the deal? Let's talk about getting Toyota's nod that it is okay as a way of solving this issue. Chrysler sitll has a junior lien and I would not propose to tell Chrysler at this point. An alternative is for you to go into bankruptcy and then negotiate the sale. This is risky because the trustee will resist you getting a personal services contract but let's consider with Clint.

II. Asset Purchase Agreement

Section 7.10: See the question at the beginning of this section. Erik, do you know the answer or would you please find out the answer from Greg Orthun.

Section 10: We agreed that closing would be as soon as reasonably practicable after Toyota/Scion approvals but in any event no later than 30 days thereafter. This section has the 30 days but keeps the timing of closing in buyer's sole discretion.

III. Assignment of Existing Used Car Lease

Section 4(a): The last sentence that was added is okay but it needs to go on to say that Assignee will pay those expenses with the funds withheld from the purchase price.

IV. New Dealership Lease

Section 1: Erik, please provide the full name of Toyota Bank that holds a second mortgage on the property.

Section 21(a): Erik, what is the current aggregate pay-off on the mortgages? The reference here should be to the Mortgagees.

Section 21(b)(x): The reference to Toyota Bank should be added as the holder of the second mortgage.

---

**From:** Knoer, Dennis [mailto:DKnoer@Briggs.com]
**Sent:** Wednesday, April 15, 2009 11:22 PM
**To:** Parker, Bruce
**Cc:** Wenger, Brian; Anderson, Richard D.; ccutler@fredlaw.com; Peter Hasselquist; heckerauto@aol.com
**Subject:** Revised documentation

Bruce,

I am attaching revised versions of the following documents, along with redlined versions that are marked to show this evening's revisions:

1. Asset Purchase Agreement,
2. Lease and Option to Purchase,
3. Assignment of Lease and Option to Purchase

I am also attaching the personal services agreement. We reviewed our discussions from earlier this evening with the majority owners. The provisions in Sections 12 and 13 of the attached personal services agreement reflect the requirements of the majority holders.

I am sending these documents to you at the same time as I am sending them to Peter and must reserve his right to comment on them.

Thanks,
Dennis

**Dennis L. Knoer**

**Shareholder**

☐

Briggs and Morgan, P.A.
Direct 612.977.8744
Fax 612.977.8650
dknoer@briggs.com
2200 IDS Center | 80 South 8th Street | Minneapolis, MN 55402

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly
prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

| | |
|---|---|
| **From:** | dheckerauto@yahoo.com |
| **To:** | Steve McDaniels; |
| **CC:** | |
| **Subject:** | Good morning! |
| **Date:** | Friday, October 02, 2009 4:57:40 AM |
| **Attachments:** | |

Hope all is well with you and your family! Steve what are you trying to do to me? I have nothing but cooperate and make the purchase as easy as possible. Yesterday I received the certified letter of your desire to take advantage of the events I have been going through. And. Make an attempt to screw me out of the money due me. Steve you gave me your word on the psa as well as the 100 k bonus and truck! As you know I have done everything possible to make your purchase go smoothly. And as you are well aware of did not challenge your valuations or adjustments that were asked of me. You assured me you will keep your word and I have had no reason to not believe you until today!
Did you forget? Denny
Sent via BlackBerry by AT&T

EXHIBIT B

| | |
|---|---|
| From: | HECKERAUTO@aol.com |
| To: | Parker, Bruce; |
| CC: | |
| Subject: | Re: |
| Date: | Wednesday, July 01, 2009 9:44:07 AM |
| Attachments: | |

*I GAVE MCDANIELS NO SECURITY JUST A NOTE HE WAS TO MAKE GO AWAY IN DEC*

**In a message dated 7/1/2009 9:40:38 A.M. Central Daylight Time, BJP@kskpa.com writes:**

> Denny: I have not seen the schedules so I am not sure what explanation will be provided. My inclination is not to go to the press but to respond to questions because my view is the press is always looking for a sensual story. Your and Clint's call since you are closer to this.
>
> Bruce
>
>
>
> Bruce J. Parker
>
> Kaplan, Strangis and Kaplan, P.A.
>
> 5500 Wells Fargo Center
>
> 90 South Seventh Street
>
> Minneapolis, MN 55402
>
> Direct Dial: (612) 904-5607
>
> Fax: (612) 375-1143



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
_____

In re: BKY No. 09-50779

Dennis E. Hecker,

      Debtor.
_____

**UNSWORN CERTIFICATE OF SERVICE**
_____

I hereby certify that on June 15, 2010, I caused the following documents:

1. Reply Memorandum in Support of Motion to Approve Settlement; and
2. Affidavit of James M. Jorissen.

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

I further certify that I caused the same to be mailed by first-class mail, to the following:

Dennis E. Hecker
1615 Northridge Drive
Medina, MN 55391

Michael B. Lubic
Sonnenschein Nath & Rosenthal LLP
601 S Figueroa St Ste 2500
Los Angeles, CA 90017-5704

Michael W. Malter
Binder & Malter LLP
2775 Park Avenue
Santa Clara, CA 95050

                                                                  /e/ Valerie Rittenbach

Dated: June 15, 2010                                    _____
                                                            Valerie Rittenbach
                                                            100 South Fifth Street, Suite 2500
                                                            Minneapolis, MN 55402
                                                            (612) 332-1030

423708