Your Honor Thank you for [illegible] [illegible]

SORRY FOR PENCIL – NO SPELL CHECK THANKS

JAN 24 2011

1/17/11

HONERABLE JUDGE KRESSIAL

BANKRUPTCY FRAUD UPON COURT (DENNIS HECKER UNREPRESENTED)

I have had A GREAT AMOUNT OF TIME TO READ ABOUT ACCUSATIONS UPON OFFICERS OF THE BK COURT.

(FIRST OF ALL I AM NOT SAYING I AM NOT GUILTY AT ALL.)

BUT SEAVER – BURTON – CFC LAWYERS – RON – HOWARD STOOD THE CRIME BEFORE YOU AND LIED TO YOU!

SEAVER + CFC BROUGHT MOTION FOR A P/O STATING THAT HE WOULD BE GIVING ME INFO TO TAILOR MY ANSWERS TO HIM – YOU AFFIRMED HIS MOTION!

WHAT REALLY HAPPENED INFO INCLUSED HE AND CFC OBTAINED SOME 30K EMAILS THEY HAD PAID AN FORMER JUNE JULY – UNTILL FEB OF 2010 EMPLOYEE FOR REDIRECTION THEM CAPTURING ALL EMAILS TO HIS SHARE [illegible]

I RECIEVED THEM [HERE] [ALSO TO C/FC - SEAVER Agent SAME TIME]

SOME INFO IN ENCLOSED MOTION

SEAVER - OTHERS NEED P/O BECAUSE they KNEW

SOMEHOW THE INFO GOT OUT, SEAVER VERY SNEAKY

WANTED ONLY TO COVER HIS OWN BUT.

THE INFO THEIR SHARED WERE ATT CLIENT INFO

THAT WOULD OF LEFT A BETTER IMPRESSION ON THE

COURT. -

The BK FRAUD - AS BOTH CFC - SEAVER STOOD

IN FRONT OF YOU UNDER OATH they had Nothing

SEAVER KEPT ATTACKING ME AS A LIER

They REPEATED LIEING to you AT LEAST ONE MORE

TIME. The TWO - SEAVER - CFC NOT EVER BEING

held ACCOUNTABLE FOR THEIR PERJURY AND LACK

OF RESPECT FOR YOU + YOUR COURT

#2

SEAVER - NOT BEING CAUGHT ON CFC + HIS SCHEME

IN JULY OF 09 HE DID IT AGAIN IN MARCH OF 2010.

ATT WILLIAM SKOLNICK CAME TO YOUR COURT AND LIED

ABOUT WHERE 75K CAME TO SETTLE ESTATE CLAIM.

KNOWING HE LIED IN DEC HE CONTINUED TO LIE IN JAN

CONFIRMING SAME TO YOU - SEAVER BURTON.

SEAVER AGAIN IN FEB HOLDS THE LIES OVER HIS HEAD

TO GET ME NOT APPEAL 600 JUDGEMENT - NOT EVEN ANSWER

729 - GIVE DEFAULT - AND EXCHANGE SEAVER WENT I SAID

FURTHER EMAILS SEAVER/BURTON MARCH 23RD ″ 19 21 SAY

BILL THE BIG REASON WE MADE DEAL WITH YOU

IS TO PROVIDE SEAVER WITH ALL HECKER RECORDS

EMAILS - EVERYTHING WHILE SKOLNICK WAS

STILL MY LAWYER - SKOLNICK DEL INFO 3/26/29.

ON THE 29TH AFTER SEAVER RECIEVES ATT CLIENT PRIVILEGED MORE I HAD FILE 3-4 MOTIONS - 3 DAYS AFTER THINGS SKOLNICK WAS WORKING ON WITH ME

SEAVER SETS A 2004 FOR SKOLNICK 5/15/10

AT THE VERY BEGINNING OF 2004 BURTON + SKOLNICK CONFIRM UNDER OATH THAT THE SUPPLY DOCS CAME IN LAST WEEK OR SO. 3/29 5/15? THEN HE ADDS INSULT HE WANTS TO PROTECT ATT CLIENT PRIVILEGE OF MINE!

FROM THE DISREGARDED INFO HE NEVER WOULD OF HAD, USING WHAT HE & CFC AQUIRE HAD APPEARED IN FRONT OF YOU MAKING FALSE CLAIMS

I HAVE INCLOSED A MOTION SKOLNICK BROUGHT TO COURT OUTLINING THE CRIME - BUT HE DIDN'T HAVE HIS DUCKS IN A ROW

SEAVER HAS BRAGGED TO OTHER BK LAWYERS THAT HE HAS RULES BY HIS MEANS - AND A FRIENDLY JUDGE FROM A VERY RELIABLE SOURCE

COURT

SEAVER

CPC

LIES - DECEIT ON THE COURT

I HAVE BEEN TOLD BY OTHERS - LAWYERS THAT THE BK COURT IS A GOOD OLD BOYS CLUB.

I WOULD ONLY APPRECIATE JUST A SHORT DISCOVERY BETWEEN SEAVER + CPC EMAILS WILL CONFIRM ALL OF THE ABOVE

And Had No Accountability - You wouldn't have known how US Trustee calls him their Golden Boy.

They continue to use and lie to you including the Motion in front of you for a PSA for me I.M. Having real facts they did not disclose to you there scheme again worked - Actually there scheme was so well rehearsed that Buetows Firm only one Rep Seaver who had no skin in game as you had already approved his surcharge of 75K, They stood and lied to the Court!

↓

over

I Am Not Denying Any of The Charges I Plead Guilty To.

My Real Purpose To Notify the Court of 2 officers of The Court Lieing to You For Their own Benefit / Self Serving

You have A Great Reputation As A well Repected SR Judge.

I Believe You Didnt Know how Much Seaver Lied in this Case As No Rules For him As If He Didnt have To Answer To No One!

You May throw This in Garbage Can - Thinking its A Bad Person with Sour Feeling I Am Not

For 50 years I Had A Huge Empire - CFC After Much Negoiating Decided (working with Seaver Trying to Take Advantage of Me) My Att For 30 Years Sam Kaplan - Ralph Strangis

I Have Tried To Share this with US Trustee And they Just Turned Their Head To Protect Seaver

Thank
Denny Hecker

**UNITES STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

**In re:**

**DENNIS E. HECKER** **Case No. 09-50779-RJK**

**Debtor.** **Chapter 7**

---

**CHRYSLER FINANCIAL SERVICES AMERICAS LLC,**

**Plaintiff,** **ADV Pro. No. 09-05019**

**vs.**

**DENNIS E. HECKER**

**Defendant.**

---

**HECKER'S RESPONSIVE MEMORANDUM OF LAW IN OPPOSITION TO A PROTECTIVE ORDER**

---

**INTRODUCTION**

Chrysler Financial Services, LLC, (hereinafter "Chrysler") and it's attorneys possess stolen email communications and documents that are subject to Mr. Hecker's attorney-client privilege. Chrysler has misled this Court and Defense counsel by pretending that the Cindy Bowser emails were first obtained in September of 2009 in response to a subpoena that it served. Attached to the Affidavit of William R. Skolnick are emails clearly demonstrating that Chrysler and its attorneys and its investigators actually obtained stolen emails from Cindy Bowser in July of 2009. Also, the emails show that Mr. Bauer did indeed review the emails Cindy Bowser provided. What specific emails he has read and passed on to Chrysler attorneys nobody can say except them. What specific documents and other tangible items Phenix Investigations and its

CEO obtained from Cindy Bowser or other former employees of Mr. Hecker has not been disclosed and is clearly relevant. What Ms. Bowser told Mr. Bauer is also relevant and discoverable. Any documents that are claimed to be privileged can be objected to by Chrysler's attorneys and put on a privilege log. Any questions propounded at the deposition that Chrysler believes invades the attorney client privilege or work product doctrine can be objected to as provided for in the Federal Rules of Civil Procedure. Accordingly, the Court should deny the motion for a protective order.

## RELEVANT MATERIAL FACTS

### A. Chrysler already had emails from Bowser months before Chrysler issued a subpoena.

Although Chrysler claims it obtained the Bowser documents via a subpoena in September, the facts are that Chrysler already obtained these emails in July. What Defendant was not aware of nor was it disclosed by Chrysler is that Chrysler had already copied the emails that Ms. Bowser had back in July when its investigator, Brian Bauer obtained them and continued to receive detailed explanations of the emails from Ms. Bowser.

During the summer or fall of 2008, Ms. Cindy Bowser, Mr. Hecker's Executive Assistant, began systematically duplicating and redirecting Mr. Hecker's email communications into a file for her own use. (See Bowser Depo. at 138–39). Ms. Bowser misappropriated numerous email communications, along with their attached documents. (Bowser Depo. at 118). She copied these communications without regard for whether they were subject to the attorney-client privilege, or otherwise confidential. (Id. at 119–20). Ms. Bowser copied these emails and documents for her own future benefit. (Id. at 107).

Ms. Bowser was never authorized by Mr. Hecker, or anyone representing him, to take his attorney-client privileged communications. (Id. at 131). Nor was she ever authorized to provide

these records to any third parties. Yet prior to the end of her employment with Mr. Hecker, Ms. Bowser transferred all of the emails and documents she had misappropriated from her work computer to her own flash drive. (Id. at 131, 120–21). She then transferred the files on the flash drive to her personal laptop. (Id. at 148). Despite no longer being an employee, and never having the authority to do so, Ms. Bowser maintained these files on her personal computer. (Bowser Depo. at 107).

Defendant became aware of a subpoena duces tucem from Chrysler being served upon Ms. Bowser. She purportedly produced her laptop with instructions how to copy all of the emails and documents she had stolen. (Id. at 106). She produced all of these documents without regard to whether they were subject to the attorney-client privilege. (Id. at 131). In arranging for the production of these documents, Chrysler's counsel, Mr. Nierengarten, contacted Ms. Bowser, but failed to inform her that she should not produce privileged documents. (Id. at 101–02).

**B. Chrysler's Investigator clearly received and read emails Bowser took from her former employer.**

1. Although Mr. Bauer states boldly in his Declaration in paragraph 4 in response to the claim that privileged communications were contained in the emails Bowser provided: …"We cannot confirm or deny that **BECAUSE AT NO TIME HAS PHENIX REVIEWED ANY EMAILS THAT MAY HAVE BEEN PROVIDED BY ANY WITNESS** it has contacted or interviewed in the course of its engagement in this matter." (Emphasis added)

2. Exhibit 1 is an email from Bowser to Bauer on July 30, 2009 at 10:56 a.m. that states: "Hi Brian! I'm having problems opening the emails that were saved on my computer. I never checked it **after you guys made a copy** and I went on last night, and again this morning, trying to figure out how to correct it. I'm not having any luck. I can see the subject line but can't open it…." Exhibit 2 is an email from Bowser to Bauer on July 30, 2009 at 7:48 p.m. that

states: "Hi Brian! I took my laptop into Apple and they were able to help me with pulling up the emails. I'll forward them as I come upon ones that I think you'd be interested in. This one is a home Christi wanted to purchase, however, I don't believe the sale did take place – I don't know for sure. CR is Christi Rowan. "

3. Exhibit 3 is an email from Bowser to Bauer on July 30, 2009 at 7:52 p.m. attaching an email from November 2008 between Christi Rowan and Dennis Hecker. Not only did she forward the email to Chrysler's investigator, but she explained it to him. This completely contradicts the assertion that Chrysler has not looked at the emails or knows the content.

4. In fact, Exhibit 4 contains emails from Bowser to Bauer explaining different emails that she obtained by accessing Mr. Hecker's email. Ms. Bowser was not copied on any of these underlying emails which contradicts her sworn testimony. Further, Chrysler's agent Bauer knew that she was not copied on these emails as the emails do not show her as being copied.

5. Exhibit 5 is a series of emails of Bauer sending Bowser an agreement and then needing to resend it. What agreement or contract it is remains a secret to Chrysler and its "team". However, Chrylser cannot claim any privilege to a document that it sent to a third party.

6. Exhibit 6 is a series of emails Bowser forwarded to Bauer. These are emails between the Defendant and Erik P. Dove, the Defendant's in-house counsel, and are obviously privileged. The email that Bowser selected out to forward to Bauer clearly contains a warning that it is PRIVILIGED.

## LEGAL ARUGMENT

Brian Bauer and Phenix Investigations, Inc. have evidence that is relevant to issues in this adversarial suit. The identity of the documents provided to Bauer (Chrysler's agent) by Ms.

Bowser or other third party is NOT covered by the work product doctrine nor is it protected by the attorney client privilege. Chrysler knows that documents it received from an independent party are not covered by the work product doctrine as it is not work product prepared in anticipation of litigation. Nor can documents that belonged to Defendant Hecker or one of his entities be claimed by Chrysler to be a privileged communication between it and its lawyers. The evidence consists of emails and documents stolen by a former employee of Mr. Hecker.

**A. Chrysler Cannot Meet Its Burden of Establishing a Valid Privilege.**

To support a claim of work product immunity a party "must establish: (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or representative of that party." W.W. Transport, Inc. v. Gem City Ford, Inc., Slip Copy, 2009 WL 2486315 (E.D. Mo. 2009)(internal quotation omitted). The party who objects to "discovery on the ground of privilege has the burden of establishing the existence of privilege." Travelers Property Cas. Co. of America v. Nat. Union Ins. Co. of Pittsburg, 250 F.R.D. 421, 424 (W.D. Mo. 2008). This is a heavy burden, and all "three conditions must be met to earn work product protection." Costabile v. Westchester, 254 F.R.D. 160, 163 (S.D. N.Y. 2008)(quotation omitted). Furthermore, "[t]he work product doctrine is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002). Accordingly, it must be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Id. (quoting Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997).

Moreover, "the work product doctrine furnishes no shield against discovery, by

interrogatories or by deposition, of the facts that the adverse party has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents." Phoenix National Corporation, Inc. v. Bowater United Kingdom Paper Limited, 98 F.R.D. 669, 671 (N.D. Geo. 1983)(quoting Wright and Miller, Federal Practice and Procedure: § 2023, p. 194). In the present case, Chrysler cannot meet its burden of establishing this privilege.

Defendant does not seek any documents prepared in anticipation of litigation, but merely seeks to learn of the "existence or nonexistence of documents," and when those documents were acquired. Further, if Phenix has not reviewed these emails, as Chrysler insists, then they should not have been compiled in such manner as to risk disclosing Chrysler's legal theories or strategies. If the investigator has not reviewed the emails, he could not even accidentally disclose which ones Chrysler believes to be important.

**B. The Depositions of Phenix and Bauer are Necessary to Protect the Defendant's Rights and the Integrity of This Litigation.**

Chrysler's legal team possesses documents that were stolen from the Defendant. Many of these documents are privileged attorney client communications. The Defendant uncovered evidence that Chrysler's investigator acquired these documents over a month before they were purportedly acquired by subpoena. This evidence also shows that, contrary to Chrysler's assertions, these documents have been reviewed. The true extent to which these privileged documents were reviewed can only be determined by deposing those that reviewed them.

Chrysler has misled this Court and now wants the Court to help hide the evidence including hiding documents and emails that belong solely to Mr. Hecker. The documents Chrysler received from third parties is clearly discoverable. In fact, Chrysler itself is obligated to disclose these documents. Chrysler's attempts to throw a blanket over discovery to cover up its actions utterly fails.

**CONCLUSION**

Based on the foregoing, Plaintiff's motion for an order to prevent the depositions scheduled should be denied.

Respectfully Submitted,

Dated: November 17, 2009

**SKOLNICK & SHIFF, P.A.**

/e/ William R. Skolnick
William R. Skolnick #137182
LuAnn M. Petricka #18505X
527 Marquette Avenue South, #2100
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
petricka@visi.com

ATTORNEYS FOR DENNIS E. HECKER

THE TRANSCRIPT OF THAT HEARING OR ONE AFTER THEM BOTH COMMIT BK FRAUD ON COURT BY LYING TO YOU

Thank You

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,
Debtor.

Case No. BKY 09-50779
Chapter 7 Case

**DEBTOR'S VERIFIED RESPONSE TO CHAPTER 7 TRUSTEE'S MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

Debtor Dennis E. Hecker ("Debtor") files this Response (the "Response") to Randall L. Seaver's (the "Trustee's") Motion for Protective Order (the "Motion"). In support of his Motion, the Trustee argues that Debtor is intentionally disclosing only limited information, and that Debtor supplements his disclosures only when Debtor finds out that the Trustee knows something he has not yet disclosed. In fact, however, Debtor has made extensive disclosures to the best of his ability. The issue is that Debtor no longer has his own records, and the Trustee has collected many of the same records from third parties. Debtor simply wants access to records relating to him and his businesses that he once had before those records were seized. Under the Bankruptcy Rules, the Trustee is required to produce those records unless the Trustee makes an affirmative showing that some harm will come from the disclosure. Here, as discussed below, the Motion should be denied because the Trustee cannot meet his burden of establishing the need for a protective order.

## FACTUAL BACKGROUND

Except as supplemented in this section, the facts relevant to this Response are set forth in the Motion. All capitalized terms have the meaning ascribed to them in the Motion.

HECKEL
SHERBURNE C
13880 HWY 10
ELK RIVER, MN 55330

USA44
USA44
USA44
Minneapolis MN 554
FRI 21 JAN 11 PM

HONORABLE JUDGE KRESSAL
300 SOUTH 4th STREET
MPLS MINN 55415