UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  BKY No.: 09-50779

Dennis E. Hecker,  Chapter 7

Debtor.

**TRUSTEE'S REPLY TO OBJECTION**
**OF DEBTOR DENNIS E. HECKER**

## INTRODUCTION

Through his Objection,[1] the Debtor[2] seeks to undermine an intensely negotiated, multi-party settlement that, if approved, will result in the payment by GELCO Corporation ("GELCO") of $4.1 million to the bankruptcy estate and two of its major creditors. Hecker's so-called "objection," however, is not really an objection to the Motion to Approve Settlement ("Motion") now before the Court. Hecker does not argue that the settlement is a bad deal for the estate or somehow represents an improvident exercise of the Trustee's business judgment. He has not claimed that the settlement is inimical to the paramount interests of creditors. Indeed, Hecker's Objection fails to even mention the factors first recited in *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929), that control the outcome of the Motion. His Objection thus poses no obstacle to the granting of the Motion.

Instead, Hecker's Objection predictably focuses on matters parochial to Hecker which are, in the context of the pending motion, entirely a *non-sequitur*. According to Hecker, the settlement payments represent his earnings and, as such, he claims that 75% of the settlement proceeds are his to keep as an exempt asset. Further – and despite his manifestly unclean hands – Hecker urges this Court to invoke an extraordinary equitable remedy and reverse pierce the corporate veils of Walden Fleet Services II, Inc. ("Walden Fleet") and Denny Hecker

---

[1] Debtor Dennis E. Hecker's Objection to Motion to Approve Settlement is hereafter referred to as the "Objection."
[2] The Debtor, Dennis E. Hecker, is hereafter referred to as the "Debtor" or "Hecker."

Automotive Group, Inc. ("DHAG") in order to provide a conduit through which Hecker may claim the settlement payments.

Hecker is not entitled to the relief he seeks:

- In the more than two years that this case has been pending, Hecker has never filed an Amended Schedule C to claim an exemption in payments due or to become due under the SCA;

- Any attempt by Hecker to amend his exemptions to include payments due under the SCA at this juncture would be futile, as Hecker's bad faith conduct in (among other things) concealing and converting estate assets and committing bankruptcy fraud precludes such an amendment;

- Despite his apparent claim that the SCA constitutes an employment agreement with GELCO, in Schedule I to his Bankruptcy Schedules, Hecker averred that he was "self-employed" and had no income, and Hecker later testified at the July 15, 2009 Section 341 meeting of creditors that he was not employed;

- The SCA expressly provides that Hecker is an independent contractor, and Hecker has utterly failed to meet his burden to demonstrate otherwise; and

- Hecker has further failed to provide any legal or equitable justification for the application of the reverse piercing doctrine so that he can get his hooks into the GELCO settlement proceeds.

Under the circumstances, this Court can and should overrule the Objection and grant the Trustee's Motion.

## FACTUAL BACKGROUND

### I. THE DEBTOR'S EMPLOYMENT STATUS: UNEMPLOYED

The Debtor filed his petition for relief under Chapter 7 of the United States Bankruptcy Code on June 4, 2009. On July 1, 2009, he filed his Bankruptcy Schedules and Statement of Financial Affairs. In Schedule I, Hecker declared under penalty of perjury that he was "self-employed" and that he had no present or prospective "wages, salary or commissions." Just a few days later, during his testimony at the July 15, 2011 Section 341 meeting, Hecker testified that he was not employed. Certainly since the filing of his bankruptcy case, it appears that Hecker has not been gainfully employed by GELCO or anyone else

2

## II. THE DEBTOR'S SCHEDULE C EXEMPTION RELATED TO GELCO: NONE

For the more than two years that this case has been pending, Hecker has never attempted to exempt any payments due from GELCO under the SCA. Indeed, to this day, Hecker has not filed an Amended Schedule C to claim an exemption relative to the GELCO payments. Any such attempt will unquestionably be met with a multitude of objections for a multitude of reasons, including some of the reasons set forth below.

## III. HECKER IS AT BEST AN ASSIGNEE OF A FULLY ENCUMBERED RIGHT TO RECEIVE PAYMENT, AND HE IS NOT AND HAS NEVER BEEN A GELCO EMPLOYEE

The party entitled to receive compensation under the SCA is not Hecker; it is the "Service Provider," defined in the preamble to the agreement to mean Walden Fleet and DHAG. Compensation payable under the SCA is determined through application of formulas based on the size and composition of the leasing fleets transferred to GELCO as part of the broader assumption and assignment transaction.[3] While it is true that rights to payment under the SCA may be assigned, and that Hecker at one time had the ability to control the assignment of such payments through his ownership of Walden Fleet and DHAG, Hecker's interest in any payments due under the SCA was at best that of an assignee. Hecker's putative right to receive payment – a general intangible – is fully encumbered by pre-petition security interests.[4]

Further, Hecker never really believed that he was a GELCO employee. In the SCA, Hecker and the Service Provider agreed to be classified as independent contractors. Hecker expressly agreed that he would not be deemed an employee of GELCO for any purpose:

---

[3] Payments due under the SCA were payable even after the death or disability of Hecker. *See* SCA § 15(e). Plainly, the SCA payments were not predicated upon services rendered by Hecker.

[4] Hecker's potential interest as assignee of the right to receive payment under the SCA is, of course, a general intangible. By virtue of an earlier settlement in these proceedings between the Trustee and Cornerstone Bank, the Trustee possesses, for the benefit of the estate, a first priority security interest in Hecker's general intangibles, and Corepointe, as assignee of Chrysler, also holds a prepetition security interest in Hecker's general intangibles. The rights to payment of DHAG and Walden Fleet, moreover, are also subject to security interests in favor of the Trustee and U.S. Bank. Amounts secured by these general intangibles exceed the amount of the settlement and, indeed, exceed the maximum amount recoverable under the SCA.

> The status of Service Provider shall be that of an independent contractor and neither Service Provider nor Hecker or any employee, agent or representative shall, at any time or for any purpose, be deemed an agent or employee of GE Fleet [GELCO].

*See* SCA § 8(a) (bracketed material supplied). GELCO never delivered to Hecker a Form W-2 or Form 1099, and it follows that Hecker did not claim these payments as income on his state or federal income tax returns for 2005, 2006, 2007 or 2008.[5]

## ARGUMENT

Hecker's Objection must be overruled. Hecker has failed to rebut the Trustee's *prima facie* showing, in the verified Motion, that all pertinent factors outlined in *Drexel v. Loomis* overwhelmingly favor the approval of the settlement. Moreover, to the extent Hecker seeks to predicate his Objection upon his claim that the GELCO payments are somehow exempt, Hecker's Objection is equally infirm. In that regard, Hecker has never claimed the exemption, is not an employee of GELCO, and Hecker's bad faith and fraudulent conduct in the bankruptcy case operate to bar him from now amending his exemption. Finally, Hecker's quest to reverse pierce the corporate veils of DHAG and Walden Fleet in order to appropriate their rights to payment similarly fails because Hecker cannot possibly show that a reverse piercing is necessary in order to avoid injustice. This Court can and should grant the Motion.

### I. APPLICABLE LAW SUPPORTS APPROVAL OF THE SETTLEMENT

As detailed in the Trustee's verified Motion, approval of the settlement is clearly warranted. The settlement represents the culmination of months of hard-fought negotiation between the parties. The settlement will yield a substantial return to the bankruptcy estate and two of its largest creditors. Approval of the settlement will eliminate the need for complex, expensive litigation and will insulate the estate from the potential risk of an adverse outcome.

---

[5] All SCA payments, except the December 2008 payment to Hecker's personal account, were wired to an account owned by Rosedale Dodge. It appears that the Service Provider, through Hecker, directed GELCO to direct the December 2008 payment to one of Hecker's personal accounts so that Hecker could avoid Chrysler's collection efforts, which had included the seizure of funds on deposit in the name of Rosedale Dodge and other Hecker businesses. It further appears that prior payments were assigned to Rosedale Dodge so that the payments could be sheltered from tax through the use of loss carry forwards that resided in that entity.

Application of the factors set forth in *Drexel v. Loomis* thus quite clearly favors approval of the settlement.

## II. THE GELCO PAYMENTS ARE NOT EXEMPT

### A. Hecker Has Not Claimed an Exemption

At this juncture, Hecker has not, through amendment or otherwise, claimed an exemption relative to the GELCO payments. Federal Rule of Bankruptcy Procedure 4003(a) quite clearly requires that the Debtor list "property claimed as exempt on the schedule of assets required to be filed by Rule 1007 . . . ." Fed. R. Bankr. P. 4003(a). Because Hecker has not amended his schedules to claim an exemption related to the GELCO payments, he has no basis to object to the settlement on the grounds he has articulated.

### B. Any Attempt to Exempt the GELCO Payments Would Be Futile

It is equally clear that any attempt by Hecker to amend Schedule C in order to claim an exemption related to the payments under the SCA would be futile. Rule 1009(a) generally permits a debtor to amend his schedules at any time before the case is closed. Fed. R. Civ. P. 1009(a). As the Eighth Circuit has noted, however, there are two recognized exceptions to the rule that permits liberal amendment to a debtor's claimed exemptions:

> The two recognized exceptions to this rule are bad faith on the part of the debtor and prejudice to the creditors. *See In re Doan*, 672 F.2d at 833 ("[A] court might deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors."); *In re Osborn*, 24 F.3d 1199, 1206 (10th Cir. 1994) (same); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984) (noting that courts may deny an amendment where the debtor has acted in bad faith or where property has been concealed).

*In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002). A bankruptcy court has the discretion to deny an amendment to the debtor's exemptions if they are proposed in bad faith. *Id.* at 888.

Generally, bad faith is determined by examining the totality of the circumstances. *In re Barrows*, 408 B.R. 239, 243 (8th Cir. BAP 2009) (citing *Kaelin*, 308 F.3d at 889 and *Bauer v. Iannacone*, 298 B.R. 353, 356 (8th Cir. BAP 2003). A debtor's concealment of an asset will

5

generally support a finding of bad faith. *Barrows*, 408 B.R. at 243 (citing *Kaelin*, 308 F.3d at 890). Similarly, "'[t]he shield of exemption . . . may be penetrated in extreme circumstances where there is fraudulent conduct or a clear showing of bad faith.'" *In re Brown*, 427 B.R. 715, 723 (D. Minn. 2010) (citing *Pineo v. Bogan*, 302 B.R. 524, 529 (Bankr. W.D. Pa. 2003).

In this case, there clearly exist ample grounds to deny Hecker the right to amend his schedules to claim an exemption relative to the GELCO SCA payments. As this Court knows, throughout this case, Hecker has concealed, secreted and fraudulently transferred assets of the bankruptcy estate. His conduct led to a criminal conviction for bankruptcy fraud. His conduct has not only irretrievably removed assets from the estate, but it has forced the Trustee to incur substantial expense chasing after those assets – a fact that is well-documented in the record of these proceedings. Hecker's bad faith would seem to interpose an insurmountable obstacle to the successful assertion of the exemption if and when Hecker actually attempts to claim it.

## C. The SCA is Not an Employment Agreement

What is equally clear is that the SCA is not, itself, an employment agreement. For one thing, Hecker himself never believed he was an employee of GELCO. In his Schedules, he claimed to be self-employed, and in his testimony at the first meeting of creditors, he claimed he was not employed. GELCO never provided Hecker with Forms 1099 or W-2 related to the payments made by GELCO under the SCA. Hecker did not identify income from the SCA as current or prospective income in his schedules. Hecker is not identified as a payee under the SCA, and his right to payment as an assignee is more than fully encumbered by security interests in favor of the Trustee and other creditors. Further, Hecker agreed within the SCA that he was not an employee of GELCO for any purpose. For this additional reason, Hecker's belated attempt to cast the SCA as an employment agreement so he can claim an exemption is destined to fail.

## III. THERE IS NO BASIS TO REVERSE PIERCE FOR THE BENEFIT OF HECKER

Also implausible is Hecker's request that the Court reverse pierce the corporate veils of DHAG and Walden Fleet so as to provide Hecker with a conduit through which to receive payments owed to those entities under the SCA. Hecker cannot meet his burden to show that piercing the veil is necessary to avoid injustice.

As this Court has noted, "'reverse piercing' generally refers to piercing the corporate veil in order to hold a corporate entity liable to an outsider for the debts of a corporate insider." *In re Hecker*, 414 B.R. 499, 503 (Bankr. D. Minn. 2009) (citations omitted). In determining whether to reverse pierce the veil, prejudice to shareholders and other creditors is a critical factor. *Id.* at 506. Finally, the piercing proponent must demonstrate that it would be "unfair and unjust" if the veil is not pierced. *Id.* at 507.

In this case, reverse piercing would not be warranted because it would be prejudicial to the creditors of DHAG and Walden Fleet, and because the equities quite simply do not favor reverse piercing in favor of Hecker. As this Court noted in *Hecker*, the Debtor is a sophisticated businessman who set up his companies and funneled payments through them in order to avoid liabilities associated with the businesses. Creditors, including U.S. Bank and the Trustee's predecessor-in-interest, lent money and obtained security interests from these entities in reliance upon the integrity of the corporate and limited liability company forms. In light of Hecker's admittedly fraudulent conduct throughout the course of these proceedings, moreover, it cannot be gainsaid that reverse piercing in his favor is necessary to avoid injustice. Quite the opposite is true.

## CONCLUSION

This Court should overrule the Debtor's Objection and approve the settlement. The Debtor has failed to rebut the Trustee's showing that the settlement should be approved under the applicable factors as set forth in *Drexel v. Loomis* and its progeny. The Debtor's hypothetical

7

claim that payments under the SCA are somehow exempt is neither ripe nor relevant to the inquiry at hand. The Trustee therefore respectfully requests that the Motion be approved.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE, LTD.**

Dated: June 14, 2011

By: /e/ James M. Jorissen
_____
Matthew R. Burton, #210018
James M. Jorissen, #262833
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 332-1030

ATTORNEYS FOR RANDALL L. SEAVER, TRUSTEE

440063

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

_____

In re:                                                                  BKY No.: 09-50779

Dennis E. Hecker,                                            Chapter 7

            Debtor.
_____

## UNSWORN CERTIFICATE OF SERVICE
_____

I hereby certify that on June 14, 2011, I caused the following documents:

> ***Trustee's Reply to Objection of Debtor Dennis E. Hecker***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).


                                                                          /e/  Stephanie Wood

Dated: June 14, 2011                                        _____
                                                                     Stephanie Wood
                                                                     100 South Fifth Street, Suite 2500
                                                                     Minneapolis, MN  55402
                                                                     (612) 332-1030

440143